IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| GABBY KLEIN, DONALD SHERBONDY, SARAH SHERBONDY and CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALTRIA GROUP, INC., HOWARD A. WILLARD III, WILLIAM F. GIFFORD, JR., JUUL LABS, INC., ADAM BOWEN, JAMES MONSEES, KEVIN BURNS, and K.C. CROSTHWAITE,<br><br>Defendants. | Case No. 3:20-cv-00075-DJN |

**MEMORANDUM IN SUPPORT OF DEFENDANT JAMES MONSEES'
MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION
<u>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS</u>**

Elizabeth M. Anderson (Va. Bar No. 84159)
**Orrick, Herrington & Sutcliffe LLP**
Columbia Center
1152 15th Street, N.W.
Washington, Dc 20005-1706
Telephone:   +1 202 339 8400
Facsimile:    +1 202 339 8500
emanderson@orrick.com

Walter F. Brown, Jr. (*admitted pro hac vice*)
James N. Kramer (*admitted pro hac vice*)
**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759
wbrown@orrick.com
jkramer@orrick.com

*Attorneys for Defendant James Monsees*

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  THE COMPLAINT'S ALLEGATIONS REGARDING MR. MONSEES ....................... 2

III.  ARGUMENT ..................................................................................................... 3

    A.  The Complaint Fails To Allege That Mr. Monsees Made An Actionable
    Misstatement Or Omission That Caused Plaintiffs' Alleged Losses .................... 4

        1.  Mr. Monsees Is Not The "Maker" Of JLI's December 28, 2018
        Press Release, Or JLI's September 24, 2019 Statement To The
        L.A. Times .................................................................................... 5

        2.  Mr. Monsees' July 25, 2019 Congressional Testimony Is Protected
        By The *Noerr-Pennington* Doctrine .......................................... 7

        3.  Mr. Monsees' July 25, 2019 Congressional Testimony Was Not
        Made "In Connection With The Purchase Or Sale" Of Altria
        Securities .................................................................................... 9

    B.  The Complaint Fails To Allege Facts Creating A Strong Inference That
    Mr. Monsees Acted With Scienter To Defraud Altria's Investors ...................... 9

    C.  Plaintiffs' Conclusory "Scheme" Allegations Do Not State A Claim
    Against Mr. Monsees Under Rule 10b-5(a) and (c) ........................................ 12

    D.  The Complaint Does Not Establish Mr. Monsees Was A Control Person
    Of JLI .......................................................................................................... 13

IV.  CONCLUSION ................................................................................................ 14

i

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Abdo v. Fitzsimmons*,
  2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ...........................................................................7

*In re Acterna Corp. Sec. Litig.*,
  378 F. Supp. 2d 561 (D. Md. 2005) ..................................................................................11, 13

*Alliance Tech. Grp., LLC v. Achieve 1, LLC*,
  2013 WL 143500 (E.D. Va. Jan. 11, 2013) ...........................................................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................3, 6

*Bristol-Myers Squibb Co. v. IVAX Corp.*,
  77 F. Supp. 2d 606 (D.N.J. 2000) ..........................................................................................8

*Bruce v. Suntech Power Holdings Co. Ltd.*,
  2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) ........................................................................7

*Burt v. Maasberg*,
  2014 WL 1291834 (D. Md. Mar. 28, 2014)...........................................................................10

*In re Cannavest Sec. Litig.*,
  307 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................................................................7

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
  964 F. Supp. 2d 1128 (N.D. Cal. 2013) ................................................................................11

*City of Livonia v. Boeing Co.*,
  711 F.3d 754 (7th Cir. 2013) ................................................................................................11

*Cozzarelli v. Inspire Pharm. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ..................................................................................................4

*In re CytRx Corp. Sec. Litig.*,
  2015 WL 5031232 (C.D. Cal. July 13, 2015).........................................................................6

*In re DVI, Inc. Sec. Litig.*,
  639 F.3d 623 (3d Cir. 2011), *abrogated on other grounds*, 568 U.S. 455
  (2013)......................................................................................................................................12

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)...................................................................................................10

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)............................................................................................................4, 10

# TABLE OF AUTHORITIES (CONTINUED)

**Cases**                                                                                                **Page(s)**

*Fouad v. Isilon Sys., Inc.*,
    2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ....................................................................14

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .............................................................................................5

*In re Global Crossing, Ltd. Sec. Litig*,
    2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)...........................................................................14

*Hefler v. Wells Fargo & Co.*,
    2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ...............................................................7

*In re Immersion Corp. Sec. Litig.*,
    2011 WL 871650 (N.D. Cal. Mar. 11, 2011)..............................................................6

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
    432 F. Supp. 2d 571 (E.D. Va. 2006) ..........................................................................7

*Janus Capital Grp. v. First Derivative Traders*,
    564 U.S. 135 (2011).................................................................................5, 6, 7, 10

