## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| GABBY KLEIN, DONALD SHERBONDY, SARAH SHERBONDY AND CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALTRIA GROUP, INC., HOWARD A. WILLARD III, WILLIAM F. GIFFORD, JR., JUUL LABS, INC., ADAM BOWEN, JAMES MONSEES, KEVIN BURNS, AND K.C. CROSTHWAITE,<br><br>*Defendants.* | No. 3:20-cv-00075-DJN |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT K.C. CROSTHWAITE'S MOTION TO DISMISS THE CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS ...................................................................................................5

LEGAL STANDARD...........................................................................................................9

ARGUMENT........................................................................................................................10

I.      PLAINTIFFS HAVE FAILED TO PLEAD A FALSE OR MISLEADING
        MATERIAL STATEMENT MADE BY MR. CROSTHWAITE.....................................10

        A.      No Statement in the Operative Complaint is Attributed to Mr. Crosthwaite.........11
        B.      Plaintiffs Fail to Allege Specific Facts Showing that Mr. Crosthwaite Had
                the Requisite Control to Have "Made" Any Alleged Misstatement .......................12

II.     PLAINTIFFS HAVE NOT PLEAD A CLAIM AGAINST MR. CROSTHWAITE
        BASED ON DECEPTIVE OR MANIPULATIVE CONDUCT.......................................13

III.    PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS SUPPORTING A
        STRONG INFERENCE OF SCIENTER AGAINST MR. CROSTHWAITE..................15

IV.     PLAINTIFFS FAIL TO STATE A "CONTROL PERSON" CLAIM AGAINST
        MR. CROSTHWAITE........................................................................................................18

CONCLUSION......................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*,
No. 1:17-cv-1235-GHW, 2018 WL 1627266 (S.D.N.Y. Mar. 30, 2018)................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................9

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)..............................................................................3, 11, 12

*Burt v. Maasberg*,
No. ELH-12-0464, 2014 WL 1291834 (D. Md. Mar. 28, 2014) .............................................13

*In re Cannavest Corp. Secs. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)....................................................................................12

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
No. 18-cv-10320 (AJN), 2020 WL 1529371 (S.D.N.Y. Mar. 30, 2020)................................16

*Cozzarelli v. Inspire Pharmaceuticals Inc.*,
549 F.3d 618 (4th Cir. 2008) ................................................................................................17

*In re Edward D. Jones & Co., Secs. Litig.*,
No. 2:18-cv-00714-JAM-AC, 2019 WL 2994486 (E.D. Cal. July 9, 2019) .....................4, 13

*In re First Union Corp. Secs. Litig.*,
128 F. Supp. 2d 871 (W.D.N.C. 2001) ................................................................................18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ..........................................................................................11, 12

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
432 F. Supp. 2d 571 (E.D. Va. 2006) ...........................................................................5, 13, 17

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011)..........................................................................................3, 10, 11, 12

*Knurr v. Orbital ATK Inc.*,
272 F. Supp. 3d 784 (E.D. Va. 2017) ..................................................................................18

*Knurr v. Orbital ATK Inc.*,
294 F. Supp. 3d 498 (E.D. Va. 2018) ....................................................................................4

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
   876 F.3d 541 (4th Cir. 2017) ........................................................................................10, 15

*Maher v. Durango Metals, Inc.*,
   144 F.3d 1302 (10th Cir. 1998) ..............................................................................................19

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*,
   576 F.3d 172 (4th Cir. 2009) ..........................................................................................15, 17

*In re Mut. Funds Inv. Litig.*,
   566 F.3d 111 (4th Cir. 2009) ............................................................................................5, 19

*Oaktree Prinicipal Fund V, LP v. Warburg Pincus LLC*,
   No. CV 15-8574 PSG, 2016 WL 6782768 (C.D. Cal. Aug. 9, 2016)......................................12

*Ottmann v. Hanger Orthopedic Grp., Inc.*,
   353 F.3d 338 (4th Cir. 2003) ...................................................................................................17

*In re PEC Solutions, Inc. Sec. Litig.*,
   418 F.3d 379 (4th Cir. 2005) .....................................................................................................2

*Phillips v. LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) ...................................................................................................17

*Plaisance v. Schiller*,
   No. H-17-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) ..............................................12

*Pub. Emps.' Ret. Ass'n. of Colo. v. Deloitte & Touche LLP*,
   551 F.3d 305 (4th Cir. 2009) ...................................................................................................10

*In re Royal Ahold N.V. Secs. & ERISA Litig.*,
   351 F. Supp. 2d 334 (D. Md. 2004)..........................................................................................13

*Siegmund v. Xuelian Bian*,
   No. 16-62506-CIV-MORENO, 2018 WL 1611197 (S.D. Fla. Apr. 2, 2018) ........................13

*In re Smith Barney Transfer Agent Litig.*,
   884 F. Supp. 2d 152 (S.D.N.Y. 2012)...................................................................................3, 12

*Smith v. Circuit City Stores, Inc.*,
   286 F. Supp. 2d 707 (E.D. Va. 2003) ......................................................................................18

*In re Solarcity Corp. Secs. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) .....................................................................................11

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
   552 U.S. 148 (2008)..................................................................................................................13

iii

*Teachers' Ret. Sys. of LA v. Hunter*,
  477 F.3d 162 (4th Cir. 2007) ................................................................................16

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..............................................................................................15

