**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

GABBY KLEIN, DONALD SHERBONDY, SARAH
SHERBONDY AND CONSTRUCTION LABORERS
PENSION TRUST OF GREATER ST. LOUIS,
Individually and on Behalf of All Others
Similarly Situated,

                              *Plaintiffs*,

            v.

ALTRIA GROUP, INC., HOWARD A. WILLARD III,
WILLIAM F. GIFFORD, JR., JUUL LABS, INC.,
ADAM BOWEN, JAMES MONSEES, KEVIN
BURNS, and K.C. CROSTHWAITE,

                            *Defendants.*

No. 3:20-cv-00075-DJN

## THE ALTRIA DEFENDANTS' REPLY BRIEF
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
212-403-1000 (telephone)
212-403-2000 (facsimile)

HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, VA  23219
804-788-8200 (telephone)
804-788-8218 (facsimile)

*Attorneys for Altria Group, Inc.,*
*Howard A. Willard III, and*
*William F. Gifford, Jr.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT .......................................................................................................................3

I.  PLAINTIFFS FAIL TO ALLEGE AN ACTIONABLE
    MISREPRESENTATION OR OMISSION........................................................................3

    A.  Plaintiffs fail to allege that Altria deceived stockholders.............................3

    B.  Altria's statements were not materially false or misleading. ......................6

    C.  Plaintiffs' scheme claims are preposterous. ...............................................10

II. PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS
    GIVING RISE TO A STRONG INFERENCE OF SCIENTER ......................................11

    A.  Plaintiffs offer no comprehensible theory of motive...................................11

    B.  Plaintiffs' remaining scienter allegations are meritless..............................13

    C.  Plaintiffs fail to plead corporate scienter by Altria. ...................................16

    D.  The inference of nonfraudulent intent is far more compelling....................17

III. PLAINTIFFS ALL BUT IGNORE THEIR BURDEN
     TO PLEAD LOSS CAUSATION ...............................................................................18

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**CASES**          **Page(s)**

*City of Royal Oak Ret. Sys.* v. *Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ................................................................5

*Cozzarelli* v. *Inspire Pharm. Inc.*,
549 F.3d 618 (4th Cir. 2008) ................................................................11, 16, 17

*Dura Pharm., Inc.* v. *Broudo*,
544 U.S. 336 (2005) ................................................................18

*Eng* v. *Edison Int'l*,
2017 WL 1857243 (S.D. Cal. May 5, 2017) ................................................................20

*Hillson Partners* v. *Adage, Inc.*,
42 F.3d 204 (4th Cir. 1994) ................................................................6

*In re Acterna Corp.*,
378 F. Supp. 2d 561 (D. Md. 2005) ................................................................19 n.9

*In re Apple Computer*,
886 F.2d 1109 (9th Cir. 1989) ................................................................6 n.2

*In re BearingPoint, Inc.*,
525 F. Supp. 2d 759 (E.D. Va. 2007) ................................................................7

*In re Cable & Wireless, PLC*,
321 F. Supp. 2d 749 (E.D. Va. 2004) ................................................................3

*In re Computer Scis. Corp.*,
890 F. Supp. 2d 650 (E.D. Va. 2012) ................................................................16

*In re e.spire Commc'ns., Inc.*,
127 F. Supp. 2d 734 (D. Md. 2001) ................................................................13

*In re Gentiva*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013) ................................................................16

*In re Glob. Brokerage, Inc.*,
2019 WL 1428395 (S.D.N.Y. Mar. 28, 2019) ................................................................9

*In re Maximus, Inc.*,
2018 WL 4076359 (E.D. Va. Aug. 27, 2018) ................................................................18

*In re Merrill Lynch*,
704 F. Supp. 2d 378 (S.D.N.Y. 2010) ................................................................6 n.2

*In re Mun. Mortg. & Equity, LLC*,
876 F. Supp. 2d 616 (D. Md. 2012) ................................................................14

*In re PEC Sol.*,
   418 F.3d 379 (4th Cir. 2005) .....................................................................................12

*In re Under Armour*,
   409 F. Supp. 3d 446 (D. Md. 2019) ...........................................................................17

*In re Worlds of Wonder*,
   35 F.3d 1407 (9th Cir. 1994) .....................................................................................18

*In re Zillow Grp., Inc.*,
   2019 WL 1755293 (W.D. Wash. Apr. 19, 2019)....................................................14 n.8

*Iron Workers Local 16 Pension Fund* v. *Hilb Rogal & Hobbs Co.*,
   432 F. Supp. 2d 571 (E.D. Va. 2006) ................................................5 n.1, 12, 13, 15

*Kanefsky* v. *Honeywell Int'l Inc.*,
   2020 WL 2520669 (D.N.J. May 18, 2020) ................................................................10

*Katyle* v. *Penn Nat'l Gaming, Inc.*,
   637 F.3d 462 (4th Cir. 2011) ................................................... 3, 18, 19, 19 & n.9

*Longman* v. *Food Lion, Inc.*,
   197 F.3d 675 (4th Cir. 1999) ........................................................... 2, 8 & n.4

*Loos* v. *Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) .....................................................................................19

*Maguire Fin.* v. *PowerSecure Int'l*,
   876 F.3d 541 (4th Cir. 2017) ..........................................................3, 13, 15, 18

*Meyer* v. *Greene*,
   710 F.3d 1189 (11th Cir. 2013) .................................................................................19

*Murdeshwar* v. *Search Media Holdings Ltd.*,
   2011 WL 7704347 (S.D. Fl. Aug. 8, 2011) ...............................................................14

*Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*,
   594 F. Supp. 2d 945 (N.D. Ill. 2009) ....................................................................14 n.8

*Ottmann* v. *Hanger Orthopedic Grp., Inc.*,
   353 F.3d 338 (4th Cir. 2003) .....................................................................................12

*Patel* v. *Seattle Genetics, Inc.*,
   2018 WL 2359137 (W.D. Wash. May 24, 2018)....................................................12 n.7

*Phillips* v. *LCI Int'l, Inc.*,
   190 F.3d 609 (4th Cir. 1999) .....................................................................................12

*Raab* v. *Gen. Physics Corp.*,
   4 F.3d 286 (4th Cir. 1993) .............................................................................2, 6, 18

