**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| GABBY KLEIN, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Case No. 3:20-cv-75 |
| v. | ) | |
| | ) | Hon. David J. Novak |
| ALTRIA GROUP, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS JUUL LABS, INC., ADAM BOWEN, AND KEVIN BURNS**

**Table Of Contents**

Preliminary Statement...................................................................................................... 1

Argument ......................................................................................................................... 1

I.      Plaintiffs Lack Statutory Standing To Bring Claims Against The JLI Defendants............ 1

II.     Plaintiffs Do Not Plead With Particularity That The JLI Defendants Made A
        Material False Or Misleading Statement. .............................................................. 5

        A.      Plaintiffs Do Not Plead That The Alleged Misstatements Were Material............. 6

                1.      The "Clear Message" Statement Is Too Vague To Be Material................ 6

                2.      The "Intent" Statements Are Immaterial In Light Of What Was
                        Publicly Known At The Time They Were Made...................................... 7

        B.      Plaintiffs Do Not Allege With Particularity That The JLI Defendants
                Made A False Or Misleading Statement............................................................... 12

III.    Plaintiffs Do Not Plead With Particularity That The JLI Defendants Engaged In
        Fraudulent Conduct In Violation Of SEC Rule 10b-5(a) and (c). ................................... 13

IV.     Plaintiffs Do Not Plead Facts Giving Rise To A "Strong Inference" Of Scienter. .......... 15

V.      Plaintiffs Do Not Adequately Plead Loss Causation. ...................................................... 18

Conclusion ...................................................................................................................... 20

## Table Of Authorities

**Cases**

*In re Altisource Solutions*,
2015 WL 12001262 (S.D. Fla. Sept. 4, 2015) ....................................................................2, 5

*In re Bank of Am. Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013)................................................................................8, 13

*In re BHP Billiton*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017)......................................................................................12

*Cent. Bank v. First Interstate Bank*,
511 U.S. 164 (1994).................................................................................................................2

*In re Eletrobras Securities*,
245 F. Supp. 3d 457 (S.D.N.Y. 2017).....................................................................................14

*In re Fontem Consumer Litigation*,
2016 WL 11503066 (C.D. Cal. Apr. 22, 2016) ....................................................................6, 7

*In re Galena Biopharma*,
117 F. Supp. 3d 1145 (D. Or. 2015) .......................................................................................14

*Greenhouse v. MCG Capital*,
392 F.3d 650 (4th Cir. 2004) ...................................................................................................8

*Hillson Partners v. Adage*,
42 F.3d 204 (4th Cir. 1994) .....................................................................................................6

*IBEW Local 90 v. Deutsche Bank*,
2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013) .......................................................................14

*Katyle v. Penn Nat'l Gaming*,
637 F.3d 462 (4th Cir. 2011) .................................................................................................19

*Knurr v. Orbital ATK*,
294 F. Supp. 3d 498 (E.D. Va. 2018) .....................................................................................17

*Lapin v. Goldman Sachs*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006)....................................................................................12

*Longman v. Food Lion*,
197 F.3d 675 (4th Cir. 1999) .......................................................................................7, 8, 9, 10

*In re Massey Energy Sec. Litig.*,
883 F Supp. 2d 597 (S.D.W.Va. 2012)....................................................................................8

*Matrix Capital v. BearingPoint*,
    576 F.3d 172 (4th Cir. 2009) ............................................................................................17

*In re Merrill Lynch Sec.*,
    704 F. Supp. 2d 378 (S.D.N.Y. 2010)...............................................................................8

*In re Mut. Funds Inv. Litig.*,
    487 F. Supp. 2d 618 (D. Md. 2007) ..................................................................................5

*Muzinich & Co. v. Raytheon*,
    2002 U.S. Dist. LEXIS 26962 (D. Idaho Apr. 30, 2002)...................................................4

*In re Nat'l Golf Props.*,
    2003 WL 23018761 (C.D. Cal. Mar. 19, 2003)..................................................................4

*In re Neustar Sec.*,
    83 F. Supp. 3d 671 (E.D. Va. 2015) ..................................................................................6

*Nguyen v. Endologix*,
    962 F.3d 405 (9th Cir. 2020) ...........................................................................................16

*In re NYSE Specialists*,
    503 F.3d 89 (2d Cir. 2007)............................................................................................3, 4

*Okla. Firefighters Pension v. K12*,
    66 F. Supp. 3d 711 (E.D. Va. 2014) ..................................................................................6

*Ontario Pub. Serv. Emps. v. Nortel Networks*,
    369 F.3d 27 (2d Cir. 2004)....................................................................................2, 3, 4, 5

*In re Pfizer Sec. Litig.*,
    538 F. Supp. 2d 621 (S.D.N.Y. 2008)................................................................................8

*Phillips v. LCI Int'l*,
    190 F.3d 609 (4th Cir. 1999) ...................................................................................7, 8, 10

*Raab v. Gen'l Physics*,
    4 F.3d 286 (4th Cir. 1993) ............................................................................................7, 8

*Rubin v. Schottenstein, Zox & Dunn*,
    143 F.3d 263 (6th Cir. 1998) .............................................................................................2

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000)...............................................................................................2

*In re Signet Jewelers*,
    2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018).................................................................12

iii

*Stoneridge Inv. Partners v. Scientific-Atlanta*,
  552 U.S. 148 (2008)..................................................................................................13, 14

*Tellabs v. Makor Issues*,
  551 U.S. 308 (2007)..................................................................................................15, 16

*TSC Indus. v. Northway*,
  426 U.S. 438 (1976)........................................................................................................6

*White v. H&R Block*,
  2004 WL 1698628 (S.D.N.Y. July 28, 2004) ...............................................................8

*In re Williams Sec. Litig.*,
  339 F. Supp. 2d 1206 (N.D. Okla. 2003)........................................................................4

*In re WorldCom*,
  2004 WL 1435356 (S.D.N.Y. June 28, 2004) ................................................................4

*Yates v. Mun. Mortg.*,
  744 F.3d 874 (4th Cir. 2014) .......................................................................................16

*In re Yukos Oil Sec. Litig.*,
  2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)..................................................................8

