IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GABBY KLEIN, DONALD SHERBONDY, SARAH SHERBONDY and CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALTRIA GROUP, INC., HOWARD A. WILLARD III, WILLIAM F. GIFFORD, JR., JUUL LABS, INC., ADAM BOWEN, JAMES MONSEES, KEVIN BURNS, and K.C. CROSTHWAITE,<br><br>Defendants. | Case No. 3:20-cv-00075-DJN |

**JAMES MONSEES' JOINDER AND REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

Elizabeth M. Anderson (Va. Bar No. 84159)
**Orrick, Herrington & Sutcliffe LLP**
Columbia Center
1152 15th Street, N.W.
Washington, Dc 20005-1706
Telephone:   +1 202 339 8400
Facsimile:   +1 202 339 8500
emanderson@orrick.com

Walter F. Brown, Jr. (*admitted pro hac vice*)
James N. Kramer (*admitted pro hac vice*)
**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759
wbrown@orrick.com
jkramer@orrick.com

*Attorneys for Defendant James Monsees*

## TABLE OF CONTENTS

Pages

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

      A.    Mr. Monsees Is Not The "Maker" Of JLI's December 28, 2018 Press
          Release Or JLI's September 24, 2019 Statement To The L.A. Times................... 2

      B.    Mr. Monsees' Congressional Testimony Was Not Made "In Connection
          With The Purchase Or Sale" Of Altria Securities, And Is Otherwise
          Shielded From Liability By The *Noerr-Pennington* Doctrine .............................. 6

      C.    The Complaint Does Not Allege Specific Facts Creating A "Strong
          Inference" That Mr. Monsees Acted With Scienter To Defraud Altria's
          Investors ............................................................................................................ 10

      D.    The Complaint Also Fails To Allege Any Facts To Show That Mr.
          Monsees Participated In A Scheme To Defraud Altria Investors ........................ 13

      E.    The Complaint Fails To Plead Facts Establishing That Mr. Monsees Was
          A Control Person Of JLI ..................................................................................... 14

III.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Banco Bradesco S.A. Securities Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)......................................................................5, 6

*In re Cable & Wireless, PLC Sec. Litig.*,
321 F. Supp. 2d 749 (E.D. Va. 2004) ...........................................................................5

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
56 F. Supp. 3d 549 (S.D.N.Y. 2014)..............................................................................2

*Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*,
964 F. Supp. 2d 1128 (N.D. Cal. 2013) ......................................................................11

*City of Columbia v. Omni Outdoor Advert., Inc.*,
499 U.S. 365 (1991)......................................................................................................9

*City of Pontiac Gen. Emps. Ret Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012)...........................................................................6

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)......................................................................................................8

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)...................................................................................11, 12

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976)....................................................................................................14

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ........................................................................6, 14

*In re GlenFed, Inc. Sec. Litig.*,
60 F.3d 591 (9th Cir. 1995) ..........................................................................................5

*Hosp. Bldg. Co. v. Trs. of Rex Hosp.*,
691 F.2d 678 (4th Cir. 1982) ........................................................................................9

*In re Impinj, Inc., Sec. Litig.*,
414 F. Supp. 3d 1327 (W.D. Wash. 2019)......................................................................4

*In re Indep. Energy Holdings PLC Sec. Litig.*,
154 F. Supp. 2d 741 (S.D.N.Y. 2001)............................................................................4

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
432 F. Supp. 2d 571 (E.D. Va. 2005) ..........................................................................13

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Janus Capital Grp. v. First Derivative Traders*,
    564 U.S. 135 (2011) .................................................................................................. *passim*

*Mark Aero, Inc., v. Trans World Airlines, Inc.*,
    580 F.2d 288 (8th Cir. 1978) ...................................................................................10

*Nathanson v. Polycom, Inc.*,
    87 F. Supp. 3d 966 (N.D. Cal. 2015) .......................................................................11

*In re Nature's Sunshine Prods. Sec. Litig.*,
    486 F. Supp. 2d 1301 (D. Utah 2007) ......................................................................11

*Nguyen v. Endologix, Inc.*,
    962 F.3d 405 (9th Cir. 2020) ...................................................................................12

*Or. Nat. Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ...................................................................................10

*Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*,
    756 F.2d 986 (4th Cir. 1985) .....................................................................................8

*In re Questcor Sec. Litig.*,
    2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) .............................................................6

*Reese v. BP Expl. (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011) .....................................................................................4

*Ret. Sys. v. EnergySolutions, Inc.*,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011) ....................................................................2, 4

*Rok v. Identiv, Inc.*,
    2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir.
    2018) ........................................................................................................................12

*Rowinski v. Salomon Smith Barney Inc.*,
    398 F.3d 294 (3d Cir. 2005) ......................................................................................7

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    351 F. Supp. 2d 334 (D. Md. 2004) ...........................................................................5

*Sagez v. Glob. Agric. Invs., LLC*,
    2014 WL 3779072 (N.D. Iowa July 31, 2014) ..........................................................6

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*,
  2020 WL 571724 (D. Md. Feb. 4, 2020) .................................................................5

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*,
  941 F. Supp. 1369 (S.D.N.Y.1996)........................................................................15

