# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

GABBY KLEIN, DONALD SHERBONDY, SARAH SHERBONDY AND CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS, Individually and on Behalf of All Others Similarly Situated,

No. 3:20-cv-00075-DJN

*Plaintiffs*,

v.

ALTRIA GROUP, INC., HOWARD A. WILLARD III, WILLIAM F. GIFFORD, JR., JUUL LABS, INC., ADAM BOWEN, JAMES MONSEES, KEVIN BURNS, AND K.C. CROSTHWAITE,

*Defendants.*

## K.C. CROSTHWAITE'S MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE FOR CERTIFICATION UNDER 28. U.S.C. §1292(b), AND MEMORANDUM

Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, Defendant Kevin C. (K.C.) Crosthwaite, Jr. respectfully moves for partial reconsideration of the Court's March 12, 2021 Order, ECF No. 139 ("Order") partially denying Mr. Crosthwaite's motion to dismiss, ECF No. 123 ("MTD"). In the alternative, Mr. Crosthwaite requests that the Court certify its decision for interlocutory appeal under 28 U.S.C. § 1292(b). In support of this motion, Mr. Crosthwaite submits the following memorandum of law.

## INTRODUCTION

This Court dismissed Plaintiffs' Rule 10b-5(b) claims against Mr. Crosthwaite, holding that Mr. Crosthwaite was not responsible for any allegedly false or misleading statements or omissions. Memorandum Opinion ECF No. 140 ("Op.") at 27-28. But the Court denied Mr. Crosthwaite's motion to dismiss Plaintiffs' Rule 10b-5(a) and (c) scheme liability claims, finding sufficient Plaintiffs' allegations (i) that Mr. Crosthwaite "bore responsibility for" both the JLI investment and the mint study, and (ii) that "Altria Defendants" as a group had knowledge of JLI's purported illegal marketing practices. That decision, as applied to Mr. Crosthwaite, is erroneous because Plaintiffs fail to allege that Mr. Crosthwaite himself engaged in any deceptive acts as part of the alleged scheme, let alone that he did so with the intent to commit securities fraud. The decision is also erroneous insofar as it allows a plaintiff to proceed with securities *fraud* allegations against an individual defendant merely based on his alleged job responsibilities and the alleged knowledge of a group of *other* defendants.

Mr. Crosthwaite does not belong in this case. Plaintiffs named Mr. Crosthwaite in their lawsuit based on mistaken allegations that he signed Altria's SEC filings. He did not. Nor was he the JLI CEO at the time of the alleged misconduct. Plaintiffs corrected their erroneous pleading, and this Court correctly held that Mr. Crosthwaite was not responsible for any statements and could not be held liable under Plaintiffs' theory of "statement" liability. But without Mr.

Crosthwaite having responsibility for any statements, the remainder of the Complaint must fail too because it lacks any other allegations showing that Mr. Crosthwaite acted fraudulently as part of the alleged scheme.

In its scheme liability ruling, the Court found that Plaintiffs adequately alleged a scheme "to deceive the FDA into not regulating mint." Op. at 31. And the Court found that Plaintiffs adequately alleged Mr. Crosthwaite participated in that supposedly fraudulent scheme along with all the other defendants. *Id.* at 31-32. The Court erred in applying this scheme liability ruling to Mr. Crosthwaite, however, because although plaintiffs make allegations about Mr. Crosthwaite's job responsibilities, they have no allegations whatsoever that he actually engaged in any deceptive conduct, let alone in some conduct that was knowingly or recklessly intended to deceive the FDA. As to Mr. Crosthwaite's investment responsibilities, Plaintiffs do not allege that the investment itself was the offending scheme (and such an allegation would not be credible—consummating a transaction is not itself an inherently deceptive act). Plaintiffs also do not allege that Mr. Crosthwaite intended any part of the investment, including "pulling" flavored pods, to deceive the FDA. Mr. Crosthwaite's alleged "responsibility" for the investment therefore cannot be enough. As to his mint study responsibilities, Plaintiffs do not allege that Mr. Crosthwaite knew the mint study was supposedly designed to "deceive the FDA into not regulating mint" or that any part of the mint study was "falsified." *Id.* at 31-32. Indeed, Plaintiffs do not allege with any specificity that Mr. Crosthwaite had any role at all in conducting the mint study. To the contrary, Plaintiffs allege only that Mr. Crosthwaite was previously the Chief Growth Officer of the entity responsible for creating the study (Altria Client Services), without alleging (because they could not) that Mr. Crosthwaite was even at Altria Client Services *at the relevant time*. While Plaintiffs allege that another defendant submitted a misleading letter to the FDA about the mint study, there are no

