IN THE UNITED STATES DISRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

GABBY KLEIN, *et al.*,
    Plaintiffs,

v.                                                             Civil No. 3:20cv75 (DJN)

ALTRIA GROUP, INC. *et al.*,
    Defendants.

## STIPULATED ELECTRONIC DISCOVERY ORDER

This matter comes before the Court on the parties' joint request for the entry of the Stipulated Electronic Discovery Order (ECF No. 198). Plaintiffs and Defendants (each a "Party" and collectively, the "Parties")[1] agree that this Order will govern discovery of electronically stored information ("ESI") in the above-captioned action as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. All technical terms shall follow or be defined by the "The Sedona Conference Glossary: E- Discovery and Digital Information Management." Upon consent of the Parties, the Court hereby ORDERS:

## 1. COOPERATION

Plaintiffs, Defendants, and the Court recognize that this Stipulation and Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Stipulation and Order may become

---

[1] "Plaintiffs" refers to Donald Sherbondy and Sarah Sherbondy, and Construction Laborers Pension Trust of Greater St. Louis. "Defendants" refers to Altria Group, Inc., Howard A. Willard III, William F. Gifford, Jr., JUUL Labs, Inc., Adam Bowen, James Monsees, Kevin Burns, and K.C. Crosthwaite.

necessary as more information becomes known to the parties. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter. The parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision of this Order. No party may seek relief from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other party in a good faith effort to resolve or narrow the area of disagreement and has given the other party a reasonable opportunity to cure any claimed deficiency in compliance with this Order.

2. **CUSTODIANS AND SOURCES**

With respect to discovery that is sought to be produced for the first time in this specific action and that has not previously been produced in other, related investigations and actions, the parties shall identify and discuss custodians and the custodial and non-custodial sources that the parties reasonably believe are likely to have incrementally responsive, relevant documents and other ESI relating to the allegations and claims in this action. The parties retain the right, upon conducting investigation and discovery, to request that files from additional custodians and sources be searched and meet and confer regarding such request.

3. **SEARCH**

The parties will attempt in good faith to come to an agreement on the methods for identifying responsive information. The parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to identify proportional documents for review (*e.g.*, search terms, technology-assisted-review, predictive coding). The parties shall meet and confer regarding the categories of documents that will be produced with and without the use of search terms or other advanced search methodology.

Where potentially responsive ESI shall be searched using search terms, the parties agree to propose search terms they intend to employ to search for relevant and responsive documents. In the first instance, the producing party will propose search terms for the consideration of the receiving party. Proposed search terms will be subject to negotiation with and input from the requesting party. The requesting party may ask for (and the producing party will not unreasonably withhold) qualitative and quantitative information regarding search methodology, including but not limited to, production of search term hit reports, and associated testing and validation to be conducted after the methodology is implemented.

The parties acknowledge that there may be subsequent instances where potential modification to a previously agreed upon search protocol may be warranted. Should such an instance arise, the parties agree to meet and confer about modifications to a search methodology. If a party requests such a meet and confer, the parties will meet and confer within 7 days.

The parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

No party shall use predictive coding/technology-assisted review ("TAR") for the purpose of culling the documents to be reviewed for determining responsiveness without notifying the opposing party prior to its use of TAR and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies. If a dispute regarding a party's use of TAR cannot be resolved after meeting and conferring in good faith, the party opposing the use of TAR may file a motion seeking appropriate relief from the Court.

Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for responsiveness and/or segregation of privileged and/or protected information before production.

4. **PRODUCTION FORMATS**

With the exception of Spreadsheets, Presentation files, Multi-Media files and other native files that cannot be converted to image files, the parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF images with a load file in standard Opticon OPT or iPro LFP or Summation (DII) format that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file. The parties agree that if any part of an e-mail or its attachments is responsive, the entire e-mail and attachments will be produced, except any attachments that are withheld or redacted on the basis of the attorney-client privilege, attorney work product doctrine, or other applicable privilege.

(a) *Production Media.* The parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories and/or ZIP files: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format. The producing party

4

shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

(b) *Color*. Plaintiffs and JUUL shall produce documents in color where color is reasonably helpful to understanding or viewing the document (e.g., charts and graphics, tracked changes, or other highlights). Color images should be produced as single page JPG files at 300dpi with JPG compression and a high-quality setting so as to not degrade the original image. For the Altria Defendants, the receiving party may request color versions of documents produced in black and white where color is reasonably helpful to understanding or viewing the document (e.g., charts and graphics, tracked changes, or other highlights), and within 7 days of the request, the Altria Defendants will either produce the color versions or set our their refusal in writing. If the Altria Defendants produce documents in color, the Altria Defendants may produce all of the documents in such production, including any black and white documents, as single page JPG files at 300dpi with JPG compression and a high-quality setting.

(c) *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and to the extent practical, not obliterate, conceal, or interfere with any information from the source document. While Bates numbers will not appear on the face of the image for native documents produced, slipsheets shall be provided in accordance with subsection (h).

(d) *Parent-Child Relationships*. For ESI only, Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

5

(e) *Redactions*. If the parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s), as set forth in the stipulated Protective Order in this matter. If documents that the parties have agreed to produce in native format need to be redacted, the parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained. Extracted text will not be provided for electronic documents that have been redacted. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.

(f) *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file, indicated on its corresponding TIFF placeholder and/or set forth as a metadata field.

(g) *Metadata Fields*. Plaintiffs and JUUL shall provide the system-generated and metadata fields (the "Production Fields") set forth in Exhibit A. Altria shall provide the Production Fields set forth in Exhibit B. Nothing herein shall require the Parties to (i) create or otherwise supply any metadata that is not maintained in the usual course of business, or (ii) disclose any privileged information.

