## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

GABBY KLEIN, DONALD SHERBONDY, SARAH
SHERBONDY AND CONSTRUCTION LABORERS
PENSION TRUST OF GREATER ST. LOUIS,
Individually and on Behalf of All Others
Similarly Situated,

<em>Plaintiffs</em>,

v.

ALTRIA GROUP, INC., HOWARD A. WILLARD III,
WILLIAM F. GIFFORD, JR., JUUL LABS, INC.,
ADAM BOWEN, JAMES MONSEES, KEVIN
BURNS, and K.C. CROSTHWAITE,

<em>Defendants</em>.

No. 3:20-cv-00075-DJN

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR CONSOLIDATED AMENDED COMPLAINT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................4

      A.    This Court sets the standard for obtaining leave to amend. .........................................4

      B.    Plaintiffs file their amended complaint. .......................................................................5

      C.    Plaintiffs do not amend in response to defendants' motions. ......................................6

      D.    The Court rejects plaintiffs' request for the right to amend without leave. .................7

      E.    Plaintiffs move for leave without acknowledging the Court's order. ..........................8

ARGUMENT ..............................................................................................................................9

I.     Plaintiffs fail to satisfy Rule 16(b)(4). .............................................................................10

II.    Plaintiffs' motion fails to satisfy Rule 15(a)(2). ...............................................................14

      A.    Plaintiffs' delay is egregious. ....................................................................................14

      B.    Another amendment at this late stage would prejudice defendants. ...........................16

      C.    Amendment would be futile. .......................................................................................20

CONCLUSION..........................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Adbul-Mumit* v. *Alexandria Hyundai, LLC*,
     896 F.3d 278 (4th Cir. 2018) ........................................................................................16

*Amorosa* v. *AOL Time Warner Inc.*,
     409 F. App'x 412 (2d Cir. 2011) ..................................................................................12

*Angelos* v. *Tokai Pharms., Inc.*,
     494 F. Supp. 3d 39 (D. Mass. 2020) ............................................................................22

*Band* v. *Ginn Companies, LLC*,
     2011 WL 807396 (M.D. Fla. Mar. 2, 2011) ................................................................19

*Beyond Sys., Inc.* v. *Harvard.net, Inc.*,
     2007 WL 9782572 (D. Md. Mar. 6, 2007)....................................................................11

*Brown* v. *Tethys Bioscience, Inc.*,
     2012 WL 1111314 (S.D.W. Va. Mar. 30, 2012) ..................................................16 n.4

*Burns* v. *AAF-McQuay, Inc.*,
     980 F. Supp. 175 (W.D. Va. 1997) ..............................................................................15

*CBX Techs., Inc.* v. *GCC Techs., LLC*,
     2012 WL 3038639 (D. Md. July 24, 2012)......................................2, 9, 10, 11, 13

*Citynet, LLC ex rel. United States* v. *Frontier W. Virginia Inc.*,
     2018 WL 5269367 (S.D.W. Va. Oct. 23, 2018) ....................................................16 n.4

*Davison* v. *Randall*,
     912 F.3d 666 (4th Cir. 2019) ........................................................................................20

*Deasy* v. *Hill*,
     833 F.2d 38 (4th Cir. 1987) ................................................................................3, 14, 15

*Dr.* v. *Ozmint*,
     2008 WL 4132209 (D.S.C. Aug. 26, 2008)..............................................................8 n.2

*Edwards* v. *City of Goldsboro*,
     178 F.3d 231 (4th Cir. 1999) ..................................................................................16 n.1

*Fed. Deposit Ins. Corp.* v. *Kerr*,
     650 F. Supp. 1356 (W.D.N.C. 1986) ............................................................................16

*Fosbre* v. *Las Vegas Sands Corp.*,
     2012 WL 5879783 (D. Nev. Nov. 20, 2012) ........................................................... 19-20

*Glaser* v. *Enzo Biochem, Inc.*,
     464 F.3d 474 (4th Cir. 2006) ..................................................................................3, 15

*Green* v. *AMF Bowling Centers, Inc.*,
    2020 WL 6204297 (D. Md. Oct. 21, 2020) ..............................................................14

*In re BearingPoint, Inc.*,
    525 F. Supp. 2d 759 (E.D. Va. 2007) ......................................................................21

*In re Connetics Corp.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ....................................................................21

*In re Eaton Corp.*,
    2017 WL 4217146 (S.D.N.Y. Sept. 20, 2017)........................................................23

*In re Morgan Stanley Info. Fund*,
592 F.3d 347 (2d Cir. 2010)........................................................................................21

*In re UBS*,
    2010 WL 2541166 (S.D.N.Y. June 10, 2010) ........................................................22

*In re ValuJet, Inc.*,
    984 F. Supp. 1472 (N.D. Ga. 1997)........................................................................20

*Iron Workers Local 16 Pension Fund* v. *Hilb Rogal & Hobbs Co.*,
    432 F. Supp. 2d 571 (E.D. Va. 2006) ......................................................................21

*Kerr* v. *Marshall Univ. Bd. of Governors*,
    2018 WL 934614 (S.D.W. Va. Feb. 16, 2018),
    *aff'd*, 735 F. App'x 827 (4th Cir. 2018)..................................................................16

*Logar* v. *W. Virginia Univ. Bd. of Governors*,
    2012 WL 243692 (N.D.W. Va. Jan. 25, 2012),
    *aff'd*, 493 F. App'x 460 (4th Cir. 2012).....................................................14, 15, 16

*Lone Star Steakhouse & Saloon, Inc.* v. *Alpha of Virginia, Inc.*,
    43 F.3d 922 (4th Cir. 1995) ..............................................................................14, 15

*Mayfield* v. *Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .....................................................................14, 16, 17

*McCall-Scovens* v. *Blanchard*,
    2016 WL 6277668 (D. Md. Oct. 27, 2016) ........................................................16 n.4

*Merck & Co., Inc.* v. *Reynolds*,
    559 U.S. 633 (2010)..................................................................................................23

*Morongo Band of Mission Indians* v. *Rose*,
    893 F.2d 1074 (9th Cir. 1990) .................................................................................18

*Moses.com Sec., Inc.* v. *Comprehensive Software Sys., Inc.*,
    406 F.3d 1052, 1066 (8th Cir. 2005) .......................................................................16

iii

*Nourison Rug Corp.* v. *Parvizian*,
535 F.3d 295 (4th Cir. 2008) ...............................................................................2, 5, 9, 10

*Obomsawim* v. *Tempur-Pedic N. Am., LLC*,
2015 WL 1919440 (D. Md. Apr. 27, 2015).......................................................................11

*Odyssey Travel Ctr., Inc.* v. *RO Cruises, Inc.*,
262 F. Supp. 2d 618 (D. Md. 2003) ...........................................................................11, 13

*Omni Outdoor Advert., Inc.* v. *Columbia Outdoor Advert., Inc.*,
974 F.2d 502 (4th Cir. 1992) ....................................................................................3, 14

