UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GABBY KLEIN, DONALD SHERBONDY, SARAH SHERBONDY and CONSTRUCTION LABORERS PENSION TRUST OF GREATER ST. LOUIS, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>ALTRIA GROUP, INC., HOWARD A. WILLARD III, WILLIAM F. GIFFORD, JR., JUUL LABS, INC., ADAM BOWEN, JAMES MONSEES, KEVIN BURNS, and K.C. CROSTHWAITE,<br><br>          Defendants. | Case No. 3:20-cv-00075-DJN |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT .........................................................................................................................3

I.    LEAD PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED .....3

      A.    Rule 16(b)(4) Does Not Apply ...............................................................................3

      B.    Even If Applicable, Good Cause Exists for the Amendment .....................................5

      C.    Plaintiffs Satisfy the Standards for Amending Under Rule 15 ...................................8

            1.    There Has Been No Undue Delay .................................................................8

            2.    Amendment Will Not Result in Undue Prejudice to Defendants...................10

            3.    Amendment Is Not Futile............................................................................14

                  a.    Amendment Is Not Futile as To The Altria Defendants ....................14

                  b.    Amendment Is Not Futile as To Crosthwaite.....................................17

CONCLUSION ....................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amaya v. DGS Constr., LLC*,
326 F.R.D. 439 (D. Md. 2018) ................................................................................... 5

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013) ...................................................................... 16

*Brown v. Tethys Bioscience, Inc.*,
2012 U.S. Dist. LEXIS 45188 (S.D. W. Va. Mar. 30, 2012) ................................... 12

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
56 F. Supp. 3d 549 (S.D.N.Y. 2014) ....................................................................... 18

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ........................................................................................... 10, 19

*City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359 (S.D.N.Y. 2012) ...................................................................... 17

*Civil Eng'g Consulting Servs. v. Anderson Columbia Co.*,
2017 U.S. Dist. LEXIS 226528 (D.S.C. July 26, 2017) ........................................... 13

*Concrete R.R. Cross Ties Litig. CSX Transp. v. Lone Star Indus.* (*In re Lone Star Indus.*),
1994 U.S. App. LEXIS 6957 (4th Cir. Apr. 7, 1994) ................................................. 7

*Conrail v. Grand Trunk W. R.R. Co.*,
2010 U.S. Dist. LEXIS 151359 (E.D. Mich. Aug. 30, 2010) ................................... 13

*Cook v. Howard*,
484 F. App'x 805 (4th Cir. 2012) .......................................................................... 3, 5

*Counts v. GM, LLC*,
2018 U.S. Dist. LEXIS 94949 (E.D. Mich. June 6, 2018) ......................................... 9

*Dunn v. Borta*,
369 F.3d 421 (4th Cir. 2004) ................................................................................... 17

*Eigles v. Jong K. Kim*,
2009 U.S. Dist. LEXIS 117191 (D. Md. Dec. 16, 2009) ......................................... 14

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
873 F.3d 85 (2d Cir. 2017) ...................................................................................... 16

*Glazer v. Chase Home Fin. LLC*,
704 F.3d 453 (6th Cir. 2013)...........................................................................................9

*Harris v. City of New York*,
186 F.3d 243 (2d Cir. 1999)...........................................................................................16

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)............................................................................20

*In re Cabletron Sys., Inc.*,
311 F.3d 11 (1st Cir.2002) .............................................................................................18

*In re Eaton Corp. Sec. Litig.*,
2017 U.S. Dist. LEXIS 153323 (S.D.N.Y. Sep. 20, 2017) ............................................16

*In re Fannie Mae 2008 Sec. Litig.*,
891 F. Supp. 2d 458 (S.D.N.Y. 2012).......................................................................19, 20

*In re Milk Products Antitrust Litig.*,
195 F.3d 430 (8th Cir. 1999).............................................................................................5

*In re SolarCity Corp. Sec. Litig.*,
274 F. Supp. 3d 972 (N.D. Cal. 2017) ...........................................................................20

*In re Virtus Inv. Partners, Inc. Secs. Litig.*,
195 F. Supp. 3d 528 (S.D.N.Y. 2016).............................................................................20

*Jacobs v. Fareportal, Inc.*,
2018 U.S. Dist. LEXIS 198549 (D. Neb. Nov. 21, 2018)................................................3

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ....................................................................................17, 18, 19, 20

*Johnson v. Oroweat Foods Co.*,
785 F.2d 503 (4th Cir. 1986)..........................................................................................13

*Lewis v. Casey*,
518 U.S. 343 (1996) .......................................................................................................15

*Logar v. W. Va. Univ. Bd. of Governors*,
2012 U.S. Dist. LEXIS 8926 (N.D.W. Va. Jan. 25, 2012)...............................................9

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*,
43 F.3d 922 (4th Cir. 1995).............................................................................................9

*Long v. Blair*,
2010 WL 1930220 (S.D. W. Va. May 12, 2010) ..............................................................7

*Masterson v Commonwealth Bankshares Inc.*,
2 F. Supp. 3d 824 (E.D. Va. 2014)................................................................................17

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ................................................................................................... 16

*Monahan v. N.Y.C. Dept. of Corr.*,
   214 F.3d 275 (2d Cir. 2000) ........................................................................................ 13

*Moses.com Sec., Inc. v. Comprehensive Software Sys.*,
   406 F.3d 1052 (8th Cir. 2005) ....................................................................................... 9

*NetJets Ass'n of Shared Aircraft Pilots v. NetJets, Inc.*,
   2016 U.S. Dist. LEXIS 101833 (S.D. Ohio Aug. 3, 2016) ...................................................... 13

*Parker v. Columbia Pictures Indus.*,
   204 F.3d 326 (2d Cir. 2000) .......................................................................................... 5

*Prousalis v. Moore*,
   751 F.3d 272 (4th Cir. 2014) .................................................................................... 18, 19

