1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

                                )
GABBY KLEIN, et al.             )
                                )
v.                              )   Civil Action No.:
                                )   3:20 CV 75
ALTRIA GROUP, INC., et al.      )
                                )
                                    November 22, 2021

          COMPLETE TRANSCRIPT OF CONFERENCE CALL
           BEFORE THE HONORABLE DAVID J. NOVAK
            UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

Jeremy Alan Lieberman, Esquire (via phone)
Michael Jonathan Wernke, Esquire (via phone)
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, NY 10016

David A. Rosenfeld, Esquire (via phone)
Douglas R. Britton, Esquire (via phone)
Ellen Gusikoff, Esquire (via phone)
ROBBINS GELLAR RUDMAN & DOWD LLP
58 South Service Road
Suite 200
Melville, NY 11747

          Counsel on behalf of the Plaintiffs









                TRACY J. STROH, RPR
              OFFICIAL COURT REPORTER
           UNITED STATES DISTRICT COURT

APPEARANCES (CONTINUED):

Jonathan M. Moses, Esquire (via phone)
Jacob Miller, Esquire (via phone)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019

Edward J. Fuhr, Esquire (via phone)
HUNTON ANDREWS KURTH LLP
951 East Byrd Street
Richmond, VA 23219

          Counsel on behalf of the Defendant Altria Group,
          Inc.

Melanie MacKay, Esquire (via phone)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036

          Counsel on behalf of the Defendant Howard A.
          Willard, III

Matthew R. Skanchy, Esquire (via phone)
WILKINSON STEKLOFF LLP
2001 M Street NW
10th Floor
Washington, DC 20036

          Counsel on behalf of the Defendant William F.
          Gifford, Jr.

Jared Gerber, Esquire (via phone)
CLEARY GOTTLIEB STEEN & HAMILTON
One Liberty Plaza
New York, NY 10006

          Counsel on behalf of the Defendant
          Juul Labs, Inc.

APPEARANCES (CONTINUED):

Garrett Hooe, Esquire (via phone)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219

           Counsel on behalf of the Defendant Adam Bowen

M. Todd Scott, Esquire (via phone)
ORRICK HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105

           Counsel on behalf of the Defendant James Monsees

Ann Niehaus, Esquire (via phone)
KEKER VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111

           Counsel on behalf of the Defendant Kevin Burns

Matthew J. Peters, Esquire (via phone)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611

           Counsel on behalf of the Defendant
           K.C. Crosthwaite

(The conference call commenced at 2:32 p.m.)

THE COURT:  All right.  We're going to go on the record here.  This is *Klein v. Altria Group, et al.* Case 3:20 CV 75.

I've asked each side to designate a spokesperson since there's about 20,000 lawyers in this case.

As I understand it, the plaintiffs have designated Jeremy Lieberman to speak; is that correct? Mr. Lieberman?

MR. LIEBERMAN:  That's correct, Your Honor.

THE COURT:  Do you want to -- do you want to just tell us the 10,000 people that's on your side that's on this call?

MR. LIEBERMAN:  No problem, Your Honor.  Just short of that, we have Michael Wernke from Pomerantz LLP, also on behalf of the lead plaintiffs.

And then from the Robbins Gellar firm, we have David Rosenfeld, Doug Britton, and Ellen Gusikoff.

THE COURT:  Okay.

MR. LIEBERMAN:  Gusikoff.  Excuse me.

THE COURT:  All right.

For the defendants, I think Jonathan Moses, you've been designated; is that correct?

MR. MOSES:  That's correct, Your Honor.  Good afternoon.

THE COURT:  Do you want to tell us who's also here for all the defendants?

MR. MOSES:  Sure.  Of course.  So with me is our co-counsel -- is my colleague, Jake Miller, also with the Wachtell Lipton firm.

And then our co-counsel from the Hunton Andrews firm, Ed Fuhr.

And then here on behalf of the other defendants, Howard Willard, we have Melanie MacKay from the Dechert firm.

For Mr. Gifford, Matthew Skanchy from Wilkinson Stekloff.

For Juul Labs, Jared Gerber from the Clearly Gottlieb firm.

For Adam Bowen, Garrett Hooe of McGuireWoods.

For James Monsees, Todd Scott of Orrick.

Kevin Burns, I think there are two people -- one person on the line, Ann Niehaus of Keker Van Nest.

