# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Richmond Division)

| | |
|---|---|
| GABBY KLEIN, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) Civil Action No. 3:20-cv-00075-DJN |
| Plaintiffs, | ) ) <u>CLASS ACTION</u> |
| vs. | ) ) ) |
| ALTRIA GROUP, et al., | ) ) ) |
| Defendants. | ) ) ) ) |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
<u>AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 3

    I.      PROCEDURAL HISTORY.................................................................................. 3

    II.     NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE
           PROPOSED SETTLEMENT ............................................................................. 5

ARGUMENT................................................................................................................................ 6

    III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
           APPROVAL ........................................................................................................ 6

        A.     Standards for Preliminary Approval of a Proposed Class Action
            Settlement ............................................................................................... 6

        B.     The Court Will Likely Be Able to Approve the Proposed Settlement
            Under Rule 23(e)(2) ............................................................................... 8

            1.     Plaintiffs and Lead Counsel Have Zealously Represented the
                 Settlement Class.............................................................................. 8

            2.     The Settlement Is the Product of Good Faith, Informed, and
                 Arm's-Length Negotiations by Experienced Counsel .................. 10

            3.     The Settlement Provides Significant and Certain Benefits and Is
                 Well Within the Range of Approval ........................................... 12

                 a)     The Effective Process for Distributing Relief to the
                       Class.............................................................................. 15

                 b)     The Settlement Does Not Excessively Compensate
                       Class Counsel................................................................ 16

                 c)     The Relief Provided in the Settlement Is Adequate
                       Taking Into Account All Agreements Related to the
                       Settlement ...................................................................... 18

            4.     Class Members Are Treated Equitably Relative to
                 One Another.................................................................................. 19

         C.     The Court Will Likely Be Able to Certify the Settlement Class .............. 19

            1.     The Settlement Class Satisfies the Requirements of Rule 23(a)... 20

a)  Numerosity...........................................................................21

b)  Commonality........................................................................21

c)  Typicality ............................................................................22

d)  Adequate Representation ....................................................23

2.  Rule 23(b)(3) Is Satisfied...............................................................24

D.  Notice to the Settlement Class Should Be Approved ...............................25

IV.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS ...................................28

CONCLUSION................................................................................................................29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................................................. 20, 24

*Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS 1031 Tax
    Deferred Exch. Litig.),*
    2012 WL 13124593 (D.S.C. July 12, 2012) ............................................................................ 25

*Baker v. SeaWorld Entm't, Inc.,*
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................................................................... 27

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ................................................................................................................. 24

*Beaulieu v. EQ Indus. Servs.,*
    2009 WL 2208131 (E.D.N.C. Apr. 20, 2009) ......................................................................... 25

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 3366 (2005) ............................................................................................................... 13

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ........................................................................................................... 25, 26

*Graham v. Capital One Bank (USA), N.A.,*
    2014 WL 12579809 (C.D. Cal. July 29, 2014) ....................................................................... 27

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................................ 27

*In re BankAtlantic Bancorp, Inc.,*
    No. 07-61542, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713
    (11th Cir. 2012) ....................................................................................................................... 15

*In re BearingPoint Inc. Sec. Litig.,*
    232 F.R.D. 534 (E.D. Val. 2006) .............................................................................. 21, 22, 24, 25

*In re Busporine Antitrust Litig.,*
    No. 01-1410 (S.D.N.Y. Apr. 11 2003) .................................................................................... 17

*In re Carrier iQ, Inc., Consumer Privacy Litig.,*
    2016 U.S. Dist. LEXIS 114235 (N.D. Cal. Aug. 25, 2016) .................................................... 18

*In re Computer Scis. Corp. Sec. Litig.,*
    288 F.R.D. 112 (E.D. Va. 2012) .............................................................................................. 22

*In re ForceField Energy Inc. Sec. Litig.,*
    No. 1:15-cv-3020-NRB (S.D.N.Y.) ......................................................................................... 27

iii

*In re Initial Public Offering Sec. Litig.*,
  671 F. Supp. 2d at 516 ................................................................................................... 17

*In re Jiffy Lube Securities Litigation*,
  927 F.2d 155 (4th Cir. 1991) ................................................................................ 8, 9, 10, 12

*In re Jumia Techs., AG Sec. Litig.*,
  No. 19-cv-04397-PKC (S.D.N.Y. Oct. 19, 2020) ............................................................. 27

*In re Kirschner Med. Corp. Sec. Litig.*,
  139 F.R.D. 74 (D. Md. 1991) ......................................................................................... 21

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................................... 19

*In re MicroStrategy*, *Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ............................................................................. 12

*In re The Mills Corp.*,
  257 F.R.D. 101 (E.D. Va. 2009) ......................................................................... 21, 22, 24

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ............................................................................... 11, 20

*In re Neustar Inc. Sec. Litig.*,
  2015 WL 5674798 (E.D. Va. Sept. 23, 2015) ........................................................... *passim*

*Landmen Partners, Inc. et al v. The Blackstone Group, L.P. et al*,
  No. 1:08-cv-03601 (S.D.N.Y. Apr 15, 2008), Dkt. No. 191 ............................................... 17

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
  2009 WL 3094955 (E.D. Va. June 23, 2009) ..................................................................... 7

*Longman v. Food Lion, Inc.*,
  1994 WL 686624 (M.D.N.C. Oct. 17, 1994) ............................................................... 21, 23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................................ 25, 27

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .................................................................................... 15

*S. C. Nat'l Bank v. Stone*,
  749 F. Supp. 1419 (D.S.C. 1990) .................................................................................... 6

*S. Carolina Nat'l Bank v. Stone*,
  139 F.R.D. 325 (D.S.C. 1991) .................................................................................. 22, 23

*Solomon v. Am. Web Loan, Inc*,
  2020 WL 3490606 (E.D. Va. June 26, 2020) ..................................................................... 9

