**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

| | | |
|---|---|---|
| GABBY KLEIN, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:20-cv-00075-DJN |
| | ) | <u>CLASS ACTION</u> |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| ALTRIA GROUP, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND APPROVAL OF PLAN OF ALLOCATION OF
<u>THE NET PROCEEDS OF THE SETTLEMENT</u>**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT............................................................................................................ 4

I.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
        ADEQUATE, AND WARRANTS FINAL APPROVAL..................................... 4

        A.      The Law Favors and Encourages Settlement of Class Action Litigation ... 4

        B.      The Standards for Final Approval............................................................. 4

        C.      Application of Rule 23(e)(2) and Jiffy Lube Factors................................. 6

                1.      Plaintiffs and Lead Counsel Have Zealously Represented the
                        Settlement Class.............................................................................. 6

                2.      The Settlement Is the Product of Good Faith, Informed, and
                        Arm's-Length Negotiations by Experienced Counsel .................... 8

                3.      The Relief Provided by the Settlement Is Adequate ..................... 11

                        a.      Risks of Establishing Liability and Damages Support
                                Approval of the Settlement ............................................... 12

                        b.      Costs and Delay of Continued Litigation Support Approval
                                of the Settlement .............................................................. 15

                        c.      The Effective Process for Distributing Relief to the
                                Settlement Class................................................................ 15

                        d.      The Settlement Does Not Excessively Compensate Lead
                                Counsel ........................................................................... 16

                        e.      The Relief Provided by the Settlement Is Adequate Taking
                                into Account All Agreements Related to the Settlement .. 17

                4.      Settlement Class Members Are Treated Equitably Relative to One
                        Another ........................................................................................ 17

                5.      Reaction of the Settlement Class to Date Supports Approval of the
                        Settlement .................................................................................... 18

II.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................... 18

III.    NOTICE SATISFIED RULE 23 AND DUE PROCESS ................................... 19

i

IV.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS
WARRANTED ................................................................................................ 20

CONCLUSION .................................................................................................................. 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)........................................................................................................10

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 3366 (2005)................................................................................................................13

*Hicks v. Stanley*, No. 01-cv-10071,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................................................................10

*In re BankAtlantic Bancorp, Inc.*, No. 07-61542,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)
  *aff'd*, 688 F.3d 713 (11th Cir. 2012)........................................................................................15

*In re Genworth Fin. Sec. Litig.*,
  210 F. Supp. 3d 837 (E.D. Va. 2016) ...........................................................................4, 5, 18

*In re Jiffy Lube Securities Litigation*,
  927 F.2d 155 (4th Cir. 1991) ....................................................................................... *passim*

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Practices & Prod.*
  *Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020)..................................................................................6

*In re MicroStrategy, Inc. Sec. Litig.*,
  148 F. Supp. 2d 654 (E.D. Va. 2001) ................................................................................10, 19

*In re Mills Corp. Sec. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ......................................................................................5, 9, 19

*In re Neustar Inc. Sec. Litig.*, No. 1:14cv885,
  2015 WL 5674798 (E.D. Va. Sept. 23, 2015)....................................................................7, 8, 11

*In re Peanut Farmers Antitrust Litig.*, No. 19-cv-1963,
  2021 WL 3174247 (E.D. Va. July 27, 2021).............................................................................6

*Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310,
  2009 WL 3094955 (E.D. Va. Sept. 28, 2009)...........................................................................4

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ...............................................................................................15

*S. C. Nat'l Bank v. Stone*,
  749 F. Supp. 1419 (D.S.C. 1990)...............................................................................................4

*Solomon v. Am. Web Loan, Inc*, No. 4:17cv145,
  2020 WL 3490606 (E.D. Va. June 26, 2020) ...............................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A.*,
  396 F.3d 96 (2d Cir. 2005)......................................................................................20

*Winingear v. City of Norfolk*, No. 2:12cv560,
  2014 U.S. Dist. LEXIS 97392 (E.D. Va. July 14, 2014) ......................................8, 15

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Donald and Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("CLPT", collectively, "Plaintiffs")[1] on behalf of themselves and all other members of the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") and approval of the proposed plan of allocation of the net proceeds of the Settlement (the "Plan of Allocation").

