**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**(Richmond Division)**

| | |
|---|---|
| GABBY KLEIN, et al., Individually and on Behalf of All Others Similarly Situated,   ) <br>   ) <br> Plaintiffs,   ) <br>   ) <br> vs.   ) <br>   ) <br> ALTRIA GROUP, INC., et al.,   ) <br>   ) <br> Defendants.   ) <br>   ) | Civil Action No. 3:20-cv-00075-DJN <br><br> <u>CLASS ACTION</u> |

**LEAD COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**EXPENSES AND AWARDS TO LEAD PLAINTIFFS**
**<u>PURSUANT TO 15 U.S.C. § 78u-4(a)(4)</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     THE REQUESTED ATTORNEYS' FEES ARE REASONABLE..................................... 4

        A.      The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate ................................................................... 4

        B.      Lead Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Authority ................................................................................................. 6

                1.      Lead Counsel Obtained an Exceptional Result for the Settlement Class ... 8

                2.      The Presence or Absence of Substantial Objections by Members of the Settlement Class .................................................................................. 9

                3.      Lead Counsel Are Skilled and Efficient Litigators..................................... 9

                4.      The Duration and Complexity of This Action Support the Requested Fee ................................................................................................................. 10

                5.      Lead Counsel Faced the Significant Risk of Nonpayment ....................... 12

                6.      Plaintiffs' Counsel Necessarily Devoted Over 28,000 Hours Prosecuting This Action.............................................................................................. 14

                7.      Public Policy Considerations Support the Requested Fee ........................ 15

                8.      Thirty Percent of the Settlement Amount Is a Reasonable Fee Award .... 15

                9.      A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request ........................................................... 17

III.    LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES AND CHARGES IS REASONABLE ........................................................................... 22

IV.     THE REQUESTED PSLRA AWARDS TO THE LEAD PLAINTIFFS ARE REASONABLE ................................................................................................... 23

V.      CONCLUSION................................................................................................... 25

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
    14-cv-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) .........................................24

*Anwar v. Fairfield Greenwich Ltd. Grp.*,
    No. 1:09-cv-00118 (S.D.N.Y. Nov. 20, 2015), Dkt. No. 1457.........................................16, 19

*Archbold v. Wells Fargo Bank, N.A.*,
    No. 3:13-CV-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015) .....................................5

*Barber v. Kimbrell's, Inc.*,
    577 F.2d 216 (4th Cir. 1978) ...................................................................................................7

*Blum v. Stenson*,
    465 U.S. 886 (1984)..................................................................................................................5

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..................................................................................................................4

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014)..................................................................................................8

*Camden I. Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .................................................................................................5

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*,
    No. 0:10-cv-04372 (D. Minn. Aug. 18, 2014), Dkt. No. 686 .................................................16

*Deem v. Ames True Temper, Inc.*,
    No. 6:10-CV-01339, 2013 WL 2285972 (S.D. W. Va. May 23, 2013)....................................6

*Galloway v. Williams*,
    No. 3:19-CV-470, 2020 WL 7482191 (E.D. Va. Dec. 18, 2020) (Payne, J.)...........................7

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2nd Cir. 2000)...................................................................................................5, 7

*Good v. W. Virginia-Am. Water Co.*,
    No. 14- 1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) ...............................................10

*Gottlieb v. Barry*,
    43 F.3d 474 (10th Cir. 1994) ...................................................................................................5

*Grae v. Corrections Corp. of Am. et al.*,
No. 3:16-cv-02267 (M.D. Tenn. Nov. 8, 2021), Dkt. No. 478 ..................................................16

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000)......................................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014)............................................................................................................11

*Heien v. Archstone*,
837 F.3d 97 (1st Cir. 2016) .......................................................................................................5

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)...................................................................................................................8

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013), *aff'd*,
772 F.3d 125 (2d Cir. 2014)......................................................................................................24

*In re Busporine Antitrust Litig.*,
No. 1:01-md-01410 (S.D.N.Y. Apr. 11, 2003) .........................................................................16

*In re Celebrex (Celecoxib) Antitrust Litig.*,
No. 2:14-CV-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) ..............................7, 15, 19

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014).........................................................................................19

*In re Comput. Sci. Corp. Sec. Litig.*,
No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436 (E.D. Va. Sept. 20,
2013) ....................................................................................................................................23, 24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..............................25

*In re Genworth Sec. Litig.*,
210 F. Supp. 3d 837 (E.D. Va. 2016) (Gibney, J.) ........................................................ *passim*

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995) .......................................................................................................5

*In re Initial Public Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................................................................15

*In re Linerboard Antitrust Litig.*,
No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004), *amended*,
No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004).........................................10

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96-cv-1262 RWS, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)...................................19

*In re Massey Energy Co. Securities Litigation*,
C. A. No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014).....................................................24

*In re Merrill Lynch Tyco Research Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ..........................................................................................15

*In re MicroStrategy, Inc. Sec. Litig.*,
172 F. Supp. 2d 778 (E.D. Va. 2001) ...............................................................15, 17, 18, 20

*In re Mills Corp. Sec. Litig.*,
265 F.R.D. 246 (E.D. Va. 2009) ................................................................................. *passim*

*In re Neustar, Inc. Sec. Litig.*,
No. 1:14CV885, 2015 WL 8484438 (E.D. Va. Dec. 8, 2015)................................................20

*In re Prudential Ins. Co. Am. Sales Litig.*,
148 F.3d 283 (3d Cir. 1998)....................................................................................................6

*In re Remeron Direct Purchaser Antitrust Litig.*,
No. CIV.03- 0085 FSH, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .......................................17

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)....................................................................................13

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
461 F. Supp. 2d 383 (D. Md. 2006).......................................................................................18

*In re Telik, Inc., Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................................................19

*In re Tronox, Inc. Sec. Litig.*,
No. 09-cv-6220 (SAS) (S.D.N.Y. Nov. 26, 2012), Dkt. No. 202...........................................24

*Johnson v. Georgia Highway Exp., Inc.*,
488 F.2d 714 (5th Cir. 1974) ..................................................................................................7

*Jones v. Dominion Res. Servs., Inc.*,
601 F. Supp. 2d 756 (S.D. W. Va. 2009)..............................................................5, 11, 15, 17

*Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*,
No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), Dkt. No. 191 .........................................15, 19

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
No. 3:14CV238 (DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ...................................5

*Nieman v. Duke Energy Corp.*,
No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015) .........................................................................24

*Oppenheimer Rochester Funds Grp. Sec. Litig.*,
No. 1:09-md-02063 (D. Colo. Sept. 5, 2014), Dkt. No. 527 ...........................................16, 19

*Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.*,
No. 1:17-cv-00304 (D. Colo. July 15, 2021), Dkt. No. 122 ...........................................16, 19

*Phillips v. Triad Guar. Inc.*,
No. 1:09CV71, 2016 WL 2636289 (M.D.N.C. May 9, 2016).................................................12

*Rawa v. Monsanto Co.*,
934 F.3d 862 (8th Cir. 2019) ...................................................................................................5

*Rawlings v. Prudential- Bache Props., Inc.*,
9 F.3d 513 (6th Cir. 1993) ........................................................................................................5

*Ret. Sys. v. Bank of Am. Corp.*,
318 F.R.D. 19 (S.D.N.Y. 2016) ..............................................................................................24

*Ret. Sys. v. Wal-Mart Stores, Inc., et al.*,
No. 5:12-cv-05162 (W.D. Ark. Apr. 8, 2019), Dkt. No. 458 ..................................................16

*Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*,
No. 1:18-CV-423, 2020 WL 92092 (M.D.N.C. Jan. 8, 2020) ................................................22

*Schuh v. HCA Holdings, Inc., et al.*,
No. 3:11-cv-01033 (M.D. Tenn. Apr. 14, 2016), Dkt. No. 563..............................................16

*Seaman v. Duke Univ.*,
No. 1:15-CV-462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019) .............................14, 18, 20

*Singleton v. Domino's Pizza, LLC*,
976 F. Supp. 2d 665 (D. Md. 2013) .........................................................................18, 22, 23

*Smith v. Krispy Kreme Doughnut Corp.*,
No. 1:05cv00187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007)..............................................10

*Spell v. McDaniel*,
852 F.2d 762 (4th Cir. 1988) ..................................................................................................22

*Sponn v. Emergent Biosolutions, Inc.*,
No. 8:16-cv-02625-RWT, 2019 WL 11731087 (D. Md. Jan. 25, 2019) .................................23

*Strang v. JHM Mortg. Sec. Ltd. P'ship*,
890 F. Supp. 499 (E.D. Va. 1995) ........................................................................................5, 6

*Swedish Hosp. Corp v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) ...............................................................................5

*T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*,
    No. 2:10-cv-02847 (N.D. Ala. Sept. 14, 2015), Dkt. No. 320...........................16, 19

*Thomas v. FTS USA, LLC*,
    No. 3:13cv825(REP), 2017 WL 1147460 (E.D. Va. Mar. 27, 2017) .......................6

*Thomas v. FTS USA, LLC*,
    No. 3:13cv825(REP), 2017 WL 1148283 (E.D. Va. Jan. 9, 2017).................6, 8, 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ...............................................................................5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ..............................................................................5

**Statutes**

15 U.S.C. § 78u- 4(a)(4) .............................................................................. *passim*

Private Securities Litigation Reform Act of 1995 ........................................10, 18, 20, 23

**Rules**

Fed. R. Civ. P. 23(h) ................................................................................................4

**Other Authorities**

Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2020 Full-Year Review* (NERA 2021).....................................................8

5 *Newberg on Class Actions* § 15:82 (5th ed.) ...............................................................7

Lead Counsel respectfully submit this application for an Order: (1) awarding Plaintiffs' Counsel[1] attorneys' fees of 30% of the Settlement Amount and litigation expenses of $1,544,748.17, and (2) awarding the Lead Plaintiffs[2] $68,775, in the aggregate, pursuant to 15 U.S.C. § 78u- 4(a)(4), in connection with their representation of the Settlement Class, to be paid from the Settlement Fund.

## I.   INTRODUCTION

In awarding fees, courts consider several factors, including the quality and quantity of work as reflected in the results obtained. Here, Plaintiffs' Counsel devoted over 28,000 hours to obtain an excellent Settlement for the Settlement Class. The Settlement Fund consists of $90 million, plus any interest thereon. For all the reasons set forth herein and in the accompanying Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation of the Net Proceeds of the Settlement, the Settlement is an outstanding result and supports the current application.

The $90 million Settlement—which represents one of the largest recoveries ever achieved in a securities class action in Virginia and the Fourth Circuit and ***approximately seven times the median securities class action settlement value in the United States between 2018 and 2020***—was achieved through the skill, experience, and effective advocacy of Plaintiffs' Counsel, and will bring to a close an intense and hard-fought litigation. The Settlement was reached only after Lead

---

[1] "Plaintiffs' Counsel" means Pomerantz LLP, Robbins Geller Rudman & Dowd LLP, Cohen Milstein Sellers & Toll PLLC, and The Schall Law Firm. All capitalized terms used and not otherwise defined in this Memorandum shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 9, 2021 (the "Stipulation"), previously filed with the Court (ECF No. 297-1). Emphasis is added and citations are omitted throughout unless otherwise noted.

[2] "Lead Plaintiffs" or "Plaintiffs" means Lead Plaintiffs Donald and Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("CLPT").

1

Counsel achieved several notable litigation successes and milestones that included: (i) overcoming Defendants' four motions to dismiss; (ii) the full briefing of Plaintiffs' motion to amend the Complaint; (iii) the full briefing of Plaintiffs' motion for class certification; and (iv) vigorous settlement negotiations conducted at arm's length over the course of multiple mediation sessions. These achievements were made possible by Lead Counsel's comprehensive investigation, the drafting of the detailed amended complaint, and extensive discovery efforts. *See* Joint Declaration, ¶¶14-57, submitted herewith.[3]

Lead Counsel's investigation prior to filing the operative complaint and discovery efforts thereafter, all while proceeding along the "rocket docket," were thorough and wide-ranging. Prior to filing the complaint, Lead Counsel identified 166 former Altria and JLI employees and other persons believed to have relevant knowledge, contacted 165, and interviewed 24 of them. *Id.* at ¶5. During discovery, Lead Counsel analyzed approximately 30 million pages of documents produced by Defendants and third parties, reviewed transcripts and exhibits from over 70 depositions conducted in related actions, and took or defended 11 depositions, including the depositions of Plaintiffs, CLPT's investment manager, current and former Altria and JLI employees, certain Individual Defendants, and two experts. *Id*. at ¶¶26-38, 52-53.

While fact discovery was ongoing, Lead Counsel also concurrently briefed Plaintiffs' motion for class certification, which included two expert reports concerning market efficiency and price impact, and fully briefed Plaintiffs' motion to amend the complaint (which attached the

---

[3] The "Joint Declaration" is defined as the Joint Declaration of Jeremy A. Lieberman and David A. Rosenfeld in Support of (1) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation of the Net Proceeds of the Settlement, and (2) Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4). All exhibits referenced below are attached to the Joint Declaration.

proposed First Amended Complaint) to add allegations based on the fruits of discovery. *Id*. And at the time Settlement was reached, Lead Counsel were in the process of finalizing seven expert reports addressing, among other things, JLI's improper marketing, Altria's due diligence of JLI's marketing, loss causation, and damages. This dedication of effort resulted in a very favorable and significant cash recovery for the Settlement Class. *Id*. at ¶¶39-53.