*Katyle v. Penn Nat. Gaming, Inc.*,
    637 F.3d 462 (4th Cir. 2011) .................................................................................3

*Lorenzo v. Sec. & Exch. Comm'n*,
    139 S. Ct. 1094 (2019).............................................................................................12

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
    876 F.3d 541 (4th Cir. 2017) ...........................................................................10, 12

*Markette v. XOMA Corp.*,
    2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) .......................................................7

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) ......................................................................10, 11, 13

*Oaktree Principal Fund V, LP v. Warburg Pincus LLC*,
    2016 WL 6782768 (C.D. Cal. Aug. 9, 2016)..........................................................7

*Or. Nat. Res. Covacil v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) .................................................................................8

*Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*,
    756 F.2d 986 (4th Cir. 1985) .................................................................................8

iii

# TABLE OF AUTHORITIES (CONTINUED)

**Cases**                                                                                    **Page(s)**

*Ret. Assoc. of Colo. v. Deloitte & Touche LLP*,
  551 F.3d 305 (4th Cir. 2009) ..................................................................................3, 13

*Rok v. Identiv, Inc.*,
  2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir.
  2018) ...........................................................................................................................10

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  351 F. Supp. 2d 334 (D. Md. 2004) ......................................................................6, 12

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp, N.V.*,
  941 F. Supp. 1369 (S.D.N.Y. 1996)..........................................................................14

*Smith v. Circuit City Stores, Inc.*,
  286 F. Supp. 2d 707 (E.D. Va. 2003) .......................................................................10

*In re SolarCity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ........................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)......................................................................................................4

*Theoharous v. Fong*,
  256 F.3d 1219 (11th Cir. 2001), *abrogated on other grounds*, 559 U.S. 633
  (2010)..........................................................................................................................14

*Tuosto v. Philip Morris USA Inc.*,
  2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)............................................................8

*U.S. Football League v. Nat'l Football League*,
  1986 WL 5623 (S.D.N.Y. May 15, 1986) ..................................................................8

*In re Willis Towers Watson Plc Proxy Litig.*,
  2020 WL 508861 (E.D. Va. Jan. 31, 2020) ..............................................................14

*Zishka v. Am. Pad & Paper Co.*,
  2001 WL 1748741 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th
  Cir. 2003) ...................................................................................................................14

iv

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

**Rules and Statutes**

Fed. R. Civ. P.
    Rule 8 ................................................................................................................6
    Rule 9(b) ....................................................................................................3, 6, 12
    Rule 12(b)(6)................................................................................................3, 13

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ................................. *passim*

Securities and Exhange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 ........................... *passim*

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ..............................2, 9

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a)....................................2

Defendant James Monsees joins and incorporates by reference the Motion to Dismiss filed by JUUL Labs, Inc. ("JLI" or "JUUL"), Adam Bowen, and Kevin Burns (the "JLI Motion to Dismiss"), and submits this Memorandum in Support of his separate Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "Complaint").

## I.    **INTRODUCTION**

The JLI Motion to Dismiss demonstrates that Mr. Monsees, like the other alleged "JLI Defendants," is not a proper defendant in this case.  Plaintiffs purport to represent a class of investors in Altria Group ("Altria") and seek redress for alleged misstatements made in connection with the purchase of Altria securities.  Yet as the JLI Motion to Dismiss explains, Plaintiffs, as purchasers of Altria securities, lack standing to bring securities fraud claims against Mr. Monsees and the other JLI Defendants.  As a matter of law, the JLI Defendants cannot be liable to investors of Altria for statements that were made by JLI and its employees about JLI's separate business.  Nor does the Complaint allege any facts to show that the alleged misstatements attributed to Mr. Monsees and the other JLI Defendants were material, false or misleading when made, or the cause of Plaintiffs' alleged losses.  For those and other reasons set forth in the JLI Motion to Dismiss, the Complaint should be dismissed as to all of the JLI Defendants, including Mr. Monsees.

Plaintiffs' claims against Mr. Monsees should also be dismissed for additional reasons unique to him.  Even if the JLI Defendants could be liable to Altria investors for statements made by JLI—and they cannot—there are no allegations that Mr. Monsees was the "maker" of, or had "ultimate authority" over, JLI's alleged misstatements.  Mr. Monsees thus cannot be liable for those alleged misstatements.  Plaintiffs also challenge Mr. Monsees' testimony to Congress regarding underage vaping, but even if that testimony was false or misleading (and it was not), it would not be actionable in this lawsuit because the testimony is protected by the *Noerr-Pennington* doctrine, and it was not made "in connection with the purchase or sale" of Altria securities.

Moreover, the Complaint does not allege particularized facts creating a "strong inference" that Mr. Monsees acted with the intent to defraud Altria investors, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  Indeed, the Complaint—which

1

impermissibly lumps Mr. Monsees together with all the other "JLI Defendants," without any differentiation—does not contain a single factual allegation bearing on Mr. Monsees' state of mind with respect to Altria investors. Nor does it allege any facts that establish a plausible, much less a cogent and compelling, explanation of *why* Mr. Monsees would set out to defraud Altria investors.