*In re Virtus Inv. Partners, Inc. Secs. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016) .....................................................................3

*Yates v. Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ....................................................................... *passim*

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................18

## STATUTES

15 U.S.C. § 78u-4(b)(1)(B) ............................................................................................10

15 U.S.C. § 78u-4(b)(2) .................................................................................................17

15 U.S.C. § 78u-4(b)(2)(A) ...............................................................................4, 10, 15

15 U.S.C. § 78u-4(b)(a)(B) ..............................................................................................4

## RULES

Fed. R. Civ. P. 9(b) ........................................................................................................10

## REGULATIONS

17 C.F.R. § 240.10(b)-5(a) .............................................................................................13

17 C.F.R. § 240.10(b)-5(c) .............................................................................................13

17 C.F.R. § 240.10b-5 ....................................................................................................15

iv

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, et seq. (the "PSLRA"), Defendant Kevin C. (K.C.) Crosthwaite, Jr., respectfully submits this memorandum in support of his motion to dismiss all claims against him in Plaintiffs' Corrected Consolidated Class Action Complaint (ECF No. 108) ("Complaint" or "AC").

## INTRODUCTION

Spanning 160-pages, the Complaint attempts to recast a multi-billion dollar investment in December 2018 by Altria Group, Inc. ("Altria") in Juul Labs, Inc. ("JLI") to spin a tale of securities fraud. Missing from this tale is Mr. Crosthwaite. Plaintiffs do not target Mr. Crosthwaite in his capacity as JLI Chief Executive Officer ("CEO") (AC ¶ 30)—a position he held only after the last of the JLI statements alleged to be at issue was made—but rather as an "Altria Individual Defendant" (*Id.* ¶ 31).[1] Not only is this type of "group pleading" insufficient to allege securities fraud against Mr. Crosthwaite, but in fact, Plaintiffs have now admitted ***their group pleading was wrong***. In a Notice of Errata (ECF No. 106), Plaintiffs modified three paragraphs of the original consolidated class action complaint, which had alleged that all "Altria Individual Defendants" signed the three Securities and Exchange Commission ("SEC") filings at issue in this litigation. Plaintiffs now admit that Mr. Crosthwaite did ***not sign any of them***; he therefore cannot be held liable for any false or misleading statements contained therein. Despite this correction, Plaintiffs have nevertheless refused to dismiss their fraud claims against Mr. Crosthwaite.

---

[1] Plaintiffs refer to Mr. Crosthwaite in the Complaint "collectively" by the term "Altria Individual Defendants" and "Altria Defendants." AC ¶ 31. Accordingly, Mr. Crosthwaite adopts and incorporates by reference the arguments made by Defendants Altria, Howard A. Willard III, and William F. Gifford, Jr., in support of their concurrently filed motions to dismiss the Complaint, and presents his own separate argument in this memorandum to demonstrate that Plaintiffs' claims against him fail for the additional reasons that are specific to him.

Instead, they rely on a mere four paragraphs that specifically reference Mr. Crosthwaite (AC ¶¶ 348, 408, 511, 513), but none of those involve allegations of securities fraud. Rather those paragraphs merely identify Mr. Crosthwaite's position and allege in conclusory fashion that he was "responsible for" Altria's investment in JLI, that he left Altria on September 25, 2019 to become the CEO of JLI, and that he subsequently hired JLI's chief regulatory officer. These sparse allegations are not even accurate. While Plaintiffs suggest that Mr. Crosthwaite was Chief Growth Officer of a subsidiary of Altria (Altria Client Services) at the time it conducted a study on mint-flavor tobacco products (a study which another Defendant independently relied upon in a letter to the U.S. Food and Drug Administration ("FDA")), *that allegation—which remains in the corrected Complaint—is wrong*: Mr. Crosthwaite became Chief Growth Officer of Altria Group, Inc. (not Altria Client Services) more than a year after the study was conducted.[2] But even if it were not wrong, Plaintiffs fail to tie the mint study in any way to Mr. Crosthwaite, and regardless, the allegations regarding the mint study do nothing to demonstrate that Mr. Crosthwaite engaged in securities fraud.

Why Plaintiffs persist in naming Mr. Crosthwaite as a defendant despite the paucity of substantive allegations against him is a mystery. What is not a mystery, however, is that Plaintiffs have entirely failed to plead any claim of securities fraud against him—not just because they largely ignore him or misstate his role, but because they fail to plead the elements of any plausible claim against him.

---

[2] Altria, 2019 Notice of Annual Meeting of Shareholders and Proxy Statement (Form DEF 14A) 36 (Apr. 4, 2019), https://www.sec.gov/Archives/edgar/data/764180/000120677419001216/mo3453101-def14a.htm ("Form DEF 14A"). The Court may take judicial notice of Altria's Form DEF 14A, which was filed with the SEC. *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 390 n.10 (4th Cir. 2005).