*Roofers Local No. 149 Pension Fund* v. *DreamWorks Animation SKG, Inc.*,
677 F. App'x 376 (9th Cir. 2017) ......................................................................20

*Santa Fe Indus., Inc.* v. *Green*,
430 U.S. 462 (1977).................................................................................1, 3

*Singer* v. *Reali*,
883 F.3d 425 (4th Cir. 2018) ...........................................................................8 n.4

*Smith* v. *Circuit City Stores, Inc.*,
286 F. Supp. 2d 707 (E.D. Va. 2003) ........................................ 5-6 n.1, 13

*Svezzese* v. *Duratek, Inc.*,
2002 WL 1012967 (D. Md. Apr. 30, 2002) ...........................................................11

*Teachers' Ret. Sys. of LA* v. *Hunter*,
477 F.3d 162 (4th Cir. 2007) ..........................................................................14

*Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital, Inc.*,
531 F.3d 190 (2d Cir. 2008).......................................................................16, 17

*Turka* v. *S.C. Pub. Serv. Auth.*,
2020 WL 901965 (D.S.C. Feb. 25, 2020) .........................................................14 n.8

*U.S.* v. *Wainwright*,
480 F. App'x 238 (4th Cir. 2012) ...................................................................20 n.10

*White* v. *H&R Block, Inc.*,
2004 WL 1698628 (S.D.N.Y. July 28, 2004) ..........................................................8

*Yates* v. *Mun. Mortg. & Eq.*,
744 F.3d 874 (4th Cir. 2014) ..........................................................................16

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ...........................................................................14, 18, 19

Fed. R. Civ. P. 12(b)(6).........................................................................................14

Plaintiffs' opposition fails to address the question at the heart of this case: why would Altria invest $12.8 billion for a 35% stake in JUUL if it believed the "true value" of that stake was far less? Plaintiffs ignore this question because no explanation exists for such economically irrational conduct. Instead, the obvious explanation for Altria's investment in JUUL is the simple one: it believed it was paying a fair price for a stake in a rapidly growing company that represented the future of its industry. Plaintiffs may now claim, with the benefit of hindsight, that Altria paid too much for its stake in JUUL. But that claim amounts, at most, to an allegation of mere "corporate mismanagement," which the Supreme Court has long held is not actionable under Section 10(b). *Santa Fe Indus., Inc.* v. *Green*, 430 U.S. 462, 477 (1977).

Attempting to transform an investment miss into "fraud," plaintiffs argue that Altria misled investors about the litigation and regulatory risks facing JUUL. But plaintiffs fail to identify a *single specific fact* about JUUL that was known to Altria but not the market. Months before Altria invested, it was widely reported that youth vaping was rising, that the FDA, Congress, and the states were investigating JUUL, and that multiple class actions had already been filed accusing JUUL of targeting underage users. Accordingly, when Altria announced the JUUL investment, it expressly warned that the anticipated benefits of the deal "may not materialize" due to "litigation and regulatory risks." And Altria's CEO, Howard Willard, told investors directly that youth vaping was a "big problem" that "put the whole category at risk."

Hoping to blunt these disclosures, plaintiffs argue that the market still hadn't absorbed "accusations that JUUL was intending underage use of its products." Plaintiffs are wrong. Months before Altria's investment, major media outlets, including the *New York Times*, *Washington Post*, and *Forbes*, ran high profile stories reporting allegations of JUUL targeting

underage users.  Plaintiffs chose to acquire Altria stock in the face of this public information.  They cannot now turn around, simply because the JUUL investment has not worked out as Altria had hoped, and claim that they were deceived.  "The market has risks; the securities laws do not serve as investment insurance."  *Raab* v. *Gen. Physics Corp.*, 4 F.3d 286, 291 (4th Cir. 1993).

In the face of these disclosures, plaintiffs fail to identify any actionable misrepresentation or omission of material fact by Altria.  Although their complaint was filled with allegations about the alleged health effects of vaping, plaintiffs abandon these allegations in their opposition brief.  Instead, plaintiffs' core remaining argument is that Altria misled investors about JUUL's alleged intent to market to youth.  But allegations about JUUL's marketing practices were disputed before the class period and remain disputed to this day.  And under Fourth Circuit precedent, JUUL's denial of unproven allegations of misconduct does not state a claim of securities fraud under Section 10(b).  *See Longman* v. *Food Lion, Inc.*, 197 F.3d 675, 684 (4th Cir. 1999).

Plaintiffs also fail to clear the even higher hurdle of pleading a "strong inference" of scienter.  Plaintiffs offer no motive for Altria to knowingly overpay for a stake in JUUL and lie about it.  To the contrary, the pleaded facts show that when JUUL struggled, the individual Altria defendants, who were personally invested in Altria stock, *lost money*.  In their opposition, plaintiffs advance the nonsensical theory that Willard was "desperate" to invest in JUUL so that investors would "applaud" his decision.  But if Willard knew JUUL's value was about to plunge, why would he think that stockholders would "applaud" his decision to invest?

Nor do plaintiffs identify any other facts that support an inference of deliberate fraud.  Instead, plaintiffs cobble together a series of implausible inferences unsupported by any pleaded facts, let alone the particularized showing required by the PSLRA.  Plaintiffs ask the Court to infer that JUUL engaged in illegal marketing practices, that JUUL gave non-public information

2

about those practices to Altria, that this information was communicated to Altria executives, and that those executives intended to deceive investors about what they learned. As the Fourth Circuit has squarely held, stacking "inference upon inference" in precisely this manner "violates the [PSLRA's] mandate that [a] strong inference of scienter be supported by facts, not other inferences." *Maguire Fin. L.P.* v. *PowerSecure Int'l*, 876 F.3d 541, 548 (4th Cir. 2017).

Finally, although the Fourth Circuit applies the "loss causation" element of a securities fraud claim more stringently than any circuit in the nation, plaintiffs have next to nothing to say about it, devoting less than two pages of their brief to this element of their claim. They try to glide past this issue because they can't hope to plead "loss causation" with the "specificity" mandated by Fourth Circuit law. Their opposition focuses their entire case on JUUL's alleged intent to market to youth. But none of the disclosures cited in their brief purport to reveal "new facts" about this issue, much less suggest that any of Altria's prior statements about JUUL were "fraud." *Katyle* v. *Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 473 (4th Cir. 2011).