*Zelman v. JDS Uniphase*,
  376 F. Supp. 2d 956 (N.D. Cal. 2005) ...........................................................................4

**Preliminary Statement**

Plaintiffs' brief confirms why their allegations do not state a claim against the JLI Defendants.  Plaintiffs' § 10(b) claim fails at the threshold because they lack statutory standing to bring such a claim against the JLI Defendants.  But even if they had standing, their claim still fails.  Plaintiffs cannot credibly dispute that the alleged facts that they contend establish the JLI Defendants' intent to target youth were revealed in the press, government announcements, and lawsuits before the Class Period.  Nor can Plaintiffs dispute that the impact from these allegations was also known: Plaintiffs themselves admit that "it is self-evident that regulatory actions and litigation" over JLI's alleged illegal marketing would "adversely affect sales."  (Docket #127 ("Pl. JLI Opp.") at 27 n.17)  And Plaintiffs' § 20(a) claim fails because it is dependent on a well-pled § 10(b) claim.  At bottom, Plaintiffs cannot state a claim for nondisclosure of alleged facts that were already disclosed.  (Docket #120 ("JLI Br.") at 15-20)  The Court should dismiss Plaintiffs' claims against the JLI Defendants.[1]

**Argument**

**I.      Plaintiffs Lack Statutory Standing To Bring Claims Against The JLI Defendants.**

Plaintiffs' claims against the JLI Defendants fail as a threshold matter because Plaintiffs lack statutory standing to sue the JLI Defendants under § 10(b) of the Exchange Act.  (JLI Br. 11-13)  Plaintiffs first respond by arguing that § 10(b) contains no language "limiting liability to an issuer (or insiders) of the securities at issue."  (Pl. JLI Opp. 4)  However, § 10(b) is an *implied* private right of action, meaning *there is no statutory language addressing who can sue at all*.  Thus, the lack of limiting language does not help Plaintiffs.  Indeed, precisely because the statutory

---

[1] Plaintiffs' brief defines K.C. Crosthwaite as a "JUUL Defendant."  (Pl. JLI Opp. 1 n.1)  This contradicts Plaintiffs' complaint and their brief opposing Altria's motion to dismiss, both of which define him as an "Altria Defendant."  (Compl. ¶ 31; Docket #126 at 1 n.1)  Plaintiffs do not allege any acts Crosthwaite took as JLI's CEO that Plaintiffs contend give rise to liability in this action.

language does not expressly create a private right of action, the Supreme Court has warned repeatedly against expanding the judicially implied private right beyond the contours recognized in precedent already.  (JLI Br. 12)  Yet Plaintiffs fail to cite a single decision of any court recognizing potential § 10(b) liability in a situation like this one, where investors in one company sue a second company for statements that second company and its officers made about the second company's own business.[2]

Instead, Plaintiffs fall back on the general proposition that § 10(b) "liability extends beyond the issuing company."  (Pl. JLI Opp. 4)  But even Plaintiffs do not contend that § 10(b) liability has *no* limits.  Thus, their general statement does not answer the specific question here.  And precedent instructs specifically that § 10(b) plaintiffs must be "those who have at least dealt in the security to which the prospectus, representation, or omission relates."  *Ontario Pub. Serv. Emps. v. Nortel Networks*, 369 F.3d 27, 32 (2d Cir. 2004); *In re Altisource Solutions*, 2015 WL 12001262, *3-4 (S.D. Fla. Sept. 4, 2015) (same).  Here, the JLI Defendants' alleged misstatements were about JLI's business, not Altria's.  Plaintiffs did not deal in JLI securities.  As a result, Plaintiffs are not proper plaintiffs to bring a § 10(b) claim against the JLI Defendants.

Plaintiffs attempt to distinguish *Nortel Networks* factually, but they ignore what the decision actually says.  Plaintiffs argue that *Nortel Networks* was different because JDS and Nortel had only an "amorphous business relationship."  (Pl. JLI Opp. 7)  However, this is simply inaccurate: the decision explained that "JDS was selling their laser business to Nortel in exchange for $2.5 billion in Nortel stock."  *Nortel Networks*, 369 F.3d at 29.  Thus, in *Nortel Networks*, JDS acquired

---

[2] Because the question presented here is who can bring a private action under § 10(b), the decisions Plaintiffs cite defining § 10(b)'s statutory terms are inapposite.  (Pl. JLI Opp. 4, *citing Cent. Bank v. First Interstate Bank*, 511 U.S. 164 (1994); *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3d Cir. 2000); *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 (6th Cir. 1998))

stock in Nortel, like Altria acquired stock in JLI. *Id.* As in this case, Nortel was alleged to have made fraudulent statements about *its own* operations—that "it saw strong demand for its fiber optics products and expected 30% growth" (*id.*)—and JDS's stock (like Altria's) was alleged to have declined when the supposed truth about Nortel (JLI) was disclosed because of JDS's (Altria's) ownership interest in Nortel (JLI). *Id.* Thus, *Nortel Networks* is factually indistinguishable from the facts alleged by Plaintiffs here.[3]

Plaintiffs also argue that *Nortel Networks* does not apply because a later decision, *In re NYSE Specialists*, 503 F.3d 89 (2d Cir. 2007), limits it. But, contrary to Plaintiffs' argument, *NYSE Specialists* reiterated that "the connection between Nortel Networks' false statements about itself and the plaintiff's purchase of JDS Uniphase stock was too remote to sustain an action." *Id.* at 102. Moreover, unlike *Nortel Networks*, which addressed the same fact pattern as alleged here, the facts alleged in *NYSE Specialists* were nothing like those here. There, the plaintiffs alleged that the "NYSE made misrepresentations about the integrity of its market, upon which Lead Plaintiffs relied in trading *on the NYSE*." *NYSE Specialists*, 503 F.3d at 91 (emphasis added). Thus, the plaintiffs' investment in that action had a direct connection to the defendant's representations about its business.[4]

---

[3] Plaintiffs argue that *Nortel Networks* is different because there "the purchase [of stock] did not occur until the end of the class period." (Pl. JLI Opp. 7 n.3) That is not accurate; rather, the purchase did not close until *near* the end of the class period, but still during it. *Nortel Networks*, 369 F.3d at 29. Moreover, the transaction was disclosed before the class period began (*id.*), and nothing in the decision's analysis turned on when the transaction closed. *Id.*

[4] Plaintiffs assert that *NYSE Specialists* held "that when the value of the security purchased is directly linked to the value of the non-issuer company, such as in a merger, that created the type of 'direct relationship' sufficient to establish standing." (Pl. JLI Opp. 6) But the court made no such assertion, and the phrase "direct relationship" appears nowhere in the decision. Instead, it appears only in *Nortel Networks* itself, the very same decision whose indistinguishable facts establish there is no statutory standing here.