*Todd v. STAAR Surgical Co.*,
  2016 WL 6699284 (C.D. Cal. Apr. 12, 2016) .........................................................4

*Tuosto v. Philip Morris USA Inc.*,
  2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)..............................................8, 9, 10

*U.S. Football League v. Nat'l Football League*,
  1986 WL 5623 (S.D.N.Y. May 15, 1986) ...............................................................8

*United States v. Philip Morris USA Inc.*,
  566 F.3d 1095 ..........................................................................................................9

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019) ...................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 3058563 (N.D. Cal. July 19, 2017)...........................................................4

*In re Willis Towers Watson Plc Proxy Litig.*,
  439 F. Supp. 3d 704 (E.D. Va. 2020) .............................................................14, 15

*Yates v. Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) .................................................................................13

**Rules and Statutes**

Fed. R. Civ. P. Rule 9(b).................................................................................. *passim*

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ................................ *passim*

Securities and Exhange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5 ........................... *passim*

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ......................... *passim*

iv

Defendant James Monsees joins and incorporates by reference the Reply Brief filed by JUUL Labs, Inc. ("JLI" or "JUUL"), Adam Bowen, and Kevin Burns (the "JLI Reply") in support of their Motion to Dismiss (the "JLI Motion to Dismiss"), and submits this Reply Brief in support of his separate Motion to Dismiss (the "Motion") Plaintiffs' Consolidated Class Action Complaint for Violations of Federal Securities Laws (the "Complaint").

## I.      **INTRODUCTION**

The JLI Motion to Dismiss and Reply offer a host of reasons why Plaintiffs cannot maintain securities fraud claims against the JLI Defendants, including Mr. Monsees.  Plaintiffs, as purchasers of Altria securities, lack statutory standing to bring securities fraud claims against the JLI Defendants for statements made about JLI's—not Altria's—separate business.  And, in any event, the Complaint fails to allege facts to show that the alleged misstatements attributed to the JLI Defendants were material, false or misleading when made, or the cause of Plaintiffs' alleged losses.  Each of those reasons requires dismissal of the claims against the JLI Defendants.

Mr. Monsees' opening brief in support of his Motion shows that there are additional, independent reasons why Plaintiffs' claims must be dismissed as to him.  Plaintiffs seek to hold Mr. Monsees liable for two alleged misstatements made by JLI, but the Complaints fails to allege any facts showing that Mr. Monsees was the "maker" of those corporate statements, *i.e.*, that he had "ultimate authority" over them, including their content and whether and how to communicate them, as required by *Janus Capital Grp. v. First Derivative Traders*, 564 U.S. 135 (2011). Plaintiffs also challenge Mr. Monsees' testimony to Congress regarding JLI's business, but his testimony is not actionable in this lawsuit because it was not made "in connection with the purchase or sale of" Altria securities, as required by Section 10(b) and Rule 10b-5, and the *Noerr-Pennington* doctrine otherwise shields his testimony from liability.  Moreover, the Complaint does not allege any specific facts to create a "strong inference" that Mr. Monsees acted with the intent to defraud Altria investors, as required by the Private Securities Litigation Reform Act ("PSLRA").

Plaintiffs' opposition does nothing to rebut those reasons for dismissal.  Rather, it relies on readily distinguishable cases that, unlike here, involved Section 10(b) and Rule 10b-5 claims

1

against defendants that made intentional misrepresentations to investors about the company in which the plaintiffs had actually invested. Plaintiffs cannot cite any case that permitted a securities fraud claim like the one asserted against Mr. Monsees, where the only alleged misstatement that was made by the defendant was made in connection with testimony to Congress (not the purchase or sale of any security), and where that misstatement was about a company in which the plaintiffs had not invested. No such case exists because such an unprecedented theory of liability would reach far beyond the scope of conduct proscribed by Section 10(b) and Rule 10b-5.

For these and other reasons detailed below and in Mr. Monsees' opening brief, as well as those set forth in the JLI Motion to Dismiss and Reply, the claims against Mr. Monsees should be dismissed. Because Plaintiffs' claims against Mr. Monsees suffer from fundamental defects that cannot be cured, their claims against him should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Mr. Monsees Is Not The "Maker" Of JLI's December 28, 2018 Press Release Or JLI's September 24, 2019 Statement To The L.A. Times

As the JLI Motion to Dismiss and Reply explain, JLI's December 20, 2018 press release and its September 24, 2019 statement to the L.A. Times are not materially false or misleading. But even if the Court assumes that they were, Mr. Monsees cannot be held liable for those statements because, as Mr. Monsees' opening brief demonstrates, the Complaint fails to allege facts establishing that he "made" either statement. *See* Dkt. No. 122 ("Monsees Br.") at 5. "[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142. Yet, the SAC lacks any specific facts to show that Mr. Monsees was that "person" with respect to the press release or the statement to the L.A. Times. *See* Monsees Br. at 6-7.