allegations connecting Mr. Crosthwaite to that letter. Indeed, Plaintiffs fail to allege *any* facts about Mr. Crosthwaite's actual exposure to specific information about the mint study or JLI's marketing practices.

Simply put, the what, when, where, and how that Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") require are entirely missing with regard to Mr. Crosthwaite. There is no allegation about *what* Mr. Crosthwaite did to deceive the FDA or *how* it was supposedly deceptive. Instead, Mr. Crosthwaite remains in this case because of his purported job "responsibilities," which, as Plaintiffs have used the term, is no different from his job "position," and in any event, cannot show that Mr. Crosthwaite participated in the alleged scheme to deceive the FDA. This Court's decision allowing fraud claims against Mr. Crosthwaite raises controlling questions of law, including whether an individual defendant's job responsibilities are a sufficient grounds for either scheme liability under Rule 10b-5(a) or (c) or control liability under Section 20(a), and whether a group of defendants' knowledge can be attributed to an individual defendant based on job responsibilities. This Court's decision answering both questions in the affirmative stands alone. Reconsideration or an immediate appeal is warranted in order to materially advance the dismissal of all claims for securities fraud against Mr. Crosthwaite. This Court was right in concluding that Mr. Crosthwaite could not be liable for any false or misleading statement and did not belong in that part of this case—the same answer holds true for the "deceptive conduct" and "control person" parts of the case.

Mr. Crosthwaite respectfully requests that the Court exercise its discretion to reconsider that holding and dismiss both the 10-5(a) and (c) and 20(a) claims against him, or alternatively, that the Court certify the Order for interlocutory appeal.

**PROCEDURAL BACKGROUND**

On July 8, 2020, Mr. Crosthwaite filed a motion to dismiss Plaintiffs' claims against him, which had been brought under Rule 10b-5(a), (b), and (c) and Section 20(a). ECF No. 123. Separately, Altria filed a motion to dismiss the suit on behalf of itself and Mr. Willard and Mr. Gifford (ECF No. 117); JLI filed a motion to dismiss on behalf of itself, Mr. Bowen, and Mr. Burns (ECF No. 119); and Mr. Monsees filed a motion to dismiss (ECF No. 121).

In his motion, Mr. Crosthwaite argued, among other things, that Plaintiffs (a) failed to plead that he was responsible for any allegedly false or misleading statement or omission, (b) failed to plead with specificity facts demonstrating that he possessed scienter, and instead grouped him together with other defendants and asserted allegations based on his position at Altria, (c) had not alleged that he performed any deceptive or manipulative act at all, let alone one triggering scheme liability, and (d) had not adequately plead control by him necessary to state a Section 20(a) claim.

Plaintiffs did not file a standalone opposition in response to Mr. Crosthwaite's motion to dismiss. Instead, Plaintiffs filed oppositions to the JLI and Altria motions (ECF. Nos. 126 & 127). Those oppositions did not address several of Mr. Crosthwaite's arguments, including that Plaintiffs had failed to allege that he committed any inherently deceptive acts. And Plaintiffs' response to Mr. Crosthwaite's argument that he was not a "control person" consisted of a single sentence restating that he "was responsible for the Altria investment in JUUL, and was then named CEO of JUUL," Opp'n to the JUUL Defs. Mot. to Dismiss, ECF No. 127. ("JLI Opp'n.") at 36, which failed to address any of Mr. Crosthwaite's arguments on this point. Finally, while Plaintiffs did address Mr. Crosthwaite's argument on scienter, they confusingly did so in their opposition to the JLI Defendants' Motion, despite Mr. Crosthwaite being defined as an "Atria Defendant." And Plaintiffs merely restated their argument that the Court should presume scienter based on vague statements about Mr. Crosthwaite's role at Altria. (JLI Opp'n.) at 32. Despite these deficiencies,

4

the Court's March 12, 2021 Order permits Plaintiffs' scheme liability and control person claims against Mr. Crosthwaite to proceed.