(h) *Native Format*. The Responding Party shall produce spreadsheets (*e.g.*, Excel), presentation files (*e.g.*, PowerPoint), and any other materials not readily convertible to TIFF format (*e.g.* three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in native format. If

a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "PRODUCED IN NATIVE FORMAT" (or substantially equivalent language). Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

(i) *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (e.g., ABC000001.TXT). For ESI with redacted text, Optical Character Recognition ("OCR") data using a commercially acceptable technology shall be provided in lieu of text files. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.

(j) *Physical/Hard Copy Documents*. Nothing herein shall relieve the parties of any obligations they may have to search for responsive Documents in hard copy form. The parties shall produce documents that exist solely in physical hard-copy format following this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person

custodial source from whom/where the document was collected. The following objective coding fields should be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) source location/custodian. The documents should be logically unitized. The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. The parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(k) *Databases and Other Structured Data.* To the extent that any party requests data or information (other than email) that is stored in a structured database (including but not limited to Oracle, SQL Server, DB2, Microsoft Access (*.mdb), Lotus Notes/Domino Server non-email databases), the producing party will make reasonable efforts to determine whether such data can be produced and, if so, make a production in existing report formats, or report formats that can be developed without undue burden. Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting party, containing fields and reference points requested by requesting party to the extent they exist, are responsive, and are reasonably accessible. To the extent this production format is not feasible or causes the producing party undue burden, the parties agree to meet and confer to discuss a different form of production.

(l) *Duplicates.* The Responding Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there

8

are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the custodian and path information will be provided for each document. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

(m) *Email Threading.* Where multiple email messages are part of a single chain or "thread," the parties agree that e-mail thread suppression may be used, as reviewing non-inclusive e-mail is needlessly burdensome for the Producing Party, so long as each responsive non-privileged e-mail in the thread (both the most inclusive and lesser inclusive emails) is produced.

(n) *Embedded Objects.* Except for materials produced by Altria, embedded files in e-mail and e-docs shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved, and the embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

(o) *Compressed Files Types.* Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

9

5. **PRODUCTIONS FROM REGULATORY PROCEEDINGS AND OTHER LITIGATION**

In the event a party intends to produce documents that have already been produced in a prior or related matter, the party may produce the documents in the format and manner in which they were produced in such prior or related matter.

6. **PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases.

7. **MODIFICATION**

This Order may be modified by Order of the parties or by the Court for good cause shown.

Let the Clerk file a copy of this Order electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: May 13, 2021

10

## Exhibit A:
## Production Fields (Plaintiffs and Defendant JUUL)

| | |
|---|---|
| BEGBATES | Start Bates (including prefix) -- No spaces or special characters |
| ENDBATES | End Bates (including prefix) -- No spaces or special characters |
| BEGATTACH | The identifier of the first page of the first document in a family group. This is used for page-level numbering schemes. |
| ENDATTACH | The identifier of the last page of the first document in a family group. This is used for page-level numbering schemes. |
| ATTACHNAME | File name of the attachment, with any attachments separated by semi-colon |
| ATTACHMENT | Child document list: BEGDOC# of each child (populated ONLY in parent records) |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| REDACTION | Whether the document contains redactions (Yes/No) |
| CUSTODIAN | Custodian/source/source party of initial instance of document/family collected |
| DUPCUSTODIAN | Custodian(s)/source(s)/source parties of any instances of document/family collected |
| FROM | Sender of an email. |
| TO | Recipient(s) from the to line of an email. |
| CC | Carbon copy recipient(s) on an email. |
| BCC | Blind carbon copy recipient(s) on an email. |
| SUBJECT | Subject line from an email. |
| DATESENT | The date an email was sent. |
| TIMESENT | The time an email was sent. |
| DATERCVD | The date an email was received. |
| TIMERCVD | The time an email was received. |
| FILEEXT | The file extension of the native file. |
| AUTHOR | Person who created the file. A file can have one or no author. |
| MODIFIEDBY | Person who last modified or saved the item. |

| CREATEDATE | The date the file was created. |
|---|---|
| CREATETIME | The time the file was created. |
| DATELASTMOD | The date changes were last made to a file. |
| TIMELASTMOD | The time changes were last made to a file. |
| FILENAME | The file name of a document. |
| FILEEXT | The file extension of a document. |
| PGCOUNT | The number of pages in a document. |
| DOCTYPE | The kind of file a document came from. |
| PARENTDATE | The date of the parent document. For emails this will be date sent and for non-emails date last modified. |
| PATH | The full file, folder, or directory structure from which the initial instance of a document was collected. This should be the path where the document is kept in the usual course. |
| HASH | Numeric value of a fixed length that uniquely identifies data. |
| NATIVEPATH | The path to a copy of a file within the production deliverable. |
| TITLE | Available title information extracted from MS Office and PDF documents. |
| CONVERSATION INDEX | ID used to tie together e-mail threads. |
| IS EMBEDDED | The yes/no indicator of whether a file is embedded in another document. |

## Exhibit B:
## Production Fields (Altria Defendants)

| |
|---|
| Start and End Bates Numbers (including prefix) |
| The identifier of the family group. |
| Whether the document contains redactions and the type of redaction |
| Custodian/source(s) |
| Sender or author of a document |
| Recipient(s) from the to line of an email. |
| Carbon copy and blind copy recipient(s) on a document. |
| Subject line from an email or the title/file name of a document. |
| Document date |
| The file extension of the native file if produced in that format. |
| The number of pages in a document. |
| The full file, folder, or directory structure from which the initial instance of a document was collected. |
| Relative path to any files produced in native format if produced in that format. |
| Relative path to any OCR/extracted text file in the production set. |