*Rassoull* v. *Maximus, Inc.*,
209 F.R.D. 372 (D. Md. 2002).......................................................................... 2, 10-11

*RSM Prod. Corp.* v. *Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009)...............................................................................21

*Sedona Corp.* v. *Ladenburg Thalmann*,
2005 WL 2647945 (S.D.N.Y. Oct. 14, 2005)....................................................................19

*Stevens* v. *InPhonic, Inc.*,
662 F. Supp. 2d 105 (D.D.C. 2009) ..................................................................................22

*Spears* v. *Metro. Life Ins.*,
2007 WL 1468697 (N.D. Ind. May 17, 2007) ..................................................................20

*Stoudemire* v. *Branch Banking & Tr. Bankcard Corp.*,
2010 WL 3447281 (D.S.C. Aug. 31, 2010)........................................................................3

*SuperMedia LLC* v. *Baldino's Lock & Key Serv., Inc.*,
2013 WL 4176955 (D. Md. Aug. 13, 2013) ...............................................................16 n.4

*Synovus Bank* v. *Kimmel*,
2013 WL 12239113 (W.D.N.C. Apr. 16, 2013) ...............................................................17

*Thornhill, Inc.* v. *NVR, Inc.*,
422 F. Supp. 2d 646 (N.D.W. Va. 2006) ..........................................................................15

*Winer Fam. Tr.* v. *Queen*,
503 F.3d 319 (3d Cir. 2007)..............................................................................................22

*Woodson* v. *Fulton*,
614 F.2d 940 (4th Cir. 1980) ............................................................................................15

**Statutes and Rules**

28 U.S.C. § 1658(b) ...........................................................................................................22

Fed. R. Civ. P. 11(b)(3)......................................................................................................21

Fed. R. Civ. P. 15(a) ..................................................................................................... *passim*

Fed. R. Civ. P. 16(b)(4)...................................................................................................... *passim*

## PRELIMINARY STATEMENT

Nearly two years after the commencement of this litigation, and nearly five months after the Court ruled on defendants' motions to dismiss plaintiffs' first amended complaint, plaintiffs seek to amend their complaint yet again. With fact discovery nearly complete and class certification proceedings already underway, they seek to expand their proposed class to include Altria investors who purchased shares *before* the JUUL investment, to incorporate a brand new and highly flawed theory of liability based on contested antitrust allegations having nothing to do with youth marketing, and to add four new "corrective disclosures" to an already absurdly long list of supposed revelations of fraud. Plaintiffs' motion is egregiously untimely and threatens to upend the Court's schedule to defendants' detriment. It should be denied.

In seeking leave to amend, plaintiffs elide the standard governing their motion. Plaintiffs never address the fact that, in the Court's scheduling order entered in February 2020, the Court directed that leave would not be granted absent the satisfaction of Rule 16(b)(4)'s "good cause" standard. Specifically, in providing that plaintiffs could "file a second consolidated amended complaint in response to Defendants' motion to dismiss," pursuant to Rule 15(a)(1), the Court made clear that would be plaintiffs' one opportunity to amend without needing to meet the stringent standard of Rule 16: "if Lead Plaintiffs do not file an amended pleading in response to Defendants' motion to dismiss," the Court explained, "the Court will resolve the relevant motion based on the consolidated amended complaint, *with leave to amend granted only upon satisfaction of Rule 16(b)(4) and Rule 15*." Dkt. No. 72 at 2 (emphasis added).

Plaintiffs did not amend their complaint in response to defendants' motions to dismiss. They chose, instead, to defend their pleading, and the Court proceeded to rule on defendants' motion and set a schedule for discovery, summary judgment motions, and mediation consistent

with the practice in this district.  While the Court was adjudicating the motions to dismiss, plaintiffs never breathed a word about amending.  And while the Court later set a deadline of August 6, 2021 for plaintiffs to seek leave to amend, it did not grant plaintiffs relief from its February 2020 order making clear that the "good cause" standard would apply.

Plaintiffs now ask to amend without so much as acknowledging that the Rule 16 standard applies to this motion.  Pls. Mot. at 8, Dkt. No. 219.  That is reason alone to deny their request:  "A court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril."  *CBX Techs., Inc.* v. *GCC Techs., LLC*, 2012 WL 3038639, at *4 (D. Md. July 24, 2012).  And the Fourth Circuit has explained that, "[g]iven the[] heavy case loads [of] district courts," Rule 16's "good cause" standard is a critical "case management tool[]."  *Nourison Rug Corp.* v. *Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008).

Under Rule 16, good cause "is less focused on the substance of the proposed amendment and more [on] the timeliness" and "the reasons for its tardy submission."  *CBX Techs.*, 2012 WL 3038639, at *4.  "If [a] party was not diligent, the inquiry should end."  *Rassoull* v. *Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002).  And the epitome of plaintiffs who are "not diligent" are those who "possessed" the needed information "prior to the deadline for motions to amend," but "offer no reason for a grant of relief."  *CBX Techs.*, 2012 WL 3038639, at *3.  Plaintiffs here offer no explanation, let alone "good cause," for why they have waited so long to seek leave to amend.  Plaintiffs knew about their allegations long before their motion and could have filed an amended complaint at the time the Court contemplated in its prior order.  According to their own proposed amendment, plaintiffs' new claim—*i.e.*, the "one additional false and misleading statement"—concededly "materialized after the close of trading on April 1, 2020," when the FTC brought its antitrust claims related to the JUUL transaction.  Pls. Mot. at 6-7, Dkt. No. 219.

2

The FTC complaint was filed three weeks before plaintiffs filed their first amended complaint and more than a year before their motion for leave. *Id.* at 6. There is no good cause for plaintiffs' delay.

Moreover, even if plaintiffs could satisfy Rule 16(b)(4), they would still need to satisfy Rule 15(a)(2), which is similarly unforgiving to plaintiffs who try "to engage in the litigation of cases one theory at a time." *Omni Outdoor Advert., Inc.* v. *Columbia Outdoor Advertising, Inc.*, 974 F.2d 502, 506 (4th Cir. 1992). The Rule permits "a party [to] amend its pleadings" with the "court's leave" where "justice so requires." Fed. R. Civ. P. 15(a)(2). And that depends on considerations such as whether "(1) there has been undue delay in seeking the amendment, (2) the motion is pursued in bad faith or with dilatory motive, (3) the amendment is futile, or (4) the amendment would result in undue prejudice." *Stoudemire* v. *Branch Banking & Tr. Bankcard Corp.*, 2010 WL 3447281, at *2 (D.S.C. Aug. 31, 2010).

In this case, each of these considerations weighs against leave. *First*, plaintiffs' delay in seeking amendment is egregious and undue. They had "many opportunities" to amend sooner, *Glaser* v. *Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006), and their amendment comes nowhere near "as soon as the necessity for altering the pleading bec[ame] apparent," *Deasy* v. *Hill*, 833 F.2d 38, 41 (4th Cir. 1987). Plaintiffs seek to add four corrective disclosures to their complaint, all of which took place before plaintiffs filed their first amended complaint. But a corrective disclosure, by definition, reveals an alleged fraud to the entire stock market—there is nothing about it that is secret or that would require further investigation. There simply can be no excuse for waiting until 2021 to try to add those stock declines to their case.