*Richardson Greenshields Securities, Inc. v. Lau*,
   825 F.2d 647 (2d Cir. 1987) .......................................................................................... 8

*Sagez v. Glob. Agric. Invs., LLC*,
   2014 WL 3779072 (N.D. Iowa July 31, 2014) ..................................................................... 17

*Scott v. Family Dollar Stores, Inc.*,
   733 F.3d, 2013 WL 5630636 (4th Cir. Oct. 16, 2013) ............................................................ 13

*Singer v. Reali*,
   883 F.3d 425 (4th Cir. 2018) ......................................................................................... 14

*Sosa v. Airprint Sys., Inc.*,
   133 F.3d 1417 (11th Cir. 1998) .................................................................................... 3, 5

*State Teachers Retirement Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981) .......................................................................................... 11

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) ............................................................................................... 18, 19

*Tawwaab v. Virginia Linen Serv., Inc.*,
   729 F. Supp. 2d 757 (D. Md. 2010) ................................................................................... 5

*Taylor v. First Union Corp. of S.C.*,
   857 F.2d 240 (4th Cir. 1988) ......................................................................................... 14

*Thornhill, Inc. v. NVR, Inc.*,
   422 F. Supp. 2d 646 (N.D.W. Va. 2006) .............................................................................. 9

*United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*,
   889 F.2d 1248 (2d Cir. 1989) ......................................................................................... 11

*Winer Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007) .............................................................................. 15

**Statutes**

The Clayton Act ............................................................................................................ 10

Private Securities Litigation Reform Act of 1995 .......................................................... 6

The Sherman Act ........................................................................................................... 10

**Rules and Regulations**

17 C.F.R. § 240.10b-5 .............................................................................................. 6, 18

Fed. R. Civ. P. 9(b) ................................................................................................ 6, 7, 19

Fed. R. Civ. P. 15 ..................................................................................................... *passim*

Fed. R. Civ. P. 16 ..................................................................................................... *passim*

Fed. R. Civ. P. 23 ........................................................................................................... 12

**PRELIMINARY STATEMENT**

Following their appointment, Lead Plaintiffs filed the Consolidated Class Action Complaint on July 2, 2020 ("Complaint"). The Complaint has ***never*** been amended. In June 2021, Defendants produced over 20 million pages of documents. As Plaintiffs expeditiously reviewed this mountain of documents – in just eight weeks – they discovered that Altria's scheme to defraud investors had begun a couple of months earlier than Plaintiffs previously knew. On October 25, 2018, just prior to Altria's investment in JLI, Altria lied to the FDA and investors about the company's commitment to stopping the youth vaping epidemic, stating that Altria was removing certain products from the market to combat youth usage when, in truth, their removal was to comply with a non-compete agreement required for Altria to secure its investment in JLI – the very company that Altria knew had marketed and would continue to market to youth. Plaintiffs also discovered that, contrary to Crosthwaite's prior assertions, ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Pursuant to the Scheduling Order, Plaintiffs timely sought leave to amend on August 6, 2021.

Defendants' assertion that Plaintiffs are required to satisfy Rule 16(b)(4)'s "good cause" standard is contrary to the Rule, this Court's Scheduling Order, and even Defendants' prior representations to the Court. Indeed, it was ***Defendants*** that originally requested that the Court set a deadline for leave to amend the pleadings in early August, arguing that "attempts to amend complaints before the Federal Rule of Civil Procedure 16 scheduling order's deadline are addressed under Rule 15." ECF No. 190 at 4, 12 (citations omitted). Having successfully moved for an amendment deadline under Rule 15(a), Defendants cannot now argue that a different standard should apply.

Regardless of which standard applies, there is "good cause" for the proposed amendment and there has been no "undue delay" by Plaintiffs. The critical evidence supporting Plaintiffs' allegations of scienter for the October 25, 2018 false statements as well as that Crosthwaite was a "maker" of the

1

December 20, 2018 statements was buried in the 20 million pages of documents that Plaintiffs did not even receive until June 2021 – again, a mere eight weeks before Plaintiffs filed their motion to amend and attached the amendment. Similarly, the additional corrective events identified were discovered only after recently engaging a loss causation and damages expert who was able to conduct a comprehensive analysis of Altria's news and stock price movements attributable to the news.

Defendants' assertion that Plaintiffs seek to interject a new antitrust theory of liability that will prejudice them is based on a mischaracterization of the allegations and Plaintiffs' theory of liability. Plaintiffs' theory of liability has always been that Altria misled the market about its commitment to combatting the youth vaping epidemic because Willard was desperate to gain a stake in JLI, at any cost. Altria's October 25, 2018 statements are based on precisely the same theory – the Altria Defendants falsely proclaimed that the company was removing its products to combat youth usage when, in truth, it was because of a non-compete agreement with JLI. Whether Altria's agreement with JLI also violated the antitrust laws is an issue for the FTC. What matters for this case – and Plaintiffs' amended complaint – is that the Altria Defendants lied to investors about combatting the youth vaping epidemic and concealed material information that artificially inflated Altria's stock price, regardless of whether the truth was an antitrust violation.

Importantly, Defendants will not be prejudiced by the amendment because the non-compete agreement, as well as its legality, has always been part of discovery in this case. Defendants not only agreed to produce *all* documents that were produced in the FTC action, but are also agreeing that any deposition taken in the FTC action can be used in this action as if taken in this action. The parties have also agreed on the identity of all possible deponents. Plaintiffs have no intention of requesting any additional documents or taking any additional depositions because of the amendment. The Court's schedule will remain undisturbed.