And for K.C. Crosthwaite, Matthew Peters of Latham & Watkins.

THE COURT:  Okay.

MR. MOSES:  I think I got everybody.

THE COURT:  Good.  Well, all that tells me is it's one mighty expensive telephone call, but I appreciate everybody being available.

I have been told by Magistrate Judge Colombell that you settled the case.  And I have a copy of the MOU.

So my first question to you is -- and I'll direct this to either Mr. Lieberman or Mr. Moses.  Just identify yourself before you speak.

Will you all be ready to go for a preliminary approval hearing on December 15th as we had scheduled the class certification for that time?

MR. LIEBERMAN:  Your Honor, Jeremy Lieberman for lead plaintiffs.

Plaintiffs are certainly ready to go.  As Your Honor sees with the MOU in front of him, that was a concern that we put in the MOU.  It's an important date for us.  We want -- you know, that was -- part of the discussions regarding settling the matter was that we would be able to move this along quickly and get this in front of the Court by December 15th.

So we're not only ready to go, we really think all parties should adhere to that date.

THE COURT:  All right.  Good.

So let's get all your paperwork filed by December the 9th so I have enough time to take a look at it and prep beforehand.

Any reason you can't achieve that, Mr. Lieberman?

MR. LIEBERMAN:  On behalf of lead plaintiffs, absolutely no reason.  We can adhere to that date.

THE COURT:  All right.

Mr. Moses, is your ball club also good for the 9th?

MR. MOSES:  I think so.  I believe so, Your Honor.  We've been exchanging drafts plaintiffs have sent us.  We've given them some comments, but we're -- it's all been pretty minor.  So that should work.

THE COURT:  All right.

Now, do you all know what the class size is or is that more -- is that a moving target?

MR. LIEBERMAN:  Your Honor, we can estimate. It's based on the float and the volume of the shares traded during the class period.

So we know we have just shy of 600,000 million shares that are included in the class that are alleged to have been damaged.  That's going to likely result in ultimately class members being in at least the high tens of thousands or several hundred thousand class members here.  Potentially over a million.

We're really -- that process is that, as the MOU states, the defendants will get us the list of nominal shareholders.  That's the ones who hold the actual certificate of shares.  But then there's the process of

8

getting those names and then you go to the brokerages who aren't the nominal shareholders, the beneficial holders, you know, the mom and pops that actually buy these shares and the institutions that buy these shares.  And that's the process of getting them the notice.

Once the Court approves the case, the settlement, then we can just get out notice.  And then they send in a claim form.

So we will know, you know, at some point -- it's usually even actually a little after the final approval, usually in a certain amount of days afterwards that we have generally a good sense.  By the final approval, we should have at least -- a much better sense.  And then within, you know, X weeks or months, you know, we'll really have the universe of claimants.  But that's how the process normally goes.

But there's no doubt that there's, you know -- could be a significant amount of claimants here and -- you know, well above tens of thousands.

THE COURT:  What are you envisioning?  Like a dollar amount per share or per claimant?

MR. LIEBERMAN:  Per share.  Per share.

THE COURT:  Do you have a ballpark in your head as to what that's going to be?

MR. LIEBERMAN:  We can get that information.

Yeah, we probably have to get it.  I don't have it, you know, ready for this discussion.

THE COURT:  All right.

All right.  Well, I notice this is an opt-out, and you have -- one of the terms is also no reversion.  And I think you all are covering the administration up to a million bucks.  Are you -- how good do you think you are on the addresses and contact info for these folks?

MR. LIEBERMAN:  So the process is the defendants will get us their list of nominal shareholders, the one who's holding the stock in street name, and then our claims administrators get out the notice to the brokers and brokerages.  And it's usually a pretty robust practice with brokerages.  You know, they will give us the information of the claimants, or more likely, we'll send that notice to the claimants themselves.

And that's the process where we'll be giving notice to everyone that was a beneficial holder in the stock during the class period.  And usually it's a robust claims process.  We see no reason why it shouldn't be here.  But that's typically how the process works.

THE COURT:  So with no reversion, are you anticipating use of a cy pres here or what are you doing?