*Winingear v. City of Norfolk*,
    2014 U.S. Dist. LEXIS 97392 (E.D. Va. July 14, 2014) ............................................................ 8, 11, 15

**Statutes**

15 U.S.C. §78j(b) ................................................................................................................................. 3, 23

15 U.S.C. §78t(b) ............................................................................................................................... 2, 3, 23

15 U.S.C. § 78u-4 (a) ......................................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................................... *passim*

**Other Authorities**

17 C.F.R. § 240.10b-5 .......................................................................................................................... 3

Lead Plaintiffs Donald and Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("Plaintiffs")[1] on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of their unopposed motion for preliminary approval of the proposed Settlement reached in the above-captioned class action (the "Action"), pursuant to Fed. R. Civ. P. 23 ("Rule 23"). The terms of the proposed Settlement are set forth in the Stipulation, which was entered into by all Parties to the litigation.[2]

## PRELIMINARY STATEMENT

Pursuant to the proposed Settlement, Defendants have agreed to pay, or cause to be paid, the Settlement Amount of $90,000,000 for the benefit of the Settlement Class in exchange for the settlement of all claims asserted in the Action, the dismissal with prejudice of the Corrected Consolidated Class Action Complaint filed on July 2, 2020 (the "Complaint"), and the release of all Released Plaintiffs' Claims by Plaintiffs and the other members of the Settlement Class as against Defendants and Defendants' Releasees.

The Settlement—which represents one of the largest recoveries ever achieved in a securities class action in Virginia and the Fourth Circuit and approximately *seven times the median settlement value between 2018 and 2020*—will bring to a close intense and hard-fought litigation, which included denial of Defendants' four motions to dismiss, briefing of Plaintiffs' motion for class certification, the near completion of fact discovery, and multiple mediation sessions. As discussed below, the Settlement is the product of vigorous good-faith, arm's-length

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated as of December 9, 2021 (the "Stipulation"), which is attached as Exhibit 1 to the Declaration of Jeremy A. Lieberman ("Lieberman Decl."), filed herewith.

[2] Defendants are Altria Group, Inc. ("Altria"), JUUL Labs, Inc. ("JLI"), Howard A. Willard III ("Willard"), William F. Gifford, Jr. ("Gifford"), Adam Bowen ("Bowen"), James Monsees ("Monsees"), Kevin Burns ("Burns"), and K.C. Crosthwaite ("Crosthwaite") (collectively, the "Defendants," and with Plaintiffs, the "Parties").

1

negotiations between experienced counsel, including significant mediation efforts by Magistrate Judge Mark Colombell of this Court as well as a nationally recognized mediator, represents a very favorable recovery that falls well within the range of possible approval, and meets all of the approval factors required by Federal Rule of Civil Procedure 23(e) and Fourth Circuit precedent.

Should the Court grant this unopposed motion for preliminary approval, Plaintiffs will provide notice of the Settlement's terms and conditions to potential Settlement Class Members in the manner provided for by the proposed Preliminary Approval Order. A final approval hearing (the "Settlement Fairness Hearing") will then be conducted so that the Parties may present arguments in favor of the Settlement, and objectors will be provided with the opportunity to oppose it. The Court will then be asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to Settlement Class Members and to consider Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

The proposed Preliminary Approval Order has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the Settlement Class for settlement purposes; (iii) approve the form and content of the (A) Postcard Notice, (B) Notice of (i) Proposed Settlement; (ii) Motion for an Award of Attorneys' Fees and Litigation Expenses; and (ii) Settlement Fairness Hearing ("Notice"), (C) the Proof of Claim and Release Form ("Claim Form"), and (D) the Summary Notice, attached as Exhibits 1, 2, 3 and 4 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Postcard Notice, Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities

2

Litigation Reform Act of 1995 ("PSLRA"); (v) set deadlines for Settlement Class Members to request exclusion from the Settlement Class or object to any aspect of the Settlement; (vi) a date and time for the Settlement Fairness Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and Litigation Expenses, including reimbursement of costs and expenses to Lead Plaintiffs pursuant to the PSLRA; and (vii) appoint Epiq Class Action & Claims Solutions, Inc. as the claims administrator, which was selected by Lead Counsel to administer the notice and claims administration process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    PROCEDURAL HISTORY

This is a securities class action brought on behalf of all persons and entities who purchased or otherwise acquired Altria securities between October 25, 2018 and April 1, 2020, inclusive, and who were allegedly damaged thereby.

The operative Complaint, filed on July 2, 2020, principally asserts claims against Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. Among other things, the Complaint alleges that Defendants made materially false and misleading statements and omissions to investors concerning: (1) JLI's marketing of its JUUL products to minors; and (2) Altria's and JUUL's commitment to prevent underage access to and use of e-cigarettes. The Complaint alleges that the price of Altria's publicly traded common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and material omissions, and declined when the truth was allegedly revealed. Plaintiffs allege that the truth began to emerge during the Class Period as regulatory and public scrutiny of JLI's marketing practices increased, resulting in government litigation and regulatory action, causing

3

Altria to write-down its $12.8 billion investment in JLI by 64%. These disclosures caused Altria's stock price to significantly decline. Defendants deny any and all allegations of wrongdoing, and deny that they have committed any act or omission giving rise to any liability or violation of law.

On July 8, 2020, Defendants filed four motions to dismiss the Complaint. ECF Nos. 117, 119, 121, 123. On September 17, 2020, Plaintiffs filed oppositions to Defendants' motions to dismiss (ECF Nos. 126, 127) and, on November 2, 2020, Defendants filed their reply papers. ECF Nos. 128-131. On March 12, 2021, the Court entered its Opinion and Order denying Defendants' motions. ECF Nos. 139-140.