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Plaintiffs and Defendants[2] have agreed to a settlement of all claims asserted in the Action, the dismissal with prejudice of the Corrected Consolidated Class Action Complaint filed on July 2, 2020 (the "Complaint"), and the release of all Released Claims, in exchange for a payment of $90,000,000 in cash, to be paid by Altria. The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court.  ECF No. 297-1.

As detailed in the accompanying Joint Declaration filed herewith,[3] Lead Counsel have:

(i)    conducted a robust investigation concerning the allegedly fraudulent misrepresentations and omissions;

(ii)   prepared and filed a detailed consolidated class action complaint;

---

[1] All capitalized terms used and not otherwise defined in this Memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated December 9, 2021 (the "Stipulation"), previously filed with the Court (ECF No. 297-1).

[2] Defendants are Altria Group, Inc. ("Altria"), JUUL Labs, Inc. ("JLI"), Howard A. Willard III ("Willard"), William F. Gifford, Jr. ("Gifford"), Adam Bowen ("Bowen"), James Monsees ("Monsees"), Kevin Burns ("Burns"), and K.C. Crosthwaite ("Crosthwaite") (collectively, the "Defendants," and with Plaintiffs, the "Parties").

[3] The "Joint Declaration" or "Joint Decl." is defined as the Declaration of Jeremy A. Lieberman and David A. Rosenfeld in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation of the Net Proceeds of the Settlement, and (2) Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to § 15 U.S.C. 78u-4(a)(4).

(iii)    researched and drafted an opposition to Defendants' four motions to dismiss the complaint, after which the Court entered an Opinion and Order substantially denying Defendants' motions;

(iv)    completed extensive fact discovery that included analyzing approximately 30 million pages of documents produced by Defendants and third parties, reviewing transcripts and exhibits from over 70 depositions conducted in related actions, and taking or defending 11 depositions, including the depositions of Plaintiffs, CLPT's investment manager, current and former Altria and JLI employees, certain Individual Defendants, and two experts;

(v)    prepared and filed a motion to amend the complaint and proposed amended complaint, which was thereafter fully briefed;

(vi)    fully briefed a motion for class certification, and

(vii)    filed two expert reports addressing market efficiency and price impact and were in the process of finalizing an additional seven expert reports concerning, among other things, loss causation and damages.

At the time the Settlement was reached, Lead Counsel had a keen understanding of the strengths and weaknesses of the claims and defenses.[4]

The Settlement—which represents one of the largest recoveries ever achieved in a securities class action in Virginia and the Fourth Circuit and is approximately *seven times the median securities class action settlement value between 2018 and 2020 in the United States*—is the product of extensive arm's-length negotiations between the Parties, which included two full-day mediation sessions before U.S. Magistrate Judge Mark R. Colombell. Following the mediation, the Parties agreed, in principle, to the terms of the Settlement, subject to the negotiation of a mutually acceptable long form stipulation of settlement.

---

[4]    The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action, the nature of the claims asserted, the negotiations leading to the Settlement, and the risks and uncertainties of continued litigation, among other things. Unless otherwise noted, citations to "¶" in this memorandum refer to paragraphs in the Joint Declaration. All exhibits referenced below are attached to the Joint Declaration.

2

The Settlement is a very favorable result in light of the risks of continued litigation. While Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are strong, they recognize that the Action presented several obstacles to establishing both liability and damages, including the challenges posed by summary judgment given Defendants' likely arguments that Plaintiffs could not prove falsity, scienter, and loss causation, among other things. While Plaintiffs would advance credible counterarguments to Defendants' liability defenses, they nonetheless recognize that there were credible risks that Defendants' anticipated summary judgment motions might be granted in whole or in part. These risks are in addition to the genuine risk of a much smaller recovery, or no recovery at all, at the conclusion of trial.