As compensation for their efforts, Lead Counsel respectfully request an award of attorneys' fees of 30% of the Settlement Amount and payment of litigation expenses of $1,544,748.17, plus interest on both amounts at the same rate and for the same period of time as that earned on the Settlement Fund.[4] Lead Counsel's efforts to date have been without compensation of any kind and the fee has been wholly contingent upon the result achieved. Through Lead Counsel's significant efforts, they demonstrated that they were prepared to take this case through trial.

Since fee awards are designed to encourage counsel to achieve the best possible result for the class, the amount requested in this case is warranted, if not modest, given the exceptional recovery obtained and the significant obstacles and risks Lead Counsel faced in bringing and prosecuting this case. As discussed herein, the requested fee award of 30% of the Settlement Amount is an amount that is well within the 30% to 33.33% range regularly approved by courts in class actions with comparable recoveries. Moreover, Plaintiffs actively supervised this litigation and recommend that Lead Counsel's application be approved. *See* Joint Decl., Ex. 1 (Donald Sherbondy Decl.); Ex. 2 (Sarah Sherbondy Decl.); Ex. 3 (CLPT Decl.). Lead Counsel respectfully request that this Court approve the requested fees and litigation expenses as justified under the particular facts of this case.

---

[4] This amount will include reimbursement to Plaintiffs for their time and expense in representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4).

3

Separately, Lead Plaintiffs Donald and Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("CLPT") seek awards of $20,000, $20,000, and $28,775, respectively, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with their representation of the Settlement Class. Lead Plaintiffs support their applications with declarations setting forth the basis for the awards. *See* Joint Decl., Exs. 1-3. Lead Plaintiffs respectfully request that the Court approve the requested awards.

## II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.    The Settlement Creates a Common Fund from Which a "Percentage-of-the-Fund" Fee Would Be Appropriate

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). As the Supreme Court has recognized, a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This common fund doctrine is based on the inherent powers of the federal court to "prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* The two methods of calculating attorneys' fees in class actions are the percentage-of-the-fund method and the lodestar method. *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009). The percentage-of-the-fund method involves an award based on a percentage of the class's recovery, set by the court based on several factors. *Id.* The lodestar method requires multiplying the number of hours worked by a reasonable hourly rate, the product of which the court can then adjust by employing a "multiplier." *Id.* The Supreme Court has suggested that percentage-of-recovery is the appropriate method for awarding fees under the common fund doctrine. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund

doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class . . . ."). Most federal courts of appeals have also endorsed the percentage-of-recovery method as an appropriate method for determining an award of attorneys' fees in common fund cases.[5]

"While the Fourth Circuit has not definitively answered this debate, other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases." *Mills*, 265 F.R.D. at 260; *see, e.g.*, *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *5 (E.D. Va. Mar. 15, 2016) ("District Courts within this Circuit have also favored the percentage method."); *Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 4276295, at *5 (S.D. W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases."); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D. W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases.").

---

[5] *See, e.g.*, *Heien v. Archstone*, 837 F.3d 97, 100 (1st Cir. 2016); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3rd Cir. 1995); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012); *Rawlings v. Prudential- Bache Props., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993).

These courts recognize that the percentage-of-the-fund method is "more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang*, 890 F. Supp. at 503. It also better aligns the interests of Lead Counsel and class members because it ties the attorneys' fee award to the overall result achieved, rather than hours expended by the attorneys. *Thomas v. FTS USA, LLC*, No. 3:13cv825(REP), 2017 WL 1148283, at *3 (E.D. Va. Jan. 9, 2017), *report and recommendation adopted*, No. 3:13cv825, 2017 WL 1147460 (E.D. Va. Mar. 27, 2017); *see also Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *5 (S.D. W. Va. May 23, 2013) ("The percentage method 'is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure.'") (quoting *In re Prudential Ins. Co. Am. Sales Litig.*, 148 F.3d 283, 333 (3d Cir. 1998)).

Lead Counsel's application based on the percentage-of-fund method is therefore consistent with the law in this and other circuits. As explained below, the factors courts consider when assessing percentage-of-fund requests demonstrate the reasonableness of Lead Counsel's requested fee, which is further confirmed by cross-checking the requested amount against Plaintiffs' Counsel's calculated lodestar.

**B.     Lead Counsel's Fee Request Is Fair and Reasonable Under Fourth Circuit Authority**

"In determining the reasonableness of attorneys' fees, courts look at the following factors: (1) the result obtained for the class; (2) the presence or absence of substantial objections by members of the class to the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by the plaintiffs' counsel; and (7) awards in similar cases." *In re Genworth Sec. Litig.*, 210 F. Supp. 3d 837, 843 (E.D. Va. 2016) (Gibney, J.). Certain district

6

courts in this Circuit have applied a slightly different version of this standard, replacing the sixth factor with public policy considerations. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-CV-00361, 2018 WL 2382091, at \*4 (E.D. Va. Apr. 18, 2018); *Mills*, 265 F.R.D. at 261 (citing, *inter alia*, *Goldberger*, 209 F.3d at 50).

There is some disagreement as to whether to apply these seven factors, which were adopted from the Third Circuit, *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000), or the 12-factor test from the Fifth Circuit adopted in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)).[6] *See Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at \*5 (E.D. Va. Dec. 18, 2020) (Payne, J.); 5 Newberg on Class Actions § 15:82 (5th ed.) ("The Fourth Circuit utilized the Fifth Circuit's *Johnson* factors in a statutory fee-shifting case, so some district courts have utilized those factors in setting a percentage in common fund cases, while other district courts have used the Second Circuit's *Goldberger* factors and/or the Third Circuit's *Gunter* factors."). However, many of the *Johnson/Barber* factors overlap with the *Gunter* factors or are "subsumed in the calculation of the hours reasonably expended and the reasonableness of the hourly rate." *Galloway*, 2020 WL 7482191, at \*6, \*10-11; *see also Genworth*, 210 F. Supp. 3d at 843 (using the 7-factor Third Circuit test in evaluating the reasonableness of the requested fee and incorporating the *Johnson/Barber* factors into the lodestar cross-check). Notably, "fee award reasonableness factors 'need not be

---

[6] The *Johnson/Barber* factors are: "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases." *Barber*, 577 F.2d at 226 n.28.

applied in a formulaic way' because each case is different, 'and in certain cases, one factor may outweigh the rest.'" *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014). Given the overlap in the factors, a consideration of the relevant factors under any standard supports Lead Counsel's requested fee.