For these and other reasons set forth below and in the JLI Motion to Dismiss, the claims against Mr. Monsees should be dismissed and, because they cannot be cured, they should be dismissed with prejudice.

## II.    THE COMPLAINT'S ALLEGATIONS REGARDING MR. MONSEES

The Complaint seeks to hold Mr. Monsees liable under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Securities and Exchange Commission Rule 10b-5, for allegedly making misleading statements "in connection with the purchase and sale of Altria securities" and participating in a fraudulent scheme to "influence the market for Altria securities." Compl. ¶¶ 575-76. It is undisputed, however, that Mr. Monsees was never employed by Altria, and the Complaint does not, and cannot, allege that Mr. Monsees (i) had the authority to make a disclosure on Altria's behalf, (ii) ever made a disclosure on Altria's behalf, or (iii) ever participated in creating or disseminating an Altria disclosure. *Id.* ¶ 28.

Instead, together with the so-called "JLI Defendants," Mr. Monsees is alleged to have deceived Altria investors by making three purportedly misleading statements about *JLI***'s** business. *Id.* ¶¶ 32, 464, 498, 509. But as the Complaint's own allegations make clear, two of those alleged misstatements—a JLI press release (*id.* ¶ 464) and a statement by JLI to the Los Angeles Times (*id.* ¶ 509)—were allegedly made by JLI alone, not by Mr. Monsees. Indeed, there are no factual allegations whatsoever to establish that Mr. Monsees played any role in preparing the challenged JLI statements, much less that he had ultimate authority over the contents of the statements, including whether and how they would be communicated.

The third alleged misstatement attributed to Mr. Monsees is his July 25, 2019 written testimony to Congress as part of hearings concerning government and industry efforts to curb underage vaping. The Complaint alleges that the following statement from Mr. Monsees' written

testimony was materially misleading: "We never wanted any non-nicotine user, and certainly nobody under the legal age of purchase, to ever use JLI products. . . .  That is a serious problem. Our company has no higher priority than combatting underage use."  *Id.* ¶ 498.  As a matter of law, Mr. Monsees' testimony is protected First Amendment speech that is not actionable, and, in any event, there are no facts alleged to support the notion that the testimony was made in connection with purchase or sale of Altria securities.  Nor are there any facts alleged to show that this statement was material, false or misleading when made, that Mr. Monsees knew it was false or misleading when made, or that it was the cause of Plaintiffs' alleged losses.

The Complaint is also silent as to *why* Mr. Monsees would participate in a fraud against Altria's investors.  It does not allege that Mr. Monsees ever bought, sold, or owned Altria stock, or otherwise sought to profit from the alleged fraud.  In short, there are no allegations to show Mr. Monsees had any motive to commit the fraud for which is he accused.

## III.   ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept as true "well-pleaded factual allegations," it "owe[s] no allegiance to 'unwarranted inferences, unreasonable conclusions, or arguments' drawn from those facts."  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (quoting *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009)).

In addition, Rule 9(b) and the PSLRA "impose[] heightened pleading requirements for private securities fraud actions."  *Pub. Emps.' Ret. Assoc. of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 310-11 (4th Cir. 2009).  Rule 9(b) requires a complaint to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The PSLRA similarly requires a complaint to specify each statement alleged to have been misleading and why it was misleading when made, and to "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1). The PSLRA further requires a complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter.  *Id.* § 78u-4(b)(2).

3

Because the Supreme Court has defined "scienter" in the context of Section 10(b) and Rule 10b-5 as a "mental state embracing intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976), "negligence is not enough," *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 623 (4th Cir. 2008). Rather, a "plaintiff must show either 'intentional misconduct' or *such* '*severe recklessness*' that the danger of misleading investors was 'either known to the defendant or so obvious that the defendant must have been aware of it.'" *Id.* (emphasis added) (quoting *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 343-44 (4th Cir.2003)). A "strong inference" of scienter is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Under this comparative approach, the Court must weigh all facts and inferences, including those that weigh *against* a finding of scienter. *Id.* at 323-24. "[W]hen the facts as a whole more plausibly suggest that the defendant acted innocently—or even negligently—rather than with intent or severe recklessness, the action must be dismissed." *Cozzarelli*, 549 F.3d at 624.

As demonstrated in the JLI Motion to Dismiss and explained below, the Complaint does not begin to meet these standards for pleading a Section 10(b) or 20(a) claim against Mr. Monsees.