Case 3:20-cv-00075-DJN   Document 125   Filed 07/08/20   Page 8 of 26 PageID# 3856

*First*, Plaintiffs have not pled that Mr. Crosthwaite made a false or misleading statement. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (holding that liability for securities fraud under Rule 10b-5(b) is limited to the person who "made" the allegedly false or misleading statement). That claim, which is set forth against Mr. Crosthwaite in Count I against "Altria Defendants," is entirely based on statements contained in Altria's SEC filings, Altria press releases accompanying those filings, and the December 20, 2018 press release announcing Altria's investment in JLI. The Complaint does not contain any specific allegation that Mr. Crosthwaite made any of these statements. Plaintiffs' Notice of Errata *removes* their sole allegation linking Mr. Crosthwaite to Altria's SEC filings: as they now admit, Mr. Crosthwaite did not sign any of the three SEC filings at issue, and their original pleading was incorrect. ECF No. 106 (explaining that the Notice of Errata "modif[ies] references in ¶¶ 475, 486, and 494 to certifications pursuant to the Sarbanes-Oxley Act of 2002 filed by Altria Group, Inc. to clarify that they were signed by Defendants Howard A. Willard III and William F. Gifford, Jr. rather than all 'Altria Individual Defendants'").

This is not just a technical modification—Plaintiffs have no backup plan for somehow bringing Mr. Crosthwaite into this case. Absent their signing allegation, Plaintiffs allege no basis for holding Mr. Crosthwaite liable for any of the alleged misstatements. *See, e.g.*, *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) (holding that the defendant was "not responsible for misleading statements in SEC filings he did not sign."). The Complaint does not attribute the press releases to Mr. Crosthwaite or allege any facts showing that Mr. Crosthwaite had authority over either the SEC filings or press releases sufficient for him to be the "maker" of the alleged misstatements. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 661-62 (S.D.N.Y. 2017) (no liability for non-signers without factual allegations showing

3

"ultimate authority" over the statements); *In re Virtus Inv. Partners, Inc. Secs. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) (dismissing claims against defendants who "did not sign the public filings at issue and [we]re not alleged to have had authority over their contents").

*Second*, Plaintiffs recite the "scheme liability" provisions of Rule 10b-5(a) or (c), yet the Complaint does not elaborate or plead with specificity any of the elements that could give rise to liability under these provisions, including the threshold element of deceptive or manipulative conduct. *See In re Edward D. Jones & Co., Secs. Litig.*, No. 2:18-cv-00714-JAM-AC, 2019 WL 2994486, at *7 (E.D. Cal. July 9, 2019) (plaintiff must allege a "'device, scheme, or artifice to defraud,' or 'act, practice, or course of business which would operate as a fraud,' in addition to the standard elements of a Section 10(b) violation: (1) scienter; (2) connection with the purchase or sale of securities; (3) reliance; (4) economic loss; and (5) loss causation"). Plaintiffs' mere boilerplate reference to scheme liability is insufficient. *Id*. (dismissing similar claim). Indeed, the Complaint does not contain *any* allegations that Mr. Crosthwaite performed any deceptive or manipulative act at all, let alone one triggering scheme liability.

*Third*, along these same lines, Plaintiffs have failed to carry their burden to adequately plead with specificity facts demonstrating that Mr. Crosthwaite possessed the requisite "strong inference" of scienter. *Knurr v. Orbital ATK Inc.*, 294 F. Supp. 3d 498, 503-04 (E.D. Va. 2018) ("'to establish scienter, a plaintiff must prove defendant acted with 'a mental state embracing intent to deceive, manipulate, or defraud'''" and "must 'state with particularity facts giving rise to a *strong inference*'" of scienter) (citing *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 884-85 (4th Cir. 2014) 15 U.S.C. § 78u-4(b)(a)(B), 2(A) (emphasis added)). This element of their claim too is readily disposed of by the absence of allegations specific to Mr. Crosthwaite. The Complaint includes a short section devoted to Scienter Allegations, but Mr. Crosthwaite again makes no

4

appearance. This alone defeats Plaintiffs' claim against him. *See Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 594-95 (E.D. Va. 2006) (group pleading is inconsistent with the particularity requirements of the PSLRA). Throughout the Complaint, Plaintiffs group Mr. Crosthwaite together with other defendants and assert boilerplate allegations against defendants based on their positions at Altria and receipt of unidentified information. Such allegations constitute impermissible group pleading and fail to establish with the requisite particularity that *Mr. Crosthwaite* acted with knowledge or recklessness in making any of the alleged misrepresentation or in performing any unspecified act.

Finally, claims under Section 20(a) against Mr. Crosthwaite also fail. This claim is derivative of the Section 10(b) claim so it cannot survive because Plaintiffs do not adequately plead a primary violation. Regardless, Plaintiffs also do not adequately plead control by Mr. Crosthwaite, which is necessary to state this claim. *See In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 129-30 (4th Cir. 2009), *rev'd on other grounds by Janus*, 564 U.S. 135. Plaintiffs cannot meet their burden with conclusory assertions that Altria Defendants had control over Altria's press releases and SEC filings that Mr. Crosthwaite never signed.

For all these reasons and the reasons set forth in the other defendants' motions to dismiss, this Court should dismiss Plaintiffs' claims against Mr. Crosthwaite with prejudice.

### STATEMENT OF FACTS

Mr. Crosthwaite has held a variety of positions across Altria, an international producer of tobacco-related products. Most recently, beginning on June 1, 2018 he served as Altria's Senior Vice President and Chief Growth Officer. AC ¶ 3; Form DEF 14A at 36. Mr. Crosthwaite's tenure

at Altria concluded on September 24, 2019, when he became the Chief Executive Officer of JLI. AC ¶ 511.  Mr. Crosthwaite continues to hold that position today.