## ARGUMENT

### POINT I

**PLAINTIFFS FAIL TO ALLEGE
AN ACTIONABLE MISREPRESENTATION OR OMISSION**

**A. Plaintiffs fail to allege that Altria deceived stockholders.**

The securities laws are intended to promote a philosophy of "full and fair disclosure." *Santa Fe*, 430 U.S. at 478. They may not be used by investors "to play 'Monday morning quarterback' on the legitimate business decisions, however bad, of company officers and executives." *In re Cable & Wireless, PLC*, 321 F. Supp. 2d 749, 770 (E.D. Va. 2004). Rather, to state a claim under Section 10(b), plaintiffs must plead that investors were *deceived*—that is, they must show that Altria *lied to the market* about JUUL. *Santa Fe*, 430 U.S. at 479.

3

Hoping to transform a disappointing investment into "fraud," plaintiffs argue that Altria must have known but failed to disclose that "risks" relating to JUUL's products and practices made the "true value" of Altria's stake in JUUL less than the price it paid when the investment was made. Opp. 18, ¶ 455. But plaintiffs plead no facts to support that claim. In 77 pages of briefing, plaintiffs fail to identify a *single fact* about JUUL that was known to Altria but not the market. *See* Altria Br. 3, 16. Instead, they merely repeat the conclusory assertion that Altria knew but failed to disclose "the true nature of JUUL's ongoing youth marketing practices, and the risks associated with Altria's JUUL investment as a result." Opp. 14; *id.* 18, 20, 21.

But far from deceiving investors, the pleaded facts show that Altria repeatedly warned of precisely the risks that plaintiffs now say were concealed. When the JUUL investment was first announced, Willard candidly cautioned that youth vaping was a "big problem" that should not be "discount[ed]" and "put the whole category at risk." Ex. 12 at 8. Over the ensuing months, he warned over and over that youth vaping was an "epidemic," could "impact the short-term growth of the e-vapor category," was a "concern" for the FDA, "threatened" the opportunity for harm reduction, and put the "viability of these products at risk." Ex. 13 at 5; Ex. 14 at 5; Ex. 17 at 6. Altria also disclosed that multiple class actions had been filed relating to JUUL's products and practices, and it referred investors to those actions in its SEC filings. *See* Ex. 29, Ex. 99.1 at 2.

Altria's disclosures came atop a mountain of publicly available information about the risks facing JUUL. Before the class period, it was widely reported that: (i) eleven U.S. senators had sent JUUL a letter expressing concerns about youth usage of its products; (ii) seven lawsuits had been filed asserting that JUUL intentionally targeted underage users; (iii) two attorneys general had announced investigations of JUUL's marketing practices; (iv) the FDA had sent JUUL a public demand for an action plan to stem the "epidemic" of youth usage, and; (v) the

4

FDA had raided JUUL's offices and seized marketing-related materials.  *See* Altria Br. 17.

In their opposition, plaintiffs argue that the market still wasn't aware of "accusations that JUUL was intending underage use of its products."  Opp. 25-26.  But that is not true.  Eight months before Altria's investment, a class action was filed accusing JUUL of "target[ing] children."  Ex. 4 ¶ 35.  And major newspapers, including the *New York Times*, *Washington Post*, and *Forbes*, ran substantial stories publicizing the *exact* accusations that plaintiffs now claim were concealed.  *See* JUUL Br. Ex. 8 (*Washington Post*:  lawsuits allege that JUUL "targeted youth"); JUUL Br. Ex. 9 (*New York Times*:  JUUL "says it never sought teenage users, but the F.D.A. is investigating whether Juul intentionally marketed its devices to youth"); JUUL Br. Ex. 15 (*Forbes*:  lawsuits "alleg[e] that [JUUL] deceptively … targeted underage" users).

As a different tack, plaintiffs ask the Court to just ignore these disclosures, arguing that defendants have raised a "truth on the market" defense that should be resolved at some later stage.  *See* Opp. 25-27.  But that is plainly wrong.  The truth on the market doctrine permits a defendant to "cure" a misrepresentation or omission where contrary information is available to the market.  Here, the media reports about JUUL did not *correct* any of Altria's statements about the risks of the investment—they *reinforced* the repeated warnings that Altria itself gave to stockholders.  *See City of Royal Oak Ret. Sys.* v. *Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1065-66, 1066 n.6 (N.D. Cal. 2012) ("truth-on-the-market" is "inapposite" where defendants say that they "disclosed all required information, not that they failed to make required disclosures but should be excused because other sources have already made the same information available").[1]

---

[1]     Applying this principle, courts in this circuit regularly consider publicly available information in dismissing Section 10(b) claims.  *See, e.g.*, *Iron Workers Local 16 Pension Fund* v. *Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 582 (E.D. Va. 2006) ("Plaintiff fails to plead an actionable omission … because the information was available … through analyst reports.");

5

Regardless of how plaintiffs characterize these disclosures, they mandate dismissal. The Fourth Circuit has repeatedly affirmed dismissal of Section 10(b) claims where, as here, relevant information was widely disseminated to the market. *E.g.*, *Hillson Partners* v. *Adage, Inc.*, 42 F.3d 204, 212 (4th Cir. 1994) ("The securities laws require disclosure of information *that is not otherwise* in the public domain."). As Judge Wilkinson explained in *Raab*, when plaintiffs bring claims on behalf of a class, the "fraud on the market" presumption "cuts both ways" and requires a court to consider *all* information made "credibly available to the market." 4 F.3d at 289 (affirming dismissal of fraud claim). Considering all of the relevant information made credibly available to investors in this case, there is no conceivable basis for plaintiffs' claim of fraud.[2]

**B.      Altria's statements were not materially false or misleading.**

Because plaintiffs fail to plead that Altria deceived investors, they fail to show that any of its statements were false or misleading. Notably, while broad swaths of the complaint are devoted to the alleged adverse health effects of e-vapor products, plaintiffs silently abandon these allegations in their brief in light of the CDC's conclusion that the 2019 outbreak of vaping illnesses was caused by factors unrelated to JUUL. *See* Altria Br. 13. As a result, the crux of plaintiffs' claim is now only that Altria "failed to apprise investors" of the "known risks" relating to JUUL's alleged "illegal marketing to youth." Opp. 15. No pleaded facts support that claim.