Here, Plaintiffs wrongly suggest that this case is more like *NYSE Specialists* than *Nortel Networks*. They *assert* "there was a direct, definable and contractual link between the value of JUUL … and Altria's stock price." (Pl. JLI Opp. 6) However, they do not allege *facts* supporting that assertion. They do not allege that Altria stock was a derivative security, such as an option, whose value was a function of JLI's value. Rather, they allege only the same relationship that was at issue in *Nortel Networks*—a large ownership stake by one company of another—and that *Nortel Networks* held was *not* a sufficient connection.

No precedent states otherwise. Neither *Zelman v. JDS Uniphase*, 376 F. Supp. 2d 956 (N.D. Cal. 2005), nor *In re WorldCom*, 2004 WL 1435356 (S.D.N.Y. June 28, 2004), supports Plaintiffs' position. Both decisions concerned investors who purchased derivative securities linked *to the defendant company*, unlike Plaintiffs here, who did not purchase any form of securities in JLI or derivative securities linked to JLI. *See Zelman*, 376 F. Supp. 2d at 958 (investors purchased equity-linked debt securities whose value "depended solely on the price at which JDSU common stock was trading"); *WorldCom*, 2004 WL 1435356 at *8 (investors purchased equity-linked debt securities whose value "was linked to the trading price of WorldCom's common stock"). Neither decision endorses statutory standing for an investor who purchased securities in one company to sue a separate company in which he did not buy securities, for statements that separate company made about its own business, based only on the fact that the first company invested in the second company.[5]

---

[5] *In re Nat'l Golf Props.*, 2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) (cited at Pl. JLI Opp. 8), is also inapposite, because the defendant there "allowed" its allegedly false statements "to be included in the registration/prospectus" of the corporation whose securities were at issue. *Id*. at *9. Here, Plaintiffs do not allege the JLI Defendants allowed Altria to include any of their alleged misstatements in Altria's SEC filings. In addition, *In re Williams Sec. Litig*., 339 F. Supp. 2d 1206, 136-37 (N.D. Okla. 2003), and *Muzinich & Co. v. Raytheon*, 2002 U.S. Dist. LEXIS 26962 (D.

4

Plaintiffs also argue that the JLI Defendants' alleged misstatements "concerned the very business that Altria acquired and were disseminated in the same press release announcing Altria's investment." (Pl. JLI Opp. 7)  That is inaccurate.  Only one of the five alleged misstatements was made contemporaneously with the announcement of Altria's investment. (JLI Br. 4-5)  And that statement was about JLI's business and what Altria's investment meant *to JLI*, not the other way around.  Regardless, *Altisource* rejects Plaintiffs' argument.  There, the defendants "made statements directly to Altisource shareholders about Altisource." *Altisource*, 2015 WL 12001262 at *4.  Even so, the court held there was no statutory standing because they had not purchased securities of the defendant company.

Finally, Plaintiffs do not dispute the JLI Defendants' argument that Plaintiffs' interpretation of statutory standing would fundamentally change this country's securities laws. (JLI Br. 13)  Corporations and their officers would face potential liability not only to their investors, but to unknown persons and entities that invest in those investors—and even further down the investment chain.  Such liability has no support from prior precedent, and this Court should not break new ground to expand § 10(b)'s private right of action beyond what the Supreme Court has recognized.

## II.   Plaintiffs Do Not Plead With Particularity That The JLI Defendants Made A Material False Or Misleading Statement.

Independently, Plaintiffs' arguments do not establish they have adequately pled that any of the JLI Defendants' statements were either (1) material or (2) false or misleading.

---

Idaho Apr. 30, 2002) (cited at Pl. JLI Opp. 8), were issued before *Nortel Networks*, did not analyze the statutory standing question, and did not discuss the Supreme Court's warnings against expanding § 10(b)'s implied private right of action.  As a result, their analysis is not applicable.  Finally, *In re Mut. Funds Inv. Litig.*, 487 F. Supp. 2d 618, 622-23 (D. Md. 2007) (discussed at Pl. JLI Opp. 8), held that there was *no* standing, explaining that "a mutual fund investment adviser[] owed no duty to its parent's shareholders, *because the latter never purchased or sold [the subsidiaries']* *mutual funds*." *Id.* at 622-23 (emphasis added).

5

### A.      Plaintiffs Do Not Plead That The Alleged Misstatements Were Material.

Plaintiffs do not dispute that alleged misstatements are material only if there is a "substantial likelihood" that the supposedly "true" information would have "significantly altered the 'total mix' of information made available" to investors. *TSC Indus. v. Northway*, 426 U.S. 438, 449 (1976). Here, as a matter of law, none of the five alleged misstatements was material.

### 1.      The "Clear Message" Statement Is Too Vague To Be Material.

As established in the JLI Defendants' opening brief, the first alleged misstatement, that Altria's investment in JLI "sends a very clear message that JUUL's technology has given us a truly historic opportunity to improve the lives of the world's one billion adult smokers," lacks objective facts or standards to which investors might attach weight and so is too vague to have been material. (JLI Br. 14-15)  This conclusion is confirmed by the well-settled precedent that generalized optimistic statements are "not specific enough to perpetrate a fraud on the market." *Hillson Partners v. Adage*, 42 F.3d 204, 211-12 (4th Cir. 1994) ("vague predications of growth … [are] not material as a matter of law").