In response, Plaintiffs note that "[a]fter *Janus*, courts have consistently held that corporate officers who sign a document on behalf of the corporation 'make' the statements in those documents." Dkt. No. 127 ("Opp.") at 9. While that proposition may be true, Plaintiffs do not allege that Mr. Monsees "signed" JLI's press release or its statement to the L.A. Times, because

2

he indisputably did not.  Plaintiffs also note that in certain situations there can be more than one "maker" of a statement.  *See id.* at 8-9.  But as Plaintiffs' cases make clear, such a situation arises where (i) multiple individual defendants signed the same misstated document, *see City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011), or (ii) the company's statements are "*also* attributable" to a group of individual defendants who are specifically alleged to have "*cause[d]* [the company] to make false [] statements by *instructing it to do so*," *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 56 F. Supp. 3d 549, 558-59 (S.D.N.Y. 2014) (emphasis added).  Here, as discussed, Mr. Monsees did not sign any alleged misstatement, and there are no specific facts alleged to show that he "caused" or "instructed" JLI to make the challenged press release or L.A. Times statement.  Rather, the Complaint merely offers the conclusory assertion that "[t]he JUUL Individual Defendants possessed the power and authority to control the contents of JUUL's press releases and other market communications," and that, "[b]ecause of their positions of control and authority, the JLI Individual Defendants were able to and did, directly or indirectly, control the content of the statements of JLI."  Compl. ¶¶ 34, 579.  As Mr. Monsees' opening brief shows, courts in the Fourth Circuit and elsewhere have repeatedly held that such boilerplate, group-pled allegations are insufficient to plead that an individual was the maker of a corporate statement because they are inconsistent with the pleading requirements of the PSLRA, Rule 9(b), and *Janus*.  *See* Monsees Br. at 6-7 & n.2 (collecting cases).[1]

Plaintiffs also argue that "even without a signature, a corporate official makes a statement if the official 'actually participated in and had authority over the [corporation's] filing process.'"  Opp. at 9 (quoting *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 3058563, at *8 (N.D. Cal. July 19, 2017) (quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011)).  Putting aside the fact that the Complaint does not allege any

---

[1] Plaintiffs argue that the "cases cited by Defendants are inapposite because plaintiffs there failed to allege that defendants had control over the statements," Opp. at n.5, but that is exactly the situation here: the Complaint does not contain any non-conclusory factual allegations specific to Mr. Monsees establishing that he had "control"—let alone the "ultimate authority" required by *Janus*—over JLI's December 20, 2018 press release or its September 24, 2019 statement to the L.A. Times.

3

facts to show that Mr. Monsees "actually participated in" *or* "had authority over" JLI's filing process, a review of the Ninth Circuit's decision in *Reese* makes clear that the district court in *Volkswagen* misstated the post-*Janus* law regarding "maker" status.  *See In re Impinj, Inc., Sec. Litig.*, 414 F. Supp. 3d 1327, 1336 n.4 (W.D. Wash. 2019) (noting that *Volkswagen* mistakenly relies on language from *Reese* regarding the Ninth Circuit's "pre-*Janus* test for 'maker'").  *Reese* recognized that *Janus* "sets the pleading bar even higher in private securities fraud actions seeking to hold defendants primarily liable," "that 'one who prepares or publishes a statement on behalf of another is not its maker,'" and that allegations that "the defendant was significantly involved in preparing the alleged misstatements [are] insufficient to state a claim for primary liability under Rule 10b-5."  643 F.3d at 693 n.8 (citation omitted).  Thus, to the extent *Volkswagen* holds that merely "participating in" and having some "authority over the [corporation's] filing process" is enough to deem an individual the "maker" of an unattributed corporate statement for purposes of Section 10(b) liability, *see* Opp. at 9, it must be rejected as contrary to *Janus*.

Plaintiffs further argue that Mr. Monsees was the "maker" of JLI's press release and its statement to the L.A. Times because "[h]igh level officials are *deemed to be makers* of a company's public statements … even if they have not expressly signed them."  *Id.* (emphasis added).  But, again, conclusory, group-pled position-based allegations are insufficient under the PSLRA, Rule 9(b), and *Janus.  See* Monsees Br. 6-7 & n. 2.  The cases that Plaintiffs cite to the contrary were either decided before *Janus*, and are therefore no longer good law, *see In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 767-68 (S.D.N.Y. 2001), or are readily distinguishable because they involved "specific factual allegations link[ing] the individual to the statement at issue," *see Todd v. STAAR Surgical Co.*, 2016 WL 6699284, at *11-12 (C.D. Cal. Apr. 12, 2016) (noting it was a "close call," but holding that defendant was the "maker" of corporate statements to FDA where "detailed" allegations established he had a "unique role as liaison [to] the FDA" and was "the person responsible for responding to the FDA's requests for information"); *EnergySolutions*, 814 F. Supp. 2d at 416-17 (directors who *signed* offering documents held to be the "makers" of statements in those documents).  Here, there are no specific

4

factual allegations to "link" Mr. Monsees to JLI's press release or its statement to the L.A. Times; the Complaint merely notes his status as a co-founder, former director and subordinate officer of JLI. *See* Compl. ¶ 28.[2]