## LEGAL STANDARD

**Reconsideration**: The Court's Order "adjudicate[d] fewer than all the claims," and therefore is an interlocutory judgment. *Garey v. James S. Farrin, P.C.*, No. 1:16CV542, 2018 WL 6003546, at *1 (M.D.N.C. Nov. 15, 2018). Under Federal Rule of Civil Procedure 54(b), the district court "retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003)). The resolution of motions to reconsider pursuant to Rule 54(b) is committed to the "broad discretion" of the district court, which may be exercised as justice requires. *Id.* at 515.

**Interlocutory Appeal**: The Fourth Circuit has explained that the requirements for certifying an order for interlocutory appeal under 28 U.S.C. § 1292(b) are: (1) that there be "a controlling question of law," (2) that there be "substantial ground[s] for difference of opinion" about that question of law, and (3) that an "immediate appeal may materially advance the ultimate termination of the litigation." *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011). A "controlling" question of law is one that is "serious to the conduct of the litigation, either practically or legally." *Adams v. S. Produce Distribs, Inc.*, No. 7:20-CV-53-FL, 2021 WL 394842, at *3 (E.D.N.C. Feb. 4, 2021) (citing *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991)). There is "substantial ground for difference of opinion" where "reasonable jurists might disagree on [the] resolution" of those questions. *Adams*, 2021 WL 394842, at *3 (citing *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)). And the "materially advance" requirement is closely connected to the "controlling question" requirement; where a court concludes that early resolution of a question "might save time for the district court, and time and expense for the

5

litigants," both requirements are generally met.  16 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. § 3930 (3d ed. 1998).

## ARGUMENT

**I.     THE COURT'S RULING ON MR. CROSTHWAITE'S ALLEGED SCHEME LIABILITY IS ERRONEOUS AND SHOULD BE RECONSIDERED OR ALTERNATIVELY, PRESENTS A CONTROLLING QUESTION OF LAW THAT WARRANTS INTERLOCUTORY REVIEW**

Courts within and outside the Fourth Circuit have held that a scheme liability claim is subject to the heightened pleading requirements of Rule 9(b) and the PSLRA.  "[T]he plaintiffs must specify, 'what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue.'"  *Burt v. Maasberg*, No. ELH-12-0464, 2013 WL 1314160, at *15 (D. Md. Mar. 31, 2013) (citing *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 372 (D. Md. 2004)); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 577 (S.D.N.Y. 2016). Further, scheme liability "hinges on the performance of an *inherently* deceptive act that is distinct from an alleged misstatement."  *Menora Mivtachim Ins. Ltd., v. Int'l Flavors & Fragrances Inc.*, No. 19 Civ. 7536 (NRB), 2021 WL 1199035, at *8 (S.D.N.Y. Mar. 30, 2021) (emphasis added); *see also William L. Thorp Revocable Tr. v. Ameritas Inv. Corp.*, 57 F. Supp. 3d 508, 527 (E.D.N.C. 2014) (explaining that scheme liability requires "performance of an inherently deceptive act" such as "illegal late trading, structuring round-trip transactions and fabricating documents to create illusory revenue, and securitizing worthless invoices").  There must be "some act that gives the victim [the] false impression," whether through "manipulation or a false statement, breach of a duty to disclose, or deceptive communicative conduct."  *United States v. Finnerty*, 533 F.3d 143, 148, 150 (2d Cir. 2008); *see also Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019) (scheme liability

6

encompasses conduct that "consists of disseminating false or misleading information to prospective investors with the intent to defraud").