*Second*, the amendment is highly prejudicial. If allowed, it would require the parties to expend further resources on motion practice directed to the pleadings, all while fact discovery is

3

soon coming to an end.  It injects an entirely new theory of liability into the case.  It raises the specter of the automatic, statutory PSLRA stay, which plaintiffs have not moved to lift.  It could complicate Court-ordered mediation efforts.  And it would likely throw class certification proceedings into disarray, as plaintiffs have moved for certification of the class set forth in their amended pleading, which they have not received permission to file and has not been tested on a motion to dismiss.

*Third*, the amendment would ultimately be futile.  As shown below, the new claims suffer from a variety of defects that would not withstand a motion to dismiss.  The effort to piggyback on the antitrust claims of the FTC, which are actively contested and have yet to be adjudicated, provides no basis to claim securities fraud under Fourth Circuit law, which makes clear that the securities laws aren't a rite of confession.  Defendants had no duty to concede an antitrust violation.  In addition, the claims of the new proposed class members are largely time barred, and the new proposed class members lack standing to pursue almost all of them.

For these reasons and the reasons discussed below, plaintiffs' motion for leave to amend should be denied.[1]

## BACKGROUND

### A.     This Court sets the standard for obtaining leave to amend.

The initial complaint in this action was filed on October 2, 2019, in the U.S. District Court for the Eastern District of New York.  Dkt. No. 1.  Plaintiffs were then appointed Lead Plaintiffs on December 30, 2019, Dkt. No. 43, and the case was transferred to this District on February 7, 2020, Dkt. No. 51.

---

[1] All defendants join in this opposition to plaintiffs' motion except defendant K.C. Crosthwaite, who is filing a separate opposition to plaintiffs' motion.

Upon transfer, this Court ordered the parties to submit brief position statements that included, among other things, "a proposed schedule for litigating this matter." Dkt. No. 56. The parties had previously negotiated a schedule that was entered while the case was pending in the Eastern District of New York. That schedule allowed two months for the filing of a "consolidated amended complaint," followed by two months for the filing of an answer or motion to dismiss, and then another three and half months to complete the briefing should a motion to dismiss be filed. Dkt. No. 47 at 2-3.

In a joint statement entered on February 24, 2020, the parties endorsed this schedule as "setting [the] deadlines for the filing of an amended complaint," as well as "the briefing of a motion to dismiss," and asked for the Court's "permission to proceed on that schedule." Dkt. No. 69 at 2. Because the parties were in agreement, the Court adopted the schedule two days later. Dkt. No. 72 at 1.

At the same time, the Court directed: "if Lead Plaintiffs, pursuant to Rule 15(a)(1), file a second consolidated amended complaint in response to Defendants' motion to dismiss, Lead Plaintiffs shall not have leave to file a subsequent amended pleading without filing a separate motion to leave, which shall be granted only upon satisfaction of the requirements of Rule 16(b)(4) and Rule 15." Dkt. No. 72 at 2. The Court further ordered that "if Lead Plaintiffs do not file an amended pleading in response to Defendants' motion to dismiss, the Court will resolve the relevant motion based on the consolidated amended complaint, with leave to amend granted *only* upon satisfaction of Rule 16(b)(4) *and* Rule 15." *Id.* (emphasis added) (citing *Nourison Rug Corp* v. *Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)).

### B.    Plaintiffs file their amended complaint.

On April 21, 2020, plaintiffs filed a 165-page Consolidated Class Action Complaint. *See*

Cons. Amend. Compl., Dkt. No. 74.  Per this amended complaint, the case was all about "persons and entities other than Defendants who purchased or otherwise acquired [Altria] securities between December 20, 2018 and February 21, 2020" — *i.e.*, after Altria's investment in JUUL.  *Id.* ¶ 2.

As the Court's decision on the motions to dismiss makes clear, the gravamen of the allegations in the complaint was that JUUL intentionally marketed its products to youth, that Altria knew it, and that Altria deliberately lied to securities holders about JUUL's alleged illegal marketing.  Dkt. No. 140 at 1 ("This action arises out of [Altria's] investment in [JUUL].  The investment proved unwise, and now investors in Altria allege that the two companies defrauded them by not disclosing the risks created by JUUL's illegal marketing practices targeting underage consumers.").  In support, plaintiffs included virtually every allegation from the more than 180 consumer product lawsuits that were brought against JUUL before this case was filed, and, as a corrective disclosure, virtually every post-investment public event potentially resulting in a decline to Altria stock, however marginal.

Plaintiffs also made references to allegations in the antitrust complaint filed by the Federal Trade Commission ("FTC") on April 1, 2020, which had been pending and public for nearly three weeks.  *See id.* ¶¶ 405-06.  But plaintiffs did not include a claim of securities fraud based on the antitrust allegations, and there was no alleged corrective disclosure related to the antitrust allegations.  The word antitrust didn't even appear in their amended pleading.

C.      **Plaintiffs do not amend in response to defendants' motions.**

A little more than a month into defendants preparing their motions to dismiss, the parties jointly asked the Court to modify the briefing schedule to allow additional time and additional pages.  Dkt. No. 92 at 1.  The Court granted this request.  *Id.* at 2.  The Court extended the

deadline for motions to dismiss to July 8, 2020, and, in effect, extended the deadline for the filing of a second amended complaint without good cause to 21 days after that. *Id.* at 1; *see* Fed. R. Civ. P. 15(a)(1).

Defendants timely filed their motions to dismiss, and the parties spent the next several months on rounds of briefings, which they completed on November 2, 2020. *See e.g.*, Dkt. No. 128. Notably, rather than amend in response to the motions to dismiss, plaintiffs chose to stand on their amended complaint and filed a brief in opposition. Dkt. Nos. 126, 127. The Court went on to issue a 43-page decision denying the motions in part on March 12, 2021. *See* Dkt. No. 140.

**D.      The Court rejects plaintiffs' request for the right to amend without leave.**

Shortly after its decision, the Court ordered the parties to meet and confer regarding a schedule that incorporated its contemplated deadlines. Dkt. No. 173. The parties conferred but reached an impasse on scheduling: whereas plaintiffs wanted a schedule that would allow them to "Amend Pleadings Without Leave of Court," Dkt. No. 189 at 2, defendants were opposed, arguing that "Plaintiff's proposal, if adopted and acted upon, would upend the Court's schedule," as another "amended complaint" could mean defendants "mov[ing] to dismiss or need[ing] to engage in the resource-draining exercise of answering a 600-odd paragraph complaint all over again," in addition to "the PSLRA's automatic stay of discovery . . . kick[ing] back in [and] freezing these proceedings in place." Dkt. No. 190 at 4.