2

Crosthwaite's assertion that Plaintiffs' amendments as to him being a "maker" of the October 25 and December 20, 2018 statements are "futile" cannot prohibit the amendment. Contrary to the facts of every case cited by Crosthwaite, Plaintiffs detail – with citation to documents – ████████ ████████████████████████████████████████ ████████████████████████████████████ There is no doubt that Plaintiffs have met the Court's standard that they "allege that Crosthwaite had sufficient control over the press releases at issue." ECF No. 140 at 27-28. Crosthwaite's arguments to the contrary are simply unpersuasive factual arguments that do not show futility. Amendment is entirely appropriate.

## ARGUMENT

**I.    LEAD PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE GRANTED**

**A.    Rule 16(b)(4) Does Not Apply**

The Fourth Circuit has held that Rule 16(b)(4) only applies when a party seeks to modify a deadline in the scheduling order. *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) ("rule [15(a)(2)] applies…prior to the entry of a scheduling order, at which point, under Rule 16(b)(4), a party must first demonstrate 'good cause' ***to modify the scheduling order deadlines***, before also satisfying the Rule 15(a)(2) standard for amendment") (emphasis supplied). When a motion to amend is filed on a deadline set by the court, the "motion is properly evaluated under the less demanding Rule 15 standard." *Jacobs v. Fareportal, Inc.*, 2018 U.S. Dist. LEXIS 198549, at *2 (D. Neb. Nov. 21, 2018); *see Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("If Sosa's motion for leave to amend had been filed within the time prescribed by the scheduling order, Rule 15(a) would be our primary focus."). Because Plaintiffs met the Court's deadline for amendment, Rule 16(b)(4) – by its express terms – does not apply.

Defendants argue to the contrary by citing the Court's order a year earlier establishing a schedule for Plaintiffs' consolidated complaint and Defendants' motion to dismiss. Def. Br. at 9. The

3

Court stated that "if Lead Plaintiffs do not file an amended pleading in response to Defendants' motion to dismiss, the Court will resolve the relevant motion based on the consolidated amended complaint, with leave to amend granted only upon the satisfaction of Rule 16(b)(4) and Rule 15." ECF No. 72. This was a clear warning that if Plaintiffs chose not to amend after seeing Defendants' motion to dismiss, they would have to show "good cause" for why they did not amend sooner. Courts routinely issue orders of this kind to avoid issuing advisory opinions and to discourage serial amendments. Here, the condition for applying Rule 16(b)(4) did not trigger – the Court ***denied*** Defendants' motion in its entirety, eliminating the need for an amendment.

The Court thereafter issued its Rule 16 Scheduling Orders.  ECF Nos. 173 and 194. The Orders unambiguously stated that "this case will proceed on the following schedule," including "[n]ot later than August 6, 2021, the parties may seek leave to amend the pleadings or add any parties." ECF No. 194 at 1-2. This Scheduling Order clearly supersedes the order governing Defendants' motion to dismiss.  A finding otherwise would necessarily set different standards for Plaintiffs and Defendants to amend their pleadings -- Defendants could seek leave to amend their pleadings under Rule 15(a) but Plaintiffs would have to satisfy Rule 16(b).  Defendants fail to explain this obvious inconsistency.

Critically, Defendants' current argument contradicts their prior position on amendment.  They, in fact, previously admitted that Rule 15(a) would apply to any motion to amend prior to the Scheduling Order deadline (ECF No. 190 at 4, 12), arguing that the Court should set a "Deadline to Seek Leave to Amend Pleading," that "attempts to amend complaints before the Federal Rule of Civil Procedure 16 scheduling order's deadline are addressed under Rule 15," and that "Rule 15(a) governs amendments to pleadings prior to the expiration of a Rule 16(b)(3) deadline." (citations omitted). Having successfully moved for an amendment deadline under Rule 15(a), Defendants cannot now argue that a different standard should apply.

Rule 16 cannot serve as a basis to deny Plaintiffs' motion for leave to amend.  "[T]o show

4

'good cause' for a modification of a scheduling order under Rule 16(b)(4), 'the party seeking relief [must] show that the deadlines cannot reasonably be met despite the party's diligence.'" *Amaya v. DGS Constr., LLC*, 326 F.R.D. 439 (D. Md. 2018), quoting *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012). "[G]ood cause exists where the moving party has diligently made efforts to meet court imposed deadlines." *Tawwaab v. Virginia Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768 (D. Md. 2010). Defendants' argument requires Plaintiffs to show "good cause" for why they could not meet a deadline that they actually met. It is clearly nonsensical. Applying the rule to motions made prior to a court-imposed deadline would eviscerate the purpose of Rule 16 and contravene its express terms. *Cf. Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure"); *In re Milk Products Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) (same); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (same).

**B.      Even If Applicable, Good Cause Exists for the Amendment**

Plaintiffs' motion to amend should be granted even under a "good cause" standard. The information forming the basis of the new allegations was not available to Plaintiffs until after the Court denied Defendants' motions to dismiss on March 12, 2021. Specifically, Plaintiffs only discovered the key documents supporting their new allegations after Defendants produced over 20 million pages of documents on or around June 1, 2021. An army of attorneys have been searching through this "haystack" of documents and eventually came upon "needles" proving that the Altria Defendants made false statements on October 25, 2018 with scienter and that Crosthwaite was a maker of the statements in both the October 25 letter and December 20, 2018 press releases.  There can be no question that Plaintiffs here were diligent and that the current amendment – filed just two months after Defendants produced an avalanche of documents – is timely. *Tawwaab v. Virginia Linen*

5

*Serv., Inc.*, 729 F. Supp. 2d 757, 768 (D. Md. 2010) ("[t]he Fourth Circuit has noted that a finding of "good cause" is justified under Rule 16(b) where at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline").

Defendants argue that Plaintiffs could have alleged Section 10(b) claims for the Altria Defendants' October 25, 2018 statements as soon as the FTC filed its complaint on April 1, 2020. Def. Br. at 11-12. They are wrong. The complaints identified by Defendants merely identified the existence of the non-compete agreement and alleged that the non-compete agreement violates the antitrust laws. *Id*. Neither complaint alleges that Altria's statements on October 25, 2018 about removing their products to combat youth usage were false and misleading, much less that the Altria Defendants acted with scienter. The Altria Defendants fail to point to anything in the public record demonstrating that Plaintiffs could have met the heightened pleading standards of Rule 9(b) and the PSLRA at any time before Defendants made their production of documents in June 2021.