MR. LIEBERMAN:  No.  No.  What no reversion will mean is that you'll have -- you know, the settlement fund

will be, you know -- the amount will be agreed upon, minus any fees and expenses.  And then there will be claims on that in -- we can -- in very overwhelmingly likelihood, those claims are going to strip the amount of settlement funds and everyone will get their pro rata share.  And so no reversion -- there is a -- there's no need for reversion because the claimed damages are going to be larger than the actual settlement amount by, in all likelihood, many multiples.

And then maybe at some point -- at some point there will be a certain amount of money -- maybe, you know, in the single digits, 10 -- single digits of 1000 to 10,000 -- that we might decide, well, maybe at this point it's not economical to continue to distribute that to the class members, a very small percent of settlement.  At that point, we'll make a determination whether or not you would recommend a cy pres distribution.

THE COURT:  All right.  Well, there's always -- I've done tons of class cases, just so you know that, and there's always mailing issues and stuff like that.

I think you should plan on a cy pres.  If you get to that point, I want to talk about it because I don't want it to be a cy pres that's going to feed business to folks.  That's one of my pet peeves down here.  So you're not going to pick a -- a charity that's going to send

business, like, to either side.  That's just not -- I really dislike that.  So we're going to talk about a charity that really addresses the poor people.

So --

MR. LIEBERMAN:  Very well, Your Honor.  We can deal with that -- really, we can deal with that at the distribution stage.

THE COURT:  No.  That's fine.  I'm just telling you the way I roll on this.  I'm just giving you a heads up.  I know my class settlements very well.  I've done it both as a magistrate judge and a district judge.  And I'm just telling you where this is going to head so you're not surprised down the road.

What are you thinking in terms of what your percentage of the fee is going to be?  There's an awful lot of money here.  $90 million is an awful lot of money.  So if you're thinking a third, I think you better start thinking something different.

MR. LIEBERMAN:  In the notice, we provide for no more than a third.  As far as -- you know, we're not prepared at this stage to, you know, make a request.  We want to do that based upon reviewing all the expenses we've had and all the other -- the lodestar, and then we'll approach the Court.

THE COURT:  All right.  If you're thinking

30 million, though, you better start thinking again.  I'm just telling you that right now.  So you might want to reassess that.  Okay?

So -- all right.  Anything else I need to know before you file the preliminary approval documents, Mr. Lieberman?

MR. LIEBERMAN:  The only thing we would suggest, Your Honor, if Your Honor wants to start to address it, is if we could look at a date for a final hearing.

THE COURT:  Yeah.  That's good.  Let's do that now.

How long do you need till the class administrator does what they need to do?

MR. LIEBERMAN:  We probably could look at a date -- a hundred days we want usually.  So if we look at a date towards the end of March.

THE COURT:  Yeah.  I have free on March 31st, if that works for you all.  It's a Thursday.

MR. LIEBERMAN:  For Pomerantz, that's fine.  I'd like to hear just from my co-counsel.

THE COURT:  All right.

MR. ROSENFELD:  Yeah, that works for Robbins Gellar.

THE COURT:  Okay.  Mr. Moses, does that work for you?

MR. MOSES:  We'll make it work, Your Honor.

THE COURT:  Okay.  What time -- a lot of you are in New York.  Do you want to do it a little bit later in the day and you could fly in and fly back?  I'm trying to keep those attorneys' fees down as low as we can go.

MR. LIEBERMAN:  Yeah, Your Honor, we appreciate that.  Something around noon or something like that.

THE COURT:  Noon is a winner.  Noon on March 31st.  We'll put that on our calendar now, and then we'll kind of go from there.  Okay?

All right.  Anything else you want to deal with now?

MR. LIEBERMAN:  Not for the plaintiffs, Your Honor.

THE COURT:  Okay.  Mr. Moses?

MR. MOSES:  That's all, Your Honor.  Thank you so much.

THE COURT:  Okay.  Good.

All right.  I look forward to seeing all of you on the 15th.  Okay?  Take care.

MR. MOSES:  Thank you, Your Honor.

(The conference call concluded at 2:43 p.m.)

REPORTER'S CERTIFICATE

I, Tracy J. Stroh, OCR, RPR, Notary Public in and for the Commonwealth of Virginia at large, and whose

commission expires September 30, 2023, Notary Registration Number 7108255, do hereby certify that the pages contained herein accurately reflect the stenographic notes taken by me, to the best of my ability, in the above-styled action.

Given under my hand this 25th day of November 2021.

/s/
Tracy J. Stroh, RPR