Before reaching the agreement in principle to settle the Action, Lead Counsel conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action and completed voluminous class and fact discovery and were mere days away from serving numerous expert reports. This process included, among other things, analyzing: (i) documents filed publicly by Altria with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning Altria, JLI and the Defendants; (iii) research reports issued by financial analysts concerning Altria and JLI; (iv) other publicly available information and data concerning Altria and JLI and the allegedly improper marketing activity; (v) approximately *30 million pages of documents* produced by Defendants and third parties during discovery; and (vi) the applicable law governing the claims and potential defenses. Lead Counsel identified 166 former Altria and JLI employees and other persons believed to have relevant knowledge, contacted 165, and interviewed 24 of them (three of whom were cited in the Complaint as confidential witnesses). Lead Counsel reviewed transcripts and exhibits from over 70 depositions conducted in related actions, and also took or defended 11 depositions, including

4

the depositions of Plaintiffs, Plaintiffs' investment managers, current and former Altria and JLI employees, certain Individual Defendants, and two experts. Plaintiffs also filed and served two expert reports concerning market efficiency and price impact in support of their motion for class certification and were in the process of finalizing seven expert reports addressing, among other things, JLI's improper marketing, Altria's due diligence of JLI's marketing, loss causation and damages. Additionally, Plaintiffs filed a motion to amend the Complaint (along with the proposed First Amended Complaint) to add allegations based on the fruits of discovery, which was fully briefed and pending when the Settlement was reached.

While fact discovery was ongoing, the Parties concurrently briefed Plaintiffs' motion for class certification. On August 6, 2021, Plaintiffs filed their motion to certify the Action as a class action. ECF No. 220. On September 17, 2021, Defendants filed their opposition, and on October 14, 2021, Plaintiffs filed their reply. ECF Nos. 271, 290. A hearing was set for December 15, 2021, when the Settlement was reached.

## II. NEGOTIATION OF THE SETTLEMENT AND THE TERMS OF THE PROPOSED SETTLEMENT

Pursuant to Court Order (ECF No. 173), on June 29, 2021, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before the Hon. Layn Phillips (Ret.) of Phillips ADR. In advance of that session, the Parties exchanged and provided to Judge Phillips detailed mediation statements with numerous exhibits of evidentiary support. The mediation briefs addressed issues of both liability and damages. That mediation session ended without any agreement being reached.

Again, pursuant to Court Order (ECF No. 206), on September 24, 2021, the Parties and their counsel participated in a full-day mediation session before United States Magistrate Judge Mark R. Colombell. In advance of that session, the Parties provided Judge Colombell with

detailed mediation statements and evidentiary support, which addressed issues of both liability and damages. That mediation session likewise ended without reaching any agreement.

On October 27, 2021, Lead Counsel and Defendants' Counsel participated in a second mediation session before Judge Colombell. In advance of that session, the Parties submitted to Judge Colombell supplemental mediation statements, addressing additional liability and damages issues. During the mediation session, Judge Colombell issued a mediator's proposal that the Action settle for $90 million in cash, which was accepted by each Party that same day, and the Parties executed a Memorandum of Understanding on October 28, 2021, which memorialized the agreement-in-principle, subject to the execution of a customary "long form" stipulation and agreement of settlement and related papers. The Stipulation (together with its exhibits) constitutes the final and binding agreement between the Parties.

In light of the substantial benefit of the $90 million achieved for the Settlement Class, the significant costs and risks of continuing litigation, including class certification, summary judgment, *in limine* motions, trial, and appeals, and the fact that the proposed Settlement is the result of thorough arm's-length negotiations by experienced counsel and a well-respected mediator, Plaintiffs respectfully submit that the Settlement warrants preliminary approval so that notice may be provided to the Settlement Class.

**ARGUMENT**

**III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

    **A.    Standards for Preliminary Approval of a Proposed Class Action Settlement**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions." *S. C.*

6

*Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990); *see also Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. June 23, 2009) ("There is an overriding public interest in favor of settlement, particularly in class action suits.").[3]

District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Id.* at §13:13; Fed. R. Civ. P. 23(e)(1). Second, after notice has been provided and a hearing has been held, the Court determines whether to actually approve the settlement. *See* Fed. R. Civ. P. 23(e)(2).

Rule 23(e) was amended to, among other things, specify that the focus of a court's preliminary approval evaluation is whether notice should be provided to the class after considering the likelihood that the court will be able to finally approve the settlement, given the factors enumerated in Rule 23(e)(2), and be able to certify the class. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A)     class representatives and counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

    (i)     the costs, risks, and delay of trial and appeal;

    (i)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[3] Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified

(ii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iii)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23 amendments, which became effective in December 2018, have not changed the overall standard for approving a settlement, *i.e.*, whether the settlement is fundamentally fair, adequate, and reasonable.

"Once the Court grants preliminary approval and notice is sent to the class, the court conducts a fairness hearing to determine if the proposed settlement is fair, reasonable, and adequate." *Winingear v. City of Norfolk*, 2014 U.S. Dist. LEXIS 97392, at *10 (E.D. Va. July 14, 2014). At final approval, the Court will also consider the Fourth Circuit's traditional fairness and adequacy factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991), which are consistent with the Rule 23(e)(2) factors.[4]

**B.    The Court Will Likely Be Able to Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.    Plaintiffs and Lead Counsel Have Zealously Represented the Settlement Class**

In determining whether to approve a class action settlement, the Court considers whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ.

---

[4] Under *Jiffy Lube*, to assess the threshold factor of the fairness of a settlement, courts consider "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." 927 F.2d at 159. Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion . . . ." *Id.* Under the second *Jiffy Lube* threshold factor of the adequacy of the proposed settlement, courts consider: (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159.