In light of the substantial recovery for the Settlement Class and the risks of continued litigation, as discussed further below and in the Joint Declaration, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate, and warrants final approval by the Court. *See* Ex. 1 (Declaration of Donald Sherbondy); Ex. 2 (Declaration of Sarah Sherbondy), and Ex. 3 (Declaration of Don Willey on Behalf of CLPT). Additionally, Plaintiffs request that the Court approve the proposed Plan of Allocation, which was set forth in full in the Notice to Settlement Class Members. The Plan of Allocation, which was developed by Lead Counsel in consultation with Plaintiffs' damages expert, provides a reasonable and equitable method for allocating the Net Settlement Fund among Settlement Class Members who submit valid claims. The Plan of Allocation is fair and reasonable and should likewise be approved.

## ARGUMENT

### I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

#### A.   The Law Favors and Encourages Settlement of Class Action Litigation

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class-action settlement must be presented to the Court for approval and should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016). Courts have long recognized that public and judicial policy favor the settlement of disputed claims among private litigants, particularly in class actions. *See Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) ("There is an overriding public interest in favor of settlement, particularly in class action suits."); *S. C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts" and is "particularly appropriate in class actions.").[5]

#### B.   The Standards for Final Approval

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)   class representatives and counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[5] Internal quotation marks and citations within quotations are omitted throughout unless otherwise specified.

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Rule 23 amendments, which became effective in December 2018, have not changed the overall standard for approving a settlement, *i.e.*, whether the settlement is fundamentally fair, adequate, and reasonable.

When evaluating a class action settlement, the Fourth Circuit has held that district courts should consider the factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158 (4th Cir. 1991). *See, e.g., Genworth*, 210 F. Supp. 3d at 839-41; *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). The *Jiffy Lube* factors are used to assess a settlement's "fairness" and "adequacy" and are consistent with the Rule 23(e)(2) factors. Under *Jiffy Lube*, to assess the threshold factor of the "fairness" of a settlement, courts consider, "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the [relevant] area of . . . class action litigation." *Jiffy Lube*, 927 F.2d at 159. Analyzing these factors enables the Court to determine that "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion . . . ." *Id.*

For the additional *Jiffy Lube* threshold factor of the "adequacy" of the proposed settlement, courts consider: (1) the relative strength of the plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159. The Advisory Committee Notes to the 2018

amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the court of appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Committee Notes to 2018 Amendments.

In the discussion that follows, Plaintiffs will primarily discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the four factors set forth in Rule 23(e)(2). By doing so, they will necessarily address the *Jiffy Lube* factors since, as courts recognize, the Rule 23(e)(2) factors largely overlap with the *Jiffy Lube* factors. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020) (noting that the *Jiffy Lube* "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors"); *In re Peanut Farmers Antitrust Litig.*, No. 19-cv-1963, 2021 WL 3174247, at *2 (E.D. Va. July 27, 2021) ("Taking this substantial overlap into consideration, the Court will examine Plaintiffs' Motion for Settlement based upon the Rule 23(e)(2) factors."). Each of the Rule 23(e)(2) and *Jiffy Lube* factors readily support approval of the proposed Settlement.

      C.     **Application of Rule 23(e)(2) and Jiffy Lube Factors**

          1.     **Plaintiffs and Lead Counsel Have Zealously Represented the Settlement Class**

In determining whether to approve a class action settlement, the Court should consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This requirement is "met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation." *Solomon v. Am. Web Loan, Inc*, No. 4:17cv145, 2020

6

WL 3490606, at *2 (E.D. Va. June 26, 2020) (quoting *In re Neustar Inc. Sec. Litig.*, No. 1:14cv885, 2015 WL 5674798, at *4 (E.D. Va. Sept. 23, 2015)).

When appointing Lead Plaintiffs and Lead Counsel to their positions, the Court found that each were adequate to lead the Action under the PSLRA. *See* ECF No. 43. Lead Plaintiffs and Lead Counsel have continued to adequately represent the Settlement Class by vigorously prosecuting the Action and negotiating the Settlement. Lead Counsel have also been assisted by able and experienced liaison counsel, Cohen Milstein Sellers & Toll PLLC. Lead Plaintiffs have been active and informed participants in the litigation efforts and were consulted on, and approved, the terms of the Settlement.