### 1.    Lead Counsel Obtained an Exceptional Result for the Settlement Class

"The first and most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843; *see also Thomas*, 2017 WL 1148283, at *3 ("[T]he Court gives the most weight to the results obtained." (citing, *inter alia*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, the result achieved by Lead Counsel was excellent. The Settlement provides $90 million in cash for the benefit of the Settlement Class, which is approximately seven times the median recovery in all U.S. securities class actions between 2018 and 2020, inclusive. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, at 1-2 (NERA 2021). Lead Counsel obtained this recovery as a result of their effective advocacy on behalf of the Settlement Class and efficient prosecution of this case through extensive discovery and motion practice. Lead Counsel litigated Defendants' motions to dismiss and fully briefed Plaintiffs' motion to amend and motion for class certification. Lead Counsel also faced numerous challenges concerning Defendants' impending summary judgment and *Daubert* motions, and trial and potential post-trial appeals. For example, in addition to Defendants' arguments regarding falsity and scienter, Defendants challenged Lead Plaintiffs' damages calculations arguing that: (i) Altria's write-down of its JLI investment did not disclose any new facts that were previously unknown to the market; and (ii) the announcements of regulatory action and government litigation were materializations of risks fully known to investors (and disclosed

8

by Defendants) prior to their purchases during the Class Period. Joint Decl., ¶¶62-70. The JLI

Defendants would have also continued to argue, as they did at the motion to dismiss and class

certification stage, that Plaintiffs (purchasers of Altria's common stock) do not have "standing" to

bring an action against the JLI Defendants for statements that JLI made about itself. *Id*. at ¶66.

Indeed, as discussed below, shortly after the Court denied Defendants' motion to dismiss, the Court

warned Plaintiffs that their case had "serious potential for summary judgment" (Tr. of Apr. 13,

2021 Conference Call, at 7:16-8:1), and "the wind is blowing against you." *Id*. at 15:8-11. Despite

these headwinds, Lead Counsel achieved an outstanding result for the Settlement Class.

Balanced against the many significant challenges of continued litigation and compared to

the results achieved in many other securities class action settlements, the Settlement provides an

exceptional result for the Settlement Class and supports Lead Counsel's request for attorneys' fees.

### 2.     The Presence or Absence of Substantial Objections by Members of the Settlement Class

"A lack of objections by class members as to fees requested by counsel weighs in favor of

the reasonableness of the fees." *Genworth*, 210 F. Supp. 3d at 844. Significantly, to date, not a

single Settlement Class Member has objected to the Settlement or Lead Counsel's fee request. The

absence of objections is noteworthy, as it is not uncommon for them to be filed in cases with

settlements of this size. The deadline for objections is March 10, 2022, however, and Lead Counsel

will advise the Court as to this factor in their reply papers, which are due on March 24, 2022.

### 3.     Lead Counsel Are Skilled and Efficient Litigators

The quality of the representation is another significant factor supporting Lead Counsel's

fee request. *See id.* ("The skill required in complex cases such as this involving massive discovery

efforts and complicated issues of fact and law also weighs in favor of supporting the substantial

attorneys' fees award in this case."). Lead Counsel have substantial experience litigating securities

9

class action cases. *See* Joint Decl., ¶¶93-95. And, of course, "the result achieved is the clearest reflection of petitioners' skill and expertise." *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004), *amended*, No. CIV.A. 98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004). The Settlement here reflects Lead Counsel's skill and expertise.

Further, courts often evaluate the quality of the work performed by the plaintiff's counsel in light of the quality of the opposition's representation. *See, e.g.*, *Mills*, 265 F.R.D. at 262 (noting that counsel reached a favorable settlement against "experienced and sophisticated defense attorneys"); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."). Here, Defendants are represented by highly skilled and experienced securities litigators from some of the leading defense law firms in the United States. It was in the face of such skilled and vigorous opposition that Lead Counsel obtained the benefits for the Settlement Class that they did. This factor weighs in favor of the requested fee award.

### 4. The Duration and Complexity of This Action Support the Requested Fee

Courts recognize that "there are good reasons to award higher-than-typical fees when the issues in a case are particularly 'novel and complex.'" *Good v. W. Virginia-Am. Water Co.*, No. 14- 1374, 2017 WL 2884535, at *25 (S.D. W. Va. July 6, 2017). Securities cases are routinely found to be complex as they "require significant showings of fact in order to prevail before a jury, and 'elements such as scienter, reliance, and materiality of misrepresentation are notoriously difficult to establish.'" *Genworth*, 210 F. Supp. 3d at 844 (quoting *Mills*, 265 F.R.D. at 263). Due to the inherent complexity of securities litigation and the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. § 78u-4(f)(7) ("PSLRA"), amendments to the Exchange Act, as well as supervening case law

10

developments such as the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) ("*Halliburton II*"), prosecution of securities class action litigation is inherently complex and lengthy.

"In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions [*sic*] practice prior to settlement and the amount and nature of discovery." *Jones*, 601 F. Supp. 2d at 761. Lead Counsel efficiently achieved the Settlement after vigorous, hard-fought litigation. Since this case was filed on this Court's "rocket docket," and during the COVID-19 pandemic, Lead Counsel:

(i)    conducted a robust investigation concerning the allegedly fraudulent misrepresentations and omissions that involved, among other things, a review of publicly available information regarding Altria and JLI;

(ii)    identified 166 former Altria and JLI employees and other persons believed to have relevant knowledge, contacted 165, and interviewed 24 of them;

(iii)    prepared and filed a detailed 160-page corrected consolidated class action complaint;

(iv)    consulted with a damages expert to evaluate recoverable losses;

(v)    researched and drafted an opposition to Defendants' four motions to dismiss the complaint, which included 113 pages of briefing and 68 exhibits;

(vi)    served and responded to document requests and provided supplemental responses when necessary;

(vii)    served subpoenas on over two dozen third parties for documents relevant to the litigation;

(viii)    analyzed approximately 30 million pages of documents produced by Defendants and third parties;

(ix)    reviewed transcripts from over 70 depositions (including over 1,000 exhibits) conducted in related actions;

(x)    took or defended 11 depositions, including the depositions of Plaintiffs, CLPT's investment manager, current and former Altria and JLI employees, certain Individual Defendants, and two experts;

(xi)    served interrogatories and requests for admission on Defendants and responded to Defendants' interrogatories and requests for admission;

11

(xii)    prepared, filed and fully briefed a motion to amend the complaint (attaching the proposed amended complaint);

(xiii)   filed and fully briefed a motion for class certification;

(xiv)   filed two expert reports addressing market efficiency and price impact;

(xv)    prepared an additional seven expert reports concerning, among other things, loss causation and damages, that Lead Counsel were prepared to serve if the Settlement had not been reached; and

(xvi)   prepared for and participated in three separate full-day mediation sessions.