## A.   The Complaint Fails To Allege That Mr. Monsees Made An Actionable Misstatement Or Omission That Caused Plaintiffs' Alleged Losses

The Complaint asserts that Mr. Monsees is liable under Section 10(b) and subsection (b) of Rule 10b-5 to a class of purchasers of Altria securities for supposedly making three alleged misstatements: (i) JLI's statement in its December 20, 2018 press release that its "intent was never to have youth use Juul products" (Compl. ¶ 464); (ii) Mr. Monsees' July 25, 2019 written testimony to Congress that JLI "never wanted" anybody "under the legal age of purchase[] to ever use JLI products," and has "no higher priority than combatting underage use" (*id.* ¶ 498); and (iii) JLI's September 24, 2019 statement to the L.A. Times that "[w]e have never marketed to youth and we never will" (*id.* ¶ 509). The Complaint alleges that these statements were materially false and misleading when made, and defrauded purchasers of Altria securities, because JLI supposedly

4

"knew but failed to disclose that its intent was to have youth use JUUL products," and "specifically target[ed] its advertising towards youth." *Id.* ¶¶ 465, 499, 510.  As the JLI Motion to Dismiss demonstrates, however: (1) Plaintiffs, as investors in Altria securities, lack statutory standing to bring a Section 10(b) claim against Mr. Monsees and the other JLI Defendants, none of whom are alleged to have made any statements about or taken any actions regarding the company in which Plaintiffs invested; (2) the Complaint fails to plead facts showing that any of the alleged misstatements was material, or false or misleading when made; and (3) the Complaint fails to adequately plead "loss causation," *i.e.*, that any of the alleged misstatements caused Plaintiffs' alleged losses.  *See* JLI Motion to Dismiss at 11-21, 30-33.

But there are several other independent reasons why the Complaint fails to state a Section 10(b) misstatement claim under Rule 10b-5(b) against Mr. Monsees.

### 1.    Mr. Monsees Is Not The "Maker" Of JLI's December 28, 2018 Press Release, Or JLI's September 24, 2019 Statement To The L.A. Times

To be held liable under Section 10(b) for violating subsection (b) of Rule 10b-5, a defendant "must have 'made'" an alleged misstatement.  *Janus Capital Grp. v. First Derivative Traders*, 564 U.S. 135, 141 (2011).  In *Janus*, the Supreme Court held that "[o]ne who prepares or publishes a statement on behalf of another is not its maker"; rather, "the maker of [the] statement is the person or entity with *ultimate authority* over the statement, including its content and whether and how to communicate it."  *Id.* at 142 (emphasis added).

Mr. Monsees is plainly not the "maker" of JLI's December 20, 2018 press release or JLI's September 24, 2019 statement to the L.A. Times—and no facts are alleged to suggest otherwise.  An individual defendant is a maker of a statement only if: (i) the defendant's "signature or name appeared in the [statement] in the sense of an attribution"; (ii) the defendant orally "delivered the statements . . . himself"; or (iii) the defendant "*actually exercised* control"—as opposed to "*could have* exercised control"—"over the content of the [statement] and whether and how [it was] communicated."  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426-27 (7th Cir. 2015).  A person who merely influenced, helped create or supplied false information for the relevant

5

statements does not mean that such person had ultimate authority over the alleged misstatements. *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1006-07 (N.D. Cal. 2017); *see In re CytRx Corp. Sec. Litig.*, 2015 WL 5031232, at *6 (C.D. Cal. July 13, 2015) ("Courts since *Janus* have applied [it] to disallow Rule 10b-5(b) claims against defendants who merely requested, influenced, helped create, or supplied information for the relevant false or misleading statements.").

Here, Mr. Monsees did not orally deliver the challenged JLI press release or JLI's statement to the L.A. Times, and he did not sign, nor does his name appear in, either statement. *See* JLI Motion to Dismiss, Exs. 17, 21. Moreover, Plaintiffs do not allege any facts to show that Mr. Monsees actually exercised control and had ultimate authority over the content of either the JLI press release or JLI's statement to the L.A. Times. Instead, Plaintiffs seek to bypass their obligation to plead specific facts by lumping Mr. Monsees with the other "JLI Defendants," and offering the conclusory assertions that "[t]he JUUL Individual Defendants possessed the power and authority to control the contents of JUUL's press releases and other market communications," and that, "[b]ecause of their positions of control and authority, the JLI Individual Defendants were able to and did, directly or indirectly, control the content of the statements of JLI. Compl. ¶¶ 34, 579. Such boilerplate, group-pled allegations are insufficient to plead that an individual was the maker of an unattributed corporate statement because they are "inconsistent with the particularity and specificity required by the PSLRA," *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 370 (D. Md. 2004), and Rule 9(b), *see Alliance Tech. Grp., LLC v. Achieve 1, LLC*, 2013 WL 143500, at *9 (E.D. Va. Jan. 11, 2013) ("When facts are pleaded indiscriminately against a group, rather than against particular defendants, Rule 9(b)'s requirements are not met."); *see also, e.g.*, *In re Immersion Corp. Sec. Litig.*, 2011 WL 871650, at *3 (N.D. Cal. Mar. 11, 2011) (rejecting conclusory allegations that individuals "controlled and/or possessed the authority to control the contents of [the company's] reports, press releases").[1]