Mr. Crosthwaite's appointment as CEO of JLI came approximately 10 months after Altria purchased, on December 20, 2018, shares of non-voting common stock of JLI, representing a 35% economic interest for $12.8 billion.  *Id.* ¶¶ 15, 385.  The investment agreement between Altria and JLI contemplated that Altria would provide JLI access to its own retail shelf space, allowing JLI's tobacco and menthol-based products to appear alongside combustible cigarettes; access to adult smokers through Altria's databases; and the option to be supported by Altria's sales organization. *Id.* ¶ 386; *see also* Altria Ex. 11 (Press Release, Altria (Dec. 20, 2018), ECF No. 117-12).[3]

Like all investments, Altria's investment in JLI was not without risks. Prior to the December 2018 investment, electronic nicotine delivery systems ("ENDS") manufacturers had been the subject of regulatory and media scrutiny concerning the use of ENDS by those under the minimum legal age of purchase.  Multiple lawsuits had also been filed earlier in 2018 against JLI regarding the use of its products by those underage.  Altria Mem. at 16-17.[4]

In September 2018, the FDA issued letters to ENDS manufacturers, including JLI and Altria, requesting that the manufacturers each respond to the FDA with plans about how they would address the use of their products by those underage.  Altria Ex. 1 (FDA Statement, Sept. 11, 2018), ECF No. 117-2; AC ¶ 393.  Altria responded to the FDA on October 25, 2018 via a letter from its then-CEO, Mr. Willard.  Altria Ex. 38 (Letter from H. Willard to FDA, (Oct. 25, 2018), ECF No. 117-39); AC ¶ 401.  The Complaint alleges that in its discussion of mint as a flavor for

---

[3] Citations to "Altria Ex." refer to exhibits attached to the declaration of Edward J. Fuhr, ECF No. 117, concurrently filed in support of the Altria Defendants' Motion to Dismiss the Complaint.

[4] Citations to "Altria Mem." are to the Memorandum of Law In Support of the Altria Defendants' Motion to Dismiss, ECF No. 118.

adult smokers, the letter relied on a study conducted in February through April 2017 by Altria Client Services.  AC ¶ 408 & n.184 (citing "Spring 2017" study); *see also* Altria Ex. 38 (Letter from H. Willard to FDA, (Oct. 25, 2018), ECF No. 117-39).

Months after the December 20, 2018 investment, in the summer of 2019, there were several well-publicized reports of hundreds of lung-related illnesses and a half-dozen deaths that were initially attributed to vaping generally (AC ¶¶ 502, 504-506), but which were later reported to be the result of vitamin E acetate in black market marijuana vaping liquids.  Altria Ex. 37 (Center for Disease Control, *Outbreak of Lung Injury Associated with the Use of E-Cigarette, or Vaping Products* (Feb. 25, 2020), ECF No. 117-38).  These illnesses prompted intensified regulatory and media scrutiny of ENDS, as well as increased litigation.  AC ¶¶ 504-05.  On October 31, 2019, and again on January 30, 2020, Altria announced that it would write down part of its investment in JLI, citing in part "'the increased number of legal cases pending against JLI and the expectation that the number of legal cases against JLI will continue to increase.'"  *Id.* ¶¶ 517, 519.  Plaintiffs filed the Consolidated Class Action Complaint on April 21, 2020.  ECF No. 74.

The Complaint contains virtually no allegations specific to Mr. Crosthwaite, let alone allegations that he engaged in securities fraud.  The Complaint does not include Mr. Crosthwaite within the definitions of "JUUL Individual Defendants" and "JLI Defendants."  AC ¶ 32.  Of course, they could not do so because Mr. Crosthwaite became the CEO of JLI only after Plaintiffs allege that JLI made its last allegedly false or misleading statement.  *Id.* ¶ 511.  Instead, the Complaint targets Mr. Crosthwaite based on his position as a former executive of Altria by defining "Altria Defendants" and "Altria Individual Defendants" to include him.  *Id.* ¶ 32. Mr. Crosthwaite was also an observer of JLI's board of directors following the investment on December 20, 2018

7

until he left Altria on September 25, 2019 to be the CEO of JLI (*id.* ¶ 30), but the Complaint contains no allegations in connection with Mr. Crosthwaite's role as an observer.

The Complaint alleges that following the investment in JLI, the "Defendants," "Altria Defendants," and/or "Altria Individual Defendants" made false and misleading statements in Altria's SEC filings, *see, e.g.*, AC ¶ 471 (quoting Altria, Annual Report (Form 10-K) 26-27 (Feb. 26, 2019) ("Altria 2018 10-K")); *id.* ¶ 483 (quoting Altria, Quarterly Report (Form 10-Q) 36 (Apr. 25, 2019)); *id.* ¶ 492 (citing Altria, Quarterly Report (Form 10-Q) (July 30, 2019)), Altria's press releases accompanying those filings, *see, e.g.*, *id.* ¶¶ 481, 489, as well as Altria's press release announcing its investment in JLI, *see, e.g.*, *id.* ¶ 454.  These statements allegedly failed to disclose certain "true risks" of Altria's investment in JLI stemming from JLI's marketing practices and the health effects associated with JLI's products.  *See, e.g.*, *id.* ¶¶ 472, 474.  According to Plaintiffs, the "Altria Defendants" or "Altria Individual Defendants" knew or recklessly disregarded that such risks would result in negative publicity and governmental pressure which would inevitably require Altria to write down the value of its investment in JLI.  *Id.*  Despite Plaintiffs' conclusory allegations that "Altria Individual Defendants possessed the power and authority to control the contents of Altria's SEC filings," *id.* ¶ 33, Plaintiffs plead no specific facts showing that Mr. Crosthwaite had—or how he would have had—any authority over either the filings or press releases.  *See, e.g.*, Altria Ex. 45 (Altria, Annual Report (Form 10-K) (Feb. 26, 2019), ECF No. 117-46).  In fact, their corrected complaint now makes clear that Mr. Crosthwaite did not sign any of the SEC filings at issue.