---

*Smith* v. *Circuit City Stores, Inc.*, 286 F. Supp. 2d 707, 721 (E.D. Va. 2003) (dismissing Section 10(b) claim where plaintiffs had access to "substantial information" in the public domain).

[2]      Plaintiffs rely on the Ninth Circuit's decision in *In re Apple Computer*, 886 F.2d 1109 (9th Cir. 1989). But the case refutes their arguments. In *Apple*, the court found that, as a result of heavy media coverage of the risks relating to Apple's products, "[t]he market could not have been made more aware" of the risks and that judgment for defendants was required as a matter of law. *Id.* at 1116. So too here. The legal and regulatory issues facing JUUL were widely covered by national media, such that the market "could not have been made more aware" of these risks. *See In re Merrill Lynch*, 704 F. Supp. 2d 378, 395, 397 (S.D.N.Y. 2010) (citing *Apple* and dismissing complaint where supposedly omitted information was publicly available).

***1. JUUL's intent.*** In a press release announcing the deal, Altria quoted a statement by JUUL recognizing the problem posed by underage usage of its products. As JUUL explained, its "intent was never to have youth use [its] products. *But intent is not enough. The numbers are what matter, and the numbers tell us underage use of e-cigarette products is a problem*." Ex. 11 (emphasis added). Plaintiffs try to spin this frank admission as fraud—arguing that JUUL's intent *was* to have youth use its products. *See* Opp. 16. This gambit fails on multiple grounds.

To begin, plaintiffs plead no *facts* about JUUL's intent. Instead, they ask this Court to infer that JUUL intentionally targeted underage users based solely on disputed allegations, copied word for word from other lawsuits. These allegations are plainly insufficient to support a claim of securities fraud under Section 10(b). *E.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 525 F. Supp. 2d 759, 777 (E.D. Va. 2007), *aff'd in part, rev'd in part on other grounds*, 576 F.3d 172 (4th Cir. 2009) (unadjudicated allegations "are, as a matter of law, immaterial").[3]

Even accepting plaintiffs' borrowed pleading, it fails to show what plaintiffs claim. Far from establishing that JUUL intentionally targeted underage users, the pleaded facts show that JUUL actively tried to *combat* youth usage. As plaintiffs allege, as soon as it became clear that its products were being used by youth, JUUL took steps to *stop* this problem, including *abandoning* its "Vaporized" campaign and replacing it with a new campaign featuring "more muted and reserved" advertising. ¶ 181. As youth usage persisted, JUUL took increasingly stringent measures to combat this issue, including deleting its social media presence, enhancing age controls, and halting sales of flavored products to retail stores. ¶¶ 250, 309, 397.

---

[3] Plaintiffs offer no excuse for cutting and pasting a consumer products complaint to bring a securities fraud suit. *See* Br. 14. They simply encourage this Court to accept their borrowed allegations because they have supposedly been "independently verified." Opp. 17 n.2. Setting aside this false premise, plaintiffs offer no explanation as to how the complaint has been "verified." Indeed, most of the complaint is copied *verbatim* from other suits.

Ignoring these facts, plaintiffs ask this Court to nonetheless infer that JUUL was lying in telling investors that it didn't intentionally target youth. But allegations about JUUL's marketing practices were contested before the class period and remain contested today. And as the Fourth Circuit has held, JUUL's denials of publicly-known allegations of misconduct do not support a tack-on claim for securities fraud. *See Food Lion*, 197 F.3d at 684 (denials of charges of misconduct are "not material" where "the nature of the … claims … were in fact well known to the market"); *see also White* v. *H&R Block, Inc.*, 2004 WL 1698628, at \*12 (S.D.N.Y. July 28, 2004) (dismissing Section 10(b) claim challenging alleged misstatements relating to information reflected in "public lawsuits brought by public filings in public courts").[4]

*2. JUUL sales.* Plaintiffs next argue that Willard misled investors in saying that Altria "believe[d] … quite a small percentage" of JUUL's revenues came from underage use. Opp. 16-17, 20-21, 33-34. But plaintiffs badly mischaracterize Willard's remark. In fact, Willard said that Altria *didn't know* what portion of JUUL's sales came from underage users—explaining that this figure was "hard to nail down." Ex. 12 at 8. And while he opined that the percentage was "small," he also emphasized that youth usage at any level could not be "discount[ed]." *Id.*

Equally important, plaintiffs utterly fail to show that Willard's opinion was false. While accusing Willard of lying, plaintiffs never bother to plead what percentage of JUUL's revenue actually came from underage use. And, indeed, publicly available information plainly supports Willard's opinion—with a survey published by Deutsche Bank just a few months before Altria's

---

[4]    Plaintiffs cite *Singer* v. *Reali*, 883 F.3d 425, 438 (4th Cir. 2018), to argue that in some circumstances there may be a duty to disclose illegal conduct. Opp. 18. But there can be no serious dispute that the allegations about JUUL's marketing practices *were* disclosed—indeed, Altria's SEC filings directed investors to lawsuits making precisely the allegations plaintiffs say were concealed. What plaintiffs challenge in this case is JUUL's statement *denying* these contested allegations. And as the Fourth Circuit held in *Food Lion*, denials of publicly known accusations of misconduct are not actionable under Section 10(b).

investment reporting that *92% of JUUL's sales were to users over the age of eighteen*. *See* Ex. 47 at 6 (Sept. 25, 2018, Report). Plaintiffs' assertion that Willard was lying is baseless.

**3. JUUL's value.** Plaintiffs' opposition barely addresses the statements about JUUL's value and the benefits of the deal that are challenged in the complaint. *See* Opp. 17. Plaintiffs identify no facts suggesting that these statements were false when made. *See* Altria Br. 20-22. Instead, they repeat the same refrain that these statements were misleading because Altria knew but failed to disclose that "risks" from JUUL's marketing made the investment worth less than what Altria paid. *See* Opp. 19-20. As shown above, these claims should be rejected.[5]

**4. Cautionary language.** Plaintiffs no longer argue that the cautionary language in Altria's SEC filings is actionable. *See* Opp. 21-22. Instead, they try to dismiss Altria's cautions as "boilerplate." *Id.* But Altria warned that "the expected benefits of the JUUL transaction … may not materialize" for numerous reasons, including the *exact* reasons that surfaced here— namely, "regulatory risk at the international, federal and state levels, including actions by the FDA" and risk from "litigation developments [and] investigations." ¶ 473. It also disclosed substantial litigation involving JUUL and specifically directed investors to these actions. *E.g.*, Ex. 29, Ex. 99.1 at 2. Plaintiffs plead no facts to suggest that these cautions were insufficient.