Plaintiffs argue in response that whether this statement (and others) was material cannot be decided on a motion to dismiss. (Pl. JLI Opp. 21)  But *Hillson* itself affirmed a dismissal because a statement was immaterial as a matter of law, 42 F.3d at 211, and numerous decisions from this District hold on motions to dismiss that statements are immaterial. *E.g.*, *In re Neustar Sec.*, 83 F. Supp. 3d 671, 680-81 (E.D. Va. 2015) ("Neustar's statements are puffery and thus cannot give rise to securities fraud."); *Okla. Firefighters Pension v. K12*, 66 F. Supp. 3d 711, 719 (E.D. Va. 2014) ("Packard's statements are the kinds of statements that cannot be objectively demonstrated to be false or misleading."). Additionally, *In re Fontem Consumer Litigation*, 2016 WL 11503066, *8 (C.D. Cal. Apr. 22, 2016), held on a motion to dismiss that statements that e-cigarettes were a

6

"smarter alternative" to combustible cigarettes were immaterial. *Id.* at \*8.  Plaintiffs try to distinguish *Fontem*, arguing it was a consumer rather than a securities case.  (Pl. JLI Opp. 21 n.11)  But the same analysis applies here: the words used in the alleged misstatements were immaterial because they had "a wide variety of meanings, but few specific ones." *Fontem.* 2016 WL 11503066 at \*8.  It is not credible for Plaintiffs to argue that investors would put weight on statements that consumers would not.

Plaintiffs also argue that the "clear message" statement is material "because it created a duty to speak about the effect JUUL's technology was also having on destroying lives." (Pl. JLI Opp. 21 n.12)  But Plaintiffs cite no support for this assertion of a "duty."  If the statement is immaterial because investors would have paid it no mind, then it is not actionable because Defendants did not also make more specific statements.

### 2.    The "Intent" Statements Are Immaterial In Light Of What Was Publicly Known At The Time They Were Made.

As explained in the JLI Defendants' opening brief, the four alleged "intent" misstatements—that JLI did not intend to target underage persons—were immaterial to investors because the allegation that JLI did have such intent was already "well known to the market, … and therefore … not material." *Longman v. Food Lion*, 197 F.3d 675, 684 (4th Cir. 1999).

Plaintiffs do not dispute that the allegations that JLI both designed and marketed its products to appeal to underage persons were disseminated widely before the Class Period.  (JLI Br. 5-10, 16-17)  Rather, Plaintiffs argue only that it is "a premature attempt to invoke the truth on the market doctrine."  (Pl. JLI Opp. 18)  But it is not; it is an argument that Plaintiffs have failed to plead the materiality element of their claim, which they must do to survive a motion to dismiss. Controlling Fourth Circuit precedent makes clear that the Court can decide this issue now.  *See Phillips v. LCI Int'l*, 190 F.3d 609, 617 (4th Cir. 1999); *Longman*, 197 F.3d at 684; *Raab v. Gen'l*

7

*Physics*, 4 F.3d 286, 289 (4th Cir. 1993).  Plaintiffs argue that *Longman* was a summary judgment decision (Pl. JLI Opp. 18 n.10), but they ignore *Phillips* and *Raab*, which both affirmed dismissals. Further, Plaintiffs ignore that the Fourth Circuit has rejected the argument that *Longman* does not apply to motions to dismiss, explaining that "[n]o shortage of cases … make clear that materiality may be resolved by a court as a matter of law."  *Greenhouse v. MCG Capital*, 392 F.3d 650, 657 (4th Cir. 2004).  Although the JLI Defendants cited *Greenhouse* in their opening brief, Plaintiffs fail to even mention it.

Contrary to Plaintiffs' argument, "[e]ven at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." *In re Bank of Am. Sec. Litig.*, 980 F. Supp. 2d 564, 577 (S.D.N.Y. 2013).  Courts routinely grant motions to dismiss by concluding based on a review of publicly available information that alleged misstatements are immaterial as a matter of law.  *E.g.*, *In re Merrill Lynch Sec.*, 704 F. Supp. 2d 378, 395-96 (S.D.N.Y. 2010) (granting motion to dismiss); *In re Pfizer Sec. Litig.*, 538 F. Supp. 2d 621, 633 (S.D.N.Y. 2008) (same); *In re Yukos Oil Sec. Litig.*, 2006 WL 3026024, *21 (S.D.N.Y. Oct. 25, 2006) (same); *White v. H&R Block*, 2004 WL 1698628, *12 (S.D.N.Y. July 28, 2004) (same).[6]

Remarkably, Plaintiffs seek to avoid dismissal by denying what is before the Court in plain black and white.  They assert in response to the Altria Defendants' motion that "[n]one of these documents [the exhibits to Defendants' motions] include accusations that JUUL was intending

---

[6] *In re Massey Energy Sec. Litig.*, 883 F Supp. 2d 597 (S.D.W.Va. 2012) (cited at Pl. JLI Opp. 18), does not show that this case should be decided any differently.  There, the defendants argued that information was publicly available because it was accessible on a website, but the plaintiffs "contest[ed] the availability of the information … by asserting that the website was not user friendly." *Id.* at 616.  No such factual dispute is presented here: Plaintiffs do not deny the allegations against JLI were broadly disseminated.  (JLI Br. 5-10, 16-20)

8

underage use of its products."  (Docket #126 at 26)  This assertion is demonstrably false:

- On June 4, 2018, a Washington Times article quoted a researcher alleging that JLI was using social media "*to target* the youth and young adults."  (JLI Ex. 5 at 2, emphasis added)

- On July 24, 2018, the Massachusetts Attorney General asserted that JLI and others "use sweet flavors to make their products appeal to youth."  (JLI Ex. 6 at 3)

- On July 25, 2018, USA Today reported that JLI was "being investigated for allegedly marketing to minors."  (JLI Ex. 7 at 1)

- On July 30, 2018, the Washington Post reported that lawsuits had been filed alleging that JLI "targeted youth from the get-go" and "targeted youths under the legal smoking age."  (JLI Ex. 8 at 2, 3)

- On October 15, 2018, the North Carolina Attorney General stated he was "extremely concerned about the way Juul has marketed its product to young people."  (JLI Ex. 12)

- On October 22, 2018, a Reuters article quoted a doctor as asserting that "[t]he marketing strategies JUUL is using 'are definitely reminiscent of the way tobacco companies used to target youth."  (JLI Ex. 13 at 2)

- On November 16, 2018, Forbes reported that at least four lawsuits had been filed alleging that JLI "targeted underage and nonsmokers."  (JLI Ex. 15 at 5)

- On November 18, 2018, Business Insider reported that JLI was "facing a growing backlash from the FDA and scientists who say the company intentionally marketed to teens."  (JLI Ex. 16 at 7)

Each of these statements conveys the allegation that JLI targeted underage persons, either through the design of its products or through its marketing.  And each statement was disseminated publicly before the Class Period began.  There is no way for Plaintiffs to credibly argue it was not public before the Class Period that JLI was accused of targeting underage users.