Lastly, Plaintiffs invite the Court to apply the outdated "group-published information" doctrine and "presume" that Mr. Monsees, as one of the "JLI Defendants," was the maker of JLI's unattributed corporate statements. *See* Opp. at 11-12.[3] Plaintiffs note that the "Fourth Circuit has left open the possibility that 'group-published information' may be alleged in support of falsity," Opp. at 11 (citing *Dunn v. Borta*, 369 F.3d 421, 434 (4th Cir. 2004)), but conveniently omit the fact that "district courts in th[e] [Fourth] Circuit that have addressed the issue [have] decline[d] to apply the group published information doctrine, because it is inconsistent with the particularity and specificity required by the PSLRA and Rule 9(b)." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 370 (D. Md. 2004) (citations omitted); *see also In re Cable & Wireless, PLC Sec. Litig.*, 321 F. Supp. 2d 749, 773-74 (E.D. Va. 2004); *In re Sinclair Broad. Grp., Inc. Sec. Litig.*, 2020 WL 571724, at \*4 (D. Md. Feb. 4, 2020). In any event, as courts have recognized, the doctrine is foreclosed by *Janus*. *See, e.g., In re Banco Bradesco S.A. Securities Litig.*, 277 F. Supp. 3d 600, 639-40 (S.D.N.Y. 2017) (holding that the group-publishing "doctrine [did] not survive *Janus*"). This is because the doctrine "creates a presumption that group-published documents are 'the collective work' of corporate insiders," whereas *Janus* holds "that [mere] participation in the creation of a statement [is] not enough," and requires *specific* factual allegations to "determin[e] who among the many who participated in creating and disseminating a statement had the *ultimate authority* over what the statement said and whether and how it was communicated." *Id.* (emphasis

---

[2] Plaintiffs' argument that "applying *Janus* to intra-company liability … would defeat the purpose of Section 20(a) liability," Opp. at 11, is a *non-sequitur* that is unsupported by legal authority and ignores the fact that *Janus* and Section 20(a) posit two different, unrelated legal standards.

[3] Under the group published information doctrine corporate officers and directors who are alleged to be in day-to-day control of the company may be presumed, for pleading purposes, to be collectively responsible for a company's "group published" information such as prospectuses, registration statements, annual reports, press releases and other public filings. *See In re GlenFed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir. 1995).

added).  "[G]roup pleading would simply sweep in that entire group, if not an even larger one," and "is thus no longer viable."  *Id.*  at 640-41; *see also, e.g., In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1185 (D. Or. 2015) (holding a group of corporate insiders were not the "makers" of unattributed statements in the company prospectus where the complaint lacked specific allegations to show any defendant "had ultimate authority over the content of the Prospectus").[4]

At bottom, because the Complaint lacks specific facts establishing that Mr. Monsees had ultimate authority over JLI's December 20, 2018 press release or its September 24, 2019 statement to the L.A. Times, neither statement can form the basis of a securities fraud claim against him.

**B.    Mr. Monsees' Congressional Testimony Was Not Made "In Connection With The Purchase Or Sale" Of Altria Securities, And Is Otherwise Shielded From Liability By The *Noerr-Pennington* Doctrine**

As the JLI Motion to Dismiss and Reply demonstrate, Mr. Monsees' testimony to Congress on July 25, 2019 was neither false nor misleading.  Mr. Monsees' opening brief further demonstrates that his alleged misstatement to Congress is not actionable because it was plainly not made "in connection with" the purchase or sale of Altria securities, as required by Section 10(b) and Rule 10b-5, and because it is shielded from liability by the *Noerr-Pennington* doctrine.  *See* Monsees Br. at 7-9.

In response, Plaintiffs argue that Section 10(b)'s and Rule 10b-5's "in connection with" requirement must be "construed broadly and flexibly" to cover Mr. Monsees' Congressional

---

[4] Plaintiffs' claim that "Courts in the Second and Ninth Circuits *routinely* apply the [group publishing] doctrine in determining which officers are 'makers' of statements." Opp. at 12 (emphasis added).  In support of that proposition, Plaintiffs cite *City of Pontiac Gen. Emps. Ret Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012), a lone district court decision from the Second Circuit that was specifically rejected by other courts in that circuit because its holding is incompatible with *Janus*, *see, e.g.*, *Banco Bradesco*, 277 F. Supp. 3d at 640-41; and *Sagez v. Glob. Agric. Invs., LLC*, 2014 WL 3779072, at *20 (N.D. Iowa July 31, 2014), a district court decision from the *Eighth*—not Ninth—Circuit that relied exclusively on *City of Pontiac* to conclude that "the group pleading doctrine continues to be good law," *id.*  In fact, "district courts in th[e] [Ninth] circuit" (and Second Circuit)—like those in the Fourth Circuit— "have largely concluded that the [group published] doctrine is incompatible with the PSLRA." *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *9 (C.D. Cal. Oct. 1, 2013).

testimony because "'market professionals generally consider most publicly announced material statements about companies.'" Opp. at 25 (quoting *In re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153, 156 (2d Cir. 1998)). But that argument ignores the obvious gap in Plaintiffs' theory of liability; namely, that the challenged statement to Congress was *not* about the company in which Plaintiffs invested (Altria), but instead was about a *different* company (JLI), the securities of which Plaintiffs *did not purchase or sell*. *See* Compl. ¶ 498 ("We never wanted any[one] . . . under the legal age of purchase, to ever use JLI products"). All of Plaintiffs' cited authorities are readily distinguishable on that basis; in each case the alleged misstatements concerned the issuer whose securities the plaintiffs had purchased, and thus the statements were plainly made "in connection with" the purchase or sale of the securities at issue.[5] Plaintiffs cannot cite a single case where a statement to Congress about one company was deemed to have been made "in connection with the