Here, Plaintiffs have not alleged that Mr. Crosthwaite engaged in any conduct at all as part of an alleged scheme "to deceive the FDA into not regulating mint." Op. at 31. The Court ruled (correctly) that Plaintiffs did not allege that Mr. Crosthwaite signed any of Altria's SEC filings or had control over any other Altria statements. *Id.* at 27-28. Plaintiffs also did not allege that Mr. Crosthwaite was a "JUUL Individual Defendant" responsible for any JLI statements—they only named him as an "Altria Individual Defendant." Corrected Consolidated Class Action Complaint ¶ 31, ECF No. 108 ("Compl.") ¶ 31. Yet the Court allowed a scheme liability claim against Mr. Crosthwaite on the ground that he allegedly "bore responsibility for consummating the JUUL investment," and allegedly "bore responsibility for the mint study, a key part of the alleged scheme to deceive the FDA." *Id.* at 32 (citing Compl. ¶¶ 348, 408). But those allegations concern Mr. Crosthwaite's job responsibilities—they do not come close to alleging that he "acted in concert to deceive the FDA." Op. at 31. Given the heightened pleading requirements, the Court's ruling that Mr. Crosthwaite made no statements should have resulted in the Court dismissing the scheme liability claim against Mr. Crosthwaite too—because there are *no other* allegations about Mr. Crosthwaite engaging in any deceptive act. *See, e.g.*, *SEC v. Rio Tinto plc*, No. 17 Civ. 7994 (AT), 2019 WL 1244933, at *15 (S.D.N.Y. Mar. 18, 2019) ("[I]n order to state a claim based on scheme liability, the SEC must allege conduct beyond misrepresentations or omissions that form the basis of a claim under subsection (b).") (citation omitted).

Plaintiffs are entirely silent as to any act actually performed by Mr. Crosthwaite as part of the alleged scheme. ***First***, as to Mr. Crosthwaite's alleged responsibility for the investment, at most Plaintiffs have alleged that Mr. Crosthwaite was told by the CEO to "get JUUL done."

7

Compl. ¶ 348.  But that says nothing about Mr. Crosthwaite's conduct or any specific acts that Mr. Crosthwaite took in response to his superior's instruction.  There is nothing inherently deceptive about working on an investment, consummating a transaction, or being responsible for it, and Plaintiffs do not allege that Mr. Crosthwaite knew any part of the investment, including "pulling certain of [Altria's] flavored pods," was intended to deceive the FDA.  Courts have made clear that "[p]articipation in a scheme can . . . be sufficient for liability under section 10(b) only if that participation took the form of actions or statements that were independently deceptive or fraudulent."  *SEC v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 486 (S.D.N.Y 2007); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) ("[Section 10(b)] prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act. . . . We cannot amend the statute to create liability for acts that are not themselves manipulative or deceptive within the meaning of the statute."); *Fogel v. Vega*, 759 F. App'x 18, 25 (2d Cir. 2018) (dismissing scheme liability claims where Plaintiff failed to allege an "inherently deceptive act").

Indeed, Plaintiffs do not even allege that the consummation of the investment was itself the allegedly fraudulent scheme—rather, Plaintiffs allege a scheme to defraud based on deceptive communications and nondisclosures about the investment.  Thus, the Court found scheme liability adequately alleged against "Defendants" because "rather than apprising investors of the risks associated with th[is] effort [to increase youth addiction], Defendants continued to publicly deny JUUL's intention of targeting youths . . . ."  Op. at 31-32.  Those allegations—about other Defendants' purportedly deceptive denials and nondisclosures—cannot be applied to Mr. Crosthwaite, particularly given the Court's holding that Mr. Crosthwaite had no control over any statements and omissions, *id.* at 27-28, and the absence of any other allegations connecting Mr.

Crosthwaite to those alleged denials and nondisclosures. *See In re Royal Ahold*, 351 F. Supp. 2d at 377 (dismissing claims where plaintiffs failed to allege "facts specifically demonstrating [individual defendant]'s role" in the alleged scheme).[1]

***Second***, as to Mr. Crosthwaite's purported responsibility for the mint study, Op. at 32, at most Plaintiffs have alleged that Mr. Crosthwaite "was the President and Chief Growth Officer of ***Altria Client Services, which conducted Altria's mint 'study'*** in Spring 2017." Compl. ¶ 408 (emphasis added). But they allege only a *job title*, not that Mr. Crosthwaite engaged in any act at all relating to deceiving the FDA. *See Friedman v. Endo Int'l PLC*, No. 16-CV-3912 (JMF), 2018 WL 446189, at *4 (S.D.N.Y. Jan. 16, 2018) (Plaintiffs "theory of liability against the Individual Defendants rests on little more than the fact that the Individual Defendants held powerful positions at the company, but that does not suffice.").