The Court entered a schedule on May 5, 2021, which gave the parties until July 30, 2021 to complete all document production. Consistent with its February 26, 2020 order, the Court rejected plaintiffs' request for the right to amend without leave and set a deadline of August 6 for plaintiffs to seek "leave to amend the pleadings or add any parties." Dkt. No. 194 at 2, ¶ 16.

Pursuant to that order, defendants filed their answers, Dkt. Nos. 179-182, served initial disclosures, served and responded to document requests, served and responded to interrogatories, engaged in mediation, and produced "tens of millions of documents" to plaintiffs, all by month's end.  Pls. Mot. at 9, Dkt. No. 219.  By the end of July, all document discovery was completed. *See* Dkt. No. 194 at 2, ¶ 13.  On August 1, the deposition period commenced, *id.* at 2, ¶ 13, and on August 6, plaintiffs moved for class certification, Dkt. No. 220.

> **E.       Plaintiffs move for leave without acknowledging the Court's order.**

On August 6, plaintiffs filed the pending motion seeking leave to introduce another amended pleading, raising a new claim and significantly expanding their proposed class to include stockholders who purchased before the JUUL transaction.  *See* Dkt. No. 219-2.  Plaintiffs now say that Altria misled the market on October 25, 2018 about an antitrust conspiracy with JUUL, because it "knew or recklessly disregarded but failed to disclose" that it "was ***not*** removing certain of its products from the market because [it] did not want to risk continuing underage access and use but [rather] because of a non-compete condition to the anticipated investment in JLI."  Proposed Compl. ¶¶ 2, 468, Dkt. No. 219-1.  All of this, in plaintiffs' view of the world, has been apparent for more than a year—since "April 1, 2020, when the [FTC] filed a complaint against Altria . . . ."  Pls. Mot. at 1-2, 6-7, Dkt. No. 219.

Plaintiffs also seek to extend the class period to "October 25, 2018 through April 1, 2020," in order to simultaneously represent two discrete groups of investors:  (i) those who purchased before the JUUL investment who were allegedly harmed by the failure to disclose the alleged antitrust conspiracy, and (ii) those who purchased Altria stock months later, on or after December 20, 2018, who and were allegedly harmed because Altria should have never invested in JUUL given the alleged marketing practices.  Proposed Compl. ¶ 2, Dkt. No. 219.1.

Plaintiffs also seek to add four additional corrective disclosure events—all predating their original amended complaint.  Pls. Mot. at 7.  Of course, if some sort of "fraud" was really revealed to the market on these dates, as plaintiffs claim, there is no conceivable reason why plaintiffs could not have pled it before the Court-ordered deadline for amending without good cause and certainly no reason for them to have waited until August 6, 2021 to add them to their pleading.

## ARGUMENT

A complaint may be amended "once as a matter of course" within 21 days after serving it or within 21 days of service of an answer or motion to dismiss, "whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(b).  Under any other circumstance, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Typically, pursuant to Rule 15(a)(2), leave to amend is granted unless the amendment "would be prejudicial, there has been bad faith, or [the] amendment would be futile."  *Nourison Rug Corp.*, 535 F.3d at 298.  But if a party seeks leave to amend after a Court-ordered deadline for amendment, leave "will only be granted if it satisfies both the 'good cause' standard of Rule 16(b)(4) *and* the standard of Rule 15(a)(2) for allowing amendment of pleadings."  *CBX Techs.*, 2012 WL 3038639, at *3 (emphasis added).

Here, the Court recognized that plaintiffs could file an amended complaint in response to the motions to dismiss without leave of Court and made clear that if plaintiffs chose not to take advantage of that opportunity, any subsequent proposed pleading would be subject to both Rule 16(b)(4) *and* Rule 15(a)(2).  Dkt. No. 72 at 2.  Plaintiffs breezed past their deadline for amending without "good cause," despite being in possession of the information underlying the allegations they level now, and thus must satisfy both standards.  Plaintiffs have satisfied neither, and their

9

motion should be denied.

## I.      Plaintiffs fail to satisfy Rule 16(b)(4).

Plaintiffs do not acknowledge, let alone attempt to meet, the good faith standard imposed by Rule 16(b)(4)—a standalone basis for denying their motion.  "A court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *CBX Techs.*, 2012 WL 3038639, at *3 (internal quotation marks and citation omitted).

In ordering that any subsequent proposed amendment would be subject to Rule 16(b)(4)'s "good cause" standard, the Court cited *Nourison Rug Corp.* v. *Parvizian*, 535 F.3d 295 (4th Cir. 2008).  Dkt. No. 72 at 2.  There, the Fourth Circuit held that, "[g]iven the[] heavy case loads [of] district courts," and their need to rely on Rule 16, "after the deadlines provided by a scheduling order have passed, the good cause standard *must* [also] be satisfied to justify leave to amend the pleadings," same as it is in "other circuits."  *Id.* (emphasis added).

Good cause "is less focused on the substance of the proposed amendment and more concerned with the timelineness of the motion to amend and the reasons for its tardy submission." *CBX Techs.*, 2012 WL 3038639, at *4 (internal quotation marks omitted) (quoting *Rassoull*, 209 F.R.D. at 374).  In other words, the "primary consideration" for "Rule 16(b) 'good cause'" requirement is "the diligence of the movant"—"[i]f [a] party was not diligent, the inquiry should end."  *Rassoull*, 209 F.R.D at 374.

Thus, good cause is not found where a party "possessed" the needed information "prior to the deadline for motions to amend," and "offers no reason for a grant of relief."  *Id.* at *4; *see also Rassoull*, 209 F.R.D. at 374 (failure to show "good cause" where motion "never addresses the issue of tardiness"); *Odyssey Travel Ctr., Inc.* v. *RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003) (failure to show "good cause" where motion "focus[ed] solely on arguments for

leave to amend the complaint," and did "nothing to explain the tardiness of the motion itself");

*Beyond Sys., Inc.* v. *Harvard.net, Inc.*, 2007 WL 9782572, at *6 (D. Md. Mar. 6, 2007) (same);

*Obomsawim* v. *Tempur-Pedic N. Am., LLC*, 2015 WL 1919440, at *3 (D. Md. Apr. 27, 2015)

(same).

Plaintiffs' motion comes nearly two years after this case was filed and long after the

timeline for an amendment without "good cause" contemplated in the Court's February 26, 2020

scheduling order. *Odyssey Travel Ctr.*, 262 F. Supp. 2d at 631. Plaintiffs make empty

attestations about "further investigations" and "consultation with financial economic experts."

Pls. Mot. at 7, Dkt. No. 219. But plaintiffs had the necessary alleged evidence in their position

for virtually all of that time, and, for most allegations, even "prior to the filing of the lawsuit."

*CBX Tech.*, 2012 WL 3038639, at *4. Nothing in their proposed amendment reflects any

meaningful further investigations or consultation with economic experts.[2]

Rather, plaintiffs' new claim centers on allegations plaintiffs knew about since at least

April 1, 2020, when the FTC filed its administrative complaint. *See* Pls. Mot. at 7, Dkt. No. 219.