It was not until Plaintiffs began sifting through the 20 million pages produced in discovery that they discovered the shocking evidence that the entire point of Altria's statements to the FDA was to mislead the FDA and the public into believing the company cared about reducing youth usage. Internal emails between the Altria Defendants reveal that ███████████████████

███████████████████████████████████

███████████████ ¶¶417-418. Plaintiffs also discovered documents demonstrating that ███████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████ ¶413. ███████████████████

███████████████████████████████████

6

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ ¶466.

These documents prove that the opposite was true, warranting the proposed amendment. *In re Lone Star Indus.*, 1994 U.S. App. LEXIS 6957, at *31-32 (4th Cir. Apr. 7, 1994) (finding abuse of discretion in the district court's refusal to allow amendment to add a new claim after scheduling order deadline where "some of the evidence needed [to allege the new] claim did not surface until after the amendment deadline"); *Long v. Blair*, 2010 WL 1930220 (S.D. W. Va. May 12, 2010) (holding that good cause existed where the plaintiff waited three months after discovering additional information to support new claims (and three months before trial) as he ensured he had sufficient information to meet the heightened pleading standards of Rule 9(b)).

The analysis is the same for the April 1, 2020 disclosure that the FTC was seeking to unwind the transaction. ¶547. The FTC complaint, announced that day, is a "materialization of the risk" created by the Altria Defendants' October 25, 2018 statement. Plaintiffs could not add it to the pleadings until they had sufficient information to adequately plead all of the elements of a securities fraud claim for that statement. This amendment would also be appropriate even if Plaintiffs had missed the amendment deadline, which they did not.

Amendment is equally appropriate for the additional corrective events. Plaintiffs discovered those events only after recently engaging a loss causation and damages expert. In the course of the expert's analysis of all public information concerning Plaintiffs' allegations and performing a regression analysis as to Altria's stock price, Plaintiffs discovered that Altria's stock price experienced statistically significant declines following each disclosure, after removing all price movement attributable to market or industry effects on those days. While the Consolidated Complaint previously identified a number of corrective events, expert opinion was required for a comprehensive analysis of these complex issues. Defendants cannot claim any prejudice because issues of loss

7

causation and damages are subjects exclusively within the province of experts and Plaintiffs' expert report on these issues is not even due until October 22, 2021.

Defendants assert that Plaintiffs should have been able to identify every corrective event as soon as it happened because "[b]y definition, alleged corrective disclosures are alleged revelations of fraud to the entire stock market and no secret to anyone." Def. Br. at 12. This is wrong. Each of the events was a "materialization of the risk" created by Defendants' fraud. It is common for the market to only discover in hindsight that a previous event was the result of fraud. And, as discussed, expert analysis was necessary to connect the price declines to the corrective events.

### C.     Plaintiffs Satisfy the Standards for Amending Under Rule 15

#### 1.     There Has Been No Undue Delay

As discussed above, it was impossible for Plaintiffs to meet the heightened pleading standard for scienter for the October 25, 2018 FDA letter until Plaintiffs began wading through the tens of millions of pages produced by Defendants in June 2021. Plaintiffs likewise could not have discovered Crosthwaite's intimate involvement in drafting the October 25, 2018 letter and the December 20, 2018 press release. Crosthwaite asserts that Plaintiffs should have amended their claims against him sooner because "the discovery materials characterized in Plaintiffs' motion were produced on May 26, 2021." Crosthwaite Br. at 17. Crosthwaite ignores that Defendants' production included over 20 million pages of documents. But even if Plaintiffs had discovered these documents on day one, which they did not, or could otherwise have discovered the relevant facts without expert analysis, there was no "undue delay" – Plaintiffs prepared and filed their motion to amend and the proposed amended complaint within weeks of Defendants' first production and prior to the deadline for seeking amendment. Defendants fail to cite any case finding undue delay in any remotely similar circumstance. Courts permit amendments despite the lapse of much longer time intervals. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (collecting cases

8

where leave to amend was granted after delays ranging from two to five years).

The cases upon which Defendants rely are inapposite as most involve plaintiffs that obtained information to correct deficiencies in their pleadings but nonetheless waited until the court issued an order dismissing the claims before seeking leave to amend. For example, in *Logar v. W. Va. Univ. Bd. of Governors*, 2012 U.S. Dist. LEXIS 8926, at *25 (N.D. W. Va. Jan. 25, 2012), the court found that "[t]he plaintiffs were fully aware of the availability of these claims…two months before this Court granted summary judgment… Nonetheless, they chose to stand behind their original complaint, and only when that complaint was dismissed, did they elect to move to amend." *Id*. Similarly, in *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458-59 (6th Cir. 2013), the plaintiff obtained information that would neutralize the defendants' motion to dismiss but nevertheless waited four months, after dismissal, to seek amendment, taking a "wait-and-see approach" and "offer[ing] no other plausible reason for waiting as long as he did" to amend. *Id*. at 458-59. Here, Plaintiffs moved to amend quickly after uncovering facts from reviewing over 20 million pages in a matter of weeks, a herculean effort. *Counts v. GM, LLC*, 2018 U.S. Dist. LEXIS 94949, at *16-17 (E.D. Mich. June 6, 2018) ("Plaintiffs' motion to amend could also be explained by the fact that GM has provided tens of thousands of documents over the past six months…Unlike in *Glazer*, it cannot be said that Plaintiffs have identified 'no other plausible reason for waiting as long as [they] did.'").[1]