P. 23(e)(2)(A). This requirement is "met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation." *Solomon v. Am. Web Loan, Inc*, 2020 WL 3490606, at *2 (E.D. Va. June 26, 2020) (quoting *In re Neustar Inc. Sec. Litig.*, 2015 WL 5674798, at *4 (E.D. Va. Sept. 23, 2015)).

In appointing Lead Plaintiffs and Lead Counsel to their positions, the Court found that each were adequate to lead the Action under the PSLRA. *See* ECF No. 43. Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class in both their vigorous prosecution of the Action and in the negotiation and achievement of the Settlement. Lead Counsel have also been assisted by able and experienced liaison counsel, Cohen Milstein Sellers & Toll PLLC and The Schall Law Firm.  Plaintiffs have been active and informed participants in the litigation and were consulted on, and approved, the terms of the Settlement.

Likewise, Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims through: (i) a comprehensive investigation that involved, among other things, a review of publicly available information regarding Altria and JLI and interviews with 24 former Altria and JLI employees and other persons with potentially relevant knowledge (three of whom were cited in the Complaint as confidential witnesses); (ii) briefing on Defendants' four motions to dismiss; (iii) engaging in extensive discovery efforts that included reviewing the production of over 30 million pages of documents, reviewing transcripts and exhibits from over 70 depositions conducted in related actions, and taking or defending 11 depositions, including the depositions of Plaintiffs, Plaintiffs' investment managers, current and former Altria and JLI employees, certain Individual Defendants, and two experts; (iv) briefing on class certification; (v) briefing on Plaintiffs' motion to amend the Complaint, and (vi) preparing several expert reports. In

9

consultation with its damages expert, Lead Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $90 million recovery, which represents one of the largest recoveries ever achieved in a securities class action in Virginia and in the Fourth Circuit. Accordingly, as previously determined by the Court during the lead plaintiff process, Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

### 2. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In weighing a class action settlement at final approval, the Court considers whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Similarly, under the *Jiffy Lube* "fairness factors, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering the following four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class actions litigation."' *Neustar*, 2015 WL 5674798, at *10 (quoting *Jiffy Lube*, 927 F.2d at 159). Consideration of all of these factors demonstrates that the Settlement here was reached through arm's length negotiations after vigorous litigation and with no hint of collusion.

In particular, the advanced posture of this case and the significant amount of discovery that was conducted before the Parties' agreement in principle dispel any concerns of possible collusion. *See Jiffy Lube*, 927 F.2d at 159 (acknowledging that a settlement reached "at a very early stage in the litigation and prior to any formal discovery, rais[es] questions of possible collusion."). Here, however, the Settlement was not reached until the litigation was at an advanced stage. *See* Section I above.  The Parties had all but completed fact discovery, including the review of approximately 30 million pages of documents produced by Defendants and taking or defending

11 depositions. Plaintiffs also had nearly finalized several costly expert reports that they were prepared to serve if a settlement was not reached. *See Winingear*, 2014 U.S. Dist. LEXIS 97392, at *12 ("When discovery has been largely completed, this factor weighs in favor of approving the settlement."). Moreover, as discussed above, the Parties had already litigated Defendants' motions to dismiss and fully briefed Plaintiffs' motion to amend and motion for class certification. When "several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). The extensive discovery and motion practice in this case provided each side with the necessary insight to evaluate the merits and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

The lengthy settlement negotiations were conducted at arm's-length by experienced class-action litigators with the assistance of experienced mediators. On June 29, 2021, the Parties participated in a full-day mediation session before the Hon. Layn Phillips (Ret.), one of the preeminent mediators for complex litigation. They then participated in two additional mediation sessions before Judge Colombell on September 24 and October 27, 2021. The Parties provided detailed mediation statements and exhibits to the mediators, which addressed issues of both liability and damages. During the mediation sessions, counsel for Plaintiffs and Defendants zealously negotiated on behalf of their clients' best interests and the Settlement was only reached after Judge Colombell presented the Parties with a "mediator's recommendation" to settle for $90 million. Lead Counsel, who are very experienced in prosecuting complex class actions, ECF Nos. 222-2, 222-3, had a clear view of the strengths and risks of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be

11

afforded substantial consideration in determining whether a class settlement is fair and adequate. *See In re MicroStrategy*, *Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001). Moreover, Plaintiffs actively supervised this litigation and recommended that the Settlement be approved.

These factors favor preliminary approval.

### 3.    The Settlement Provides Significant and Certain Benefits and Is Well Within the Range of Approval

The proposed Settlement readily satisfies Rule 23(e)(2)(C). To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. *See, e.g.*, *Neustar*, 2015 WL 5674798, at *11 (the *Jiffy Lube* adequacy analysis "weighs the likelihood of the plaintiff's recovery on the merits against the amount offered in the settlement"). The $90 million recovery—which is approximately seven times the median recovery in securities class actions between 2018 and 2020, inclusive[5]—is objectively an excellent result for the Settlement Class. In light of the risks of continued litigation and potential outcomes at trial, Plaintiffs believe that the Settlement falls well within the range of possible approval. While Plaintiffs believe that the claims asserted against Defendants were strong and that substantial evidence to support the allegations has been adduced, they recognize that there were significant risks to establishing both liability and damages.

As an initial matter, Plaintiffs would have faced challenges in proving to the ultimate fact finder that the statements made by Defendants were materially false and misleading and that Defendants acted with scienter. Defendants strenuously argued at the motion to dismiss and class certification stages, and they would have continued to maintain at summary judgment and trial, that

---

[5] *See,* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at 17 (NERA 2021), *available at* https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf

(among other things) Plaintiffs would not be able to prove that Defendants' statements about JLI's marketing to minors and Altria's and JLI's commitment to preventing youth access and usage were materially false and misleading. For example, Defendants would likely seek to present evidence that the market understood the risks of regulatory action and litigation arising from JLI's alleged improper marketing and the youth usage epidemic that were allegedly concealed by Defendants' statements, and that the statements are therefore not actionable. Defendants also would have likely vigorously argued that the allegedly omitted information about JLI's marketing to minors was fully disclosed when certain government entities began investigations into JLI's marketing and certain consumer actions were filed against JLI. Also, Defendants would have argued that the alleged statements regarding Defendants' commitment to preventing underage access and use are not actionable because the statements legitimately reflected their genuinely held belief.