Consistent with their obligations, Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims through a comprehensive investigation, substantial motion to dismiss and class certification briefing, extensive discovery efforts, a motion to amend the complaint (which attached a proposed amendment containing additional detailed allegations), consultation with numerous expert witnesses, and working with experts on several expert reports. ¶¶14-53. With a deep understanding of the strengths and weaknesses of the case, and in consultation with their damages expert, Lead Counsel evaluated the potential damages in the case and negotiated vigorously to secure the $90 million recovery, which represents one of the largest recoveries ever achieved in a securities class action in Virginia and in the Fourth Circuit. Accordingly, as previously determined by the Court during the lead plaintiff process, Plaintiffs' interests are not antagonistic to those of the Settlement Class and Plaintiffs and Lead Counsel have adequately represented the Settlement Class.

### 2.    The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

In weighing a class action settlement at final approval, the Court considers whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Similarly, under the *Jiffy Lube* "fairness" factors, the Court's analysis of whether the settlement was reached through good faith bargaining at arm's length includes considering the following four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation.'" *Neustar*, 2015 WL 5674798, at *10 (quoting *Jiffy Lube*, 927 F.2d at 159). Consideration of all of these factors demonstrates that the Settlement here was reached through arm's-length negotiations after vigorous litigation and with no hint of collusion.

The first and second *Jiffy Lube* fairness factors support approval.  In particular, the advanced posture of this case and the significant amount of discovery that was conducted before the Parties' agreement in principle dispel any concerns of possible collusion. *Cf. Jiffy Lube*, 927 F.2d at 159 (a settlement reached "at a very early stage in the litigation and prior to any formal discovery, rais[es] questions of possible collusion"). Here, the Settlement was not reached until the litigation was at an advanced stage. The Parties had all but completed fact discovery, including the review of Defendants' production of approximately 30 million pages of documents and taking or defending 11 depositions. Plaintiffs filed and served two expert reports concerning market efficiency and price impact in support of their motion for class certification and were in the process of finalizing seven costly expert reports that they were prepared to serve if a settlement was not reached addressing, among other things, JLI's improper marketing, Altria's due diligence of JLI's marketing, loss causation, and damages. ¶¶14-53. *See Winingear v. City of Norfolk,* No. 2:12cv560,

8

2014 U.S. Dist. LEXIS 97392, at *12 (E.D. Va. July 14, 2014) ("When discovery has been largely completed, this factor weighs in favor of approving the settlement.").

As noted above, the Parties had already litigated Defendants' motions to dismiss and fully briefed Plaintiffs' motion to amend and motion for class certification. When "several briefs have been filed and argued, courts should be inclined to favor the legitimacy of a settlement." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). The extensive discovery and motion practice in this case provided each side with the necessary insight to evaluate the merits and, as discussed below, laid the groundwork for the arm's-length negotiations that ultimately resulted in the Settlement.

The third *Jiffy Lube* "fairness" factor supports approval. The settlement negotiations were lengthy and conducted at arm's-length by experienced class-action litigators with the assistance of experienced mediators. By order of the Court, on June 29, 2021, the Parties participated in a full-day mediation session before the Hon. Layn Phillips (Ret.), one of the preeminent mediators of complex litigation. This mediation session concluded without the Parties reaching a resolution. Substantial discovery ensued. ¶55. Then, pursuant to an order by the Court, the Parties participated in a mediation session before Magistrate Judge Colombell on September 24, 2021. The Parties provided detailed mediation statements and exhibits to Judge Colombell, which addressed issues of both liability and damages. During the mediation sessions, counsel for Plaintiffs and Defendants zealously negotiated on behalf of their clients and advanced their interests. But the mediation session concluded without the Parties reaching a settlement. ¶56. The Parties then participated in a third mediation session, again before Judge Colombell, on October 27, 2021. The parties provided additional mediation material in advance of the session. The Settlement was only reached after

9

Judge Colombell presented the Parties with a "mediator's recommendation" to settle for $90 million. ¶¶57.

The arm's-length nature of the settlement negotiations and the involvement of two experienced mediators support the conclusion that the Settlement is fair and free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"). And the fact that the Parties did not reach agreement at the first two mediation sessions, and required additional negotiations, further demonstrates that the Settlement was the product of arm's-length negotiations. *See, e.g., Hicks v. Stanley*, No. 01-cv-10071, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") (citation omitted).