This case's complexity and duration strongly support the reasonableness of Lead Counsel's request.

### 5.    Lead Counsel Faced the Significant Risk of Nonpayment

The risk of receiving little or no recovery is a factor courts in this Circuit recognize when considering an award of attorneys' fees. *See, e.g.*, *Mills*, 265 F.R.D. at 263 ("'[C]ounsel bore a substantial risk of nonpayment . . . [t]he outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff and the class on a contingent fee basis, fronting the costs of litigation.'"); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *6 (M.D.N.C. May 9, 2016) (finding fee award justified where "[l]ead [c]ounsel bore the risks involved with surviving dispositive motions, obtaining class certification, proving liability, causation, and damages, prevailing with experts, and litigating through trial and possible appeals" knowing "'that the only way [they] would be compensated was to achieve a successful result'"). In addition to the risk of non-recovery at trial, "any victory at trial in this case would have to withstand appeals which could reverse or limit any award by a jury." *Genworth*, 210 F. Supp. 3d at 844. Lead Counsel undertook this case on a wholly contingent basis and ran a substantial risk of no recovery whatsoever. While all securities class actions involve risk, the risk here was significant and very real. As discussed in the accompanying brief in support of Plaintiffs motion for final approval of the Settlement, Defendants advanced arguments concerning standing,

12

falsity, scienter and loss causation throughout the litigation. While Lead Counsel believe they had meritorious responses to Defendants' arguments, there was no guarantee the Court would agree. Indeed, the Court warned during a conference with the Parties shortly after denying Defendants' motions to dismiss that Plaintiffs' risk of losing at summary judgment was "significant":

> This is a message to plaintiffs' counsel. Even though I've denied the motion to dismiss, that was largely driven by the stage of the case that we're in. I think this is a case that's got serious potential for summary judgment . . . So what I'm telling plaintiffs' counsel is don't get too bullish on your prospects here because I think summary judgment is going to be a big issue here.

Tr. of Apr. 13, 2021 Conference Call, at 7:16-8:1. *See also, id*. at 12:21-22 (stating that certain claims were "hanging by a gnat's eyelash"). The Court also ordered the Parties to complete mediation by July 2, telling Lead Plaintiffs "the wind is blowing against you" and "you ought to be reasonable when you go into settlement here." *Id*. at 15:8-11. The Court repeated the message in a call with plaintiffs in the related derivative action: "I think [the securities action] is a case that very well could go on summary judgment. . . . I think the percentages are significant that that could be granted if not as to all the defendants, certainly as to a good many of them." Tr. of Apr. 21, 2021 Conference Call, at 13:4-13.

Despite these headwinds, Plaintiffs' Counsel devoted over 28,000 hours to prosecuting the case on behalf of the Settlement Class knowing that there was a very real risk that Lead Counsel could receive no payment for their substantial time and effort.

Additionally, Plaintiffs' Counsel incurred $1,544,748.17 in litigation expenses and charges to prosecute the litigation, which would not have been recovered absent a successful result. *See Mills*, 265 F.R.D. at 263 (noting uncertainty of the case outcome, defendants' rigorous defense, and that "[l]ead [c]ounsel devoted thousands of hours on the case and fronted nearly $3 million in costs in the process" to conclude that factor weighed in favor of awarding the requested fee); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 516 (W.D. Pa. 2003) ("Aside from investing their time,

13

counsel had to front copious sums of money . . . . Thus, the risks that counsel incurred in prosecuting this case were substantial and further support the requested fee award."). The risk of nonpayment weighs in favor of the requested fee award.

### 6.    Plaintiffs' Counsel Necessarily Devoted Over 28,000 Hours Prosecuting This Action

Plaintiffs' Counsel devoted considerable time and effort to researching, investigating, and litigating this case. *See, e.g.*, Joint Decl., ¶¶14-57. As set forth in the Joint Declaration and Plaintiffs' Counsel's Fee and Expense Declarations,[7] Plaintiffs' Counsel devoted 28,080.90 hours prosecuting this case, resulting in a total lodestar of $14,321,432. Joint Decl., ¶88. Plaintiffs' Counsel could have spent those attorney hours litigating other matters, which weighs in favor of awarding the requested fees. *See, e.g.*, *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at *4 (M.D.N.C. Sept. 25, 2019) (highlighting that the "attorneys and staff have worked over 12,500 hours since [the litigation] began" and "spent over $3 million from their own pockets litigating this case," which "was time and money the attorneys could have directed to other simpler and less risky opportunities"); *Genworth*, 210 F. Supp. 3d at 844-45 (finding that "counsel for plaintiffs devoted an enormous amount of time and effort into this case, totaling more than 66,000 hours and investing more than three million dollars in fees towards consulting experts" to be among the considerations that "support the attorneys' fees award").

The extensive time and resources Plaintiffs' Counsel committed to this case similarly weigh in favor of the requested fee.

---

[7] Plaintiffs' Counsel's Fee and Expense Declarations include the following: Declaration of Michael J. Wernke Filed on Behalf of Pomerantz LLP ("Pomerantz Fee Decl."), Ex. 5; Declaration of Douglas R. Britton Filed on Behalf of Robbins Geller Rudman & Dowd LLP ("Robbins Geller Fee Decl."), Ex.6; Declaration of Steven J. Toll Filed on Behalf of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein Fee Decl."), Ex. 7.

### 7.    Public Policy Considerations Support the Requested Fee

A "central factor in fixing the amount of attorneys' fees is 'to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class." *Mills*, 265 F.R.D. at 260. In complex securities cases, fee awards have been enhanced by courts "to provide an incentive for competent lawyers to pursue such actions in the future." *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 788 (E.D. Va. 2001). Public policy "generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions." *Jones*, 601 F. Supp. 2d at 765 (citing *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 142 (S.D.N.Y. 2008); *MicroStrategy*, 172 F. Supp. 2d at 789 n.36). "The cost and difficulty [of bringing a meritorious complex class action] naturally stands as a deterrent from doing so, and one object of an award of attorneys' fees should be to counteract this deterrence and incentivize competent attorneys to pursue these cases when necessary." *Mills*, 265 F.R.D. at 263. Public policy considerations support awarding the requested fee.