---

[1] Indeed, even under the notice pleading standards of Rule 8, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

6

Simply put, "[g]rouping defendants together in a pleading fails to satisfy the requirement that the who, what, when, where, why, and how, be pled with specificity." *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 579 (E.D. Va. 2006). And since *Janus*, courts have routinely rejected virtually identical conclusory allegations as insufficient to demonstrate an individual defendant's purported "ultimate authority" over, or status as the "maker" of, an alleged misstatement. *See, e.g., In re Cannavest Sec. Litig.*, 307 F. Supp. 3d 222, 242 (S.D.N.Y. 2018) ("Plaintiffs' generic and conclusory allegation that [defendants] 'did influence and control . . . the content and dissemination of the various statements that Plaintiff contends are false in misleading' is not sufficient" under *Janus*); *Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at \*9 (N.D. Cal. Feb. 27, 2018) (conclusory allegation that "because of their positions of control and authority as officers and/or directors [Defendants] were able to and did control the content of . . . [the Company's] public statements" and "that all the Officer Defendants . . . were provided with the documents alleged to be misleading 'prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected,'" was insufficient under *Janus*).[2]

### 2. Mr. Monsees' July 25, 2019 Congressional Testimony Is Protected By The *Noerr-Pennington* Doctrine

"Under the *Noerr–Pennington* doctrine, civil actions are barred where the activity challenged under federal statute or state law consists of petitioning legislatures, administrative

---

[2] *See also, e.g.*, *Bruce v. Suntech Power Holdings Co. Ltd.*, 2013 WL 6843610, at \*4 (N.D. Cal. Dec. 26, 2013) ("To the extent plaintiffs seek to hold King liable for [] statements by [the company] on the basis of his position as CFO, the conclusory allegations that he 'had the authority to and did control the making of [those] statements' 'by virtue of [his] responsibilities and activities as [CFO] . . .' lack the requisite specificity"); *Markette v. XOMA Corp.*, 2017 WL 4310759, at \*13 (N.D. Cal. Sept. 28, 2017) (dismissing claims against director because complaint lacked "factual allegations" to support conclusory assertion that "as a board member of XOMA, [he] 'had ultimate authority' over the false and misleading statements at issue"); *Oaktree Principal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, at \*10 (C.D. Cal. Aug. 9, 2016) ("Although the FAC repeatedly states that Warburg controlled, drafted, and participated in the investor calls . . . these generalized, conclusory allegations are insufficient to show that Warburg controlled the statements or omissions"); *Abdo v. Fitzsimmons*, 2017 WL 6994539, \*8 (N.D. Cal. Nov. 3, 2017) (rejecting "imprecise allegations that all Defendants were somehow involved in creating the documents in an undefined way, or had even more attenuated control over statements of the company").

bodies, and the courts,' even if the defendant's actions had an 'anticompetitive or otherwise injurious purpose or effect.'"  *Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at \*5 (S.D.N.Y. Aug. 21, 2007) (citations omitted); *see generally Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*, 756 F.2d 986, 992-93 (4th Cir. 1985).  The doctrine bars fraud claims based on allegedly false or misleading testimony made to Congress.  In *Tuosto*, for example, the court held that the *Noerr-Pennington* doctrine barred a plaintiff's fraud claim based on Philip Morris's allegedly false and misleading testimony to Congress during Congressional hearings regarding the health hazards of tobacco and cigarettes.  *See* 2007 WL 2398507, at \*2, \*5-6.

The doctrine likewise applies to bar Plaintiffs' fraud claim based on Mr. Monsees' July 25, 2019 Congressional testimony.  Mr. Monsees' statements to Congress were made to "address[] the problem of youth vaping" through the "shared effort of federal, state and local regulators, governments and . . . industry all working together."  JLI Motion to Dismiss, Ex. 20 at 4, 6.  As courts have recognized, Mr. Monsees' "testimony before Congress is a clear-cut example of solicitation of governmental action through the legislative process … [and] [u]nder the *Noerr-Pennington* doctrine, this sort of petitioning conduct is fully protected by the First Amendment[.]"  *U.S. Football League v. Nat'l Football League*, 1986 WL 5623, at \*1 (S.D.N.Y. May 15, 1986); *see e.g.*, *Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F. Supp. 2d 606, 617 (D.N.J. 2000) (holding that statements made "during congressional hearings" were immunized from liability where it was apparent that statements "were made in an effort to induce favorable government action, to encourage cooperation between government agencies and drug manufacturers and to defend Bristol's paclitaxel pricing system").  In short, Mr. Monsees' testimony is "protected by the *Noerr–Pennington* doctrine and thus *cannot* form the basis" of a securities fraud claim.  *Tuosto*, 2007 WL 2398507, at \*6 (emphasis added); *see also Or. Nat. Res. Covacil v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (recognizing that under *Noerr-Pennington* even misrepresentations are protected).