The majority of the few paragraphs in the Complaint that specifically reference Mr. Crosthwaite do nothing more than reference Mr. Crosthwaite's positions or compensation at Altria or JLI.  Only three paragraphs say anything more.  One paragraph alleges that Mr. Crosthwaite

8

hired a former Altria colleague as JLI's chief regulatory officer (AC ¶ 513), but makes no other allegations about this hire. One merely includes a vague allegation that Mr. Crosthwaite was tasked with "get[ing] [the JLI investment] done" (*id.* ¶ 348) but does not attribute any specific responsibilities to Mr. Crosthwaite with regard to the JLI investment or explain how a role in the investment implicates him in any of the alleged false or misleading statements or fraudulent conduct, or provides him with the scienter necessary to plead securities fraud. The Complaint also alleges that Mr. Crosthwaite was "President and Chief Growth Officer of Altria Client Services" and suggests that he held that position at the time Altria Client Services conducted a Spring 2017 study of mint-flavored tobacco products. *Id.* ¶ 408. That is incorrect. He was Chief Growth Officer of Altria, not Altria Client Services, and in any event, he only became Chief Growth Officer more than a year after the study, Form DEF 14A at 36, which perhaps explains why the Complaint does not allege Mr. Crosthwaite's involvement in or awareness of the study. AC ¶ 408. In any event, the Complaint does not attempt to connect Mr. Crosthwaite to the alleged subsequent use of this study. Rather, the Complaint merely alleges that another defendant (Altria's then-CEO Howard Willard III) relied on this study in a letter to the FDA. *See id.*

## LEGAL STANDARD

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard is satisfied only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* The Court need not accept as true conclusory allegations or legal conclusions. *See id.*

But an even stricter pleading standard—the heightened pleading standards of Rule 9(b) and

9

the PSLRA—applies to Plaintiffs' claims against Mr. Crosthwaite.  *Pub. Emps.' Ret. Ass'n. of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 310-11 (4th Cir. 2009).  Rule 9(b) requires that the Complaint "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The PSLRA requires that the Complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information and belief, . . . state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  Additionally, the Complaint, must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.* § 78u-4(b)(2)(A).

## ARGUMENT

To state a claim under Section 10(b) of the Securities Exchange Act of 1934, Plaintiffs must adequately allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017) (citation omitted).  Plaintiffs have not and cannot meet their burden for several reasons.

**I.    PLAINTIFFS HAVE FAILED TO PLEAD A FALSE OR MISLEADING MATERIAL STATEMENT MADE BY MR. CROSTHWAITE**

It is axiomatic that liability under Section 10(b) and Rule 10b-5(b) requires a person to have "made" the false or misleading statement.  *Janus*, 564 U.S. at 142.  The Supreme Court explained in *Janus* that "make" means "to state," not "to create," and "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."  *Id.* at 142, 144-45.  Allegations that a defendant was involved in "creating" an allegedly false or misleading statement by "participating in the drafting" of the

10

statement or by "prepar[ing] or "publish[ing]" the statement are insufficient.  *Id.* at 142, 144-46; *see also In re Solarcity Corp. Secs. Litig.*, 274 F. Supp. 3d 972, 1007 (N.D. Cal. 2017) (holding that defendant "in charge of assembling, reviewing, and approving [the company's] key operating metrics relating to [the company's] sales," was not the "maker" of statements about those metrics, when there was no allegation that he "actually had authority over whether those metrics were or were not included in the quarterly shareholder letters or Forms 10-Q"); *Alpha Capital Anstalt v. Schwell Wimpfheimer & Assocs. LLP*, No. 1:17-cv-1235-GHW, 2018 WL 1627266, at *10 (S.D.N.Y. Mar. 30, 2018) (holding that individual who drafted and reviewed allegedly false statements in SEC filings did not "make" the statements where he did not actually file the documents or have ultimate authority over their content).  Likewise, allegations about a defendant's position in a company alone are insufficient.  *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 426 (7th Cir. 2015).  The Complaint must plead specific facts establishing that a "defendant[] . . . possessed ultimate authority over the statements at issue."  *In re Banco Bradesco*, 277 F. Supp. 3d at 641.

Plaintiffs' allegations that Mr. Crosthwaite made a false statement fall far short of these standards.