**5. SOX certifications.** As a last attempt, plaintiffs generically attack the accuracy of Altria's SOX certifications. *See* Opp. 22-23. But plaintiffs identify no statements in Altria's financial statements that were false. And courts have held that SOX certifications "do not

---

[5] Plaintiffs argue that Altria must have known that its opinions about JUUL's value were false because it supposedly disclosed that it "conducted thorough due diligence of JUUL's marketing and regulatory compliance and litigation risk." Opp. 20. But that's not true. The language plaintiffs cite, quoted in paragraph 481 of the complaint, is misleadingly pulled from the "Cautionary Statements" section of an Altria earnings release—it has *nothing whatsoever* to do with the diligence that Altria conducted on JUUL. *See* Ex. 48 at 10 (Apr. 25, 2019).

constitute a standalone basis for liability." *In re Glob. Brokerage, Inc.*, 2019 WL 1428395, at *14 (S.D.N.Y. Mar. 28, 2019). Highlighting the point, the lone case plaintiffs cite, *Kanefsky* v. *Honeywell Int'l Inc.*, 2020 WL 2520669, at *5 (D.N.J. May 18, 2020), only found a SOX certification actionable where a company admitted to the SEC that it had misapplied accounting standards and agreed to restate its financials. Nothing remotely similar is alleged here.

**C.     Plaintiffs' scheme claims are preposterous.**

Plaintiffs' opposition continues to press the facially absurd allegation that Altria and JUUL "schemed" together—months before Altria had even invested in JUUL—to trick the FDA into leaving mint JUULpods on the market. *See* Opp. 9-11, 27-28. Plaintiffs offer no pleaded facts to substantiate that claim. Nor do they explain why Altria would want to prevent the FDA from banning sales of JUUL products, which plaintiffs themselves allege were *hurting* Altria's business. ¶ 336 ("[W]hen smokers ditched Marlboro for JUUL, Altria was losing out.").

Plaintiffs' theory is instead premised entirely on distortions. Plaintiffs argue that a letter Altria sent to the FDA lobbied the agency to protect mint products. But Altria's letter committed to remove *all* of its pod-based products from the market—*including the mint ones*. *See* Altria Br. Ex. 38 at 1. If this letter lobbied the FDA for anything, it was to stop sales of *all* JUUL products.

Plaintiffs also misrepresent a study cited in Altria's letter, which supported Altria's belief that "flavors play a critical role in migrating adult smokers to non-combustible forms of tobacco products." *Id.* at 2. Plaintiffs argue this study "purport[ed] to show that mint was not a flavor selected by underage consumers." Opp. 10. But the study does not even *mention* youth. *See* Ex. 49. To the contrary, it clearly states that only "adult users and nonusers" of tobacco products were surveyed. *Id.* at 8. And the study barely mentions mint—listing it among *fourteen* e-vapor products offered by Altria. *Id.* at 10-11. Plaintiffs cannot use mischaracterized documents in a brief as a substitute for well pleaded facts. Their "scheme" theory has no support.

## POINT II

## PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS
## GIVING RISE TO A STRONG INFERENCE OF SCIENTER

Plaintiffs not only fail to plead a material misstatement or omission, but also fail to plead particularized facts establishing a strong, cogent, and compelling inference of scienter. "The burden placed upon Plaintiff[s] is great." *Svezzese* v. *Duratek, Inc.*, 2002 WL 1012967, at *4 (D. Md. Apr. 30, 2002). In the quarter century since the PSLRA was enacted, the Fourth Circuit has found the inference of scienter to be lacking in private Section 10(b) cases on all but two occasions—both of which drew substantial dissents. *See* Altria Br. 29 (collecting cases).

**A.      Plaintiffs offer no comprehensible theory of motive.**

Plaintiffs' opposition offers no response to the fact that their complaint is founded on an economically irrational premise—that Altria invested $12.8 billion in JUUL believing the "true value" of that stake was far less. ¶ 455. As the Fourth Circuit has recognized, claims like this one, arguing that a defendant knowingly invested in a venture it believed "was doomed to failure," do not raise an inference of scienter that is "even plausible, much less convincing." *Cozzarelli* v. *Inspire Pharm. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008) (Wilkinson, J.).

Instead of proffering a comprehensible theory of motive, plaintiffs argue in their brief that Willard "desperately wanted to invest in JUUL, regardless of the risk, and wanted investors to applaud his decision." Opp. 36-37. On its face, the assertion makes no sense. If, as plaintiffs say, Willard believed that the "true value" of JUUL's stock was far below the deal price, why would he be "desperate" to invest? And why would he think that investors would "applaud" his decision to take a stake in JUUL if he believed the company's value was going to collapse?[6]

---

[6]      Plaintiffs also argue that Altria wanted to invest in JUUL because JUUL was not subject to the master settlement agreement and could thus "price more competitively." Opp. 8-9. On its

11

Setting aside its facial irrationality, plaintiffs' lone "motive" argument is plainly insufficient as a matter of law. As the Fourth Circuit has long held, "generalized motives"—such as Willard's supposed "desperate" desire to "ensure a foothold in the booming e-cigarette market," Opp. at 2—are "insufficient to plead scienter under the PSLRA." *Ottmann* v. *Hanger Orthopedic Grp., Inc.*, 353 F.3d 338, 352 (4th Cir. 2003); *Iron Workers*, 432 F. Supp. 2d at 591 ("[T]he desire to expand business through corporate acquisitions is insufficient to support a strong inference of scienter."). Instead, to plead motive, plaintiffs must show "*concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.*" *Phillips* v. *LCI Int'l, Inc.*, 190 F.3d 609, 621 (4th Cir. 1999) (emphasis added).