Plaintiffs next argue that "the existence of allegations and reports from outside sources" were not sufficient to inform investors, because the JLI Defendants "repeatedly denied that their intent was to illegally market to underage consumers."  (Pl. JLI Opp. 18)  *Longman* forecloses this argument.  There, the defendants were alleged to have committed securities fraud by denying that they had engaged in unlawful conduct, and yet the Fourth Circuit held those alleged misstatements

9

immaterial based on public dissemination of allegations that the defendants had acted unlawfully. Plaintiffs contend that the defendants in *Longman* did not *really* deny the alleged misconduct, but only stated that their "practices were not 'illegal.'" (Pl. JLI Opp. 18 n.10)  The Fourth Circuit's decision shows that Plaintiffs' characterization is not accurate. *Longman*, 197 F.3d at 679-80 (*e.g.*, quoting company statement that said: "The fact is, Food Lion strictly forbids working off-the-clock or other wage/hour violations.  UFCW sponsored claims of extensive wage/hour violations are simply untrue.").

Related, but distinct, from the argument that the alleged intent misstatements were immaterial because the allegations of JLI's intent were already public, Plaintiffs' allegations of intent are insufficient because the allegations that they argue suffice to plead that intent were disclosed before the Class Period.  The JLI Defendants demonstrated in their opening brief that each allegation in the complaint that Plaintiffs allege establishes the JLI Defendants' intent was previously disclosed.  (JLI Br. 17)  *Plaintiffs do not dispute a single one*.  Thus, Plaintiffs do not deny that the following allegations were publicly disclosed before the Class Period: that JLI developed a product less prone to causing sore throats (Compl. ¶ 105, citing JLI Ex. 3); that JLI's products were more addictive (JLI Br. 6); that JLI's products were designed to look sophisticated (Compl. ¶ 122 n.69 & ¶ 123 n.72); that JLI's products included "youth-friendly" sweet flavors (JLI Ex. 4 at 1); that JLI used mint flavor to reach underage persons (JLI Ex. 15 at 4); that JLI hired a marketing firm that was an "authority on Millennial culture" (Compl. ¶ 226 n.133); and that JLI used social media to target youth (JLI Br. 6, 7, 9).  Consequently, it is not just that the allegation that JLI intended underage use was publicly disseminated before the Class Period; it is that the alleged facts that Plaintiffs contend demonstrate that intent were also publicly disseminated.  *Phillips*, 190 F.3d at 617 ("[E]ven lies are not actionable when an investor possesses information sufficient to call the

10

[mis]representation into question.").

Plaintiffs' argument also ignores that JLI's products and marketing were themselves public, easily accessible to investors. This is not a typical securities fraud case involving misrepresentations about non-public actions. Rather, the products and marketing that Plaintiffs argue targeted youth were all over the public domain—indeed, reaching the public is the point of selling a product and of advertising. Anyone could have seen JLI's advertising, and pre-Class Period press coverage resulted precisely because many journalists and academics did exactly that. (*E.g.*, Compl. ¶¶ 172 n.104, 174-75; JLI Ex. 5 (Washington Times, June 4, 2018); JLI Ex. 9 (New York Times, Aug. 27, 2018); JLI Ex. 15 (Forbes, Nov. 16, 2018)) To the extent that investors were interested in whether JLI had targeted underage users, they were free to judge the products and marketing for themselves.

Plaintiffs also have no response to the JLI Defendants' argument in their opening brief that JLI's alleged intent is not what was important to Altria shareholders. During the Class Period, concurrent with each of the four alleged "intent" misstatements, it was also disclosed that, regardless of intent, underage *use* of JLI products was occurring and was "the single biggest risk to our company." (JLI Ex. 20 at 5; JLI Br. 18-19) At that point, whether JLI intended such use was irrelevant, for it was occurring and its potential impact on JLI's business was widely known. Before the Class Period, the FDA had already announced its "largest coordinated enforcement effort in the FDA's history." (JLI Ex. 10 at 1) The New York Times had disclosed the existence of a federal investigation into JLI's marketing. (JLI Ex. 9 at 1) Two state attorneys general had announced investigations. (JLI Ex. 6; JLI Ex. 12) And private lawsuits had not only been filed, but courts had issued written decisions describing the alleged facts Plaintiffs contend were concealed. (JLI Br. 9) The lawsuits were also described in news reports, including specifically the allegation

11

that JLI targeted underage users.  (JLI Ex. 15 at 5)  Plaintiffs admit that "*it is self-evident* that regulatory actions and litigation over JUUL's illegal marketing to underage users would restrict future underage advertising and adversely affect sales."  (Pl. JLI Opp. 27 n.17 (emphasis added))  This admission demonstrates why Altria investors would not care about JLI's intent: because it was already public before the Class Period that underage *use* had led to regulatory scrutiny and private lawsuits.

Finally, Plaintiffs argue that "[e]ven assuming … these statements were immaterial … courts … h[old] that repeated assertions about the same topic can convert even immaterial statements into actionable misstatements."  (Pl. JLI Opp. 19-20)  But the precedent Plaintiffs cite concerns the separate issue of puffery—statements that are so subjective or non-verifiable that investors ordinarily do not rely on them.  (*Id.*, *citing In re Signet Jewelers*, 2018 WL 6167889, *11-12 (S.D.N.Y. Nov. 26, 2018); *In re BHP Billiton*, 276 F. Supp. 3d 65, 79-80 (S.D.N.Y. 2017); *Lapin v. Goldman Sachs*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006))  These decisions have nothing to do with the argument that statements were immaterial because the allegations had already been made public.  The JLI Defendants did not argue that the intent statements were puffery, so these decisions do not apply.