---

[5] *See* Opp. at 25 (citing *Carter-Wallace*, 150 F.3d 153 ("Appellants' precise allegation is that Carter–Wallace's false advertisements … had an impact on the market price *of Carter–Wallace common stock*." (emphasis added)); *In re Ames Dep't Stores Inc. Stock Litig.*, 991 F.2d 953, 964-65 (2d Cir. 1993) ("Ames's statements made in conjunction with its May issuance … of debentures convertible into common stock were of a sort quite likely to influence the investing public's interest *in the company's* common stock as well" (emphasis added)); *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir. 1968) (Texas Gulf Sulphur press release made "in connection with" purchase or sale of *Texas Gulf Sulphur stock*); *McGann v. Ernst & Young*, 102 F.3d 390, 397 (9th Cir. 1996) (E&Y's "fraudulent audit report for CPC" was made "in connection with" purchase or sale of *CPC securities* where E&Y knew that "CPC would include this report in its Form 10–K filed with the SEC"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 66281, at \*18 (N.D. Cal. Jan. 4, 2017) ("allegedly false and misleading statements made on the Volkswagen emissions compliance stickers" held to be made "in connection with purchase or sale" *id.* at \* 3, of *Volkswagen stock*); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 822-23, 833-36 (N.D. Cal. 2019) (misleading statements in Facebook's privacy policy "made in connection with" the purchase or sale of *Facebook stock*); *SEC v. Stinson*, 2011 WL 2462038, at \*5 (E.D. Pa. June 20, 2011) (statements about certain ponzi scheme investment funds made through "direct solicitations via e-mail" held to be made "in connection with" purchase of or sale of same ponzi scheme investment funds)). Plaintiffs' reliance on *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294 (3d Cir. 2005) is misplaced because it merely decided whether the plaintiff's claims were preempted by the Securities Litigation Uniform Standard Act of 1998 ("SLUSA"). The court held that the plaintiff's claims were preempted by SLUSA because the complaint alleged that defendant, a securities broker-dealer, made material misrepresentations to its clients in investment research reports about various securities, and thus made misrepresentations "in connection with" the purchase or sale of securities, which is the standard for SLUSA preemption. *Id.* at 302-03.

7

purchase or sale" of a *different* company's securities.    That is not surprising given that Congressional testimony, let alone Congressional testimony about a company different from the one in which the plaintiffs invested, is not the type activity Section 10(b) and Rule 10b-5 seek to regulate.  *See* Monsees Br. at 9 & n.3.

Even if Mr. Monsees' statement to Congress could be deemed as having been made in connection with the purchase or sale of Altria securities—and it cannot be—the statement would still be shielded from liability by the *Noerr-Pennington* doctrine.  *See* Monsees Br. at 7-8. Plaintiffs argue that the doctrine is inapplicable here because Mr. Monsees "was not petitioning the government for any redress," but rather "Congress (the House Committee on Oversight and Reform) instigated the hearing for the purpose of furthering its 'investigation into JUUL's role in the youth nicotine addiction epidemic[]."  Opp. at 23.  But that argument is nonsensical, since Congress always "instigates its own hearing"—you cannot force Congress to hold a hearing—and "*Noerr–Pennington* protection has been extended to *all advocacy intended to influence government action*," *Tuosto v. Philip Morris USA Inc.*, 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007) (emphasis added), irrespective of who "instigates" the hearing, *see Ottensmeyer v. Chesapeake & Potomac Tel. Co. of Md.*, 756 F.2d 986, 992-93 (4th Cir. 1985) (doctrine protects "communications within a legislative, administrative or judicial forum"); *U.S. Football League v. Nat'l Football League*, 1986 WL 5623, at *1 (S.D.N.Y. May 15, 1986) ("testimony before Congress is a clear-cut example of solicitation of governmental action").  Tellingly, Plaintiffs cannot cite a single decision that refused to apply the doctrine because Congress or other governmental authority, and not the defendant, "instigated" the testimony.[6]

---

[6] Plaintiffs cite *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) for the proposition that the "*Noerr-Pennington* doctrine *only* applies to 'attempt[s] to persuade the legislature or the executive to take particular action." Opp. at 23 (emphasis added). But that is a misrepresentation of what *Noerr* said, which had nothing to do with whether a defendant must have "instigated" a government hearing.  *See Noerr*, 365 U.S. at 136 ("We think it equally clear that the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action"). In any event, Mr. Monsees' testimony makes clear that he *was* attempting to persuade Congress to take a particular action, namely, to "address[] the problem of youth vaping" through the "shared

Plaintiffs further argue that "even if" the *Noerr-Pennington* doctrine shielded statements to Congress, "it would still not apply here because of the 'sham' and 'fraud' exceptions to the doctrine." Opp. at 23. "Statements made in the course of petitioning Congress are considered a 'mere sham' when the actor making the statements does not have a true interest in the outcome of the effort to influence government" because the effort "is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Tuosto*, 2007 WL 2398507, at *5 (quoting *Noerr*, 365 U.S. at 144); *see also City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) ("The 'sham' exception … encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."). However, this exception to the *Noerr-Pennington* doctrine is inapplicable here because there are no allegations to show that Mr. Monsees did not have a "true interest" in the outcome of his effort to influence the government regarding underage vaping.[7]