Plaintiffs' job title allegation is flawed on multiple scores, starting with the fact that Mr. Crosthwaite only became the Chief Growth Officer of Altria effective June 1, 2018, a year after the mint study was allegedly conducted by Altria Client Services. *See* MTD at 2 n.2, 14; Reply in Supp. of Mot. to Dismiss the Corrected Consolidated Class Action Compl.*,* ECF No. 131 ("Crosthwaite Reply") at 6.[2] Notably, Plaintiffs do not actually allege that Mr. Crosthwaite was

---

[1] "[W]here the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected the SEC's attempt to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'" *SEC. v. Kelly*, 817 F. Supp. 2d at 343 (S.D.N.Y. 2011).

[2] Plaintiffs' claim fails on the face of the Complaint because, as noted, they fail to allege that Mr. Crosthwaite was Chief Growth Officer of Altria Client Services in the spring of 2017, when the mint study was conducted. *See* Compl. ¶ 408. Moreover, the Court may take judicial notice of an SEC filing disclosing the June 2018 date Mr. Crosthwaite became Chief Growth Officer of Altria, MTD at 2 n.2; *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th Cir. 2006) (per curiam), particularly given that Plaintiffs did not object to its use. *See In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 745-46 (4th Cir. 2021) ("[W]e accept Defendants' invitation to review their

9

the Chief Growth Officer *at the time* the mint study was conducted (just that at some point he became Chief Growth Officer of the entity that had previously conducted the study). And of course they do not allege Mr. Crosthwaite had any connection to the mint study or even that he was ever aware of it.

In fact, Plaintiffs do not even allege that the *creation* of the mint study was the fraudulent scheme; nor could it be because its creation alone did not give anyone a "false impression," *Finnerty*, 533 F.3d at 148, and Plaintiffs allege no causal connection between the *creation* of the study alone and any reliance by investors, *see Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 161 (2008). Instead, this Court found Plaintiffs' scheme liability allegations sufficient based on "Defendants act[ing] in concert to deceive the FDA into not regulating mint." Op. at 31. But Plaintiffs do not allege that Mr. Crosthwaite engaged in any deceptive act in connection with allegedly deceiving the FDA, including with respect to the mint study. There is no allegation that Mr. Crosthwaite knew that any part of the mint study was "falsified," *id.*, and Plaintiffs allege that another defendant, not Mr. Crosthwaite, submitted a letter to the FDA citing the mint study. *Id.* at 6 (citing Compl. ¶¶ 393-94, 398, 401, 404). There is not a single allegation that Mr. Crosthwaite had any responsibility for that letter. And as noted previously, the Court correctly held that Mr. Crosthwaite did not make or have control over any statement in this case. *Id.* at 27.

The Court found that Plaintiffs' scheme liability claims could proceed because they "allege that Defendants acted in concert to deceive the FDA into not regulating mint." *Id.* at 31. Because Plaintiffs failed to allege with the requisite particularity any facts showing that Mr. Crosthwaite engaged in an inherently deceptive act as part of that alleged scheme, this Court should reconsider

---

SEC Forms 10-K and 10-Q, news reports, press releases, and earnings calls transcripts that they submitted to the district court, given that LifeWise has not objected to their use.").

its Order allowing the scheme liability claims against Mr. Crosthwaite to proceed.  Alternatively, whether heightened pleading standards require that a plaintiff allege that each defendant engaged in an inherently deceptive act or whether a defendant's job responsibilities are sufficient is a controlling question of law that warrants interlocutory review.  The heightened pleading standards exist precisely to ensure that a plaintiff cannot proceed lightly with securities fraud allegations, and the Court's ruling keeping Mr. Crosthwaite in this case is reversible error that should be corrected.