The alleged false and misleading statement is Altria's October 25, 2018 statement to the FDA

that it was withdrawing certain e-cigarette products out of concern for the youth vaping crisis,

which, according to plaintiffs, now means that purchasers of Altria stock as of that date should

be part of the operative class. Proposed First Amend. Compl. ¶¶ 2, 468, Dkt. No. 219-1.

Plaintiffs say this statement is false and misleading because, as the FTC has alleged, Altria

actually withdrew the products because of a non-compete condition that would be part of the

---

[2] And to the extent plaintiffs make new proposed allegations based on documents they received in discovery to try to support their old theories, *i.e.*, Dkt. No. 219.1 at ¶¶ 387-392, the amendment is unnecessary. *E.g.*, *Dr.* v. *Ozmint*, 2008 WL 4132209, at *8 (D.S.C. Aug. 26, 2008) (finding "amendment is unnecessary as the current action already asserts [proposed claim]").

agreement with JUUL.  But this statement and the FTC's allegations are not new—they are nearly a year and a half old.  Complaint at 11, *Blomquist* v. *Altria Group, Inc. & JUUL Labs, Inc.*, Case No. 3:20-cv-02512 (N.D. Cal. Apr. 13, 2020) ("Altria announced on October 25, 2018, that it was temporarily halting its production and marketing of its MarkTen Elite, under the guise that the pod system and its selection of flavors were contributing to youth usage.  However, just a few days later, Altria and Juul agreed . . . that Altria cease competition in the e-cigarette market.").[3]

And there is also nothing new about any of the "three additional corrective disclosure events"—these events were public information long before this lawsuit was ever filed, or became so shortly thereafter.  Pls. Mot. at 7, Dkt. No. 219 (listing announcements and public statements with dates ranging from March 19, 2019 to November 19, 2019).  By definition, alleged corrective disclosures are alleged revelations of fraud to the entire stock market and no secret to anyone.  By definition, plaintiffs' counsel have no excuse for not alleging them when they filed their consolidated complaint in April 2020.  *E.g.*, *Amorosa* v. *AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011) ("The corrective disclosure date is the same as the constructive notice date for purposes of [the statute of] limitations.").

Beyond that, one of the new corrective disclosures references events that were *already in their complaint*.  Plaintiffs' first new corrective disclosure, FDA Commissioner Gottlieb referring to a "difficult" meeting, gets two paragraphs in the operative complaint.  *See* Dkt. 108

---

[3] *See also* Complaint at 2, *In the Matter of Altria Group, Inc., et al.*, Dkt. No. 9393 (F.T.C. Apr. 1, 2020), *available at* https://www.ftc.gov/system/files/documents/cases/d09393_administrative_ part_iii_complaint-public_version.pdf; Statement of Commissioner Rohit Chopra Joined by Commissioner Rebeca Kelly Slaughter at 2 (Apr. 2, 2020), *available at* https://www.ftc.gov/ system/files/documents/public_statements/1570265/statement_of_comm_chopra_in_the_matter_ of_altria-juul.pdf.

¶¶ 414-15.  But now, more than a year later, plaintiffs have decided, with no explanation, to allege that these exact same remarks reveal a securities fraud.  It is hard to escape the feeling that plaintiffs are hunting for any stock drops they can find to get their damages numbers up before the Court-ordered mediation.

Plaintiffs have done "nothing to explain the tardiness of the[ir] motion," *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d 618 at 632, which is plainly "not compatible with a finding of diligence," *CBX Techs.*, 2012 WL 3038639, at *4.  Instead, plaintiffs take the position that "Rule 16(b)'s good cause requirement need not be satisfied here," because they "moved to amend the Complaint prior to the deadline set by the Court."  Pls. Mot. at 8, Dkt. No. 219.  That is wrong.  While the Court set a deadline of August 6, 2021 to move for leave to amend, plaintiffs never sought relief from the Court's February 26, 2020 scheduling order, which was unequivocal that "if Lead Plaintiffs d[id] not file an amended pleading in response to Defendants' motion to dismiss, . . . leave to amend [would be] granted only upon satisfaction of Rule 16(b)(4) and Rule 15."  Dkt. No. 72 at 2 (emphasis added).

Nor was this order ever set aside.  When the Court ordered the parties to meet and confer regarding the most recent schedule, plaintiffs tried to get defendants to agree to a schedule that would allow them to amend the complaint without leave.  *See* Dkt. No. 189 at 2, 190 at 4.  Defendants did not agree to that, and neither did this Court, which specifically ordered the parties to "seek leave to amend the pleadings or add any parties."  Dkt. No. 194 at 2.

Plaintiffs' motion does not satisfy Rule 16(b)(4)'s good cause requirement and should be denied on that basis.

13

## II.      Plaintiffs' motion fails to satisfy Rule 15(a)(2).

The Court "need not address other factors . . . , such as . . . whether leave to amend is warranted under Rule 15(a)(2)" if Rule 16(b)(4)'s good cause standard is not met. *Green* v. *AMF Bowling Centers, Inc.*, 2020 WL 6204297, at *6 (D. Md. Oct. 21, 2020). But the Rule 15 standard counsels denial all the same. The Rule is designed to promote liberal amendment of pleadings; it "does not afford plaintiffs a tool to engage in the litigation of cases one theory at a time." *Omni Outdoor Advert.*, 974 F.2d at 506. More specifically, leave "may be denied when [the motion to amend] has been unduly delayed and when allowing the motion would prejudice the nonmovant," *Lone Star Steakhouse & Saloon, Inc.* v. *Alpha of Virginia, Inc.*, 43 F.3d 922, 941 (4th Cir. 1995), or when the amendment is "futile," *Mayfield* v. *Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012).

### A.  Plaintiffs' delay is egregious.

The Fourth Circuit has cautioned that "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent," as "[a] party who delays in seeking an amendment is acting contrary to the spirit of the rule." *Deasy*, 833 F.2d at 41 (internal quotation marks and citations omitted). While "delay alone, without more, is insufficient to justify denial of a motion to amend, courts often consider unexcused delay, or undue delay without reasonable excuse, as sufficient." *Logar* v. *W. Virginia Univ. Bd. of Governors*, 2012 WL 243692, at *5 (N.D.W. Va. Jan. 25, 2012), *aff'd*, 493 F. App'x 460 (4th Cir. 2012).