---

[1] The rest of the cases cited by Defendants are similarly inapplicable. *See Moses.com Sec., Inc. v. Comprehensive Software Sys*., 406 F.3d 1052, 1066 (8th Cir. 2005) (denying leave to file third amended complaint after the plaintiff "failed to resolve the deficiencies" identified by the court in the three prior dismissals: "The district court could therefore reasonably conclude that Moses had 'proffered no adequate reason explaining' its failure to cure the known defect earlier"); *Thornhill, Inc. v. NVR, Inc.*, 422 F. Supp. 2d 646, 653 (N.D. W. Va. 2006) (denying amendment where despite the scheduling order stating "pursuant to the representations made by counsel at the scheduling conference…motions to amend pleadings shall not be filed in this case," the plaintiff waited over ten months to file a motion to amend, after three summary judgment motions had been fully briefed); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 927 (4th Cir. 1995) (denying motion to amend made after motions for summary judgment filed where the defendant knew the facts prior to filing the answer, and the new defense would "significantly change the nature of the litigation" and was "not the subject of Plaintiff's discovery and trial preparation").

9

### 2.    Amendment Will Not Result in Undue Prejudice to Defendants

Defendants assert that Plaintiffs' amendment will cause undue prejudice because, they argue, it will interject a new theory of liability based on Altria's and JUUL's antitrust violation that is not currently covered by the discovery in this case. Defendants are incorrect on every level.

***First***, Plaintiffs have not interjected a new theory of liability. Plaintiffs' theory of liability has always been that the Altria Defendants misled the market as to Altria's commitment to combat the youth vaping epidemic. The original complaint filed by Gabby Klein, as well as the Consolidated Complaint filed by Plaintiffs, both allege that the Altria Defendants' statements in the December 20, 2018 press release about Altria's commitment to preventing youth usage were false and misleading. ECF No. 1 at ¶36; ECF No. 108 at ¶462. Plaintiffs have also always alleged that Altria misled the market by concealing the known and heightened risks caused by Willard's desperation to own a piece of JLI's business at any cost, even though that meant overpaying, agreeing to a non-compete condition, and even giving up the ability to control JLI's marketing practices, which the Altria Defendants knew targeted underage consumers. ECF No. 108 at ¶¶328-386.

Plaintiffs' addition of the October 25, 2018 letter as a misrepresentation is based on precisely the same theory. The Altria Defendants lied when they told the FDA and the market that Altria was removing certain of its products because "we do not want to risk contributing to [the rise in youth use of e-vapor products]." ¶416. And the Altria Defendants' reason for lying was precisely the same under Plaintiffs' legal theory – they did not want the FDA or market to know that Altria did not care at all about the increase in youth vaping and that the company was discontinuing its own vaping products (which did not have any youth usage problems) in favor of purchasing an interest in the very company that ███████████████████████████████████ ¶¶387-392, 413-418, 468.

***Second***, the Altria Defendants' liability for the October 25, 2018 statements in no way hinges on Plaintiffs proving that the non-compete agreement violated the Sherman Act, the Clayton Act or

10

any antitrust laws. Indeed, nowhere in Plaintiffs' proposed FAC do they allege that the non-compete agreement violated any law. The Altria Defendants' statements that Altria was removing the products to avoid any risk of contributing to youth vaping were false because the real reason for removing the products was the non-compete agreement, regardless of whether that agreement was also illegal. Altria's lack of commitment to combatting youth usage was revealed through the later corrective events. By concealing that the real reason for removing the products was the non-compete agreement, the Altria Defendants concealed the **risk** that the FTC and others may allege that such action violated antitrust laws. That is, even if the non-compete does not violate the antitrust laws, the false statements still concealed a material risk to investors.

**Third**, even assuming *arguendo* that the amendment introduced a new legal theory not contained in the Consolidated Complaint and introduced issues related to whether the non-compete violated antitrust laws, amendment still would create no "undue burden" for Defendants. "[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) (citation omitted). Courts, in fact, only consider potential additional discovery to be prejudicial when a party seeks to amend its pleadings in the later stages of a case. *See, e.g., State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing denial of leave to amend where no party had moved for summary judgment, the amended claim was "obviously one of the objects of discovery and related closely to the original claim," and "the amendment will not involve a great deal of additional discovery"). While Defendants repeatedly argue that Plaintiffs moved to amend "after document discovery closed," they omit that the entirety of document discovery, totaling over 20 million pages, only lasted approximately eight weeks and that the proposed FAC amendment will not necessitate **any** additional discovery. Indeed, Defendants fail to mention that **Defendants have already produced to Plaintiffs all the documents and**

11

*deposition transcripts from the FTC action and have also agreed that the depositions in the FTC action can be used as if they were taken in this action*.  Defendants also overlook that having produced the documents at the heart of the amendment, they have admitted the critical relevance of these issues to this action.  Nevertheless, Plaintiffs' requested amendment will not change the scope of discovery.[2] Similarly, the addition of a few more "corrective disclosures" or "materializations of the risk" concealed by Defendants' fraud will impose no undue burden. These are issues of loss causation and damages, which are within the exclusive province of experts. The Parties are not required to exchange expert reports until October 22, 2021. There is ample time for Defendants' expert to evaluate the stock price decline on a couple more days. *See Brown v. Tethys Bioscience, Inc.*, 2012 U.S. Dist. LEXIS 45188 at *6 (S.D. W. Va. Mar. 30, 2012) ("[T]he court does not agree that [the defendant] has been unduly prejudiced by the filing of an amended complaint. The discovery concerning the negligence claims should largely overlap with the discovery regarding the fraud claims. Any [additional] discovery … can be completed in advance of trial.").