Defendants would have also likely argued that even if the alleged misstatements were found to be misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter). Defendants would likely seek to present testimonial evidence that the Individual Defendants did not believe that JLI or Altria had engaged in any wrongful conduct.

The JLI Defendants would have also continued to argue, as they did at the motion to dismiss and class certification stage, that Plaintiffs (purchasers of Altria's common stock) do not have "standing" to bring action against the JLI Defendants for statements that JLI made about itself.

Plaintiffs would also have continued to confront considerable challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants likely would have asserted that Plaintiffs

13

cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused Altria's stock price to decline. In particular, Defendants would have continued to argue that the announcements of regulatory action and government litigation were materializations of risks fully known to investors (and disclosed by Defendants) prior to their purchases during the Class Period. Defendants would also argue that Altria's write-down of its JLI investment did not disclose any new facts that were previously unknown to the market.

Defendants had also argued in opposition to Plaintiffs' motion to amend the Complaint that the corrective disclosures on March 19, June 21, November 19, 2019 and April 1, 2020 should not be permitted because Plaintiffs' proposed amendment was untimely. Overall, the Parties held extremely disparate views with respect to loss causation and damages. Had Defendants' arguments been accepted in whole or part, they could have eliminated or, at a minimum, dramatically limited, any potential recovery.[6]

The fact that Plaintiffs defeated Defendants' motions to dismiss was not a guarantee of ultimate success. Plaintiffs faced ongoing risks associated with their pending motion to amend and motion for class certification as well as Defendants' forthcoming summary judgment motions, *in limine* motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery, or even no recovery at all. The Court's denial of class certification or granting of summary judgment in Defendants' favor would have resulted in zero recovery for the Settlement Class. As the Court warned during a conference with the Parties shortly after denying Defendants' motions to dismiss, Plaintiffs' risk of losing at summary judgment was "significant":

> "This is a message to plaintiffs' counsel. Even though I've denied the motion to dismiss, that was largely driven by the stage of the case that we're in. I think this is

---

[6] Significantly, at the time the Settlement was reached, the Court had not yet ruled on Plaintiffs' motion to amend the Complaint, which sought to expand the original class period and add four corrective events. There is no guarantee that the Court would have granted that motion, which may have ultimately impacted damages and the discovery admissible at trial.

14

> a case that's got serious potential for summary judgment … So what I'm telling plaintiffs' counsel is don't get too bullish on your prospects here because I think summary judgment is going to be a big issue here."

Tr. of Apr. 13, 2021 Conference Call, at 7:16-8:1. The Court also ordered the Parties to complete mediation by July 2, telling Lead Plaintiffs "the wind is blowing against you" and "you ought to be reasonable when you go into settlement here." *Id*. at 15:8-11. The Court repeated the message in a call with plaintiffs in the related derivative action: "I think [the securities action] is a case that very well could go on summary judgment. … I think the percentages are significant that that could be granted if not as to all the defendants, certainly as to a good many of them." Tr. of Apr. 21, 2021 Conference Call, at 13:4-13.

Even surviving summary judgment in full and prevailing at trial would not have guaranteed a recovery larger than the $90 million Settlement. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict for plaintiffs on liability, district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

The Settlement avoids the potential impact of each of these challenges and other risks and achieves a fair and certain result. The fact that the Settlement eliminates substantial delay and expense strongly weighs in favor of preliminary approval. *See Winingear*, 2014 U.S. Dist. LEXIS 97392, at *12.

In sum, the proposed Settlement would satisfy Rule 23(e)(2)(C)(i).

### a)      The Effective Process for Distributing Relief to the Class

The Net Settlement Fund, like the vast majority of securities class action settlements, will be distributed to Authorized Claimants with the assistance of an established and experienced

claims administrator. The Claims Administrator will employ well-tested protocols and procedures for the processing of claims. Namely, a potential class member will submit, either by mail or online, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶26. Class Representatives' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to remedy any deficiencies or contest the rejection of their claims. *Id*. at ¶30. Any claim disputes that cannot be resolved will be presented to the Court for a final determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶37) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a subsequent distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. Thereafter, any *de minimis* residual will be donated to an appropriate non-profit organization unaffiliated with any of the parties or their counsel, and subject to the approval of the Court. Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

**b)  The Settlement Does Not Excessively Compensate Class Counsel**

The reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files their motion for attorneys' fees and expenses in advance of the Settlement Fairness Hearing