The final *Jiffy Lube* fairness factor supports approval. Lead Counsel are among the most highly qualified securities class action firms in the country. ¶¶93-95. *See* ECF Nos. 222-2, 222-3. Counsel's experience was previously recognized by the Court when they were appointed Lead Counsel. *See* ECF No. 43. Courts recognize that the opinion of experienced and informed counsel favoring a settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001).

Moreover, Plaintiffs closely supervised, carefully monitored, and were actively involved in all material aspects of prosecuting and settling the Action. For example, Plaintiffs regularly communicated with Lead Counsel regarding the progress of the case; reviewed court filings and other material documents throughout the case; participated in discussions regarding litigation strategy and significant developments in the Action; worked with counsel to respond to discovery

requests, including producing documents and providing deposition testimony; and participated in the mediation session that preceded the proposed Settlement. Joint Decl., Ex. 1 (Donald Sherbondy Decl.); Ex. 2 (Sarah Sherbondy Decl.); Ex. 3 (CLPT Decl.).

### 3.    The Relief Provided by the Settlement Is Adequate

The proposed Settlement readily satisfies Rule 23(e)(2)(C) (and the *Jiffy Lube* "adequacy" factors).[6] Under Rule 23(e)(2)(C), the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. *See, e.g.*, *Neustar*, 2015 WL 5674798, at *11 (the *Jiffy Lube* adequacy analysis "weighs the likelihood of the plaintiff's recovery on the merits against the amount offered in the settlement"). The $90 million recovery—which is approximately seven times the median recovery of all U.S. securities class actions between 2018 and 2020, inclusive[7]—is objectively an excellent result for the Settlement Class. In light of the risks of continued litigation and potential outcomes at trial, the Settlement provides adequate relief to the Settlement Class. As discussed below and in the Joint Declaration, the hurdles faced by Plaintiffs would be substantial if the litigation

---

[6] This factor under Rule 23(e)(2)(C) encompasses four of the five factors in the traditional *Jiffy Lube* adequacy analysis: "(1) The relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, [and] (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment." *Jiffy Lube*, 927 F.2d at 159.

[7] *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at 17 (NERA 2021), *available at* https://www.nera.com/content/dam/nera/publications/2021/PUB_2020_Full-Year_Trends_012221.pdf.

11

continued. While Plaintiffs' claims against Defendants were strong and Plaintiffs had developed substantial supporting evidence, they nonetheless faced significant risks on liability and damages.

### a. Risks of Establishing Liability and Damages Support Approval of the Settlement

Plaintiffs would have faced challenges in proving to the ultimate fact finder that the statements made by Defendants were materially false and misleading and that Defendants acted with scienter. Defendants collectively would have advanced many arguments at summary judgment and trial – as they did in their motion to dismiss and opposition to class certification – that a jury could have found persuasive, including that (i) Plaintiffs would not be able to prove that Defendants' statements about JLI's marketing to minors and Altria's and JLI's commitment to preventing youth access and usage were materially false and misleading (Defendants would likely have sought to present evidence that the market understood the risks of regulatory action and litigation arising from JLI's alleged improper marketing and the youth usage epidemic that were allegedly concealed by Defendants' statements); (ii) the allegedly omitted information about JLI's marketing to minors was fully disclosed when certain government entities began investigations into JLI's marketing and certain consumer actions were filed against JLI; (iii) the alleged statements regarding Defendants' commitment to preventing underage access and use are not actionable because the statements legitimately reflected their genuinely held belief; and (iv) even if the alleged misstatements were found to be misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter) (Defendants would likely seek to present testimonial evidence that the Individual Defendants did not believe that JLI or Altria had engaged in any wrongful conduct). ¶¶62-70. And, separately, the JLI Defendants would have also continued to argue, as they did at the motion to dismiss and class certification stage, that Plaintiffs (purchasers of Altria's common stock) do not have "standing" to bring an action against the JLI Defendants for statements that JLI made about itself. ¶66. While the Court rejected this

12

standing argument at the motion to dismiss stage, a number of courts have held that there is no standing in similar instances and the Court could have agreed with those rulings based on the factual record developed at summary judgment, dismissing the JLI Defendants from the case completely.