### 8.    Thirty Percent of the Settlement Amount Is a Reasonable Fee Award

Courts in this District and elsewhere routinely award attorneys' fees of 30% to 33.33% of a settlement fund for similar and even higher recoveries. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $510 million settlement fund); Final Judgment and Order, *Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*, No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), Dkt. No. 191 (awarding 33.33% of $85 million settlement fund); Final Order and Judgment, *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*, No. 0:10-cv-04372 (D. Minn. Aug. 18, 2014), Dkt. No. 686 (awarding 33.33% of $62.5 million settlement fund);

15

Order Awarding Attorneys' Fees and Expenses, *Grae v. Corrections Corp. of Am. et al.*, No. 3:16-cv-02267 (M.D. Tenn. Nov. 8, 2021), Dkt. No. 478 (awarding 33.33% of $56 million settlement fund); *In re Busporine Antitrust Litig.*, No. 1:01-md-01410 (S.D.N.Y. Apr. 11, 2003) (awarding 33.3% of $220 million settlement fund); Order Awarding Attorneys' Fees and Expenses, *Schuh v. HCA Holdings, Inc., et al.*, No. 3:11-cv-01033 (M.D. Tenn. Apr. 14, 2016), Dkt. No. 563 (awarding 30% of $215 million settlement fund); Order Awarding Attorneys' Fees and Expenses and Award to Lead Plaintiff, *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc., et al.*, No. 5:12-cv-05162 (W.D. Ark. Apr. 8, 2019), Dkt. No. 458 (awarding 30% of $160 million settlement fund); Order Granting Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.*, No. 1:17-cv-00304 (D. Colo. July 15, 2021), Dkt. No. 122 (awarding 30% of $135 million settlement fund); Final Judgment and Order of Dismissal, *Anwar v. Fairfield Greenwich Ltd. Grp.*, No. 1:09-cv-00118 (S.D.N.Y. Nov. 20, 2015), Dkt. No. 1457 (awarding 30% of $125 million settlement fund); Order Awarding Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiffs' Expenses, *T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*, No. 2:10-cv-02847 (N.D. Ala. Sept. 14, 2015), Dkt. No. 320 (awarding 30% of $90 million settlement fund); Order Approving Lead Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses, *Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 1:09-md-02063 (D. Colo. Sept. 5, 2014), Dkt. No. 527 (awarding 30% of $89.5 million settlement fund and noting the "customary fee award of 30% of the fund under the percentage of the fund approach").

Additionally, "[t]he percentage-of-the-fund method of awarding attorneys' fees in class actions should approximate the fee which would be negotiated if the lawyer were offering his or

16

her services in the private marketplace." *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03- 0085 FSH, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005). "Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation." *Id.*; *see also Thomas*, 2017 WL 1148283, at *5 ("[A]ny discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements."). Consideration of the awards in similar cases strongly supports the requested award of 30% of the Settlement Amount.

> **9.    A Cross-Check of Plaintiffs' Counsel's Lodestar Confirms the Reasonableness of the Fee Request**

Courts often supplement their analysis of the percentage-of-fund method with a lodestar cross-check. "A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case," and "then compares that figure with the attorneys' fees award, typically resulting in a positive multiplier." *Genworth*, 210 F. Supp. 3d at 845. When using the lodestar as a cross-check, courts "take a somewhat truncated approach to the lodestar analysis" and "generally do not apply the same scrutiny in a lodestar cross-check as they do when using the lodestar method to calculate the fee." *Thomas*, 2017 WL 1148283, at *6; *see also Jones*, 601 F. Supp. 2d at 765 (explaining that when "using the lodestar method as a cross-check," the court "need not apply the 'exhaustive scrutiny' normally required by that method").

This Court has recognized that reviewing counsel's lodestar as a "cross-check" can assist in assessing the reasonableness of a percentage fee. *See Genworth*, 210 F. Supp. 3d at 845; *MicroStrategy*, 172 F. Supp. 2d at 787 (stating that a fee should "adequately compensate lead counsel for the time expended on the case"). Since fee awards are designed to encourage efficient litigation and great results, courts recognize that the fee award should "include a reward or

17

enhancement beyond the lodestar figure to account for the difficulty of the case, the degree of success achieved, and other qualitative factors." *Id.* Multipliers are appropriate to encourage efficiency and to compensate for the delay in payment and additional risks because, unlike defense firms who are guaranteed payment win or lose and paid immediately, Plaintiffs' Counsel are only paid at the end of the case and only if the case is successful. *See, e.g.*, *id.* at 788 (noting that because PSLRA cases are essentially contingent fee cases, "there is no fee unless there is a recovery and the fee awarded must bear a reasonable relation to the size of the recovery").

Plaintiffs' Counsel and their professionals have expended 28,080.90 hours prosecuting this Action with a resulting lodestar of approximately $14,321,432,[8] resulting in a 1.88x multiplier on Plaintiffs' Counsel's lodestar based on their 30% fee request. *See* Joint Decl., ¶88; Pomerantz Fee Decl., ¶4, Ex. 1; Robbins Geller Fee Decl., ¶4, Ex. A; Cohen Milstein Fee Decl., ¶4, Ex. 1. This modest lodestar multiplier confirms the reasonableness of the requested 30% fee award, as it is within the range of reasonableness and well below the 2-3x multipliers regularly awarded in the Fourth Circuit. "District courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2-3 times lodestar multipliers." *Genworth*, 210 F. Supp. 3d at 845 & n.5 (citing cases approving lodestar multipliers of 2.6x to 2.9x). *See In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006) (approving a 2.6x lodestar multiplier); *MicroStrategy*, 172 F. Supp. 2d at 787-88 (approving a 2.6x lodestar multiplier); *see also Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").[9]

---

[8] This lodestar is based on counsel's current rates, which is "appropriate to account for the delay in payment to counsel." *Seaman*, 2019 WL 4674758, at *5.

[9] *See also In re Telik, Inc., Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) (noting in contingency litigation, "lodestar multiples of over four are routinely awarded"); *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262 RWS, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002)

18

The lodestar multiplier is also in line with what courts have approved in similar situations. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund where lodestar multiplier was 1.94); Final Judgment and Order, *Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*, No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), Dkt. No. 191 (awarding 33.33% of $85 million settlement fund where lodestar multiplier was 2.06); Order Granting Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.*, No. 1:17-cv-00304 (D. Colo. July 15, 2021), Dkt. No. 122 (awarding 30% of $135 million settlement fund where lodestar multiplier was 2.75); Final Judgment and Order of Dismissal, *Anwar v. Fairfield Greenwich Ltd. Grp.*, No. 1:09-cv-00118 (S.D.N.Y. Nov. 20, 2015), Dkt. No. 1457 (awarding 30% of $125 million settlement fund where lodestar multiplier was 2.42); Order Awarding Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiffs' Expenses, *T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*, No. 2:10-cv-02847 (N.D. Ala. Sept. 14, 2015), Dkt. No. 320 (awarding 30% of $90 million settlement fund where lodestar multiplier was 2.6); Order Approving Lead Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses, *Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 1:09-md-02063 (D. Colo. Sept. 5, 2014), Dkt. No. 527 (awarding 30% of $89.5 million settlement fund where lodestar multiplier was 2.1).