8

### 3.     Mr. Monsees' July 25, 2019 Congressional Testimony Was Not Made "In Connection With The Purchase Or Sale" Of Altria Securities

Mr. Monsees' Congressional testimony also cannot form the basis of a securities fraud claim because Plaintiffs do not—and cannot—allege any facts to show that Mr. Monsees' testimony was made "*in connection with the purchase or sale of any security*," much less Altria securities.  15 U.S.C. § 78j(b) (emphasis added); 17 C.F.R. § 240.10b-5 (emphasis added).

Mr. Monsees' counsel is not aware of any case that has permitted a securities fraud claim to proceed on the basis of allegedly false or misleading testimony to Congress, let alone testimony about an issuer different than the issuer class of investors seeking to impose liability.  That is not surprising given that statements made to Congress are plainly *not* made "in connection with the purchase or sale of any security," or the type of activity the securities laws seek to regulate.[3]

### B.     The Complaint Fails To Allege Facts Creating A Strong Inference That Mr. Monsees Acted With Scienter To Defraud Altria's Investors

Even if the Complaint alleged an actionable misstatement or omission for which Altria investors have standing to sue and that could properly be attributed to Mr. Monsees—and it does not—Plaintiffs' Section 10(b) and Rule 10b-5(b) claim against Mr. Monsees would still fail because the Complaint does not allege any specific facts to create a strong inference that Mr. Monsees acted with scienter to deceive Altria's investors, as required by the PSLRA.

The JLI Motion to Dismiss demonstrates in detail how the Complaint's allegations fail to create a strong inference of scienter as to any of the "JLI Defendants," including Mr. Monsees. *See* JLI Motion to Dismiss at 23-30.  But the Complaint's defects are particularly glaring with respect to Mr. Monsees, and merit separate consideration.

---

[3] Plaintiffs try to paper over this fatal flaw by alleging that "[a]nalysts covering Altria followed and discussed JLI" and its business.  Compl. ¶¶ 534-51.  But if analysts "discussing" JLI's business in relation to Altria's business were enough to transform Mr. Monsees' Congressional testimony about JLI and teen vaping into statements that were made "in connection with the purchase or sale" of Altria securities, Section 10(b)'s and Rule 10b-5's "in connection with" requirement would literally be meaningless.  For example, by Plaintiffs' theory, if an executive of Ford testifies to Congress about Ford's electric cars, that testimony would be deemed to have been made "in connection with the purchase or sale of" Tesla stock, an absurd result obviously not contemplated by the federal securities laws.

***First***, "to the extent a plaintiff alleges fraud claims against individual defendants, the plaintiff must allege facts supporting a strong inference of scienter as to *each defendant*." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 182 (4th Cir. 2009) (emphasis added). "[T]he PSLRA does not allow for 'group pleading.'" *Burt v. Maasberg*, 2014 WL 1291834, at *14 (D. Md. Mar. 28, 2014). Yet that is how the Complaint attempts to plead scienter as to Mr. Monsees and the other "JLI Defendants." Plaintiffs' conclusory allegations regarding "JLI" or the "JLI Defendants" (*see, e.g.*, Compl. ¶¶ 464-65, 509-10) cannot be used to establish Mr. Monsees' individual scienter. *See, e.g.*, *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 716 (E.D. Va. 2003) ("Plaintiff's scienter allegations fail . . . [because] they did not plead facts giving rise to a strong inference of scienter for each Defendant nor attribute particular statements to each Defendant. Plaintiffs cannot lump Defendants together").

***Second***, to plead the necessary "strong inference" of scienter under Section 10(b) and Rule 10b-5, the facts alleged in a complaint "must support an inference of an intent to defraud *the plaintiffs* rather than some other group." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (emphasis added). In other words, "[t]he scienter that the [Complaint] is required to allege is an intent to defraud *[Altria] investors*—not an intent" to deceive consumers, Congress, or regulators about vaping. *Rok v. Identiv, Inc.*, 2017 WL 35496, at *11 (N.D. Cal. Jan. 4, 2017) (emphasis added), *aff'd*, 716 F. App'x 663 (9th Cir. 2018); *see also Ernst & Ernst*, 425 U.S. at 199 (scienter in Section 10(b) cases means "intentional or willful conduct designed to deceive or defraud *investors*" (emphasis added)).

Here, the Complaint offers *zero* factual allegations that might bear on Mr. Monsees' state of mind regarding Altria investors and his purported intent to deceive them. That is not surprising—the notion that Mr. Monsees' July 25, 2019 testimony to Congress about JLI and teen vaping was somehow designed to deceive Altria investors is not even *plausible*, much less "cogent" and "compelling," as required to satisfy the PSLRA's "strong inference" standard for pleading scienter. *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 547 (4th Cir. 2017).