### A.    No Statement in the Operative Complaint is Attributed to Mr. Crosthwaite

Plaintiffs' attempt to plead that a false or misleading statement was attributed to Mr. Crosthwaite utterly fails.  As Plaintiffs have admitted, the prior version of the Complaint ***erroneously*** alleged that Mr. Crosthwaite signed Altria's SEC filings—in fact, Mr. Crosthwaite did not sign a single one. ECF No. 106.  Plaintiffs now allege that only Defendants Willard and Gifford did.  AC ¶¶ 475, 486, 494.  The Complaint likewise attributes each of the allegedly false or misleading press releases to Altria or another Altria Defendant, not Mr. Crosthwaite.  *See, e.g.*,

11

*id.* ¶¶ 454, 456, 480, 489.  Because Mr. Crosthwaite did not sign the SEC filings, and Plaintiffs do not attribute any press release to him, "he did not 'make' the statements they contained," and he cannot be liable for them.  *In re Smith Barney*, 884 F. Supp. 2d at 165; *see also Plaisance v. Schiller*, No. H-17-3741, 2019 WL 1205628, at *20 (S.D. Tex. Mar. 14, 2019) ("Plaintiffs do not dispute that Louie did not sign the Form 8-K filed on December 15, 2014, and therefore cannot be held liable as a maker of the statements contained therein."), appeal dismissed, No. 19-20247, 2019 WL 5152770 (5th Cir. July 8, 2019).

**B.** **Plaintiffs Fail to Allege Specific Facts Showing that Mr. Crosthwaite Had the Requisite Control to Have "Made" Any Alleged Misstatement**

Plaintiffs have also failed to allege any specific facts showing that Mr. Crosthwaite exercised sufficient control over any Altria press releases or SEC filings to have possessed "ultimate authority" over them.  *Janus*, 564 U.S. at 142; *see also Glickenhaus*, 787 F.3d at 427; *In re Banco Bradesco*, 277 F. Supp. 3d at 661-62; *Plaisance*, 2019 WL 1205628, at *16.  Indeed, the Complaint's allegations regarding Mr. Crosthwaite's purported control over the alleged misstatements boil down to assertions that the "Altria Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents" and that "[t]he Altria Individual Defendants possessed the power and authority to control the contents of Altria's SEC filings, press releases, and other market communications."  AC ¶¶ 33, 565.  Such "generic and conclusory allegation[s]" are insufficient to allege a defendant's ultimate authority over a statement.  *In re Cannavest Corp. Secs. Litig.*, 307 F. Supp. 3d 222, 242 (S.D.N.Y. 2018); *see also Oaktree Prinicipal Fund V, LP v. Warburg Pincus LLC*, No. CV 15-8574 PSG (MRWx), 2016 WL 6782768, at *10 (C.D. Cal. Aug. 9, 2016).

Moreover, these allegations—which lump Mr. Crosthwaite with "Altria Individual Defendants"—rely on a group-pleading doctrine that courts within this Circuit have rejected as

"inconsistent with the particularity and specificity required by the PSLRA and Rule 9(b)," and thus fail for this reason too. *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 370, 383-84 (D. Md. 2004) (following "the sound reasoning of other district courts in this Circuit that have addressed the issue and declin[ing] to apply the group published information doctrine"); *see also Iron Workers*, 432 F. Supp. 2d at 594-95 (same).

## II.   PLAINTIFFS HAVE NOT PLEAD A CLAIM AGAINST MR. CROSTHWAITE BASED ON DECEPTIVE OR MANIPULATIVE CONDUCT

In Count I of their Complaint, Plaintiffs also recite Rule 10b-5(a) and (c). AC ¶ 562. Rule 10b-5(a) and (c) prohibit the use of "any device, scheme, or artifice to defraud" or the participation "in any act, practice, or course of business' that would perpetrate fraud on investors." 17 C.F.R. § 240.10(b)-5(a), (c). "[T]o state a claim under Rules 10b–5(a) or (c), a plaintiff must allege a 'device, scheme, or artifice to defraud,' or an 'act, practice, or course of business which would operate as a fraud,' in addition to the standard elements of a Section 10(b) violation." *In re Edward D. Jones*, 2019 WL 2994486, at \*7 (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008)); *see also Siegmund v. Xuelian Bian*, No. 16-62506-CIV-MORENO, 2018 WL 1611197, at \*5 (S.D. Fla. Apr. 2, 2018) (same). Like its counterpart under Rule 10b-5(b), claims under Rule 10b–5(a) and (c) are subject to Rule 9(b)'s and the PSLRA's heightened-pleading standards. *See Burt v. Maasberg*, No. ELH-12-0464, 2014 WL 1291834, at \*25 (D. Md. Mar. 28, 2014).

The Complaint stumbles at the threshold because it does not allege either deceptive or manipulative conduct attributable to Mr. Crosthwaite. It contains a section purporting to identify the "Materially False and Misleading Statements Made During the Class Period," AC § XIII, but there is no similar section identifying supposed "manipulative" or "deceptive" conduct. Instead, Plaintiffs devote hundreds of paragraphs to allegations about JLI's alleged marketing practices that

13

pre-date the class period.   While Plaintiffs sprinkle throughout the Complaint terms such as "scheme," "concealed," and "conspired," the Complaint contains no particularized allegations that *any* Defendant—let alone Mr. Crosthwaite—committed a manipulative or deceptive act.   Mr. Crosthwaite is left guessing as to the precise "scheme" that may or may not undergird Plaintiffs' recitation of 10b-5(a) and (c) in Count I against him.   This is insufficient under basic pleading standards, let alone the heightened standards applicable to a securities fraud claim.