Here, not only do plaintiffs fail to allege that Willard obtained "concrete benefits" from the supposed fraud, public filings show that he was *harmed* by it. *See* Altria Br. 30. Before the investment, Willard owned more than 350,000 shares of Altria stock. *Id.* When JUUL's value fell, he *lost money*. "Assuming, as [the Court] must, that [defendants] sought to further [their] own professional and economic interests," purposefully overpaying for a stake in JUUL is "not the way any rational person, who owned [hundreds of thousands of] shares of [Altria], would further those interests." *Phillips*, 190 F.3d at 623. "If this … gives rise to a 'strong inference' of anything, it is that no scienter exists." *In re PEC Sol.*, 418 F.3d 379, 390 (4th Cir. 2005).[7]

---

face, the argument makes no sense. The MSA applies to sales of *cigarettes*, not e-vapor products. Ex. 12 at 14. Indeed, Altria's *own* e-vapor business was not subject to the MSA.

[7]    Plaintiffs argue that the Supreme Court's decision in *Tellabs* made it "improper[]" to weigh a lack of motive allegations against plaintiff. *See* Opp. 36 n.14. But that is not true. *Tellabs* held that "the significance … of motive, *or lack thereof*, depends on the entirety of the complaint," observing only that the absence of motive is not "fatal." 551 U.S. 308, 325 (2007). Nothing in *Tellabs* remotely suggests that a court should not account for plaintiffs' failure to plead motive in assessing scienter. *See Patel* v. *Seattle Genetics, Inc.*, 2018 WL 2359137, at *9 (W.D. Wash. May 24, 2018) (citing *Tellabs* and finding absence of motive "highly relevant").

**B.** **Plaintiffs' remaining scienter allegations are meritless.**

Having no cognizable theory of motive, plaintiffs face an even "more stringent standard" to plead scienter. *In re e.spire Commc'ns., Inc.*, 127 F. Supp. 2d 734, 744-45 (D. Md. 2001).

**1.** **Plaintiffs impermissibly rely on inference stacking.**

As their opposition reveals, plaintiffs' complaint is bereft of well-pleaded factual support. To establish scienter under the PSLRA, a complaint must plead "*specific facts* concerning, for example, *when* each defendant or other corporate officer learned that a statement was false, *how* that defendant learned that the statement was false, and the *particular document* or other source of information from which the defendant came to know that the statement was false." *Iron Workers*, 432 F. Supp. 2d at 579 (emphasis added). Here, plaintiffs identify no "facts, reports or information available to Defendants" suggesting they had "the type of knowledge that would make their misrepresentations consciously misleading." *Circuit City*, 286 F. Supp. 2d at 717.

In the face of the PSLRA's mandate to plead *facts*, plaintiffs impermissibly try to string together "inference upon inference." *Maguire*, 876 F.3d at 548. To start, plaintiffs ask the Court to infer that JUUL engaged in "illegal marketing practices" targeting underage users. Opp. 29-32. Standing alone, this request is breathtaking. The nature of JUUL's marketing practices is subject to active litigation in other courts, including an MDL pending before Judge Orrick. No liability findings have been made in those cases. Yet, after cutting and pasting most of their complaint *verbatim* from a complaint in the MDL, plaintiffs ask this Court to leapfrog the MDL and *infer*, on the basis of disputed allegations, that JUUL intentionally targeted youth.

If that weren't enough, plaintiffs next ask the Court to infer that, as part of diligence, JUUL gave Altria information *showing* that its marketing practices were illegal. *See* Opp. 32-34. But plaintiffs do not identify a *single document* provided to Altria in diligence, let alone one that supports their claims. And without specific allegations of "what defendants knew, how they

13

knew it, and when they knew it, Plaintiffs' allegations that [Altria] must have known about [JUUL's allegedly improper practices] as a result of their due diligence are insufficient to make out the element of scienter under the heightened PSLRA and Rule 9(b) standards." *Murdeshwar v. Search Media Holdings Ltd.*, 2011 WL 7704347, at \*17 (S.D. Fl. Aug. 8, 2011).[8]

Plaintiffs then ask the Court to infer—again, with no pleaded factual support—that some unspecified but damning piece of information about JUUL's marketing practices was shared with Altria's decision makers. But all plaintiffs offer to support that assertion are generic allegations from their "CWs" that "JUUL's practices of marketing to youth were well known." Opp. at 30-31. Plaintiffs plead no facts to support "the probability that a person in the position occupied by [any of their CWs] would possess the information alleged" about JUUL. *Teachers' Ret. Sys. of LA* v. *Hunter*, 477 F.3d 162, 174 (4th Cir. 2007). And "[h]earsay allegations and bald assertions made by confidential witnesses will not defeat a Rule 12(b)(6) motion." *In re Mun. Mortg. & Equity, LLC*, 876 F. Supp. 2d 616, 640 (D. Md. 2012).

As a last step, plaintiffs ask the Court to infer not only that Altria's executives *knew of* JUUL's allegedly improper marketing practices, but that they *intended to deceive* stockholders about this issue. As the Fourth Circuit has explained, "scienter and knowledge with respect to misrepresentation are distinct components of the requisite analytical framework. To conflate the two, as [plaintiffs] would have us do, would read the scienter element out of the analysis in

---

[8]     Plaintiffs cite no case in which a court has inferred scienter from unspecified facts supposedly learned in diligence. Plaintiffs' lead case, *Omnicare, Inc.* v. *UnitedHealth Grp., Inc.*, 594 F. Supp. 2d 945, 948 (N.D. Ill. 2009), isn't even a securities suit—it's an antitrust action in which plaintiff pleaded specific facts allegedly shared by defendants in diligence that violated the antitrust laws. The other cases plaintiff cites involve executives' knowledge of their own companies' affairs, not those of a third party. *See In re Zillow Grp., Inc.*, 2019 WL 1755293, at \*20 (W.D. Wash. Apr. 19, 2019) (officer alleged to know information relating to his *own* company provided to third party); *Turka* v. *S.C. Pub. Serv. Auth.*, 2020 WL 901965, at \*8 (D.S.C. Feb. 25, 2020) (executive alleged to know his *own* company's financial information).

contravention of the PSLRA's exacting pleading standard." *Maguire*, 876 F.3d at 548. Here, plaintiffs plead no facts suggesting that the Altria defendants sought to deceive investors about the risks facing JUUL. To the contrary, the pleaded facts show that Altria expressly *warned* investors of precisely these risks—cautioning that youth usage was a "big problem" that "put the whole category at risk." Ex. 12 at 8. The company also disclosed multiple lawsuits relating to the same allegations that plaintiffs now claim were concealed. *See* Altria Br. 18.