### B.     Plaintiffs Do Not Allege With Particularity That The JLI Defendants Made A False Or Misleading Statement.

Independent of materiality, Plaintiffs' response does not show they have pled with partic-ularity that any alleged misstatement was false or misleading.  (JLI Br. 20-21)  Plaintiffs offer no response to the JLI Defendants' argument regarding the alleged misstatement about the "message" Altria's investment in JLI sent.  (*Id.* at 20)  And regarding the four alleged "intent" misstatements, Plaintiffs argue only that "the well-pled facts regarding JUUL's product design, nicotine formula-tion and marketing belie any argument that it was never the JUUL Defendants' intent to have youth

12

use JUUL's products."  (Pl. JLI Opp. 16)  But the alleged facts regarding JLI's product design, nicotine formulation, and marketing were all public before the Class Period.  *Supra* at 10.  If those allegations establish intent, then the alleged intent was known before the Class Period, and cannot be the basis for securities fraud.  *See Bank of Am.* 980 F. Supp. 2d at 577.  Thus, Plaintiffs cannot rely on those allegations to plead falsity—and they lack any other allegations.  As a result, for the reasons explained in the JLI Defendants' opening brief, Plaintiffs do not plead with particularity that JLI intended to target underage persons.

III.    **Plaintiffs Do Not Plead With Particularity That The JLI Defendants Engaged In Fraudulent Conduct In Violation Of SEC Rule 10b-5(a) and (c).**

In opposing dismissal of their claim for fraudulent conduct under SEC Rule 10b-5(a) and (c), Plaintiffs concede that their allegation concerns supposed conduct directed at persons other than Altria investors.  (Pl. JLI Opp. 13 ("The JUUL Defendants embarked on an aggressive scheme to addict youth to their product in order to boost sales and market share."))  Consequently, their claim is foreclosed by the Supreme Court's decision in *Stoneridge*, which held that a claim for fraudulent conduct under SEC Rule 10b-5(a) and (c) must be based on conduct that occurred in the "securities markets," not other "realms."  *Stoneridge Inv. Partners v. Scientific-Atlanta*, 552 U.S. 148, 161 (2008).

Plaintiffs seek to reimagine *Stoneridge*, asserting that its analysis applies only to conduct "without connection to a public statement."  (Pl. JLI Opp. 14)  This is inaccurate: The alleged fraudulent conduct in *Stoneridge* was "draft[ing] documents to make it appear [that] the transac-tions were unrelated and conducted in the ordinary course of business" specifically so that a com-pany's "quarterly reports would meet Wall Street expectations."  *Stoneridge*, 552 U.S. at 154.  If Plaintiffs' view of *Stoneridge* were correct, *any* unlawful conduct—under federal, state, or foreign law—by a public company (or that affects a public company, on Plaintiffs' theory of statutory

13

standing) would *also* be securities fraud. This is the very result *Stoneridge* rejected. *Id*. at 161. As the Court explained: "Were the implied cause of action to be extended to the practices described here, … there would be a risk that the federal power would be used to invite litigation beyond the immediate sphere of securities litigation and in areas already governed by functioning and effective state-law guarantees." *Id*. So too here. The supposed deceptive conduct of which Plaintiffs accuse the JLI Defendants did not occur in the securities markets.[7] Permitting such alleged conduct to become the subject of securities fraud claims would permit what *Stoneridge* forbade.

Finally, for conduct to be fraudulent under Rule 10b-5(a) and (c), it must be "deceptive." Plaintiffs argue that the JLI Defendants "embarked on an aggressive scheme to addict youth to their product in order to boost sales and market share." (Pl. JLI Opp. 13) But Plaintiffs do not allege JLI misstated sales or falsely attributed sales to adult users. Nor do they explain how such alleged conduct by a private company constituted a scheme to deceive the public securities market. This distinguishes decisions like *IBEW Local 90 v. Deutsche Bank*, 2013 WL 1223844 (S.D.N.Y. Mar. 27, 2013), and *In re Eletrobras Securities*, 245 F. Supp. 3d 457 (S.D.N.Y. 2017), where the allegations were of conduct that caused the corporation's publicly disclosed financial statements to be false.[8]

---

[7] This distinguishes *In re Galena Biopharma*, 117 F. Supp. 3d 1145 (D. Or. 2015) (discussed at Pl. JLI Opp. 13). Although Plaintiffs contend the allegation of fraudulent conduct there was of "a misleading promotional campaign," in actuality it was of conduct to "place misleading articles *on investor websites touting Galena*." *Id*. at 1158 (emphasis added). Thus, the alleged fraudulent conduct was in the securities markets, unlike the conduct alleged here.

[8] These decisions are also inapposite for additional reasons. The conduct alleged in *IBEW* was directly within the realm of securities law—the allegation was that Deutsche Bank had knowingly securitized poor-quality mortgages into mortgage-backed securities. *IBEW*, 2013 WL 1223844 at *13. And *Eletrobas* is even further afield, for there "the defendants d[id] not appear to dispute that [defendant] allegedly committed a deceptive or manipulative act in furtherance of the alleged scheme to defraud." 245 F. Supp. 3d at 471. The court thus had no occasion to discuss the requirements for liability for fraudulent conduct in the first place.

14

**IV.    Plaintiffs Do Not Plead Facts Giving Rise To A "Strong Inference" Of Scienter.**

Plaintiffs do not dispute that they must plead with particularity facts that give rise to a "strong inference" that the JLI Defendants acted with deceptive intent.  (JLI Br. 23-24)  Nor do they dispute that such intent must have been to deceive Altria investors specifically.  (*Id.*)  Plaintiffs' allegations are deficient.