Plaintiffs argue that merely alleging that Mr. Monsees gave "deliberately false" statements to Congress is enough to invoke the sham exception to the *Noerr-Pennington* doctrine. *See* Opp. at 23-24 (citing *Aldana v. RJ Reynolds Tobacco Co.*, 2007 WL 3010497, at *6 (D.S.C. Oct. 12, 2007); *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1124 ) (D.C. Cir. 2009)). But as the Fourth Circuit has held, for a "deliberately false" statement to trigger the sham exception, it must be "made with the requisite intent," which is the "*intent to abuse the administrative [or judicial or legislative] processes*." *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 691 F.2d 678, 687 (4th Cir. 1982) (emphasis added); *see also Philip Morris*, 566 F.3d at 1123 (sham exception applied where specific allegations showed that defendant's false statements to Congress were "not

---

effort of federal, state and local regulators, governments and . . . industry all working together." JLI Motion to Dismiss, Ex. 20 at 4, 6.

[7] The "fraud" or "unethical exception denies *Noerr–Pennington* protection to statements made while petitioning the government 'where the political activity involved illegal, corrupt or unethical means." *Tuosto*, 2007 WL 2398507, at *5 (citation omitted). Though Plaintiffs reference the fraud exception, they do not attempt to explain how it could apply here, where there are no allegations that the "political activity" addressed by Mr. Monsees' testimony—namely, stopping underage vaping—"involved illegal, corrupt or unethical means."

9

genuinely intended to influence government action"). Plaintiffs do not even suggest in conclusory fashion, much less allege any specific facts to show, that Mr. Monsees sought to subvert the legislative process, or that his statements to Congress were not made in pursuit of genuine political activity. To the contrary, the Complaint admits that the JLI Defendants' testimony to Congress was "focused on JUUL's mission to move smokers away from combustible cigarettes" and "the company's efforts to address the youth problem" through "'escalating' steps that it has taken to reverse this trend, such as supporting Tobacco 21 legislation, implementing heightened age verification controls on its website, and pulling flavors representing over 50% of its sales out of retail." Compl. ¶ 551. That testimony was given as part of a legitimate effort to influence government action, and therefore is shielded by the *Noerr-Pennington* doctrine. *See, e.g., Tuosto*, 2007 WL 2398507, at \*5 ("*Noerr–Pennington* protection has been extended to all advocacy intended to influence government action, including to allegedly false statements"); *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 535 (9th Cir. 1991) (sham doctrine inapplicable where defendants was not "exploiting the governmental process [but] genuinely seeking judicial relief"); *Mark Aero, Inc., v. Trans World Airlines, Inc.*, 580 F.2d 288, 297 (8th Cir. 1978) (even where "false and misleading statements" are alleged, if they were made in pursuit of "genuine political activity" they are shielded under *Noerr-Pennington*).

### C.    The Complaint Does Not Allege Specific Facts Creating A "Strong Inference" That Mr. Monsees Acted With Scienter To Defraud Altria's Investors

Mr. Monsees' opening brief further demonstrates that Plaintiffs' Section 10(b) and Rule 10b-5 claim against Mr. Monsees must also be dismissed because the Complaint does not allege particularized facts creating a strong inference that Mr. Monsees acted with the requisite scienter, *i.e.*, an intent to defraud Altria investors, as required by the PSLRA. *See* Monsees Br. at 9-12.

*First,* the PSLRA and Rule 9(b) do not permit "group pleading," yet the Complaint attempts to plead Mr. Monsees' alleged scienter by repeatedly lumping him together with "JLI" or the other "JLI Defendants," without any differentiation. *See id.* at 10 (citations omitted). Plaintiffs assert in a footnote that the "Complaint details the roles of each Defendant in the alleged fraudulent

conduct" at paragraphs "454-519," *see* Opp. at 26 n.15, but only one of those paragraphs mentions Mr. Monsees by name, and only to report what he said to Congress. *See* Compl. ¶ 498. In other words, the only allegation cited by Plaintiffs that specifically pertains to Mr. Monsees reveals *nothing* about his state of mind or alleged scienter.

*Second,* Plaintiffs were required to allege specific facts creating a strong inference that Mr. Monsees acted with "an intent to defraud *the plaintiffs* [*i.e.*, *Altria investors*] rather than some other group," *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (emphasis added), yet the Complaint offers *zero* factual allegations that might bear on Mr. Monsees' state of mind regarding Altria investors or any purported intent to deceive them, *see* Monsees Br. at 10-11. Plaintiffs cannot cite any allegation in the Complaint that would even *plausibly* suggest that Mr. Monsees sought to deceive Altria's investors—let alone that would create a "strong inference" that he did so, as required by the PSLRA. Instead, they argue that the Complaint alleges facts showing that Mr. Monsees "should have been aware that his statements would have misled Altria investors" because "his statements to Congress" post-dated Altria's investment in JLI and were "about a particularly sensitive issue for both Altria and JUUL." *See* Opp. at 31-32 (citing Compl. ¶¶ 456, 458, 464, 496, 498, 509). But nothing in those cited allegations—only one of which even mentions Mr. Monsees, and only to report what he said to Congress, *see* Compl. ¶ 498—"suggests that [Mr. Monsees] *thought that he could* mislead [Altria] investors with [his] statements" to Congress, as required to plead scienter in this case. *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1143 (N.D. Cal. 2013) (emphasis added).[8] Simply put, "[t]he scienter that the [Complaint] is