**II.     THE COURT'S RULING ON MR. CROSTHWAITE'S SCIENTER IS ERRONEOUS AND SHOULD BE RECONSIDERED OR ALTERNATIVELY, PRESENTS A CONTROLLING QUESTION OF LAW THAT WARRANTS INTERLOCUTORY REVIEW**

Scheme liability claims are subject to the PSLRA's heightened pleading standard with respect to scienter, and importantly, "the PSLRA does not allow for 'group pleading.'"  *Burt*, 2013 WL 1314160, at *13; *see also Lorenzo*, 139 S. Ct. at 1101 (scheme liability provision encompasses deceptive conduct taken "with [an] intent to defraud").  "With respect to each act or omission alleged," a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  The Fourth Circuit has held that "a plaintiff must allege facts that support a 'strong inference' that *each* defendant acted with at least recklessness" with respect to the alleged unlawful act.  *Teachers' Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 172 (4th Cir. 2007) ) (citing *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588 (7th Cir. 2006)); *see also Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 190 (4th Cir. 2009) (emphasis added); *Burt*, 2013 WL 1314160, at *24 (dismissing scheme liability claim where "as to each defendant, the facts do not show how each one acted intentionally or recklessly with respect to the alleged manipulative trading or marketing of Lyris stock").

Here, the Complaint does not contain a *single* factual allegation that Mr. Crosthwaite committed any deceptive act with scienter.  Instead, Plaintiffs relied *entirely* on "group pleading" allegations that lump together "Individual Defendants" and "Altria Defendants," without *mentioning* Mr. Crosthwaite specifically, let alone explaining how he acted with scienter when he engaged in purportedly deceptive acts relating to the investment and the mint study.  This Court erred in accepting those allegations against Mr. Crosthwaite.  The Court's scienter ruling rests entirely on allegations such as "Defendants" as a group "knew of the illegal marketing practices," "Altria desperately wanted to acquire JUUL," and "Defendants" as a group "denied that they had targeted youth."  Op. at 33-35.  Yet the Court dismissed the statement claims against Mr. Crosthwaite, and there are no allegations about how or what Mr. Crosthwaite knew or that he intentionally concealed or "denied" any such information.  The Court's decision is clearly erroneous and warrants reconsideration or interlocutory review because it allows Plaintiffs to proceed against Mr. Crosthwaite with a securities fraud claim based only on allegations about Defendants as a group, without any allegations that Mr. Crosthwaite performed the alleged deceptive acts with scienter.

To allege scienter against Mr. Crosthwaite, Plaintiffs had to allege that *he* acted intentionally or recklessly *with respect to the alleged deceptive act he is charged with*, not with respect to making any statements or omission.  Yet Plaintiffs failed to allege a single fact showing that Mr. Crosthwaite acted with scienter either in connection with the mint study or the investment.  There are no allegations suggesting that he was even aware of the mint study, let alone conducted or used it with an intent to deceive the FDA.  Plaintiffs allege only that a *different* defendant "did not disclose that Altria's 'study' was merely a 'quasi-experimental online survey' and not a true scientific study."  Compl. ¶ 408.  Nor are there any allegations suggesting that Mr. Crosthwaite

learned about JLI's earlier marketing practices from any of Altria's "substantial due diligence," *id.* ¶ 530, and then engaged in any intentional or reckless conduct to conceal those marketing practices from the FDA (or anyone else).  Plaintiffs do not allege that Mr. Crosthwaite "knew facts or had access to information that would suggest that their public statements were not accurate," *In re Under Armour Sec. Litig.*, 342 F. Supp. 3d 658, 691 (D. Md. 2018), and corporate "officers cannot be imputed with knowledge about all transactions which occur at a corporation for purposes of pleading scienter." *In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2018 WL 4168958, at *17 (S.D.N.Y. Aug. 30, 2018) (citing *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 550 (S.D.N.Y. 2007)); *see also Yates v. Mun. Mortg. & Equity*, LLC, 744 F.3d 874, 890 (allegations that defendants were "senior executives" did not plead scienter without allegations that defendants had "actual exposure" to the fraud); *Lerner v. Nw. Biotherapeutics*, 273 F. Supp. 3d 573, 593 (D. Md. 2017) ("Courts have routinely held that corporate executives' access to information and internal affairs is not enough to demonstrate scienter under the PSLRA.").  Nor do Plaintiffs allege that Mr. Crosthwaite himself wanted to acquire JLI or personally benefitted—there are no insider trading allegations at all against Mr. Crosthwaite.  *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 622 (4th Cir. 1999) ("To support a claim of motive based on the benefit a defendant derives from an increase in the value of his holdings, a plaintiff must demonstrate some sale of 'personally-held stock' or 'insider trading' by the defendant.").  And while Plaintiffs also allege that Defendants "position[s]" gave them knowledge, the Court properly did not rely on that allegation, because courts have repeatedly rejected as inadequate "[a]llegations that a defendant must have known that a statement was false and misleading because of his or her position in the company." *Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 592 (E.D. Va. 2006); *see also Yates*, 744 F.3d at 890 (allegations that defendants were "senior executives" did not plead