Accordingly, courts deny leave where "the plaintiffs were aware of the claims . . . long before they sought leave to amend" or "even before th[e] case was filed," if plaintiffs do not "offer a[ persuasive] explanation for their failure to request leave" sooner. *Id.* Courts similarly deny leave "[w]here a party has been aware of a possible claim for a long period of time, but

14

nevertheless refrains from moving to amend until the 'last minute.'" *Thornhill, Inc.* v. *NVR, Inc.*, 422 F. Supp. 2d 646, 653 (N.D.W. Va. 2006) (citing *Woodson* v. *Fulton*, 614 F.2d 940, 943 (4th Cir. 1980)). So too where a party had the necessary "evidence . . . in its possession" but "waited until . . . the closing days of discovery . . . before filing its motion to amend." *Lone Star Steakhouse & Saloon*, 43 F.3d at 940; *see also Glaser*, 464 F.3d at 480 (affirming denial where "plaintiffs[] [had] many opportunities to present their claim"); *Burns* v. *AAF-McQuay, Inc.*, 980 F. Supp. 175, 178 (W.D. Va. 1997) (finding that because "the facts that would have supported the [new allegations] were in [plaintiff's] possession three years ago, . . . plaintiff's delay here qualifies as 'undue' under Rule 15(a) and, thus, her motion for leave to amend should be denied").

Plaintiffs' motion was made nowhere near "as soon as the necessity for altering the pleading bec[ame] apparent," *Deasy*, 833 F.2d at 51, as set forth above in Point I. And though plaintiffs "refrain[ed] from moving to amend until the last minute," and after document discovery has closed, it was not for want of opportunity. *Thornhill, Inc.*, 422 F. Supp. 2d at 653. As discussed above, plaintiffs had "many opportunities" over the better part of the last two years to present their new claims. *Glaser*, 464 F.3d at 480.

Nor do plaintiffs offer any explanation for their delay. Instead, they "maintain that their motion is not untimely because it was filed before the deadline to amend [with leave of court] set forth in the . . . scheduling order in this case." *Logar*, 2012 WL 243692, at *8. Plaintiffs are wrong. "Simply because th[e] Court set a deadline for amendments in the original scheduling order, does not mean that it cannot consider, under the individual circumstances of [the] case following the issuance of that order, whether amendment is appropriate at whatever time it may be requested, be it before that deadline or not." *Id*. And unlike virtually every case cited by

15

plaintiffs, the circumstances here are precisely the kind that require explanation: "numerous motions to dismiss have already been briefed and ruled [on], and discovery in [the] matter is now well underway." *Moses.com Sec., Inc.* v. *Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1066 (8th Cir. 2005) (alterations in original) (internal quotation marks omitted).[4]

## B.    Another amendment at this late stage would prejudice defendants.

Plaintiffs' attempt to expand the class on the basis of an entirely new theory, and to introduce additional corrective disclosures, would result in considerable prejudice to defendants, which is another, independent basis, for denial.  "[P]rejudice resulting to the opponent by a grant of leave to amend is sufficient to deny amendment." *Kerr* v. *Marshall Univ. Bd. of Governors*, 2018 WL 934614, at *4 (S.D.W. Va. Feb. 16, 2018), *aff'd*, 735 F. App'x 827 (4th Cir. 2018). Prejudice is indeed "probably the most important" of the "factors" under Rule 15(a)(2). *Fed. Deposit Ins. Corp.* v. *Kerr*, 650 F. Supp. 1356, 1362 (W.D.N.C. 1986).  And it is typically determined "by the nature of the amendment and its timing." *Mayfield*, 674 F.3d at 379; *see also Adbul-Mumit* v. *Alexandria Hyundai, LLC*, 896 F.3d 278, 293 (4th Cir. 2018) (explaining that, in determining prejudice, courts look to "the 'particular circumstances' presented, including the previous opportunities to amend and the reason for the amendment").

---

[4]  *See Citynet, LLC ex rel. United States* v. *Frontier W. Virginia Inc.*, 2018 WL 5269367, at *1 (S.D.W. Va. Oct. 23, 2018) (motion filed a month after scheduling order entered, and only to add a potentially indispensable party); *Brown* v. *Tethys Bioscience, Inc.*, 2012 WL 1111314, at *2 (S.D.W. Va. Mar. 30, 2012) (motion filed only "two months after . . . employment was terminated" and "less than a month after plaintiffs' 'discovery' that they may have claims"); *McCall-Scovens* v. *Blanchard*, 2016 WL 6277668, at *6 (D. Md. Oct. 27, 2016) (motion filed "within two to three months of filing their original answers"); *SuperMedia LLC* v. *Baldino's Lock & Key Serv., Inc.*, 2013 WL 4176955, at *1 (D. Md. Aug. 13, 2013) (motion filed about a month after ruling on motion to dismiss, shortly after which "defendants promptly retained new counsel, and informed the court of their intention to move"); *Edwards* v. *City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (reversing denial because "all of the allegations sought to be added . . . derived from evidence obtained during discovery").

In particular, "the further [a] case progress[es] before judgment [is] entered, the more likely it is that the amendment will prejudice the defendant." *Mayfield*, 647 F.3d at 379. Courts pay close attention to the "[t]he amount of discovery" that "ha[s] already been conducted" when leave to amend is requested. *Id.* Accordingly, a district court which "den[ies] leave to amend where the amendment comes so late in the case that granting leave would change the nature or character of the litigation" does "not abuse its discretion." *Synovus Bank* v. *Kimmel*, 2013 WL 12239113, at *1 (W.D.N.C. Apr. 16, 2013).

Plaintiffs' assertion that its "proposed amendment does not introduce a new legal theory, but merely identifies additional misleading statements" is nonsense. *See* Pls. Mot. at 9, Dkt. No. 219. The proposed claim rests on an "entirely new event and nucleus of facts" than plaintiffs' longstanding theory. *Mayfield*, 674 F.3d at 380. Indeed, as the Court's ruling on the motions to dismiss recognized, the nub of plaintiffs' case is their allegations that "JUUL targeted youth for its products and that all Defendants knew that JUUL targeted youth," and that "Defendants recognized the risks that this marketing scheme posed to the value of JUUL and Altria, yet they chose not to disclose it to investors." Dkt. 140 at 42. In order to win on that theory, plaintiffs have to prove those allegations—they have to show JUUL targeted youth and defendants knew about it. That's the theory that has animated document discovery and motion practice to date. That's what the parties have been doing these last few months.

This new antitrust theory, on the other hand, is something else. Plaintiffs are claiming, in essence, that the FTC lawsuit revealed an antitrust conspiracy that Altria failed to disclose. Dkt. 218.1 ¶¶ 465-68, 547. They now say Altria made "statements [that] were materially false and misleading because [defendants] knew … that Altria removed certain e-cigarette products from the market because of a non-compete condition of its planned investment in JLI." *Id.* ¶ 16.

17

And they say that statements that Altria made on October 25, 2018 were misleading because they failed to disclose "material risks associated with … Altria's contemplated non-compete agreement with JLI." *Id.* ¶ 461.  That theory has nothing to do with JUUL's alleged marketing practices.  To win on that theory, plaintiffs would have to show that Altria and JUUL in fact engaged in an antitrust conspiracy and misled the market about it.  That's not a theory that the parties ever briefed in their motions to dismiss; and that's not at all the same theory the parties have been litigating up until now.  To make a case on antitrust grounds, plaintiffs and defendants would need different discovery, different depositions, different experts—it just isn't the same case at all.