Plaintiffs' amendment also will not impact their motion for class certification. Plaintiffs took proactive measures to ensure that the amendment does not require any adjustment of the class certification schedule. Plaintiffs' motion for class certification, which was filed on the same day as the motion to amend, addresses the relevant Rule 23 standards for class certification for the original Class Period of December 20, 2018 to February 21, 2020 as well as the proposed amended class period of October 25, 2018 to April 1, 2020. Notably, the only factor that is even remotely impacted by the modified class period is the evaluation of whether Altria's securities traded in an efficient market. However, any assertion that Altria's stock, one of the most heavily traded stocks in the world, did ***not*** trade in an efficient market, regardless of the period, is simply not credible.  During each class

---

[2]The parties have also already agreed on every fact deposition that will be permitted in this action. Plaintiffs have no intention of requesting a single additional document from any party or requesting any additional deposition from any witness as a result of the proposed amendment.

12

period, the total number of Altria shares issued and outstanding was approximately 1.87 billion. ECF No. 222-1 at ¶28. Approximately 2.5 million shares were traded every single week. *Id.*

At bottom, Defendants complain that the amendment should not be allowed because it will require them to file another motion to dismiss and defend against new false statements and corrective events. However, "prejudice" in the context of Rule 15 means more than the inconvenience of having to defend against a claim. *See, e.g.*, *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000); *Conrail v. Grand Trunk W. R.R. Co.*, 2010 U.S. Dist. LEXIS 151359 (E.D. Mich. Aug. 30, 2010) (finding unpersuasive defendants' arguments that they would be prejudiced by the grant due to increased burden and costs associated with defending the proposed additional claims); *see NetJets Ass'n of Shared Aircraft Pilots v. NetJets, Inc.*, 2016 U.S. Dist. LEXIS 101833 (S.D. Ohio Aug. 3, 2016) (no prejudice where the defendants would need to renew their motion to dismiss, respond to duplicative discovery and where the schedule may not accommodate discovery related to new claims).

The required prejudice simply does not exist here. The Fourth Circuit has stated that the type of prejudice sufficient to deny amendment (even for a completely new legal theory) exists only where it "would require the gathering and analysis of facts not already considered by the opposing party… where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). No new facts need to be gathered. Discovery does not close until November 24, 2021, which is three months away.  Dispositive motions are not due until January 21, 2022, almost five months away.  And no trial date has been set. Courts have found no prejudice under similar circumstances. *Scott v. Family Dollar Stores, Inc.*, 733 F.3d at 118, 2013 WL 5630636 (4th Cir. Oct. 16, 2013) (finding that because the parties were still in discovery, and many steps removed from trial, the non-moving party would not be prejudiced by the introduction of a new legal theory even though the motion to amend came three years into the case); *see also Civil Eng'g Consulting Servs. v. Anderson Columbia Co.*, 2017 U.S. Dist. LEXIS 226528, at *7 (D.S.C. July 26, 2017)

13

(permitting amended complaint where it alleged "new facts and claims … [that] will cause additional discovery and evidentiary burdens …[because] the motion to amend was filed within the discovery period and many steps removed from trial."); *Eigles v. Jong K. Kim*, 2009 U.S. Dist. LEXIS 117191, at *8 (D. Md. Dec. 16, 2009) (permitting amendment where "a trial date has not been set, and [the plaintiff] filed this motion to amend well before the discovery deadline … and will require little additional discovery").

### 3. Amendment Is Not Futile

#### a. Amendment Is Not Futile as to the Altria Defendants

Defendants argue that the October 25, 2018 statements that Altria was removing its products from the market because of the company's concerns about the youth vaping epidemic were not false and misleading because they had "no obligation to concede an antitrust violation." Def. Br. at 20. But Plaintiffs do not allege that Defendants were required to admit to an antitrust violation. Instead, they allege that Defendants were required to tell the truth, that they were removing Altria's products from the market to comply with the non-compete agreement with JLI – which was a condition of Altria's investment – and not to combat the youth vaping epidemic. At that point, investors would have had the truthful information necessary to evaluate the risk of an antitrust violation as well as the heightened risks associated with Altria's position on the youth vaping epidemic. As the Court recognized in denying Defendants' motions to dismiss, "'disclosure of material information is required when necessary to make statements made, in light of the circumstances in which they were made, not misleading.'" ECF No. 21, quoting *Singer v. Reali*, 883 F.3d 425, 440 (4th Cir. 2018); *see also Taylor v. First Union Corp. of S.C.*, 857 F.2d 240, 243-44 (4th Cir. 1988) ("if the corporation's silence on a subject 'would make other [of its] statements misleading or false,' then it must speak"). The Altria Defendants' statements on October 25, 2018 were false and misleading regardless of the existence of an antitrust violation.

14

Defendants next argue that the October 25, 2018 statements are not misleading because several months later Altria allegedly stated that the investment was subject to "antitrust clearance." Def. Br. at 21. These disclosures do not acknowledge the heightened risk emanating from Altria proactively and deceptively removing its products in order to comply with the non-compete agreement. But even if they did, risk disclosures made over four months **after** the Altria Defendants lied to the market cannot render the prior lies not misleading.

Defendants also argue that amendment is futile for the October 25, 2018 statements because absent class members that purchased between October 25, 2018 and December 20, 2018 would not have standing to bring claims based on the December 20 misstatements and those thereafter. Def. Br. at 21. This is simply not true. As Defendants' own cases make clear, only the Lead Plaintiffs are required to have standing to bring claims. *Winer Family Tr. v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007) (stating that "the lead plaintiff may base claims on statements and omissions occurring after its date of purchase" and the inquiry "is whether the lead plaintiff individually has standing, not whether or not other class members have standing"). This issue has long been settled by the Supreme Court. *Lewis v. Casey*, 518 U.S. 343, 395 (1996) ("[Unnamed plaintiffs] need not make any individual showing of standing [in order to obtain relief], because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court."). In the cases cited by Defendants, the **lead plaintiffs** lacked standing because they made **all** of their purchases before **any** misstatement. Here, Defendants do not dispute that Lead Plaintiffs purchased their Altria securities throughout the Class Period and have standing.