16

on March 31, 2022. The Settlement does not contemplate any specific award; nor is it the subject of any agreement between the Parties. Lead Counsel will be compensated out of the Settlement Amount, under the common fund doctrine, and will not be compensated by Defendants. The Notice to potential Settlement Class Members states that in connection with Lead Counsel's attorneys' fee and Litigation Expense application, Lead Counsel will seek no more than 31% of the Settlement Fund. Courts routinely award attorneys' fees of 30% to 33.33% of a settlement fund for similar and even higher recoveries. *See, e.g. In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d at 516 (awarding 33.33% of $510 million settlement fund); *Landmen Partners, Inc. et al v. The Blackstone Group, L.P. et al*, No. 1:08-cv-03601 (S.D.N.Y. Apr 15, 2008), Dkt. No. 191 (awarding 33.33% of $85 million settlement fund); *City of Farmington Hills Emps Ret. Sys. v. Wells Fargo Bank N.A.*, No. 0:10-cv-04372 (D. Minn. Oct 26, 2010), Dkt. No. 686 (awarding 33.33% of $62.5 million settlement fund); *Grae v. Corrections Corp. of Am. et al*, No. 3:16-cv-02267 (M.D. Tenn. Aug 23, 2016), Dkt. No. 478 (awarding 33.33% of $56 million settlement fund); *In re Busporine Antitrust Litig.*, No. 01-1410 (S.D.N.Y. Apr. 11 2003) (awarding 33.3% of $220 million settlement fund); *Schuh v. HCA Holdings, Inc. et al*, No. 3:11-cv-01033 (M.D. Tenn. Oct 28, 2011), Dkt. No. 563 (awarding 30% of $215 million settlement fund); *City of Pontiac Gen. Emps' Ret. Sys. v. Wal-Mart Stores, Inc. et al*, No. 5:12-cv-05162 (W.D. Ark. Jul 26, 2012), Dkt. No. 458 (awarding 30% of $160 million settlement fund); *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc. et al*, No. 1:17-cv-00304 (D. Colo. Feb 1, 2017), Dkt. No. 122 (awarding 30% of $135 million settlement fund); *Anwar v. Fairfield Greenwich Ltd. Grp.*, No. 1:09-cv-00118 (S.D.N.Y.), Dkt. No. 1457 (awarding 30% of $125 million settlement fund); *T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp. et al*, No. 2:10-cv-02847 (N.D. Ala. Oct 20, 2010), Dkt. No. 320 (awarding 30% of $90 million settlement fund);

17

*Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 1:09-md-02063 (D. Colo. Jun 24, 2009), Dkt. No. 527 (awarding 30% of $89.5 million settlement fund and noting the "customary fee award of 30% of the fund under the percentage of the fund approach").

Counsel will also seek payment of litigation expenses incurred during the prosecution of the Action, in an amount not to exceed $1,700,000. This amount will include reimbursement to Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4 (a)(4). Accordingly, the proposed Settlement would satisfy Rule 23(e)(2)(C)(iii).

**c)**      **The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Related to the Settlement**

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On October 28, 2021, the Parties entered into a settlement memorandum of understanding and on December 9, 2021 they entered into the Stipulation and a confidential Supplemental Agreement regarding requests for exclusion (the "Supplemental Agreement"). Stipulation at ¶39. The Supplemental Agreement provides that Altria has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. *See, e.g.*, *In re Carrier iQ, Inc., Consumer Privacy Litig.*, 2016 U.S. Dist. LEXIS 114235, at *32 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in*

18

*camera* or under seal. The Supplemental Agreement, Stipulation, and memorandum of understanding are the only agreements concerning the Settlement entered into by the Parties.

### 4.      Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Plaintiffs, will receive a *pro rata* distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[7] The proposed plan was created by Plaintiffs' damages expert and is consistent with Plaintiffs' theories of damages under the Exchange Act. All Settlement Class Members that were allegedly harmed as a result of the alleged misstatements and omissions, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. Notice at p. 29. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

### C.      The Court Will Likely Be Able to Certify the Settlement Class

Certification of the proposed Settlement Class for purposes of the Settlement is appropriate under Rules 23(a)(1)-(4), 23(b) and 23(e) of the Federal Rules of Civil Procedure. Certification of a settlement class is not disputed. As set forth in the Stipulation, "for purposes of the Settlement and for no other purpose, Defendants stipulate and agree to . . . certification of the

---

[7] Class Representatives will seek reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This does not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

19

Action as a class action pursuant to Rules 23(a)(1)-(4), 23(b), and 23(e) of the Federal Rules of Civil Procedure . . . ." Stip. ¶2.

As set forth in paragraphs 1(jj) and 2 of the Stipulation, the Parties have stipulated to the following Settlement Class:

> all persons and entities who purchased or otherwise acquired Altria securities between October 25, 2018 and April 1, 2020, both dates inclusive, and were allegedly damaged thereby.

Defendants and certain of their related parties, and any persons who exclude themselves by submitting a valid and timely request for exclusion that is accepted by the Court, are excluded from the Settlement Class.  Stip. ¶1(jj).

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See, e.g.*, *NeuStar*, 2015 WL 5674798, at *2; *Mills*, 265 F.R.D. at 255. A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that, when determining whether to certify a settlement class, courts need not consider the last factor, "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *NeuStar*, 2015 WL 5674798, at *8.

Here, the requirements for certifying a class are met.

### 1.    The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

20

### a)   Numerosity

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1). A "class of as few as 25 to 30 members raises the presumption that joinder would be impracticable." *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991). "[P]laintiffs need not demonstrate with precision the number of persons in the purported class to satisfy the requirement that joinder is impracticable where such a conclusion is clear from reasonable estimates." *Id.* The numerosity requirement is "seldom disputed in securities fraud cases." *In re BearingPoint Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Val. 2006); *In re The Mills Corp.*, 257 F.R.D. 101, 104-105 (E.D. Va. 2009). (same). In cases involving publicly listed companies, "the numerosity requirement has been met by a showing that a large number of shares were outstanding and traded during the relevant period." *Longman v. Food Lion, Inc.*, 1994 WL 686624, at *2 (M.D.N.C. Oct. 17, 1994).

The proposed Settlement Class consists of tens-of-thousands of members, if not more. Altria's common stock actively trades on the New York Stock Exchange ("NYSE"). The Company's Form 10-K for 2020 reported that there were approximately 1.85 billion shares of Altria stock outstanding as of February 15, 2021. Investors are geographically dispersed, with some purchasing only a few shares. Accordingly, the joinder of this vast number of investors would be impractical, and the "numerosity" requirement is satisfied.