Even if Plaintiffs succeeded in overcoming these arguments to establish liability, they would also have continued to confront considerable challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants likely would have asserted that Plaintiffs cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused Altria's stock price to decline. In particular, Defendants would have continued to argue that: (i) the announcements of regulatory action and government litigation were materializations of risks fully known to investors (and disclosed by Defendants) prior to their purchases during the Settlement Class Period; and (ii) Altria's write-down of its JLI investment did not disclose any new facts that were previously unknown to the market. ¶67.

Defendants also would have continued to argue, as they did in their opposition to Plaintiffs' motion to amend the Complaint (pending at the time the Parties agreed to resolve the Action), that the addition of four corrective disclosures on March 19, June 21, and November 19, 2019 and April 1, 2020 should not be permitted because Plaintiffs' proposed amendment was untimely. ¶68. The loss of these disclosures would reduce likely recoverable aggregate damages, as detailed below.[8]

---

[8] Significantly, at the time the Settlement was reached, the Court had not yet ruled on Plaintiffs' motion to amend the Complaint, which sought to expand the original class period and added four corrective events. There is no guarantee that the Court would have granted that motion, which may have ultimately impacted damages and the discovery admissible at trial.

The fact that Plaintiffs defeated Defendants' motions to dismiss was not a guarantee of ultimate success. Plaintiffs faced ongoing risks associated with their pending motion to amend and motion for class certification as well as Defendants' forthcoming summary judgment motions, *in limine* motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery, or even no recovery at all. The Court's denial of class certification or granting of summary judgment in Defendants' favor would have resulted in zero recovery for the Settlement Class. As the Court warned during a conference with the Parties shortly after denying Defendants' motions to dismiss, Plaintiffs' risk of losing at summary judgment was "significant":

> This is a message to plaintiffs' counsel. Even though I've denied the motion to dismiss, that was largely driven by the stage of the case that we're in. I think this is a case that's got serious potential for summary judgment . . . So what I'm telling plaintiffs' counsel is don't get too bullish on your prospects here because I think summary judgment is going to be a big issue here.

Tr. of Apr. 13, 2021 Conference Call, at 7:16-8:1. *See also id*. at 12:21-22 (stating that certain claims were "hanging by a gnat's eyelash"). The Court also ordered the Parties to complete mediation by July 2, telling Lead Plaintiffs "the wind is blowing against you" and "you ought to be reasonable when you go into settlement here." *Id*. at 15:8-11. The Court repeated the message in a call with plaintiffs in the related derivative action: "I think [the securities action] is a case that very well could go on summary judgment. . . . I think the percentages are significant that that could be granted if not as to all the defendants, certainly as to a good many of them." Tr. of Apr. 21, 2021 Conference Call, at 13:4-13.

Despite these very real headwinds, Plaintiffs and Lead Counsel secured one of the largest securities settlements ever in the Fourth Circuit.

14

**b.** **Costs and Delay of Continued Litigation Support Approval of the Settlement**

The Settlement avoids the potential impact of each of these challenges and other risks and achieves a fair and certain result. In addition to the substantial risks and uncertainty inherent in continued litigation, the Parties faced the certainty that further litigation against well-financed defendants would be expensive, complex, and time-consuming. The fact that the Settlement eliminates substantial delay and expense of summary judgment motions, *in limine* motions, trial, and likely appeals, a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all, strongly weighs in favor of approval. *See Winingear*, 2014 U.S. Dist. LEXIS 97392, at *12.[9]

In sum, the proposed Settlement satisfies Rule 23(e)(2)(C)(i).

**c.** **The Effective Process for Distributing Relief to the Settlement Class**

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The Net Settlement Fund, as in the vast majority of securities class action settlements, will be distributed to Authorized Claimants with the assistance of an established and experienced claims administrator. Here, the Court-appointed Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), is employing a well-

---

[9] Even surviving summary judgment in full and prevailing at trial would not have guaranteed a recovery larger than the $90 million Settlement. *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, No. 07-61542, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (following jury verdict for plaintiffs on liability, district court granted defendants' motion for judgment as a matter of law because there was insufficient evidence of loss causation), *aff'd*, 688 F.3d 713 (11th Cir. 2012).