Further, as detailed in the Joint Declaration, the number of hours spent by Plaintiffs' Counsel was reasonable given their extensive investigation, aggressive discovery efforts, vigorous briefing on class certification and on Plaintiffs' motion to amend, and notable victories in

---

("the resulting multiplier of 2.09 is at the ***lower*** end of the range of multipliers awarded by courts within the Second Circuit"); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344 (S.D.N.Y. 2014) (5 multiplier is "large, but not unreasonable").

19

overcoming Defendants' four motions to dismiss. The complexity of the legal issues involved, and the intensity and skill of Defendants' Counsel also justify the number of hours spent by Plaintiffs' Counsel. Finally, Plaintiffs' Counsel anticipate expending additional time in connection with administering the Settlement, for which Plaintiffs' Counsel will not seek additional compensation.

Moreover, Plaintiffs' Counsel's hourly rates are "within the range of reasonableness for PSLRA cases, where the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials." *MicroStrategy*, 172 F. Supp. 2d at 788. The hourly rates of Plaintiffs' Counsel are based on periodic analyses of rates used by firms performing comparable work on both the plaintiffs' and defense side. *See* Pomerantz Fee Decl., ¶5, Ex. 1; Robbins Geller Fee Decl., ¶4, Ex. A; Cohen Milstein, ¶5, Ex. 1.[10] Considering the several factors discussed above, including the result achieved, the complexity and risk of the Action, and the skill and experience of counsel, Plaintiffs' Counsel's rates are reasonable and appropriate. A lodestar cross-check confirms the reasonableness of the requested fee.

---

[10] Lead Counsel recognize that, in some instances, these rates may be higher than the prevailing rates in Richmond, Virginia. "When fees are awarded based on the lodestar, not as a comparison, a prevailing plaintiff may justify an award of extra-community hourly market rates if 'the complexity and specialized nature of the case . . . mean that no attorney, with the required skills, is available locally, and the party choosing the attorney from elsewhere acted reasonably in making the choice.'" *Seaman*, 2019 WL 4674758, at *5. While there are experienced securities class action practitioners in Richmond, there are not many local firms both with the expertise and willingness to dedicate the resources necessary to bring a case of this magnitude on a purely contingent basis. *See id.* ("While antitrust lawyers exist locally, as noted above there are not many firms willing to handle a high-risk matter requiring the resources, time, and skill this case demanded."). Moreover, given that the lodestar multiplier is on the low side, even if all rates were significantly reduced, the lodestar multiplier would still be well within the acceptable range. *See In re Neustar, Inc. Sec. Litig.*, No. 1:14CV885 (JCC/TRJ), 2015 WL 8484438, at *10 (E.D. Va. Dec. 8, 2015) (noting that although counsel's rates were above local market rates, given the low multiplier "the fee request would remain reasonable if the Court were to discount the total lodestar figure by fifty percent"). Lastly, it is highly likely that Lead Counsel's hourly rates compare favorably with those of Defendants' Counsel, where there is no contingency to the payment of fees and expenses.

20

Finally, during the hearing on Plaintiffs' motion for preliminary approval of the Settlement, the Court expressed its desire to maintain $60 million of the $90 million Settlement Amount for distribution to Settlement Class Members that submit valid claims ("Authorized Claimants"). Given the Court's comments, Lead Counsel are requesting a fee of 30% (as opposed to 31% identified in the Notice), that if awarded, will leave $60 million available for distribution to the Settlement Class. As discussed directly below, Lead Counsel are requesting a total of $1,613,523.17 for payment of litigation expenses ($1,544,748.17) and awards to the Lead Plaintiffs ($68,775). Thus, awarding Plaintiffs' Counsel 30% of the Settlement Amount as fees would preserve $61,399,485.78 for distribution to Authorized Claimants and for Notice and Administration of the Settlement Fund.[11] The Claims Administrator anticipates that the total cost of Notice and Administration of the Settlement Fund will not exceed $1.4 million (Mailing Decl., ¶19),[12] preserving approximately $60 million for distribution to the Class. Joint Decl., ¶91.

For all the foregoing reasons, Lead Counsel respectfully submit that an award of the requested 30% fee is reasonable under the circumstances of this case.

---

[11] This figure also includes an anticipated balance of $13,008.95 in the litigation expense fund, which will be contributed to the Settlement Fund. *See* Pomerantz Fee Decl., ¶9; Ex. 3.

[12] "Mailing Decl." refers to the Declaration of Jordan Broker Regarding: (i) Notice Dissemination; (ii) Publication of Summary Notice; (iii) Call Center Services; (iv) the Settlement Website; (v) Requests for Exclusion and Objections Received to Date; and (vi) Estimate of Administration Costs ("Mailing Decl."), attached to the Joint Declaration as Exhibit 4.

**III.    LEAD COUNSEL'S REQUEST FOR AN AWARD OF LITIGATION EXPENSES AND CHARGES IS REASONABLE**

Lead Counsel also request an award of reasonable and necessary litigation expenses and charges incurred to prosecute this Action. Since the inception of the case, Plaintiffs' Counsel have incurred $1,544,748.17 in expenses and charges.[13]

"'It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award.'" *Singleton*, 976 F. Supp. 2d at 689. Such costs may include "'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).

The amount requested is based on the declarations of Plaintiffs' Counsel. *See* Pomerantz Fee Decl., ¶8, Ex. 2; Robbins Geller Fee Decl., ¶¶5-6, Ex. B; Cohen Milstein Fee Decl., ¶8, Ex. 2. The expenses/charges are broken down in each declaration by type and amount. The categories of expenses/charges for which an award is sought include expert costs, electronic discovery costs, travel, photocopying, overnight mail, deposition services and transcripts, and electronic research.[14] These are precisely the type of expenses routinely charged to hourly clients in non-contingent private litigation. *See, e.g.*, *Reynolds v. Fidelity Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *4 (M.D.N.C. Jan. 8, 2020) (explaining that "mailing costs, online legal research, long-distance telephone use, expert and mediator fees, travel expenses for

---

[13] The total amount of the incurred expenses is less than the amount stated in the Notice, *i.e.*, that Lead Counsel would request up to $1,700,000 in litigation expenses. *See* Joint Decl., Ex. 4 (Mailing Decl.), Ex. A (Notice).

[14] Lead Counsel's expenses include contributions to a common litigation fund, which was used to pay certain common expenses, including, among other things, expert costs, which usually constitute the largest type of expense incurred in securities cases. These common litigation fund expenses are detailed dn Exhibit 3 to the Pomerantz Fee Decl.