Indeed, it strains the imagination to consider how Mr. Monsees *could have* intended his testimony to Congress—which addresses JLI and underage vaping generally—to mislead Altria investors.

Moreover, even if the Complaint adequately alleged that Mr. Monsees intended to conceal JLI's purported "intent" to market its vaping products to teens—and it does not—such facts would not establish that Mr. Monsees intended to mislead Altria investors, let alone that he knew his conduct would have the effect of misleading Altria investors. Mr. Monsees' alleged misstatement would rise "to the level of securities fraud only if … he either intended to mislead [Altria] investors or knew (or should have known) that failing to disclose [JLI's purported intent to market its products to teens] would artificially inflate [Altria's] stock." *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1143 (N.D. Cal. 2013). Plaintiffs do not—and cannot—make such a showing "because nothing suggests that [Mr. Monsees] thought that he could mislead [Altria] investors with [his] statements" to Congress. *Id.*

***Third***, Plaintiffs do not, and cannot, posit any plausible motive for *why* Mr. Monsees would want to defraud investors of Altria. *See City of Livonia v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013) ("Without a motive to commit securities fraud, businessmen are unlikely to commit it."). The Complaint does not allege that Mr. Monsees bought or sold any Altria stock during the Class Period or had some other financial reason to defraud Altria investors. *See, e.g.*, *In re Acterna Corp. Sec. Litig.*, 378 F. Supp. 2d 561, 577 (D. Md. 2005) ("[T]he absence of any allegations establishing a motive for the individual Defendants to engage in securities fraud cuts against Plaintiffs' [scienter] argument."). In "evaluat[ing] plaintiffs' allegations of scienter holistically," the Court must "only afford their allegations the inferential weight warranted by context and common sense." *Matrix*, 576 F.3d at 183. As Plaintiffs would have it, Mr. Monsees made material misstatements about *JLI*'s business in an effort to mislead *Altria*'s investors, despite the fact that he is not alleged to own Altria shares or to have personally gained anything from the alleged fraud. Even in the context of the largely irrelevant background allegations regarding Mr. Monsees'

11

history with JLI (*see* Compl. ¶¶ 6, 39, 88, 89, 91, 97, 201, 202, 551),[4] Plaintiffs' theory of Mr. Monsees' alleged fraud against Altria's investors is absurd, and "the inference of scienter is neither 'cogent and compelling, [nor] strong in light of other explanations,'" *Maguire*, 876 F.3d at 547.

###    C.    Plaintiffs' Conclusory "Scheme" Allegations Do Not State A Claim Against Mr. Monsees Under Rule 10b-5(a) and (c)

Plaintiffs also claim that Mr. Monsees is liable under Section 10(b) and subsections (a) and (c) of Rule 10b-5[5] for allegedly participating in a fraudulent scheme "to deceive the investing public" regarding Altria's business, "artificially inflate and maintain the market price of Altria securities," and cause "members of the Class to purchase or otherwise acquire Altria securities at artificially inflated prices." Compl. ¶ 575. But tacking on conclusory scheme allegations under these provisions cannot salvage Plaintiffs' case against Mr. Monsees. Plaintiffs' "scheme" claim is largely duplicative of their failed claim under Rule 10b-5(b), and thus fails for similar reasons. *See also* JLI Motion to Dismiss at 21-23.

Section 10(b) claims asserted under Rule 10b-5(a) and (c) are referred to "as 'scheme liability claims' because they make deceptive conduct actionable, as opposed to Rule 10b-5(b), which relates to deceptive statements." *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 (3d Cir. 2011), *abrogated on other grounds*, 568 U.S. 455 (2013). The Supreme Court has also recently clarified that a defendant can be liable under Rule 10b-5(a) and (c) for a misstatement if they knowingly "disseminate[d]" it with fraudulent intent. *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1100-01 (2019). However, "[l]ike Rule 10b-5(b), claims under 10b-5(a) and (c) are subject to the heightened pleading requirements of Rule 9(b) and the PSLRA." *In re Royal Ahold*, 351 F. Supp. 2d at 372. Thus, a plaintiff must allege particularized facts showing the defendant's alleged role in the fraudulent scheme and his culpable state of mind—including by alleging specific facts showing how the defendant was "involved in [the] alleged scheme" to disseminate

---

[4] Mr. Monsees' history with JLI, as recounted in the Complaint, occurred years before the Class Period and is irrelevant to the Altria-directed fraud alleged here.

[5] Under these provisions, it is unlawful for a person to use a "device, scheme, or artifice to defraud," or engage in "any act, practice, or course of business which operates or would operate as a fraud or deceit," in connection with the purchase or sale of a security. 17 C.F.R. § 240.10b-5.

the misleading statements, and also creating a strong inference that defendant "knew of the alleged fraud" and acted with scienter to deceive investors. *In re Acterna*, 378 F. Supp. 2d at 574.