Instead of specific factual allegations about manipulative or deceptive conduct by Mr. Crosthwaite, at most, Plaintiffs generally allege that Defendants engaged in a scheme to keep mint-flavored products on the market, including when Mr. Willard cited one particular study in an October 2018 letter to the FDA.   AC ¶ 408.   Setting aside that the alleged scheme itself does not constitute securities fraud, Altria Mem. at 26-28, Plaintiffs do not allege anything manipulative or deceptive about this study.   Instead, they rely on ***erroneous*** allegations in their effort to loop in Mr. Crosthwaite.   Plaintiffs allege that Mr. Crosthwaite was the Chief Growth Officer of Altria Client Services at the time Altria Client Services conducted the study in "Spring 2017."   *Id.*   Not so.   Mr. Crosthwaite was the Chief Growth Officer of Altria, not Altria Client Services, and he became Chief Growth Officer only effective June 1, ***2018***.   Form DEF 14A at 36.   Not surprisingly, therefore, Plaintiffs do not plead that he had any involvement in or even was aware of the study.   Nor do Plaintiffs allege that Mr. Crosthwaite provided the study to Mr. Willard or even that he worked with Mr. Willard to disseminate the study to FDA.

Nor can Plaintiffs maintain this suit against Mr. Crosthwaite by relying on general allegations concerning a misleading marketing campaign for Juul products or allegations that unspecified "Altria Defendants" "greatly expanded" that campaign by agreeing to provide JLI access to Altria's retail and distribution channels.   AC ¶ 164.   Plaintiffs allege that Mr.

14

"Crosthwaite was responsible for Altria's investment in JUUL" (*id.* ¶ 348), but this is far too attenuated to show that Mr. Crosthwaite perpetuated any fraudulent securities scheme relating to any marketing campaign. Again, there is no alleged connection between Mr. Crosthwaite and any allegedly deceptive or manipulative conduct. *Id.* ¶ 164.

In short, Plaintiffs' failure to allege specific factual allegations about any conduct of Mr. Crosthwaite—much less allegations that he engaged in any manipulative or deceptive conduct "in connection with a purchase or sale of [a] security" by Plaintiffs, *see* 17 C.F.R. § 240.10b-5, or that Plaintiffs relied on any such conduct by Mr. Crosthwaite—defeats any claim against him under Rule 10b-5(a) or (c).

## III.   PLAINTIFFS FAIL TO PLEAD PARTICULARIZED FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER AGAINST MR. CROSTHWAITE

The Court should also dismiss the Complaint against Mr. Crosthwaite for failure to plead scienter. To plead scienter in a 10b-5 action under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). This means pleading a "mental state embracing intent to deceive, manipulate, or defraud," and requires a knowing or severely reckless state of mind. *Yates*, 744 F.3d at 884.

"To survive a motion to dismiss in a § 10(b) complaint, the inference of scienter must be more than merely reasonable or permissible—it must be cogent and compelling, thus strong in light of other explanations." *Maguire Fin.*, 876 F.3d at 546-47 (citations omitted). This is an "[e]xacting' pleading standard," *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007), and Plaintiffs are required to meet this standard for *each defendant* "with respect to each act or omission" alleged in the complaint. 15 U.S.C. § 78u-4(b)(2)(A); *see also Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 190 (4th Cir. 2009) ("When plaintiffs also

15

name individual defendants, they must, of course, 'allege facts that support a 'strong inference' that each [individual] defendant acted with at least recklessness in making the false statement.'") (quoting *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 184-85 (4th Cir. 2007)); *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, No. 18-cv-10320 (AJN), 2020 WL 1529371, at *24 (S.D.N.Y. Mar. 30, 2020) ("[P]laintiffs must plead circumstances providing a factual basis for scienter for each defendant." (citation omitted)). Because a complaint must plead facts with particularity, any "'[o]missions and ambiguities [in the pleadings] count against' an inference of scienter." *Yates*, 744 F.3d at 885-86.

The Complaint comes nowhere close to meeting the high standard for pleading scienter with regard to Mr. Crosthwaite. In contrast to the usual scienter allegations in a fraud case, the Complaint does not allege any unusual or suspicious stock sales by Mr. Crosthwaite. Nor do any confidential witness allegations suggest that Mr. Crosthwaite was privy to any information that revealed the falsity of any statements. Rather, Plaintiffs allege that scienter can be inferred against the "Altria Individual Defendants," as a group, because (i) their position as "senior officers" gave them "the motive and opportunity" to commit fraud, AC ¶ 526; (ii) Altria Defendants' "position[s] in a major tobacco company and working within the tobacco industry[,]" give rise to an "infer[ence] that they recognized the improper practices being utilized by JLI," *id.* ¶ 530(1); and (iii) "Altria Defendants' recei[ved] information" about JLI's practices during due diligence, and confidential witnesses stated that those market practices were "well known within Altria," *id.* ¶ 530(2)-(3). Tellingly, and yet again, missing from the Complaint is a single allegation specific to Mr. Crosthwaite. This is precisely the type of group pleading that runs afoul of the PSLRA's requirement that a plaintiff "state with particularity facts giving rise to a strong inference that *the*

16

*defendant* acted with the required state of mind.'" *BearingPoint*, 576 F.3d at 181-82 (emphasis added) (quoting 15 U.S.C. § 78u-4(b)(2)).

Even considering the group pleading allegations, none give rise to any inference of scienter against Mr. Crosthwaite, individually or collectively, for three main reasons.