Even viewed individually, each one of the inferences advanced by plaintiffs is untenable. Put together, they are in clear contravention of the Fourth Circuit's ruling that "stacking inference upon inference … violates the [PSLRA's] mandate that the strong inference of scienter be supported by facts, not other inferences." *Maguire*, 876 F.3d at 548.

### 2. Plaintiffs' laundry list of additional boilerplate allegations do not establish a strong inference of scienter.

To backfill the gaping holes in their pleading, plaintiffs advance a grab-bag of boilerplate allegations that courts have routinely held are insufficient to plead scienter:

*First*, plaintiffs argue that the Court should infer that Willard and Gifford acted with scienter due to their senior positions at Altria. *See* Opp. 34. But assertions "that a defendant must have known that a statement was false and misleading because of his or her position in the company are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate." *Iron Workers*, 432 F. Supp. 2d at 592.

*Second*, plaintiffs argue that Willard's resignation—as he was recovering from COVID-19—"further supports scienter." Opp. 35. But "resignations by executives are insufficient to support a strong inference of scienter." *Iron Workers*, 432 F. Supp. 2d at 593. To the contrary, "where … [a] resignation occurs slightly before or after the defendant corporation issues [disappointing news], a plaintiff must plead facts refuting the reasonable assumption that the

resignation occurred as a result of the [disappointing news] itself in order for a resignation to be strongly indicative of scienter." *Yates* v. *Mun. Mortg. & Eq.*, 744 F.3d 874, 889 (4th Cir. 2014).

*Third*, plaintiffs argue that a newspaper report of an SEC investigation of Altria's investment in JUUL supports an inference of scienter. *See* Opp. 35. But the Fourth Circuit has squarely held that an SEC investigation "is too speculative to add much, if anything, to an inference of scienter." *Cozzarelli*, 549 F.3d at 628. And the only case plaintiffs cite, *In re Gentiva*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013), *rejected* plaintiffs' argument—finding that the announcement of several investigations was insufficient to support an inference of fraud.

*Finally*, plaintiffs argue that the Court should infer scienter from the fact that Willard and Gifford signed Altria's SOX certifications. *See* Opp. 35-36. But once again, plaintiffs ignore controlling Fourth Circuit law holding that a "bare allegation" that defendants "lied when [they] certified [Altria's] financial statements in accordance with the Sarbanes–Oxley Act of 2002 … does not provide independent support for an inference of scienter." *Cozzarelli*, 549 F.3d at 628.

## C.      Plaintiffs fail to plead corporate scienter by Altria.

As a last ditch effort, plaintiffs argue that even if they can't plead scienter as to Willard or Gifford, this Court should still infer scienter as to Altria because "someone" at the company must have acted with fraudulent intent. *See* Opp. 38-39. The argument is groundless. "Pertinent Fourth Circuit authority … points persuasively to the conclusion that in order for a corporation to be liable for securities fraud, 'at least one corporate agent' must have '*acted* with the required state of mind[,]' *i.e.*, *made* a false or misleading statement of material fact with scienter." *In re Computer Scis. Corp.*, 890 F. Supp. 2d 650, 664 (E.D. Va. 2012) (emphasis added).

Plaintiffs bizarrely cite *Teamsters Local 445 Freight Div. Pension Fund* v. *Dynex Capital, Inc.*, 531 F.3d 190 (2d Cir. 2008)—a case that *vacated* a lower court decision for

*wrongly* inferring corporate scienter where plaintiffs failed to plead scienter as to any corporate officer. As *Dynex* held, for an individual's scienter to be imputed to a company, that person must have been "responsible for the statement made to investors." *Id.* at 197. In this case, plaintiffs flunk that test. *See In re Under Armour*, 409 F. Supp. 3d 446, 462-463 (D. Md. 2019) (no corporate scienter where plaintiffs failed to plead that any individuals acting with scienter "were involved with the issuance of misstatements to the public").

**D.      The inference of nonfraudulent intent is far more compelling.**

Even if plaintiffs could plead some inference of scienter, their complaint still fails because any inference of fraud would be far outweighed by the opposing inference of *non-fraudulent* intent. As the Fourth Circuit has explained: "an inference of scienter can only be strong—and compelling, and powerful—when it is weighed against the opposing inferences that may be drawn from the facts in their entirety." *Cozzarelli*, 549 F.3d at 624. Thus, to survive a motion to dismiss, plaintiffs must plead scienter allegations that are not only "cogent" and "compelling," but "*at least as compelling* as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324 (emphasis added).

In this case, the most compelling inference from the facts alleged is that Altria believed it was making a strategic investment that would benefit the company and its stockholders. As plaintiffs acknowledge, Altria had good reasons to invest in JUUL when it did. The market for combustible cigarettes was in decline, e-vapor products had emerged as a potentially lower risk alternative, and Altria had struggled to gain footing in this new market. In view of these business realities, Altria struck an arm's-length bargain for a 35% stake in JUUL. Seeing the potential benefits, Wall Street analysts—all of whom were well aware of the risks swirling around JUUL—heralded the transaction as a "strategic move" and "the absolute right decision."

And for a time, JUUL performed as expected. But regulatory pressure continued to mount and, with the sudden outbreak of vaping-related lung illnesses in mid-2019, JUUL's prospects turned. While these lung illnesses turned out to be unrelated to JUUL products, states enacted vapor bans, more lawsuits were filed, and demand for JUUL products fell. Far from hiding these issues from investors, Altria clearly communicated these challenges as they arose, promptly recording an impairment charge in October 2019 after the initial outbreak of lung injuries and a second impairment in January 2020 as litigation against JUUL continued to rise.