As an initial matter, Plaintiffs do not adequately plead that the JLI Defendants had any motive to deceive Altria shareholders.  In their complaint, Plaintiffs allege the JLI Defendants had a motive because JLI "stood to benefit from Altria's success, as part of its agreement with Altria provided it with access to Altria's retail, marketing and distribution apparatus."  (Compl. ¶ 527)  But Plaintiffs fail to explain how a supposed attempt to fraudulently inflate Altria's stock price had any effect on Altria's retail, marketing, or distribution.  (JLI Br. 26-27; Pl. JLI Opp. 30)  Thus, any interest JLI supposedly had in those aspects of Altria does not imply JLI had any motive to defraud Altria's shareholders (or anyone else) about the value of Altria's stock.

Plaintiffs also offer a new theory of motive: the JLI Defendants were motivated "to create the illusion that they were not responsible for underage customers using JUUL products and thereby shield themselves from litigation liability and regulatory action."  (*Id.*)  However, this does not state any motive to deceive *Altria shareholders*.  And it is not a "cogent" motive to deceive *anyone*. *Tellabs v. Makor Issues*, 551 U.S. 308, 309 (2007) (to constitute a "strong" inference, an allegation must be "cogent").  JLI was *already* publicly facing litigation and regulatory action before the Class Period, and the alleged misstatements were not going to "shield" JLI or its officers from liability to regulators or private plaintiffs if their acts were wrongful or the allegations against them in those actions could be proven.

In addition, Plaintiffs do not dispute that the Court must consider *all* Defendants' public statements when considering whether the inference of scienter is "at least as compelling as any

15

opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 309; *Yates v. Mun. Mortg.*, 744 F.3d 874, 892 (4th Cir. 2014). Yet they offer no response to the JLI Defendants' repeated acknowledgements throughout the Class Period that there was underage use of JLI products and that it was a problem for JLI's business. (JLI Br. 25) Indeed, Defendant Monsees described it as "the single biggest risk to our company." (*Id.*) JLI also said that, while it did not intend underage use, "numbers are what matter, and the numbers tell us underage use of e-cigarette products is a problem." (JLI Ex. 17 at 1) These disclosures affirmatively dispel any inference that the JLI Defendants sought to deceive Altria investors "into believing that JUUL's own actions were not contributing to the youth vaping epidemic," as Plaintiffs assert. (Pl. JLI Opp. 20)[9] People trying to hide a problem generally do not describe it as the biggest risk to their company. "[T]he PSLRA neither allows nor requires us to check our disbelief at the door." *Nguyen v. Endologix*, 962 F.3d 405, 415 (9th Cir. 2020).

Plaintiffs' scienter argument recycles their allegations regarding the design of JLI's products. (Pl. JLI Opp. 26-27) The fundamental problem with this argument is that *all* those allegations were disclosed before the Class Period, as were the regulatory investigations and lawsuits actually *asserting* those allegations against JLI. (JLI Br. 5-10) Indeed, Plaintiffs argue, citing an article published *in 2015*, that JLI "was frank about its intent and ability to follow similar patterns of Big Tobacco's now illegal marketing practices." (Docket #126 at 4, *citing* JLI Ex. 1) Being "frank" is the opposite of deceptive intent. Plaintiffs allege the JLI Defendants were trying to conceal that these alleged facts "would result in regulatory action, litigation and other actions that would harm sales of JUUL products and cause other economic and reputational fallout for JLI and

---

[9] It also dispels any inference that the JLI Defendants' supposedly fraudulent *conduct* (*supra* at 13-14) was intended to deceive Altria investors about what contributed to JLI's performance. These statements were candid about the underage use figures *and the need to combat* them.

16

Altria." (Compl. ¶ 526)  Plaintiffs simply ignore the fact that regulatory and litigation actions *had already occurred*, and were publicly disclosed.  As a result, these allegations cannot establish a strong inference of deceptive intent during the Class Period, which is what Plaintiffs must establish to satisfy this element of their claim.  Regardless, at the least, "[w]here, as here, red flags … are public knowledge, this fact negates or significantly undercuts any inference of scienter."  *Knurr v. Orbital ATK*, 294 F. Supp. 3d 498, 505 (E.D. Va. 2018).[10]

As part of their allegations of misconduct, Plaintiffs again argue that they allege "Monsees and Bowen studied the Big Tobacco documents made public after the MSA, and understood Big Tobacco's effective efforts in terms of product design and marketing to underage consumers." (Pl. JLI Opp. 27)  Plaintiffs cite ¶ 88 of the complaint for that proposition, but, again, the source for that allegation predates the Class Period, by three years, and thus was known by investors long before the Class Period.  (JLI Br. 17)  Plaintiffs offer no response to Defendants' showing that their allegations do not plead with particularity that Monsees or Bowen ever stated they analyzed the cigarette industry's marketing or advertising practices.  (*Id*. at 20-21)  Monsees and Bowen are entitled to dismissal for this reason alone.  And as to these individuals, the complaint is woefully insufficient to show scienter—a point Plaintiffs do not refute in their opposition.  *Matrix Capital v. BearingPoint*, 576 F.3d 172, 182 (4th Cir. 2009) ("to the extent a plaintiff alleges fraud claims against individual defendants, the plaintiff must allege acts supporting a strong inference of scienter as to each defendant").

Finally, Plaintiffs argue that they allege "a scheme on the part of the Altria and JUUL Defendants to mislead regulators into believing that mint flavored JUULpods were not adding to

---

[10] Plaintiffs argue *Knurr* is inapposite because the defendant there "did not know its accounting methodologies were fraudulent." (Pl. JLI Opp. 27 n.16)  This has nothing to do with the analysis the JLI Defendants cite, and does not distinguish the decision.

17

the youth vaping epidemic." (Pl. JLI Opp. 28) This argument apparently concerns Plaintiffs' claim for fraudulent conduct, for Plaintiffs do not argue they allege any misstatements about mint flavor. However, the allegation that JLI was using mint flavor to appeal to underage users was disclosed before the Class Period. (JLI Ex. 15 at 4)[11] Moreover, by Plaintiffs' own account, this allegation is of intent to mislead *regulators*. Thus, it does not establish intent to deceive Altria investors.