---

[8] Plaintiffs' reliance on *Nathanson v. Polycom, Inc.,* 87 F. Supp. 3d 966 (N.D. Cal. 2015) and *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301 (D. Utah 2007), *see* Opp. at 32, is misplaced. Both cases are inapposite because they involved alleged misstatements about, and allegations of a cover-up at, *the company whose investors were suing*. *See Nathanson,* 87 F. Supp. 3d at 979-80 (Polycom's former CEO's efforts to cover-up fraudulent expense reporting held to "provide[] minimal non-dispositive supporting evidence of scienter" regarding "misstatement of Polycom's operating expenses" caused by his fraudulent expense reporting); *Nature's Sunshine*, 486 F. Supp. 2d at 1311 (attempts by executives of NSP to cover up fraud at NSP "may or may not, in and of themselves, be sufficient to establish a strong inference of scienter," but together

required to allege is an intent to defraud [Altria] investors"—not an intent to deceive Congress about JLI's marketing to teens—and there is nothing in the Complaint to suggest that Mr. Monsees harbored such an intent. *See Rok v. Identiv, Inc.*, 2017 WL 35496, at *11 (N.D. Cal. Jan. 4, 2017), *aff'd*, 716 F. App'x 663 (9th Cir. 2018); *JP Morgan*, 553 F.3d at 198.

*Finally*, the absence of any plausible motive for *why* Mr. Monsees would want to defraud Altria's investors negates any inference of scienter. *See* Monsees Br. at 11-12.    As Plaintiffs would have it, Mr. Monsees made material misstatements about *JLI* in an effort to mislead *Altria* investors, despite the fact that he is not alleged to own Altria shares or to have personally gained *anything* from the alleged fraud.  Plaintiffs' theory "does not resonate in common experience," and "the PSLRA neither allows nor requires [the Court] to check [its] disbelief at the door." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 415 (9th Cir. 2020).  In response, Plaintiffs assert that the "JUUL Defendants" as a group "were motivated to misrepresent their intent with regard to marketing to underage customers in order to … shield themselves from litigation liability and regulatory action."  Opp. at 30 (citing Compl. ¶ 526).  But there are no facts alleged in the Complaint to support that assertion; indeed, the allegation that Plaintiffs cite does not even mention Mr. Monsees by name, let alone offer specific facts to show that he held such a motive. *See* Compl. ¶ 526 (conclusory assertion the "Individual Defendants had the motive and opportunity to perpetrate the fraudulent scheme described herein").  And even if there *were* any factual allegations to show that Mr. Monsees was motivated to "shield [himself] from litigation liability and regulatory action"—and there are none—Plaintiffs fail to explain how *defrauding Altria's investors* could possibly advance that goal.

Plaintiffs also assert that Mr. Monsees was  "motivated to perpetrate [a] scheme to defraud [Altria] investors … because JUUL stood to benefit from Altria's success," Opp. at 30, (citing Compl. ¶ 527), but there are no factual allegations specific to Mr. Monsees to support that assertion—paragraph 527 of the Complaint does not even mention Mr. Monsees by name, let alone

---

with other indicia showed executives' scienter regarding misstatement of NSP's financial statements caused by the fraud).

allege specific facts to substantiate that had such a purported motive. And, in any event, it is well-settled that such conclusory allegations of a "generalized motive, shared by most, if not all, corporate officers, is insufficient to plead scienter." *Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 591 (E.D. Va. 2005).

Finally, Plaintiffs argue that Mr. Monsees' "position within [JLI] adds to the cogent inference of scienter when viewed holistically," Opp. at 30-31, but the Fourth Circuit has made clear that "a pleading of scienter ... may not rest on a bare inference that a defendant must have had knowledge of the facts or must have known of the fraud given his or her position in the company," *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014) (citation omitted). Absent additional specific factual allegations regarding Mr. Monsees' allegedly culpable state of mind with respect to Altria's investors—which are utterly lacking here—Mr. Monsees' status as a co-founder, director and subordinate officer of JLI is not enough to plead the requisite strong inference that Mr. Monsees acted to defraud Altria's investors.

**D.    The Complaint Also Fails To Allege Any Facts To Show That Mr. Monsees Participated In A Scheme To Defraud Altria Investors**

Unable to allege that Mr. Monsees made an actionable misstatement with intent to deceive Altria's investors, the Complaint asserts, in utterly conclusory fashion, a "scheme" claim under subsections (a) and (c) of Rule 10b-5. *See* Compl. ¶ 575. But as Mr. Monsees' opening brief explains, such a claim against Mr. Monsees fails because it is subject to the heightened pleading requirements of Rule 9(b) and the PSLRA, and the Complaint does not even clearly allege what the alleged scheme was—apart from the three alleged misstatements discussed above—or how it was intended to deceive Altria investors, let alone allege specific facts to show that Mr. Monsees did anything in knowing furtherance of it. *See* Monsees Br. at 12-13. Nor does the Complaint allege any specific facts creating a strong inference that he acted with scienter. *Id.* at 13.