13

scienter without allegations that defendants had "actual exposure" to the fraud).  As explained above, there was nothing inherently deceptive about Altria's investment.

Because Plaintiffs relied only on group pleading and failed to allege any facts as to Mr. Crosthwaite's scienter in committing the alleged deceptive acts, the Court should not have allowed the scheme liability claims against Mr. Crosthwaite to proceed.  Alternatively, whether group pleading is a substitute for particularized scienter allegations against each defendant about the particular unlawful act alleged is a controlling question of law that warrants interlocutory review. Again, Mr. Crosthwaite should not be kept in this case where Plaintiffs have not mustered a single factual allegation that *he individually* intended to deceive investors.

### III. THE COURT'S RULING ON THE "CONTROL PERSON" CLAIM AGAINST MR. CROSTHWAITE IS ERRONEOUS AND SHOULD BE RECONSIDERED OR ALTERNATIVELY, PRESENTS A CONTROLLING QUESTION OF LAW THAT WARRANTS INTERLOCUTORY REVIEW

Control person liability requires allegations that the controlling defendant "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws, *and* had the power to control or influence the *specific corporate policy* which resulted in primary liability."  *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 130 (4th Cir. 2009) (emphasis added) (quotations omitted), *rev'd sub nom. Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011).[3]  "[T]he Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the transaction in question." *In re Veon Ltd.*, 2018 WL 4168958, at *20.

Plaintiffs do not—and could not plausibly—allege that Mr. Crosthwaite, who was the Chief Growth Officer of Altria at the time of the JLI investment, "control[le]d the general affairs" of

---

[3] This Court recited the standard but omitted the word "and."  Op. at 40 (quoting *In re Mut. Funds Inv. Litig.* 566 F.3d at 129-30).

14

Altria.  Boilerplate recitations of the legal standard and lumping Mr. Crosthwaite with the other "Altria Individual Defendants"—Altria's former CEO and CFO—are not sufficient.  Compl. ¶ 587; *see also In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (allegations about defendants' "high-level positions," fell short of requirement to allege "actual control over the matters at issue"); *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 640 (D. Md. 2010) (allegations as to "director defendants' positions on [defendant company]'s board of directors" failed to meet requirement to allege that defendants had "control over the specific corporate operation that resulted in [the fraud]").

And while Plaintiffs generally alleged that "Altria Individual Defendants" controlled the challenged *statements*, this Court correctly found that those statements are *not* attributable to Mr. Crosthwaite.  Op. at 27-28.  This should have resulted in the dismissal of any Section 20 claim against him based on those alleged misstatements.  *See, e.g.*, *In re Veon Ltd.*, 2018 WL 4168958, at *21 ("Since, as discussed above, no alleged misstatements are properly attributed to Davies, he cannot be liable as a control person.").

Instead, the Court found that Mr. Crosthwaite was alleged to be a control person because he "bore responsibility for ensuring that Altria's investment in JUUL happened."  Op. at 41-42.[4] But there is no allegation that Mr. Crosthwaite was responsible for the investment in the sense that

---

[4] The Court also stated that Mr. Crosthwaite "served as an observer on JUUL's Board of Directors and later became the CEO of JUUL."  Op. at 41.  But Plaintiffs do not allege that Mr. Crosthwaite controlled *JLI*—rather, he is only alleged to be an Altria Individual Defendant and to have controlled *Altria*.  Compl. ¶ 587 ("Each of the Altria Individual Defendants, therefore, acted as a controlling person of Altria.").  In any event, by definition, an observer does not have control over the observed Board or its members, and certainly does not have control over *a different entity* (*i.e.*, Altria), and Plaintiffs plead no facts demonstrating otherwise.  Allegations that Mr. Crosthwaite "later" became CEO of JLI similarly cannot help Plaintiffs plead control by Mr. Crosthwaite.  No allegedly false or misleading statements or conduct were alleged to a occurred after Mr. Crosthwaite because CEO of JLI on September 25, 2019.  Compl. ¶¶ 513-26.