And it's an unproven theory, vigorously contested by defendants in active litigation with the FTC, that has nothing to do with the securities case to date.  Plaintiffs' main interest in raising it is likely the 6.96% stock drop that coincided with the FTC's lawsuit—a figure which plaintiffs mention twice in their amendments, Dkt. 218.1 ¶¶ 17, 548—a transparent ploy to increase the damages they are claiming.  And while it's no doubt tempting for them to copy-and-paste allegations from the FTC's public pre-trial brief, the new and old theories can't even be reconciled:  one set of investors are claiming harm from the JUUL investment, and the other from the risk that the investment might be unwound.  How plaintiffs purport to represent the two in a single class, let alone a single case, is hard to fathom.

What is clear, though, is that accommodating what is, ostensibly, an entirely different case would require a "radical shift in [the] direction" of the case at hand and prejudice defendants.  *Morongo Band of Mission Indians* v. *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  The amendments would open the door to new and different document discovery after the discovery period has already closed.  Discovery on class certification is in full swing, with the

18

three plaintiffs already having been deposed.  And plaintiffs are supposed to take all their fact depositions in September, while these amendments are pending.  Moreover, if plaintiffs are allowed to amend their complaint, defendants will move to dismiss.  On the Court's schedule—which defendants would strongly prefer to keep—this would lead to motions to dismiss being briefed potentially at the same time summary judgment papers are due, or expert discovery is underway.

In addition, plaintiffs' proposed amendment will cause severe problems for the pending class certification process.  Plaintiffs' class certification motion seeks certification of their new proposed class with their new proposed corrective disclosures while defendants are in a state of uncertainty as to whether plaintiffs will be allowed to amend their complaint.  Defendants and defendants' expert need to address two very different class periods, two very different sets of corrective disclosures, and different legal theories.  This is a moving target defendants need to hit in a very expedited timeline.

And the prejudice to the class certification proceedings is only magnified by the question of the potential impact of the PSLRA stay, which plaintiffs wholly ignore.  The PSLRA stay of discovery is "automatic," and "applies while 'any motion to dismiss' is pending, . . . regardless of whether the motion is brought initially to dismiss a complaint, or subsequently, in response to an amended complaint."  *Sedona Corp.* v. *Ladenburg Thalmann*, 2005 WL 2647945, at *3 (S.D.N.Y. Oct. 14, 2005); *see also Band* v. *Ginn Companies, LLC*, 2011 WL 807396, at *2 (M.D. Fla. Mar. 2, 2011) (stay triggered by motions to dismiss plainitff's third amended complaint); *Fosbre* v. *Las Vegas Sands Corp.*, 2012 WL 5879783, at *3 (D. Nev. Nov. 20, 2012) (stay reimposed even though prior motion to dismiss denied in part and granted in part, and "notwithstanding that the parties engaged in discovery" in the interim).

19

The stay potentially encompasses not just discovery, but all "*other* proceedings," including class certification. *See Spears* v. *Metro. Life Ins.*, 2007 WL 1468697, at *4 n.2 (N.D. Ind. May 17, 2007) (emphasis added) ("Courts generally do not regard class certification proceedings as one of the exceptions to the PSLRA's stay provision."); *In re ValuJet, Inc.*, 984 F. Supp. 1472, 1482 (N.D. Ga. 1997) (staying motion for class certification in light of the PSLRA).

While defendants have continued to participate in discovery, notwithstanding the potential imposition of the PSLRA stay, they do not agree that it would be procedurally sound to certify plaintiffs' new class before the proposed amendment is allowed or tested on a motion to dismiss. The result would be a delay in class certification proceedings and a delay in getting to summary judgment, where plaintiffs will be put to their proof on their false claim that Altria lied about JUUL's marketing. And that is likely plaintiffs' tactic.

## C.    Amendment would be futile.

The amendment should also be denied because plaintiffs' new claims are futile. *Davison* v. *Randall*, 912 F.3d 666, 690 (4th Cir. 2019). While full-blown Rule 12(b)(6) briefing would be for another day, there are a number of glaring defects in the new proposed amendment, which defendants would raise on a motion to dismiss. Among these are:

***No obligation to concede an antitrust violation.*** Plaintiffs' new claims on behalf of the expanded class are premised on antitrust allegations brought by the FTC, arguing that Altria improperly removed its e-vapor products on October 25, 2018. Altria contests those allegations, which were litigated in a month-long trial that only just concluded and which is pending a ruling by the FTC's administrative law judge. A decision is not expected until early next year, and would be subject to administrative and judicial appeals.

20

Plaintiff's theory is that the securities laws required Altria to publically agree with the FTC's position—and to do so before a deal with JUUL was even struck, and a year and a half before the FTC even challenged the deal. In such circumstances, courts have repeatedly held that "disclosure is not a rite of confession." *In re Morgan Stanley Info Fund*, 592 F.3d 347, 365 (2d Cir. 2010) (internal quotation marks and citation omitted). And defendants like Altria are under no obligation "to accuse [themselves] of wrongdoing" until after litigation concludes and liability is determined, such that no duty to disclose under the securities laws could attach. *See, e.g.*, *Iron Workers Local 16 Pension Fund* v. *Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 586 (E.D. Va. 2006); *In re BearingPoint, Inc.*, 525 F. Supp. 2d 759, 777 (E.D. Va. 2007) (references to unadjudicated allegations "are, as a matter of law, immaterial"); *RSM Prod. Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 403-04 (S.D.N.Y. 2009) (striking allegations from other complaints not "resolved on the merits"); *In re Connetics Corp.*, 542 F. Supp. 2d 996, 1005-06 (N.D. Cal. 2008) (striking portions of complaint that "skirt the requirements of Rule 11(b)(3)" by relying on unproven allegations in SEC complaint).

***Previous disclosures.*** Plaintiffs' new allegation is that Altria lied to investors when pulling some of its e-vapor products from the market on October 25, 2018. Dkt. 218.1 ¶¶ 401-04. Plaintiffs say the harm from the fraud manifested when the FTC filed its complaint, which resulted in a stock drop as investors feared the investment in JUUL would be unwound. *See id.* ¶¶ 547-48. But Altria repeatedly disclosed the risk that the investment "may not materialize in the expected manner or timeframe or at all" as a result of the need to obtain "antitrust clearance." *See, e.g.*, Dkt. 117-46 at 11 (Altria Group, Inc., Annual Report (Form 10-K) (Feb. 26, 2019)); Dkt. 117-16 at 64 (Altria Group, Inc., Quarterly Report (Form 10-Q) (Apr. 15, 2019)) (same); Altria Group, Inc., Annual Report (Form 10-K) (Feb. 25, 2020) ("The [FTC]

21

may challenge the investment through litigation or administrative proceedings, potentially

seeking a range of resolutions, such as modifications to the investment structure or economic

terms, up to divestiture of the investment.").[5]  Any investor who opened Altria's SEC filings

would have been well aware of the antitrust risks inherent in the investment.  *See In re UBS*,

2010 WL 2541166, at *18 (S.D.N.Y. June 10, 2010) ("Plaintiffs cannot premise a claim of

securities fraud under Section 10(b) on conduct and risks that were previously disclosed to the

investing public.").