Finally, Defendants confusingly argue that all of Plaintiffs' claims are time-barred (even those previously upheld by the court) to the extent they relate to the new alleged corrective events. Def. Br. at 22. There can be no dispute that Plaintiffs' claims in the Consolidated Complaint are timely, and Defendants have never argued otherwise. The fact that Plaintiffs have identified additional evidence

15

of losses caused by Defendants' fraud does not bar their claims. Even if a statute of limitations analysis were appropriate, however, dismissal "is appropriate only if the 'complaint clearly shows the claim is out of time.'" *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)). That is certainly not the case here. Plaintiffs allege that the truth was gradually revealed to the market over time through multiple corrective disclosures and as risks concealed by Defendants' fraud materialized. "A securities-law violation is discovered when the plaintiff learns sufficient information about [the violation] to ... plead it in a complaint with enough detail and particularity to survive a [Federal Rule of Civil Procedure] 12(b)(6) motion to dismiss...." *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 119 (2d Cir. 2017) (citation omitted). This includes scienter. *Merck & Co. v. Reynolds*, 559 U.S. 633, 639 (2010). There is no basis to conclude that any of the added corrective events provided the necessary detail for Plaintiffs to survive a motion to dismiss, especially for the scienter element.

Defendants also incorrectly assert that the claims based on the October 25, 2018 misstatements are time-barred. Def. Br. at 23. As discussed, the running of the statute of limitations does not begin to run until the plaintiff has sufficient information to adequately allege a claim, including scienter. Here, Plaintiffs did not discover the information establishing scienter until they recently reviewed the 20 million pages produced by Defendants. In the case cited by Defendants, *In re Eaton Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 153323, at *12 (S.D.N.Y. Sep. 20, 2017), the court held that the claims for the new false statements were untimely because the plaintiff had alleged a single corrective disclosure "disclosed the fraud" more than two years prior. *Id*. Plaintiffs do not allege that a single corrective event revealed Defendants' fraud in this case. Instead, the risks from the fraud slowly materialized during the Class Period, ending with the April 1, 2020 disclosure of the FTC complaint. Investors only learned later that their losses were because of fraud. Plaintiffs filed their motion and attached the proposed amendment well within the two-year limitations period.

16

### b.    Amendment Is Not Futile as To Crosthwaite

The Court previously held that Plaintiffs could adequately allege Crosthwaite was a "maker" of a statement by Altria if they "allege that Crosthwaite had sufficient control over the press releases at issue." ECF No. 140 at 27-28. The proposed FAC easily meets this standard. Plaintiffs allege in detail, with citation to specific documents, that Crosthwaite not only had "control" over the October 25 and December 20 statements, ███████████████████████████████████████████ ███████████████████████████████████████████████████ ¶¶411-418, 465, 469. Crosthwaite clearly made the statements at issue in this action, including those alleged for the first time in the FAC.

Crosthwaite argues at length that Plaintiffs' amendment would be futile because they cannot utilize the "group pleading" presumption to allege that he participated in drafting the October 25, 2018 letter and December 20, 2018 press release, relying heavily on *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 143 (2011) ("*Janus*").  Crosthwaite Br. at 7-11. While courts are split as to what extent group pleading is permitted after *Janus*,[3] the Court need not decide this issue here because Plaintiffs have alleged in exacting detail Crosthwaite's ████████████████ ████████████████████████████████████████████████████. ¶¶411-418, 465, 469.  Any argument to the contrary is a question of fact that cannot be decided as a matter of law. *See, e.g.*, *Masterson v Commonwealth Bankshares Inc*., 2 F. Supp. 3d 824, 831 (E.D.

---

[3] The Fourth Circuit has left open the possibility that "group-published information" may be alleged in support of falsity, which would allow "a plaintiff to rely on a presumption that statements in company generated documents represent the collective work of those individuals directly involved in the company's daily management." *Dunn v. Borta*, 369 F.3d 421, 434 (4th Cir. 2004). Courts in the Second and Ninth Circuits routinely apply the doctrine in determining which officers are "makers" of statements. *See City of Pontiac Gen. Employees' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 373 (S.D.N.Y. 2012) (collecting cases); *Sagez v. Glob. Agric. Invs., LLC*, 2014 WL 3779072, at *20 (N.D. Iowa July 31, 2014) ("the group pleading doctrine continues to be good law as applied to the particular claim in this case"). Some of the cases relied on by Crosthwaite conflate the use of the doctrine to establish who is a "maker" with whether the doctrine can be used to plead scienter.

17

Va. 2014) (citing *In re Cabletron Sys., Inc.*, 311 F.3d 11, 41 (1st Cir. 2002) ("Control is a question of fact that 'will not ordinarily be resolved summarily at the pleading stage.' The issue raises a number of complexities that should not be resolved on such an underdeveloped record.")).

Crosthwaite's exclusive reliance on *Janus* is misplaced. As the Fourth Circuit has observed, "The *Janus* opinion itself makes clear the limits of its reach. *Janus* concerned the ability of a private plaintiff invoking the 10b-5 implied right to sue ***a mutual fund investment adviser***." *Prousalis v. Moore*, 751 F.3d 272, 276 (4th Cir. 2014) (citing *Janus*, 564 U.S. at 137 (emphasis supplied)). "The scope of the Court's opinion was established at the outset: "We granted certiorari to address whether [the adviser] can be held liable in a private action under Rule 10b-5 for false statements included in [its client's] prospectuses." *Id*. quoting *Janus*, 564 U.S. at 141. Thus, *Janus* only evaluated the extent to which one company can be held liable for statements in a separate company's SEC filings.