### b)   Commonality

Rule 23's "commonality" requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not "'require that members of the class have identical factual and legal claims in all respects.'" *BearingPoint*, 232 F.R.D. at 538. Where "various of defendants' acts and omissions are at the center of th[e] case, it follows that there are a number of questions of both law and fact common to all members of the proposed

21

class." *Id.* at 539. "Members of a proposed class in a securities case are especially likely to share common claims and defenses." *Mills Corp.*, 257 F.R.D. at 105.

Here, Plaintiffs' and proposed Settlement Class Members' claims arise out of similar misstatements and omissions, raising a host of common questions, such as:

1.  whether Defendants' alleged acts and omissions violated the federal securities laws;

2.  whether Defendants disseminated any public statements during the Class Period that contained material misrepresentations or omitted material facts;

3.  whether Defendants acted knowingly, or with recklessness, in misrepresenting or omitting those material facts;

4.  whether the market price of Altria's stock was artificially inflated during the Class Period due to the alleged false and misleading statements or omissions; and

5.  whether Plaintiffs and other members of the Settlement Class suffered damages, as well as the appropriate measure thereof.

Courts have repeatedly held that these exact types of common questions satisfy Rule 23(a)(2)'s requirement of common issues. *See, e.g., BearingPoint,* 232 F.R.D. at 538; *Mills Corp.*, 257 F.R.D. at 105.

### c)    Typicality

Rule 23(a)'s "typicality" requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement "does not mean that members of the class must have 'identical factual and legal claims in all respects.'" *Mills Corp.*, 257 F.R.D. at 105. Rather, it "'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Computer Scis. Corp. Sec. Litig.*, 288 F.R.D. 112, 117-18 (E.D. Va. 2012). "Typicality is rarely lacking in securities class actions." *S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 329 (D.S.C. 1991).

22

Plaintiffs and members of the Settlement Class all purchased Altria securities during the Class Period and assert the same Section 10(b) claims under the Exchange Act based on the same misstatements and omissions, and assert the same Section 20(a) allegations of "control person" liability. The legal and factual arguments Plaintiffs advance are the same arguments that other Settlement Class Members would advance in support of their claims. Accordingly, Plaintiffs satisfy the "typicality" requirement.

### d)    Adequate Representation

Rule 23's "adequacy" requirement is met when the proposed class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The requirements for adequate representation under Rule 23(a)(4) are that the named plaintiffs have no conflict of interest with the class and that a qualified and experienced attorney is obtained for the purpose of litigation." *Longman*, 1994 WL 686624, at *2-3.

Plaintiffs are unquestionably adequate. They purchased Altria securities during the Settlement Class Period and were injured by the same material misrepresentations and omissions that injured the other Settlement Class Members. They have demonstrated their commitment to monitor and supervise the prosecution of this Action on behalf of the Settlement Class. They have, among other things, reviewed the pleadings and motions in this Action, provided documents and maintained regular communications with Lead Counsel, sat for depositions and remained actively involved in settlement negotiations.

Finally, Lead Plaintiffs have protected the interests of the Settlement Class by retaining Lead Counsel to represent the class. *S. Carolina Nat'l Bank*, 139 F.R.D. at 331 ("courts generally hold that the employment of competent counsel assures vigorous prosecution"). Plaintiffs respectfully submit that their counsel satisfy the adequacy requirement of Rule 23(a)(4). Lead Counsel are nationally recognized for their work prosecuting large, complex securities class

23

actions such as this one. As discussed above, Lead Counsel are among the most experienced class action law firms in the country, with proven track records of success, including within this Circuit. *See supra* at 11.

### 2. Rule 23(b)(3) Is Satisfied

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15 (internal quotations and citations omitted). Certification of the Settlement Class for settlement serves these purposes. Courts in this District have explained that "[s]ecurities fraud actions typically meet the Rule 23(b)(3) requirement because the claims relate to acts or omissions of the same defendants and damages of individual class members might be too small to provide incentive for the individuals to sue." *Mills Corp.*, 257 F.R.D. at 109; *BearingPoint,* 232 F.R.D. at 542 (same).

The predominance and superiority requirements are readily satisfied. Questions common to all Settlement Class Members predominate over any questions affecting only individual Settlement Class Members. As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625; *see also NeuStar*, 2015 WL 5674798, at *5. When, as here, securities traded in an efficient market, class-wide reliance is presumed.[8]

---

[8] *See Basic Inc. v. Levinson,* 485 U.S. 224 (1988); *see also, e.g., NeuStar,* 2015 WL 5674798, at *7 ("Trading volume of this magnitude on a prominent national exchange like the NYSE is

Proceeding as a class action is also superior to other available methods for resolution of the Settlement Class Members' claims. *See, e.g.*, *BearingPoint*, 232 F.R.D. at 545 ("class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws.").

### D.      Notice to the Settlement Class Should Be Approved

The threshold requirement for the approval of class notice is whether the proposed notice program is reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt out of the Settlement Class or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the Court. *See Beaulieu v. EQ Indus. Servs.*, 2009 WL 2208131, at * 28 (E.D.N.C. Apr. 20, 2009) ("While [Rule 23] does not spell out the required contents of the settlement notice, it must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'") (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)).

In terms of content, the notice should describe the settlement and class members' ability to seek exclusion "clearly and concisely . . . in plain, easily understood language . . . ." *Arthur v. SunTrust Bank (In re LandAmerica 1031 Exch. Servs. Inc. IRS 1031 Tax Deferred Exch. Litig.*), 2012 WL 13124593, at *7 (D.S.C. July 12, 2012). A long-form notice must also satisfy the requirements set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7).