15

tested protocol for the processing of claims in securities class actions. Namely, a potential Settlement Class Member will submit, either by mail or online, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determining each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶26. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to remedy any deficiencies or contest the rejection of their claims. *Id.* at ¶30. Any claim disputes that cannot be resolved will be presented to the Court for a final determination. *Id.*

After the Settlement reaches its Effective Date (*id.* at ¶37) and the claims process is completed, Authorized Claimants will be issued payments. If there are unclaimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a subsequent distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to make further distributions. Thereafter, any *de minimis* residual will be donated to an appropriate non-profit organization unaffiliated with any of the parties or their counsel, and subject to the approval of the Court. Accordingly, the proposed Settlement satisfies Rule 23(e)(2)(C)(ii).

        **d.**    **The Settlement Does Not Excessively Compensate Lead Counsel**

As discussed in the accompanying memorandum of law in support of Lead Counsel's fee and expense application, the requested fee award of 30% of the Settlement Amount is an amount that is well within the percentages that courts in the Fourth Circuit and elsewhere have approved

16

in class actions with comparable recoveries. Lead Counsel is also seeking payment of litigation expenses incurred during the prosecution of the Action of less than the maximum reported in the Notice. Accordingly, the proposed Settlement would satisfy Rule 23(e)(2)(C)(iii).

### e. The Relief Provided by the Settlement Is Adequate Taking into Account All Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) also requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On October 28, 2021, the Parties entered into a settlement memorandum of understanding and on December 9, 2021 they entered into the Stipulation and a confidential Supplemental Agreement regarding requests for exclusion (the "Supplemental Agreement"). Stipulation at ¶39. The Supplemental Agreement provides that Altria has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and memorandum of understanding are the only agreements concerning the Settlement entered into by the Parties.

### 4. Settlement Class Members Are Treated Equitably Relative to One Another

The Settlement treats members of the Settlement Class equitably relative to one another. As set forth above, eligible claimants will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court. Plaintiffs will receive the same type of *pro rata* recovery under the Plan of Allocation as all Authorized Claimants.[10]

---

[10] Lead Plaintiffs are seeking reimbursement of their reasonable costs and expenses (including lost wages) directly related to their participation in the Action, pursuant to the PSLRA. This does not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

### 5.  Reaction of the Settlement Class to Date Supports Approval of the Settlement

"The degree of opposition to the settlement" should also be considered on final approval of a settlement. *See Genworth*, 210 F. Supp. 3d at 842 ("A lack of objections to settlement by class members and opt-outs from the class demonstrates low opposition and weighs in favor of approving a settlement."). Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq, mailed copies of the Postcard Notice to record holders identified in the Company's transfer records and potential Settlement Class Members and their nominees. Declaration of Jordan Broker Regarding: (i) Notice Dissemination; (ii) Publication of Summary Notice; (iii) Call Center Services; (iv) the Settlement Website; (v) Requests for Exclusion and Objections Received to Date; and (vi) Estimate of Administration Costs ("Mailing Decl."), Ex. 4 at ¶5. As of February 23, 2022, Epiq has mailed 1,133,904 copies of the Postcard Notice to potential Settlement Class Members and has mailed 1,095 copies of the Notice and Claim Form to potential Settlement Class Members as requested. *Id*. at ¶¶7, 10. In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over the internet via *PR Newswire* on January 10, 2022. *Id*. at ¶11.

While the deadline set by the Court for Settlement Class Members to object or request exclusion (March 10, 2022) has not yet passed, to date, no objections and only 12 requests for exclusion have been received. *Id*. at ¶¶16, 18. Plaintiffs will file reply papers no later than March 24, 2022, addressing any objections and any other requests for exclusion.

## II.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In addition to seeking final approval of the Settlement, Plaintiffs seek approval of the proposed Plan of Allocation for the net proceeds of the Settlement. Approval of a plan of allocation for settlement proceeds is governed by the same standards of fairness and reasonableness applicable

to the settlement as a whole. *See, e.g., MicroStrategy*, 148 F. Supp. 2d at 668 ("To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate."). "The proposed allocation need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Mills*, 265 F.R.D. at 258.