22

mediation and court proceedings, and court filing fees. . . . are 'reasonable out-of-pocket expenses . . . which are normally charged to a fee-paying client, in the course of providing legal services'") (quoting *Singleton*, 976 F. Supp. 2d at 689).

Lead Counsel's request for the payment of $1,544,748.17 in expenses/charges from the common fund is reasonable and should be approved. No objections to the payment of these expenses have been filed.

## IV.   THE REQUESTED PSLRA AWARDS TO THE LEAD PLAINTIFFS ARE REASONABLE

Lead Plaintiffs Donald Sherbondy, Sarah Sherbondy and Construction Laborers Pension Trust of Greater St. Louis ("CLPT") also request approval of awards in the amounts of $20,000, $20,000 and $28,775 respectively, pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the Settlement Class.

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but it also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

District courts in the Fourth Circuit routinely approve such awards under 15 U.S.C. § 78u-4(a)(4) to compensate Lead Plaintiffs for the time and effort related to supervising the action on behalf of the absent class members. *See, e.g., In re Comput. Sci. Corp. Sec. Litig.*, No. Civ. A. 1:11-cv-610-TSE-LDD, 2013 WL 12155436, at *2 (E.D. Va. Sept. 20, 2013) (awarding "[c]lass [r]epresentative reimbursement of its reasonable costs for the time devoted to the matter"); *Sponn v. Emergent Biosolutions, Inc.*, No. 8:16-cv-02625-RWT, 2019 WL 11731087, at *2 (D. Md. Jan. 25, 2019) (same). Lead Plaintiffs request that their application be approved as well.

23

As set forth in their accompanying declarations, Plaintiffs Donald Sherbondy and Sarah Sherbondy and CLPT seek awards of $20,000 each for the time devoted to supervising and participating in the Action. Donald Sherbondy Decl., ¶¶2-7; Sarah Sherbondy Decl., ¶¶2-7; CLPT Decl., ¶¶3-8. CLPT also seeks reimbursement for $8,775 in costs incurred in prosecuting this Action. The declarations identify the activities directly related to representing the Settlement Class, including: (a) consulting and corresponding with counsel regarding pleadings, briefs, discovery, court orders, mediations, and other case developments; (b) reviewing significant pleadings and briefs filed in the case and various orders entered by the Court; (c) gathering and producing documents to the Defendants; (d) providing deposition testimony; and (e) discussing the parameters for an appropriate resolution of the case and ultimately agreeing to the Settlement. *Id.*

Like the expenses in this case, the requested awards are consistent with cost and expense awards in similar cases. *See, e.g.*, *Mills*, 265 F.R.D. at 265 (reimbursing lead plaintiffs $42,419.50); *Nieman v. Duke Energy Corp.*, No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015) (reimbursing lead plaintiff $20,612.50); *In re Massey Energy Co. Securities Litigation*, C. A. No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014), Dkt. No. 203 (reimbursing lead plaintiff $33,889.18); *Genworth*, 210 F. Supp. 3d at 846 (awarding $23,128 for time relating to supervision of the action); *Comput. Sci.*, 2013 WL 12155436, at *2 (awarding $28,881 for time and $32,024 for expenses). Lead Plaintiffs respectfully request the awards be approved.[15]

---

[15] The requested awards are lower than a number of awards courts have approved in other cases. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-cv-7126 (JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $50,000 to six named plaintiffs and $100,000 to two of them, in addition to out-of-pocket expenses for three of them finding that "the considerable effort expended by the named Plaintiffs to assist in the litigation renders the awards requested by lead counsel appropriate" and that "in the aggregate they amount to a miniscule portion of the settlement fund."); *In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, No. 09 MDL 2058 (PKC), 2013 WL 12091355 (S.D.N.Y. Apr. 8, 2013) (awarding $259,610 to one plaintiff and $125,688 to a second plaintiff), *aff'd*, 772 F.3d 125 (2d Cir. 2014); *Pa. Pub. Sch. Emps.' Ret. Sys.*

24

## V.    CONCLUSION

For the reasons discussed above, Lead Plaintiffs respectfully request that the Court: (1) award Lead Counsel 30% of the Settlement Amount as attorneys' fees, plus accrued interest; (2) award litigation expenses incurred by Plaintiffs' Counsel in the amount of $$1,544,748.17, plus accrued interest; and (3) grant Plaintiffs Donald Sherbondy, Sarah Sherbondy and CLPT awards of $20,000, $20,000 and $28,775, respectively.

Respectfully submitted,

DATED:  February 24, 2022

By: /s/ *Steven J. Toll*
Steven J. Toll (VSB #15300)
Daniel S. Sommers
S. Douglas Bunch
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., N.W., Suite 500
Washington, D.C.  20005
Telephone:  202/408-4600
202/408-4699 (fax)
stoll@cohenmilstein.com
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

*Local Counsel for Lead Plaintiffs*

Jeremy A. Lieberman
Michael J. Wernke
POMERANTZ LLP
600 Third Ave.
New York, NY  10016

---

*v. Bank of Am. Corp.*, 318 F.R.D. 19, 27 (S.D.N.Y. 2016) (awarding $130,323 to sole lead plaintiff); Final Judgment Approving Class Action Settlement, *In re Tronox, Inc. Sec. Litig.*, No. 09-cv-6220 (SAS) (S.D.N.Y. Nov. 26, 2012), Dkt. No. 202 (awarding $194,460, including $129,804 to two related lead plaintiffs); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (awarding lead plaintiff $100,000).

Telephone:  212/661-1100
212/661-8665 (fax)
jalieberman@pomlaw.com
mjwernke@pomlaw.com

*Lead Counsel for Lead Plaintiffs Donald*
*Sherbondy and Sarah Sherbondy*

Samuel H. Rudman
David A. Rosenfeld
Erin W. Boardman
Philip T. Merenda
ROBBINS GELLER RUDMAN
       & DOWD LLP
58 South Service Rd., Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com
pmerenda@rgrdlaw.com

Ellen Gusikoff Stewart
Douglas R. Britton
Kevin A. Lavelle
Matthew J. Balotta
ROBBINS GELLER RUDMAN
       & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dougb@rgrdlaw.com
klavelle@rgrdlaw.com
mbalotta@rgrdlaw.com

*Lead Counsel for Lead Plaintiff Laborers*
*Pension Trust of Greater St. Louis*

Brian Schall
THE SCHALL LAW FIRM
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: 310/301-3335

26

brian@schallfirm.com

*Additional Counsel for Lead Plaintiffs*
*Donald*
*Sherbondy and Sarah Sherbondy*