Here, the Complaint does not even clearly allege what the alleged scheme was—apart from the three alleged misstatements discussed above—or how it was intended to deceive Altria investors, let alone allege specific facts to show that Mr. Monsees was aware of such a scheme or did anything in knowing furtherance of it. Nor does the Complaint allege any specific facts to show that Mr. Monsees "disseminated" any allegedly misleading statements on behalf of Altria or any other Defendants. Indeed, nearly all of the Complaint's allegations regarding Mr. Monsees concern his actions at JLI long before the Class Period began (*see* Compl. ¶¶ 6, 39, 88, 89, 91, 97, 201, 202, 551), and the Complaint is devoid of allegations during the Class Period to establish that he did anything to defraud Altria investors.

In addition, the Fourth Circuit has made clear that "scheme liability" claims are still subject to the PSLRA's "strong inference" of scienter pleading requirement. *See Deloitte & Touche*, 551 F.3d at 313. Yet there are *zero* allegations to create any inference, let alone a strong inference, that Mr. Monsees intentionally furthered or participated in some undefined scheme to defraud Altria's investors. *See supra* at 9-12; JLI Motion to Dismiss at 23-30.

### D.   The Complaint Does Not Establish Mr. Monsees Was A Control Person Of JLI

Plaintiffs' Section 20(a) claim against Mr. Monsees is premised on the notion that JLI committed a violation of Section 10(b) and the bald conclusion that each of the "JLI Individual Defendants" was "a controlling person of JLI." Compl. ¶¶ 593-94. However, "[b]ecause the complaint fails to withstand a Rule 12(b)(6) motion with respect to the predicate violation of § 10(b)" against JLI, *see* JLI Motion to Dismiss, "it also fails with respect to the § 20(a) claims" against the JLI Individual Defendants, including Mr. Monsees, *Matrix*, 576 F.3d at 192.

Plaintiffs' Section 20(a) claim against Mr. Monsees also fails because the Complaint fails to allege that Mr. Monsees is a "control person" of JLI. The only factual allegations in the Complaint relating to Mr. Monsees' supposed control of JLI is his status as a co-founder and former director and subordinate officer of the company. *See* Compl. ¶ 28. As courts have

13

repeatedly held, such allegations are insufficient to establish control under Section 20(a). *See, e.g.*, *In re Willis Towers Watson Plc Proxy Litig.*, 2020 WL 508861, at \*10 (E.D. Va. Jan. 31, 2020) ("[C]ourts recognize that 'a party that has always held only a minority share of the company does not, by virtue of that fact alone, possess "control" over that company,' . . . and the '[s]tatus of defendants as directors, standing alone, is insufficient to establish their control.'").[6]

## IV.    CONCLUSION

For these reasons and those sets forth in the JLI Motion to Dismiss, the claims against Mr. Monsees should be dismissed.  Because these core pleading failures cannot be cured, the claims should be dismissed with prejudice.

---

[6] *See also, e.g.*, *Zishka v. Am. Pad & Paper Co.*, 2001 WL 1748741, at \*1 (N.D. Tex. Sept. 28, 2001), *aff'd*, 72 F. App'x 130 (5th Cir. 2003); *Theoharous v. Fong*, 256 F.3d 1219, 1227-28 (11th Cir. 2001), *abrogated on other grounds*, 559 U.S. 633 (2010); *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at \*13 (W.D. Wash. Dec. 29, 2008); *In re Global Crossing, Ltd. Sec. Litig*, 2005 WL 1907005, at \*13 (S.D.N.Y. Aug. 8, 2005); *In re Flag Telecom Holdings., Ltd. Sec. Litig*, 308 F. Supp. 2d 249, 273-74 (S.D.N.Y. 2004); *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp, N.V.*, 941 F. Supp. 1369, 1379 (S.D.N.Y. 1996).

14

Dated: July 8, 2020                                    **Orrick, Herrington & Sutcliffe LLP**


By: _____ /s/ *Elizabeth M. Anderson* _____
      Elizabeth M. Anderson,
      Bar No. 84159
      emanderson@orrick.com

Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Walter F. Brown, Jr. (*admitted pro hac vice*)
James N. Kramer (*admitted pro hac vice*)
**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759
wbrown@orrick.com
jkramer@orrick.com

*Attorneys for Defendant James Monsees*

15

## CERTIFICATE OF SERVICE

I certify that on this 8th day of July, 2020, I caused to electronically filed the foregoing Memorandum in support of Defendant James Monsees' Motion to Dismiss Consolidated Class Action Complaint for Violation of the Federal Securities Laws with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ *Elizabeth M. Anderson*

Elizabeth M. Anderson
**Orrick Herrington & Sutcliffe LLP**
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500
emanderson@orrick.com

16