First, courts routinely reject allegations—such as those in the Complaint—that a defendant's position as a "senior officer" is sufficient to allege "motive and opportunity" to commit fraud." AC ¶ 526. If a corporate defendant's "desire to retain his position with its attendant salary, or realize gains on company stock" were enough to give rise to an inference of scienter, "virtually every" such officer would meet this standard. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 623 (4th Cir. 1999). Instead, a plaintiff must allege facts showing "concrete benefits that [the defendant would] realize[] by one or more of the false statements and wrongful non-disclosures alleged," *Ottmann v. Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 352 (4th Cir. 2003), such as the "sale of 'personally-held stock' or 'insider trading' by the defendant." *Phillips*, 190 F.3d at 622. Allegations based on a perceived benefit to Altria, which are common to all corporate officers, "add little to an inference of fraud," *Cozzarelli v. Inspire Pharmaceuticals Inc.*, and beyond such generalizations, Plaintiffs utterly fail to tie any concrete benefits to Mr. Crosthwaite. 549 F.3d 618, 627 (4th Cir. 2008).

Second, the Fourth Circuit, has likewise rejected allegations—such as those in the Complaint—that a defendant must have acted intentionally or recklessly merely because of a senior position at the company. *See Yates*, 744 F.3d at 890; *see also Iron Workers*, 432 F. Supp. 2d at 592 (recognizing that courts "on numerous occasions" have rejected as inadequate "[a]llegations that a defendant must have known that a statement was false and misleading because of his or her position in the company"). Rather, a plaintiff must include particular details that a

17

defendant through his position at the company had access to the disputed information. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009). As discussed *infra*, the Complaint contains no such "detailed allegations" establishing Mr. Crosthwaite's "*actual exposure* to the . . . problem*," and thus fails to satisfy the PSLRA's particularity requirements. *Yates*, 744 F.3d at 890 (emphasis added); *see also Knurr v. Orbital ATK Inc.*, 272 F. Supp. 3d 784, 802 (E.D. Va. 2017) (holding that arguments relating to "the nature of the defendants' executive positions . . ., without more detailed allegations, simply fall short of supporting a strong inference of scienter").

Finally, Plaintiffs' vague allegations that Altria Defendants received "information reflecting the true facts" through the "due diligence" process and "first-hand accounts of several former employees," AC ¶ 530(2)-(3), fare no better. The Complaint contains no allegations about specific facts that *Mr. Crosthwaite* learned, when he supposedly learned them, and how. These deficiencies are fatal. *See, e.g.*, *Smith v. Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 715 (E.D. Va. 2003) ("Plaintiffs' Complaint fails to 'plead specific facts concerning . . . when each defendant . . . learned that a statement was false, how that defendant learned that the statement was false, and the particular document or other source of information from which the defendant came to know that the statement was false.'" (quoting *In re First Union Corp. Secs. Litig.*, 128 F. Supp. 2d 871, 876 (W.D.N.C. 2001)). In short, Count I fails against Mr. Crosthwaite on scienter alone.

## IV.    PLAINTIFFS FAIL TO STATE A "CONTROL PERSON" CLAIM AGAINST MR. CROSTHWAITE

Plaintiffs' attempt to allege Section 20(a) "control person" liability against Mr. Crosthwaite likewise fails. To plead a prima facie case of "control person liability" under Section 20(a), a plaintiff must allege: (1) the existence of a primary securities violation committed by the "controlled" person or actor; and (2) such defendant's "control" over the primary violator. *In re*

18

*Mut. Funds Inv. Litig.*, 566 F.3d at 129-30 (citing *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)).

For the reasons explained, Plaintiffs have failed to plead a primary violation, and therefore they cannot state a claim under Section 20(a). *Yates*, 744 F.3d at 894 n.8 ("Section 20(a) liability is derivative of § 10(b). Because the complaint is legally insufficient with respect to the § 10(b) claim, the § 20(a) claim must also fail.").

But even if Plaintiffs had been able to plead a primary violation, they have failed to allege that Mr. Crosthwaite had "control" over Altria or the Altria Individual Defendants[5] during the alleged class period. Plaintiffs allege no facts showing that Mr. Crosthwaite controlled Altria. Indeed, despite Plaintiffs' boilerplate allegation that the Altria Defendants "possessed the power and authority to control the contents of Altria's SEC filings, press releases, and other market communications[,]" AC ¶ 33, Plaintiffs fail to allege any facts demonstrating that he had control over any of Altria's SEC filings or other market-related communications.

## CONCLUSION

For the aforementioned reasons, Mr. Crosthwaite respectfully requests that the Court dismiss Plaintiffs' Section 10(b) and 20(a) claims against him.

Dated: July 8, 2020                    By: /s/ *J. Christian Word*

Andrew Clubok (*pro hac vice*)
J. Christian Word (VSB #46008)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)

---

[5] Along with being implausible, any argument that Mr. Crosthwaite could be subject to control person liability for any JLI statements is foreclosed by Plaintiffs' repeated allegations that the Altria Defendants had no control over JLI. *E.g.*, AC ¶ 464 ("JUUL also stated that a condition of the agreement was that Altria must 'allow JUUL to remain in control. As part of this investment JUUL remains fully independent and retains full operating control.'").

LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
christian.word@lw.com
andrew.clubok@lw.com
susan.engel@lw.com
matthew.peters@lw.com

*Counsel for Defendant K.C. Crosthwaite*

## CERTIFICATE OF SERVICE

I certify that this 8th day of July 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ *J. Christian Word*
J. Christian Word

21