That is not a story of fraud. While plaintiffs may now claim, in retrospect, that Altria was overly optimistic when it invested in JUUL, "[t]he PSLRA reflects Congress's determination that liability for securities fraud should not be predicated solely on an overly optimistic view of a future which may, in fact, encounter harsh economic realities down the road." *Maguire*, 876 F.3d at 548. "The market has risks; the securities laws do not serve as investment insurance." *Raab*, 4 F.3d at 291. "'Plaintiffs cannot use the benefit of 20-20 hindsight to turn management's business judgment into securities fraud.'" *In re Maximus, Inc.*, 2018 WL 4076359, at *14 (E.D. Va. Aug. 27, 2018) (quoting *In re Worlds of Wonder*, 35 F.3d 1407, 1419 (9th Cir. 1994)).

## POINT III

### PLAINTIFFS ALL BUT IGNORE
### THEIR BURDEN TO PLEAD LOSS CAUSATION

Although it is an additional and independent basis for dismissing their claims, plaintiffs' opposition barely mentions loss causation—a necessary element of a securities fraud claim. *See Dura Pharm., Inc.* v. *Broudo*, 544 U.S. 336, 342 (2005). The omission is telling. The Fourth Circuit has held that loss causation must be pleaded with "sufficient specificity," a standard "largely consonant with Fed. R. Civ. P. 9(b)[]." *Katyle*, 637 F.3d at 471. Yet while their entire theory hangs on the assertion that Altria lied to investors about JUUL's intent to market youth,

18

plaintiffs never even *attempt* to show that any of the disclosures they cite revealed "new facts" to the market about this issue. *Id.* at 473.

    *a. Investigations*. Plaintiffs cite several drops in Altria's stock—scattered over nearly a *year*—after the announcement of vapor-related investigations. But as multiple circuits have held, even in jurisdictions that do not apply Rule 9(b) to loss causation, "the announcement of an investigation, standing alone and without any subsequent disclosure of actual wrongdoing, does not reveal to the market the pertinent truth of anything." *Loos* v. *Immersion Corp.*, 762 F.3d 880, 890 n.3 (9th Cir. 2014); *Meyer* v. *Greene,* 710 F.3d 1189, 1201 (11th Cir. 2013). Plaintiffs fail even to *acknowledge* these decisions, which flatly refute their claims.

    Plaintiffs also fail to show that any of the investigations they cite revealed "new facts" suggesting that Altria's statements were false. *Katyle*, 673 F.3d at 473. In fact, several of the investigations aren't related to JUUL at all. For example, plaintiffs cite an April 2019 investigation into reports of seizures dating back to 2010—five years before JUUL was founded. *See* Altria Br. 37. They similarly cite an August 2019 investigation into vaping-related lung illnesses, which the CDC ultimately concluded were caused by illicit vapes containing Vitamin E acetate—not JUUL. *Id.* at 38. None of these announcements exposed "fraud" to the market.[9]

    *b. Impairments.* Plaintiffs also cite declines in Altria's stock after the company recorded impairments on its investment in JUUL. But plaintiffs ignore the *reasons* that these impairments

---

[9]    The largest drop plaintiffs cite followed the announcement of an SEC investigation in February 2020. But plaintiffs omit that this decline coincided with a drop in the entire market due to COVID-19. *See* Altria Br. 40. Plaintiffs argue that the Court should ignore the misleading nature of their pleading. But to survive a motion to dismiss, plaintiffs must plead facts showing that their "loss was caused by the alleged misstatements as opposed to intervening events." *Katyle*, 637 F.3d at 471. Plaintiffs do not even attempt to make this showing. *See In re Acterna Corp.*, 378 F. Supp. 2d 561, 588 (D. Md. 2005) (dismissing where plaintiffs failed to show drop was caused by "alleged misstatements … as opposed to an alternative intervening event.").

were recorded—the outbreak of lung illnesses in 2019, a decline in demand for JUUL products, and a surge in litigation and investigations diminishing JUUL's prospects. None of these issues are alleged to have exposed that Altria's statements about JUUL were "fraud." Because plaintiffs do "not adequately allege that the write-down [of the JUUL investment] and resulting stock decline resulted from a revelation of fraud, rather than from investors' disappointment," they fail to establish loss causation. *Roofers Local No. 149 Pension Fund* v. *DreamWorks Animation SKG, Inc.*, 677 F. App'x 376, 377 (9th Cir. 2017).

*c. Vaping regulation.* Plaintiffs also cite a drop in Altria's stock days after media reports of possible e-vapor bans. ¶¶ 506-508. Plaintiffs fail to explain why Altria's stock didn't react when these reports first emerged. Nor do they identify any "new facts" revealed by these announcements. Indeed, the FDA had disclosed that it was "seriously considering" a ban on flavored e-vapor products months before Altria even invested in JUUL. *See* Altria Br. 38-39.

*d. PMI merger.* Finally, plaintiffs cite a 0.42% decline in Altria's stock after the company announced it was calling off merger negotiations with Phillip Morris. Plaintiffs offer no explanation as to why this negligible decline would be "statistically significant." *Eng* v. *Edison Int'l*, 2017 WL 1857243, at *4 (S.D. Cal. May 5, 2017). And more importantly, they make no effort to explain why calling off merger negotiations with a third party would remotely suggest that any of Altria's statements about its investment in JUUL were fraud.

## CONCLUSION

The Altria defendants respectfully request that the claims against them in Counts I and III of the corrected complaint be dismissed with prejudice.[10]

---

[10] Plaintiffs do not even mention their Section 20(a) claim in their opposition, and it should thus be deemed waived. *E.g.*, *U.S.* v. *Wainwright*, 480 F. App'x 238, 240 (4th Cir. 2012).

Dated:  November 2, 2020

Respectfully Submitted,

OF COUNSEL

Stephen R. DiPrima *(pro hac vice)*
Benjamin D. Klein *(pro hac vice)*
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
212-403-1000 (telephone)
212-403-2000 (facsimile)

 /S/ EDWARD J. FUHR
Edward J. Fuhr (VSB #28082)
Eric H. Feiler (VSB #44048)
Johnathon Schronce (VSB #80903)
HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, VA  23219
804-788-8200 (telephone)
804-788-8218 (facsimile)

*Attorneys for Altria Group, Inc.,*
*Howard A. Willard III,*
*William F. Gifford, Jr.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2020, a true and correct copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ EDWARD J. FUHR
Edward J. Fuhr