Regardless, Plaintiffs' allegation does not establish intent to mislead anyone. The allegation pleads that JLI made arguments to the FDA based on a study it conducted. (Compl. ¶¶ 389-91) Plaintiffs allege that JLI had *other* data that was "inconsistent" with the study data. (*Id.*) This does not establish any scheme to deceive participants in the securities market. Plaintiffs do not allege the data JLI presented to the FDA was false or altered; they simply allege *other* data supported the opposite view. Corporations (and individuals, for that matter) are permitted to make arguments to government based on data that favors them; there is no obligation to present unfavorable data as well. Plaintiffs' allegations do not create a strong inference of deceptive intent, but only of a company engaged in permissible interaction with the government. Moreover, Plaintiffs themselves allege that the "other data" which proved JLI's data misleading was published "[j]ust a few days after JLI submitted the misleading Youth Prevalence Study"—well before the Class Period. (Compl. ¶ 392) Thus, Plaintiffs cannot argue there was any deception.

## V.    Plaintiffs Do Not Adequately Plead Loss Causation.

Finally, Plaintiffs all but ignore the JLI Defendants' loss causation argument, claiming that the argument is "fact-specific." (Pl. JLI Opp. 34) But the argument is appropriately specific to

---

[11] *See also* Compl. ¶ 149 ("it was public knowledge that mint and menthol have a well-documented history of facilitating youth tobacco use"). Thus, Plaintiffs' argument that Burns' scienter is established by his statement that "when customers don't find mango they buy mint" is faulty. (Pl. JLI Opp. 33) Stating what is already "public knowledge" does not indicate deceptive intent.

18

Plaintiffs' allegations, which fail to plausibly plead that the "truth" about any alleged misstatements or conduct was revealed on any of the eight supposed loss causation dates. (JLI Br. 30-33, addressing each of the eight days individually) Plaintiffs do not dispute that they must allege a connection between fraudulent statements or conduct and a corrective disclosure that is sufficient "to enable the court to evaluate whether the necessary causal link exists." (Pl. JLI Opp. 34)

Plaintiffs appear to abandon any argument that the "truth" about the supposed fraud was revealed on any of the eight alleged loss causation days, arguing instead that they "plead a materialization of the risk." (Pl. JLI Opp. 34) Their argument fails for each alleged loss causation date, for one of two reasons.

First, for many loss causation dates, Plaintiffs do not allege any connection between the risk that supposedly materialized and the allegedly fraudulent statements or conduct. For instance, on April 3, 2019, the FDA announced an investigation of people suffering seizures after using electronic nicotine devices. (JLI Br. 31) But Plaintiffs do not allege facts showing such an investigation or such supposed effects of electronic nicotine devices were risks concealed by the supposedly false statements about whether JLI intended underage use or supposedly fraudulent conduct to encourage the FDA not to regulate mint flavor.

Second, for the remaining loss causation dates, Plaintiffs do not allege that the risk that supposedly materialized was previously unknown. *See Katyle v. Penn Nat'l Gaming*, 637 F.3d 462, 477 (4th Cir. 2011) (loss causation based on materialization of risk must be of "a concealed risk"). For instance, on August 29, 2019, the FTC announced an investigation into whether JLI marketed to youth. (JLI Br. 31) Plaintiffs cannot credibly contend that the risk of a regulatory investigation into JLI's marketing was not known by investors at that point; by that time, multiple such investigations had *already* been disclosed, and Plaintiffs themselves argue the risk of harm

19

from regulatory actions was "self-evident." *Supra* at 12; Pl. JLI Opp. 27 n.17.  Another alleged loss causation date is September 12, 2019, when New Jersey became "the latest state to restrict e-cigarette use."  (Compl. ¶ 506; JLI Br. 32)  But, again, Plaintiffs do not allege that the risk of regulatory action limiting electronic nicotine devices was not known by investors at that time; indeed, the fact that New Jersey was the "latest" state indicates that other states had already done so.  On September 25, 2019, Plaintiffs argue, it was disclosed that JLI would halt all U.S. advertising.  (Pl. JLI Opp. 35)  However, this risk too was previously disclosed.  Specifically, on July 25, 2019, Monsees explained in public testimony that "the single biggest risk to our company is that unabated growth in underage usage will cause us to lose our ability to reach our true intended market of adult smokers."  (JLI Ex. 20 at 5)  In other words, he explained the risk that underage use and the associated investigations would adversely impact JLI's ability to market *to adults*.  Thus, the risk that Plaintiffs allege materialized was not concealed previously.

## Conclusion

Plaintiffs' claims against the JLI Defendants should be dismissed with prejudice.

20

Dated: November 2, 2020

Respectfully submitted,

 /s/ Brian C. Riopelle
Brian C. Riopelle (VSB No. 36454)
Brian E. Pumphrey (VSB No. 47312)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com

Eugene Illovsky (admitted pro hac vice)
Kevin Calia (admitted pro hac vice)
BOERSCH & ILLOVSKY LLP
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Tel:  (415) 500-6640
Fax: (415) 967-3062
eugene@boersch-illovsky.com
kevin@boersch-illovsky.com

*Counsel for Defendant Adam Bowen*

 /s/ K. Ross Powell
W. Neil Eggleston (VSB #18367)
Joshua Z. Rabinovitz
Thomas P. Weir
K. Ross Powell (VSB #89495)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington D.C. 20004
(202) 389-2000
Neil.Eggleston@kirkland.com
Joshua.Rabinovitz@kirkland.com
Tom.Weir@kirkland.com
Ross.Powell@kirkland.com

*Counsel for Defendant Juul Labs, Inc.*

 /s/ Robert A. Angle
Robert A. Angle (VBS #37691)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1246
Robert.Angle@troutman.com

Elliot R. Peters (admitted pro hac vice)
Eric H. MacMichael (admitted pro hac vice)
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Tel: (415) 391-5400
Fax: (415) 397-7188
epeters@keker.com
emacmichael@keker.com

*Counsel for Defendant Kevin Burns*

21

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2020, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF System, which will send a Notice of Electronic

Filing to all counsel of record.


*/s/ K. Ross Powell*
K. Ross Powell