Plaintiffs' response does not even mention Mr. Monsees, or point to any factual allegations in the Complaint that might support a scheme claim against him, because such allegations do not exist (indeed, nearly all of the Complaint's allegations regarding Mr. Monsees concern his actions at JLI long before the Class Period began). *See* Opp. at 12-15; Compl. ¶¶ 6, 39, 88, 89, 91, 97,

13

201, 202, 551.  Instead, Plaintiffs assert that the "JUUL Defendants [were] embarked on an aggressive *scheme to addict youth to their product* in order to boost sales and market share."  Opp. at 13 (emphasis added).  But a purported "scheme to addict youth" to JLI's products does not state a claim for securities fraud.  *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 812 (N.D. Cal. 2019)  ("Plaintiffs argue that the 'gravamen of the CAC' is that LendingClub deceived '*borrowers*.'  That may be so, but for the CAC to pass muster in this securities fraud action, Plaintiffs must allege that *investors* were misled." (internal citation omitted)).  An alleged "scheme to addict youth" to vaping products is plainly *not* an alleged scheme to "manipulate" and "artificially inflate [Altria's] stock," *Galena Biopharma*, 117 F. Supp. 3d at 1193-94 (cited at Opp. at 13),[9] and thus subsections (a) and (c) of Rule 10b-5 have no application here, *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) (Section 10(b) and Rule 10b-5 require "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities").

### E.    The Complaint Fails To Plead Facts Establishing That Mr. Monsees Was A Control Person Of JLI

As Mr. Monsees' opening brief explains, Plaintiffs fail to state a Section 20(a) control person claim against Mr. Monsees both because (i) the Complaint fails to state a predicate violation of Section 10(b), and (ii) the Complaint fails to allege facts to show that Mr. Monsees was a "control person" of JLI.    *See* Monsees Br. at 13-14.  The Complaint merely alleges that Mr. Monsees was a co-founder, former director and subordinate officer of JLI, *see* Compl. ¶ 28, but courts have repeatedly held that such "status" allegations are insufficient to establish control under Section 20(a).  *See, e.g.*, *In re Willis Towers Watson Plc Proxy Litig.*, 439 F. Supp. 3d 704, 717

---

[9] Plaintiffs' other cited authorities are easily distinguishable for the same reason.  *See* Opp. at 13 (citing *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 2013 WL 1223844, at *13 (S.D.N.Y. Mar. 27, 2013)  (discussing alleged "scheme to defraud investors" of the company in which plaintiffs invested); *In re Coventry Healthcare, Inc. Sec. Litig.*, 2011 WL 1230998, at *17 (D. Md. Mar. 30, 2011) (complaint adequately alleged scheme claim against defendant who "conceal[ed] from the market" material facts about the company in which plaintiffs invested while simultaneously selling his company stock at artificially inflated prices)).

(E.D. Va. 2020) ("the '[s]tatus of defendants as directors, standing alone, is insufficient to establish their control'"); *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, 941 F. Supp. 1369, 1379 (S.D.N.Y.1996) (dismissing control person claims even though plaintiff alleged that defendant was a founder, creditor, and minority shareholder of the primary violator).

In response, Plaintiffs argue that Mr. Monsees is also "alleged to have aided in orchestrating the design of JUUL's products, and the marketing of the same based on his position as co-founder of JUUL," Opp. at 37, but that assertion, even if accepted as true, does not establish that Mr. Monsees "had the power to control the general affairs of [JLI] at the time [it] violated the securities laws" *or* "had the requisite power to directly or indirectly control or influence the specific corporate" action—in this case, issuing press releases and other corporate statements— "which resulted in the primary liability." *Willis Towers Watson*, 439 F. Supp. 3d at 717.  Because the Complaint lacks factual allegations establishing those required elements, the Section 20(a) claim against Mr. Monsees should be dismissed for this additional, independent reason.

## III.    CONCLUSION

For these reasons and those sets forth in Mr. Monsees' opening brief and in the JLI Motion to Dismiss and Reply, the claims against Mr. Monsees should be dismissed.  Because these core pleading failures cannot be cured, the claims should be dismissed with prejudice.

15

Dated: November 2, 2020                    **Orrick, Herrington & Sutcliffe LLP**


By:    /s/ *Elizabeth M. Anderson*
       Elizabeth M. Anderson,
       Bar No. 84159
       emanderson@orrick.com

Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500

Walter F. Brown, Jr. (*admitted pro hac vice*)
James N. Kramer (*admitted pro hac vice*)
**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA  94105
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759
wbrown@orrick.com
jkramer@orrick.com

*Attorneys for Defendant James Monsees*

16

## CERTIFICATE OF SERVICE

I certify that on this 2nd day of November, 2020, I caused to electronically filed the foregoing Reply in support of Defendant James Monsees' Motion to Dismiss Consolidated Class Action Complaint for Violation of the Federal Securities Laws with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ *Elizabeth M. Anderson*

Elizabeth M. Anderson
**Orrick Herrington & Sutcliffe LLP**
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone:    +1 202 339 8400
Facsimile:    +1 202 339 8500
emanderson@orrick.com

17