he *controlled or influenced* the investment. Rather, Plaintiffs alleged the opposite—namely, that a confidential witness overheard Mr. Crosthwaite's *superior* (the CEO) telling him "to get JUUL done." Compl. ¶ 348. A subordinate does not have control over his superiors, *see In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1091 (W.D. Wash. 2003) (holding that a subordinate officer was not a control person over his superiors), and Plaintiffs do not allege any facts supporting an exception. The Court recognized that "[a]n individual's position alone does not establish control person liability." Op. at 41 (citing case). But as Plaintiffs use the term, Mr. Crosthwaite's *responsibilities* are no different from his position—and they are the opposite of "control." *See, e.g.*, *Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (dismissing Section 20(a) claim against vice president where the co-defendants who were liable for scheme liability under Rule 10b each "held positions of Vice President or higher" and questioning "how [defendant] can exercise control over either his peer Vice Presidents or his supervisors").

Because none of the statements were attributed to Mr. Crosthwaite and Plaintiffs allege at most that Mr. Crosthwaite's job responsibilities included the JLI investment, the Court should not have allowed the control person claim to proceed. Alternatively, interlocutory review is warranted on the controlling legal question of whether an individual defendant who does not sign any SEC filings can nonetheless be held liable as a control person based on his job responsibilities. The question of control person liability may often raise factual questions, but it cannot do so here where there is not a single allegation evidencing Mr. Crosthwaite's purported control of Altria or its investment.

In addition, while the Court found no culpable participation required, there is substantial disagreement in both the circuit courts and within the Fourth Circuit over the question whether

16

culpable participation is an element of a plaintiff's burden under Rule 20(a). *Compare In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 129-30 (4th Cir. 2009), *rev'd sub nom. Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), *and Giel v. Gen. Motors Acceptance Corp.*, 384 F. App'x 605, 606 (9th Cir. 2010), *with Carpenter v. Harris, Upham & Co.*, 594 F.2d 388, 394 (4th Cir. 1979); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485 (3d Cir. 2013); *Strougo v. Barclays PLC*, 334 F. Supp. 3d 591, 598 (S.D.N.Y. 2018); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437 (S.D.N.Y. 2014). This presents another controlling question of law too, because there are no "culpable participation" allegations in the Complaint. To plead this element, Plaintiffs would have had to allege that Mr. Crosthwaite was "in some meaningful sense [a] culpable participant[] in the acts perpetrated by the controlled person," *Carpenter*, 594 F.2d at 394, by alleging facts sufficient to show that he acted with a "more [culpable mental state] than negligence," *id.*, in other words, "willfulness or recklessness." *Strougo*, 334 F. Supp. 3d at 598. Plaintiffs' "control person" allegations do no more than state that the Altria Individual Defendants had "senior management positions" at Altria, Compl. ¶¶ 586-87, falling far short of this requirement to allege willfulness or, at minimum, recklessness by Mr. Crosthwaite. This too provides an additional grounds for certifying the Order for interlocutory appeal to clarify this important question of control person liability.

## CONCLUSION

For the aforementioned reasons, Mr. Crosthwaite respectfully requests that the Court reconsider its Order denying Mr. Crosthwaite's motion to dismiss, and dismiss Plaintiffs' remaining claims against Mr. Crosthwaite, or, in the alternative, certify its Order for interlocutory appeal.

Dated: April 9, 2021                         By: /s/ *J. Christian Word*

Andrew Clubok (*pro hac vice*)
J. Christian Word (VSB #46008)
Susan E. Engel (*pro hac vice*)
Matthew J. Peters (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202-637-2200
Facsimile: 202-637-2201
andrew.clubok@lw.com
christian.word@lw.com
susan.engel@lw.com
matthew.peters@lw.com

*Counsel for Defendant K.C. Crosthwaite*

18

## CERTIFICATE OF SERVICE

I certify that this April 9, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

/s/ *J. Christian Word*
J. Christian Word