   ***Lack of standing.***  Plaintiffs have expanded the class to October 25, 2018, but Altria did

not announce its deal with JUUL until December 20, 2018 and all but one of the alleged

misstatements in the first amended complaint occurred *after* the new proposed class members

purchased Altria stock.  *See, e.g.*, Dkt. 219.1 ¶ 469 (December 20, 2018 misstatement), ¶ 487

(February 26, 2019 misstatement).  The law is clear that securities plaintiffs only have "standing

to assert claims based on activity *prior* to the date [they] purchased [the company's] stock."

*E.g.*, *Winer Fam. Tr.* v. *Queen*, 503 F.3d 319, 325 (3d Cir. 2007) (emphasis added); *Angelos* v.

*Tokai Pharms., Inc.*, 494 F. Supp. 3d 39, 55 (D. Mass. 2020); *Stevens* v. *InPhonic, Inc.*, 662 F.

Supp. 2d 105, 124 n. 13 (D.D.C. 2009).  So the new proposed class members lack standing to sue

Altria based on virtually all of the deal-related disclosures.

   ***Statute of limitations.***  The statute of limitations under the securities laws is two years.

28 U.S.C. § 1658(b).  Plaintiffs are now trying to bring in new alleged corrective disclosures that

occurred over two years ago and could have been alleged back in April 2020, when plaintiffs

first amended the complaint.  *See* Dkt. 218.1 ¶ 494 (March 19, 2019 statement by FDA

---

[5] *Available at* https://www.sec.gov/Archives/edgar/data/0000764180/000076418020000018/
a2019form10-kq4.htm.

22

Commissioner); ¶ 507 (June 21, 2019 CNBC report); ¶ 520 (August 8, 2019 *Washington Post* report). Allegations based on those disclosures—which have long been public—are time barred. *See Merck & Co., Inc.* v. *Reynolds*, 559 U.S. 633, 653 (2010) (statute of limitations starts running "once the plaintiff . . . discover[s] or a reasonably diligent plaintiff would have discovered, the facts constituting the violation" (internal quotation marks omitted)).

In addition, plaintiffs are trying to have all of their original alleged corrective disclosures apply to the expanded class, even sweeping in claims that are over two years old. *See* Dkt. 218.1 ¶ 496 (April 3, 2019 FDA announcement described in proposed amended complaint); Dkt. 108 ¶ 478 (the same announcement described in July 2020 complaint). Courts have rejected attempts like this to "expand the class" after "the two-year statute of limitations expire[s]." *In re Eaton Corp.*, 2017 WL 4217146, at *4, *6 (S.D.N.Y. Sept. 20, 2017).

\*     \*     \*

If plaintiffs' motion for leave is granted, defendants intend to expound on these points and make other arguments to show that new allegations in the amended complaint do not state a claim.

## CONCLUSION

For all of these reasons, defendants respectfully request that the Court deny plaintiffs' motion for leave to file another amended complaint.

Dated:  August 20, 2021

OF COUNSEL

Stephen R. DiPrima (*pro hac vice*)
Jonathan M. Moses (*pro hac vice*)
Adam L. Goodman (*pro hac vice*)
Adam Sowlati (*pro hac vice*)
Jacob Miller (*pro hac vice*)
Wilfred T. Beaye, Jr.  (*pro hac vice*, *pending*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
212-403-1000 (telephone)
212-403-2000 (facsimile)


Beth Wilkinson (*pro hac vice*)
James Rosenthal (*pro hac vice*)
Hayter Whitman (*pro hac vice*)
Wilkinson Stekloff LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-2000
bwilkinson@wilkinsonstekloff.com
jrosenthal@wilkinsonstekloff.com
hwhitman@wilkinsonstekloff.com

*Counsel for Defendant William F. Gifford, Jr.*



Mark Gruetzmacher
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
mark.gruetzmacher@kirkland.com

Respectfully Submitted,

 /s/ Edward J. Fuhr
Edward J. Fuhr (VSB #28082)
Johnathon Schronce (VSB #80903)
Eric H. Feiler (VSB #44048)
HUNTON ANDREWS KURTH LLP 951
East Byrd Street
Richmond, VA  23219
804-788-8200 (telephone)
804-788-8218 (facsimile)

*Attorneys for Altria Group, Inc.*


Rani Habash (VSB No. 78541)
DECHERT LLP
1900 K Street NW
Washington, DC 20006 Telephone:
(202) 261-3300
rani.habash@dechert.com Andrew J.
Levander (*pro hac vice*) Jeffrey A.
Brown (*pro hac vice*) Three Bryant
Park
1095 Avenue of the Americas New
York, NY 10036 Telephone: (212)
698-3500
andrew.levander@dechert.com
jeffrey.brown@dechert.com

*Counsel for Defendant Howard A.
Willard III*


Brian E. Pumphrey (VSB #47312)
Brian C. Riopelle (VSB #36454)
MCGUIRE WOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
briopelle@mcguirewoods.com
bpumphrey@mcguirewoods.com

24

Roger A. Cooper (*pro hac vice*)
Jared M. Gerber (*pro hac vice*)
Arminda B. Bepko (*pro hac vice*)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
racooper@cgsh.com
jgerber@cgsh.com
abepko@cgsh.com

*Counsel for Defendant JUUL Labs, Inc.*

Robert A. Angle (VSB No. 37691)
Laura Anne Kuykendall (VSB No. 82318)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Troutman Sanders Bldg,
1001 Haxall Point
P.O. Box 1122
Richmond, VA 23219
Telephone: 804/697-1246
robert.angle@troutman.com
la.kuykendall@troutman.com

Eric H. MacMichael (*pro hac vice*)
KEKER VAN NEST & PETERS LLP
633 Battery St.
San Francisco, CA 94111
Telephone: 415-773-6624
Facsimile: 415-391-5400
emacmichael@keker.com

*Counsel for Defendant Kevin Burns*

Eugene Illovsky (*pro hac vice*)
Kevin Calia (*pro hac vice*)
BOERSCH & ILLOVSKY LLP
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 500-6640
Facsimile: (415) 967-3062
eugene@boersch-illovsky.com
kevin@boersch-illovsky.com

*Counsel for Defendant Adam Bowen*

James Winston Burke (VSB No. 76551)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: +1 202 339 8400
Facsimile: +1 202 339 8500
jburke@orrick.com

James N. Kramer (*pro hac vice*)
Alexander K. Talarides (*pro hac vice*)
ORRICK, HERRINGTON &
SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759
jkramer@orrick.com
atalarides@orrick.com

*Counsel for Defendant James Monsees*

25

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Eastern District of Virginia by using the CM/ECF system which will send a Notification of Electronic Filing to all parties in this case.

/s/ Edward J. Fuhr
Edward J. Fuhr (VSB #28082)