When previously assessing whether Crosthwaite was a "maker" of the statements in the December 20, 2018 press release, the Court favorably cited to *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 56 F. Supp. 3d 549, 558 (S.D.N.Y. 2014) ("*Barclays*"). ECF No. 140 at 27. As *Barclays* explained, *Janus* "does not imply that there can be only one 'maker' of a statement" or "alter the well-established rule that a corporation can act only through its employees and agents." *Barclays*, 56 F. Supp. 3d at 558. As the Court in *Barclays* noted:

> *Janus* "addressed only whether third parties can be held liable for statements made
> by their clients . . . and has no bearing on how corporate officers who work together
> in the same entity can be held jointly responsible on a theory of primary liability."

*Barclays*, 56 F. Supp. at 558 n.56. In *Barclays,* the Court found that a parent corporation, its president, and its subsidiaries could all be makers of a statement under *Janus*, holding that an allegation that an executive was able to cause a company to issue a false statement "is sufficient at the pleading stage to withstand scrutiny under *Janus.*" *Id.* at 559. It is clear from the Supreme Court's discussion of corporate form and its reliance on *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*,

18

552 U.S. 148 (2008) and *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994), both of which examined liability as to **separate corporate entities**, that the Court was not addressing liability among officers within the same corporate entity. *See Janus*, 564 U.S. at 143-46; *Prousalis*, 751 F.3d at 276-277 (explaining *Janus*' reliance on *Stoneridge* and *Central Bank*).[4]

Crosthwaite asserts that Plaintiffs' allegations concerning the October 25, 2018 letter are merely "generic and conclusory" (Crosthwaite Br. at 12) and lack the particularity required under Rule 9(b). *Id.* at 13. Far from it. Citing numerous emails circulated among Crosthwaite, Willard, Gifford and Garnick, Plaintiffs detail ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████ .

Crosthwaite argues factually that because Willard and Gifford were also presumably involved in approving the December 20, 2018 press release, Crosthwaite could not control "the content" of the statements for purposes of establishing him as a maker. Crosthwaite Br. at 15. This is pure speculation. ██████████████████████████████

████████████████████████████████████████████

█████████████████████████████████ *Id.* Thus, even under the more restrictive (and inapplicable) *Janus* standard, Plaintiffs have adequately alleged that, unlike in *Janus*, it was "necessary or inevitable" that the language ████████████████████████████

---

[4] Many of the cases relied on by Crosthwaite are inapposite because they, like *Janus*, involve two separate companies. *See, e.g., In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 482 (S.D.N.Y. 2012) (underwriter not a maker of statements in another company's offering materials).

██████████████████████████████████████ *Janus*, 564 U.S. at 144.[5]

Crosthwaite attempts, again factually, to liken himself to a low-level speech writer who merely suggests language to his bosses but has no control over the final product. That could not be further from reality. Crosthwaite was Willard's right-hand man in the C-suite. He was the Chief Growth Officer and charged with consummating the JLI transaction. ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████ Crosthwaite's assertion that he lacked any control over the statements is demonstrably false.

Crosthwaite's reliance on *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1007 (N.D. Cal. 2017), highlights why Crosthwaite *is* a maker of the December 20 statement. In *SolarCity*, an employee who merely "assembled" the underlying metrics that management later decided to include in SEC filings was not a "maker" because he had no "authority over whether those metrics were or were not included in the [public disclosures]." *Id*. The same is not true for Crosthwaite. He did not merely provide underlying information that others later decided (unbeknownst to him) to include in the October 25, 2018 letter and December 20, 2018 press release. ███████████████████

█████████████████████████████████████████████████████████.

---

[5] Defendants cherry-pick favorable language from certain cases, ignoring that the holdings of the cases actually support Plaintiffs' position. *See In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 641 (S.D.N.Y. 2017) ("[i]n the post-*Janus* world," an executive may be held accountable where he "signed the company's statement; *ratified and approved the company's statement*; or where the statement is attributed to the executive"); *In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 473 (S.D.N.Y. 2012) (finding Chief Risk Officer could be held liable as a "maker" because of "his participation in drafting relevant disclosures," "his review of draft filing" and "approval" of the filings). The remainder of the cases cited by Defendants are inapposite because the defendant at issue was not alleged to have had any control or authority over the statements. *See, e.g.*, *In re Virtus Inv. Partners, Inc. Secs. Litig.*, 195 F. Supp. 3d 528, 541 (S.D.N.Y. 2016) (acknowledging that "multiple people in a single corporation" can be makers of a statement but dismissing claims against defendants who "[we]re not alleged to have had authority over their contents").

20

## CONCLUSION

For these reasons, Plaintiffs respectfully request the Court grant Plaintiffs leave to file the FAC.


DATED:  August 26, 2021

By: */s/ Steven J. Toll*

Steven J. Toll (VSB #15300)
Daniel S. Sommers
S. Douglas Bunch
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. N.W., Suite 500
Washington, DC  20005
Telephone:  202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*


Jeremy A. Lieberman
Michael J. Wernke
POMERANTZ LLP
600 Third Avenue
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mjwernke@pomlaw.com

*Lead Counsel for Lead Plaintiffs Donald Sherbondy and Sarah Sherbondy*

21

Samuel H. Rudman
David A. Rosenfeld
Erin W. Boardman
Philip T. Merenda
ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgdlaw.com
pmerenda@rgrdlaw.com

Douglas R. Britton
Kevin A. Lavelle
Matthew J. Balotta
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
mbalotta@rgrdlaw.com

*Lead Counsel for Lead Plaintiff Laborers Pension Trust of Greater St. Louis*

Brian Schall
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310/301-3335
brian@schallfirm.com

*Additional Counsel for Lead Plaintiffs Donald Sherbondy and Sarah Sherbondy*

22

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2021 I caused the foregoing to be electronically filed with

the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.


By: */s/ Steven J. Toll*

Steven J. Toll (VSB #15300)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. N.W., Suite 500
Washington, DC  20005
Telephone:  202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com


*Local Counsel for Lead Plaintiffs*

23