The proposed long-form notice to the Settlement Class more than satisfies these requirements. The Notice is written in simple language and includes: (i) basic information about

---

sufficient to justify a strong presumption of market efficiency.") (citing *Computer Scis.,* 288 F.R.D. at 119).

the lawsuit and the definition of the Settlement Class; (ii) a description of the benefits provided by the Settlement; (iii) an explanation that any claims against Defendants that could have been litigated in the Action will be released if the Settlement Class Member does not opt out and the Settlement is approved; (iv) the names and contact information for Lead Counsel; (v) an explanation of how Settlement Class Members can obtain the Settlement benefits; (vi) an explanation of how Settlement Class Members can exercise their right to opt-out or object to the Settlement; (vii) information regarding Lead Counsel's application for attorneys' fees and expenses, specifically that they will seek no more than 31% of the Settlement Fund in attorneys' fees and no more than $1,700,000 in litigation expenses; (viii) the Settlement Fairness Hearing date; (ix) an explanation of how to submit a notice of appearance for the Settlement Fairness Hearing; and (x) the Settlement website and a toll-free number where additional information can be obtained. Thus, the Notice satisfies the content requirements of Rule 23 and the PSLRA.

Additionally, the proposed dissemination program for notice satisfies due process. *See Eisen*, 417 U.S. at 173 (finding notice program to be the "best notice practicable under the circumstances" where it includes "individual notice to all members who can be identified through reasonable effort."). As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator[9] will mail the Postcard Notice (Exhibit 1 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, including through Altria's transfer records. The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and

---

[9] Lead Plaintiffs request that the Court approve retention of Epiq Class Action & Claims Solutions, Inc. as the Claims Administrator for this case.  It is a nationally recognized notice and claims administration firm and has extensive relevant experience. Its staff consists of experienced CPAs, IT specialists and various other professionals with substantial experience in notice and claims administration.

nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. After entry of the proposed Preliminary Approval Order, the Stipulation and its exhibits, the Preliminary Approval Order, and the Notice and Claim Form (Exhibits 2 and 3 to the Preliminary Approval Order) will be posted on the Claims Administrator's website. Additionally, the Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.

The proposed notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014); *In re Jumia Techs., AG Sec. Litig.,* No. 19-cv-04397-PKC (S.D.N.Y. Oct. 19, 2020) (ECF No. 113) (approving postcard notice and similar proposed notice program including website); *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 818893, at *2-*3 (S.D. Cal. Feb. 19, 2020) (same); *see also Graham v. Capital One Bank (USA), N.A.*, 2014 WL 12579809, at *2 (C.D. Cal. July 29, 2014); *In re ForceField Energy Inc. Sec. Litig.*, No. 1:15-cv-3020-NRB (S.D.N.Y.) (ECF. No. 243); *Allen, et al., v. PixarBio Corp., et al.,* No. 2:17-cv-00496 (D.N.J.) (ECF. No. 135); *In re Silver Wheaton Corp. Sec. Litig*., No. 2:15-cv-05146 (C.D. Cal.) (ECF No. No. 487); and *In re Tangoe, Inc., Sec. Litig.*, No. 3:17-cv-00146 (D. Ct.) (ECF No. No. 64).

This combination of individual first-class mailed notice to all potential Settlement Class Members who can be identified with reasonable effort and publication of notice in *Investor's*

*Business Daily* and over the internet meets all the requirements of Rule 23 and due process. *See, e.g., Neustar*, 2015 WL 5674798, at *12.

Accordingly, Plaintiffs respectfully submit that the proposed Postcard Notice, Notice and Summary Notice, and the related procedures, are appropriate and should be approved.

## IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Fairness Hearing is scheduled. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Fairness Hearing for a date approximately 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Fairness Hearing. | March 31, 2022 (Preliminary Approval Order ¶ 5) |
| Mailing of Postcard Notice. | No later than 20 calendar days after entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 7(b)) (the "Notice Date") |
| Publication of Summary Notice. | No later than 10 calendar days after the Notice Date (Preliminary Approval Order ¶ 7(d)) |
| Filing deadline for requests for exclusion. | Postmarked no later than 21 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 13) |
| Date for Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and expenses. | No later than 35 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 26) |
| Filing deadline for objections. | No later than 21 calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 16) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and expenses. | Seven (7) calendar days prior to the Settlement Fairness Hearing. (Preliminary Approval Order ¶ 26) |
| Date for Claims to be filed | No later than 90 calendar days after the Notice Date (Preliminary Approval Order ¶ 10) |

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court grant the requested relief. The Parties' agreed-upon form of proposed Preliminary Approval Order, with exhibits, is attached to the accompanying Motion.

Respectfully submitted,

DATED:  December 9, 2021

By: */s/ Steven J. Toll*

Steven J. Toll (VSB #15300)
Daniel S. Sommers
S. Douglas Bunch
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., N.W., Suite 500
Washington, D.C.  20005
Telephone:  202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

Jeremy A. Lieberman
Michael J. Wernke
POMERANTZ LLP
600 Third Ave.
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mjwernke@pomlaw.com

*Lead Counsel for Lead Plaintiffs Donald Sherbondy
and Sarah Sherbondy*

29

Samuel H. Rudman
David A. Rosenfeld
Erin W. Boardman
Philip T. Merenda
ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Rd., Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
pmerenda@rgrdlaw.com


Ellen Gusikoff Stewart
Douglas R. Britton
Kevin A. Lavelle
Matthew J. Balotta
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

elleng@rgrdlaw.com
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
mbalotta@rgrdlaw.com

30

*Lead Counsel for Lead Plaintiff Laborers Pension Trust of Greater St. Louis*

Brian Schall
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310/301-3335
brian@schallfirm.com

*Additional Counsel for Lead Plaintiffs Donald Sherbondy and Sarah Sherbondy*

31

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2021, I caused the foregoing to be electronically filed with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered users.

By: */s/ Steven J. Toll*

Steven J. Toll (VSB #15300)
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave., NW Suite 500
Washington, DC 20005
Telephone: 202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

32