The proposed Plan of Allocation for the proceeds of the Settlement is set forth in Appendix A to the Notice (ECF No. 303-2 at 24). The proposed plan was developed by Lead Counsel in consultation with Plaintiffs' damages expert. The Plan provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment on a *pro rata* basis based on the extent of their alleged injuries attributable to the alleged fraud.

In developing the Plan of Allocation, Plaintiffs' damages expert calculated the estimated amount of alleged artificial inflation in the per share prices of Altria common stock that allegedly was proximately caused by Defendants' false and misleading statements and omissions. *Id*. The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Altria common stock during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided by the claimant. *Id.*

Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as result of the alleged misconduct. To date, no objections to the proposed Plan of Allocation have been received. Ex. 4 (Mailing Decl.) at ¶18.

## III.    NOTICE SATISFIED RULE 23 AND DUE PROCESS

The Notice to the Settlement Class satisfied the requirements of Rule 23, which requires "the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 114 (2d Cir. 2005).

Both the substance of the notice and the method of dissemination to potential members of the Settlement Class satisfied these standards. The Notice included all the information required by Federal Rule of Civil Procedure 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7). In accordance with the Preliminary Approval Order, Epiq began mailing copies of the Postcard Notice to potential Settlement Class Members on January 5, 2022. *See* Ex. 4 at ¶5. As of February 23, 2022, Epiq has disseminated 1,133,904 copies of the Postcard Notice and 1,095 copies of the Notice and Claim Form to potential Settlement Class Members and nominees. *See id.* at ¶¶7, 10. In addition, Epiq caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire* on January 10, 2022. *Id.* at ¶11. Epic also established a website containing information concerning the Settlement and activated a toll-free number through which potential Settlement Class Members can request information. *Id*. at ¶¶12-14.

This combination of individual mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely-circulated publication, and transmitted over a newswire, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED

The Court previously granted Lead Plaintiffs' Motion for Preliminary Approval of Class Action Settlement which, among other things, certified the Settlement Class for settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. ECF No. 303.

Nothing has changed to alter the propriety of class certification for settlement purposes and, for all the reasons stated in Lead Plaintiffs' preliminary approval brief (ECF No. 296), Lead Plaintiffs request that the Court finally certify the Settlement Class pursuant to Rules 23(a) and (b)(3).

## CONCLUSION

Lead Counsel obtained an excellent result for the Settlement Class.  Therefore, for all of the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement as fair, reasonable, and adequate and approve the Plan of Allocation as fair, reasonable, and adequate. Proposed orders will be submitted with Plaintiffs' reply papers, after the deadlines for objections and seeking exclusion have passed.

Respectfully submitted,

DATED:  February 24, 2022

By: */s/ Steven J. Toll*

Steven J. Toll (VSB #15300)
Daniel S. Sommers
S. Douglas Bunch
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., N.W., Suite 500
Washington, D.C.  20005
Telephone:  202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

21

Jeremy A. Lieberman
Michael J. Wernke
POMERANTZ LLP
600 Third Ave.
New York, NY  10016
Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mjwernke@pomlaw.com

*Lead Counsel for Lead Plaintiffs Donald
Sherbondy and Sarah Sherbondy*


Samuel H. Rudman
David A. Rosenfeld
Erin W. Boardman
Philip T. Merenda
ROBBINS GELLER RUDMAN
& DOWD LLP
58 South Service Rd., Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
pmerenda@rgrdlaw.com

22

Ellen Gusikoff Stewart
Douglas R. Britton
Kevin A. Lavelle
Matthew J. Balotta
ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

elleng@rgrdlaw.com
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
mbalotta@rgrdlaw.com

*Lead Counsel for Lead Plaintiff Laborers Pension
Trust of Greater St. Louis*


Brian Schall
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310/301-3335
brian@schallfirm.com

*Additional Counsel for Lead Plaintiffs Donald
Sherbondy and Sarah Sherbondy*

23

24

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2022, I caused the foregoing to be electronically filed

with the Clerk of Court via CM/ECF, which will send a notice of electronic filing to all registered

users.

*/s/ Steven J. Toll*
Steven J. Toll

24