# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## (Richmond Division)

| | | |
|---|---|---|
| GABBY KLEIN, et al., Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:20-cv-00075-DJN |
| Plaintiffs, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) ) | |
| ALTRIA GROUP, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**DECLARATION OF JEREMY A. LIEBERMAN AND DAVID A. ROSENFELD IN SUPPORT OF (1) LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT, AND (2) LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO LEAD PLAINTIFFS <u>PURSUANT TO 15 U.S.C. § 78u-4(a)(4)</u>**

Jeremy A. Lieberman and David A. Rosenfeld declare as follows pursuant to 28 U.S.C. §1746:

1.      I, Jeremy A. Lieberman, am the managing partner of the law firm of Pomerantz LLP ("Pomerantz"), and I, David A. Rosenfeld, am a partner of the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" and together with Pomerantz, "Lead Counsel"). Pomerantz, counsel for Lead Plaintiffs Donald and Sarah Sherbondy (the "Sherbondys"), and the Settlement Class, and Robbins Geller, counsel for Construction Laborers Pension Trust of Greater St. Louis ("CLPT" and together with the Sherbondys, "Lead Plaintiffs" or "Plaintiffs"), and the Settlement Class in the above-captioned action (the "Action"), submit this Joint Declaration in support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation of the Net Proceeds of the Settlement and Lead Counsel's Application for an Award of Attorneys' Fees and Expenses and Awards to Lead Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4).[1] We each have personal knowledge of the matters set forth herein based on our active participation in all material aspects of the prosecution and settlement of this Action. If called upon, we could and would competently testify that the following facts are true and correct.

## I.      INTRODUCTION AND OVERVIEW

2.      The Parties have entered into a settlement of all claims asserted in this securities class action against Defendants Altria Group, Inc. ("Altria"), JUUL Labs, Inc. ("JLI"), Howard A. Willard III ("Willard"), William F. Gifford, Jr. ("Gifford"), Adam Bowen ("Bowen"), James Monsees ("Monsees"), Kevin Burns ("Burns"), and K.C. Crosthwaite ("Crosthwaite") (collectively, the "Defendants," and with Plaintiffs, the "Parties").

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated December 9, 2021 (the "Stipulation"). *See* ECF No. 297-1.

3.      The Settlement is an excellent result for the Settlement Class. The Stipulation provides for the non-reversionary payment of $90,000,000 in cash (the "Settlement Amount") to the Settlement Class in exchange for the settlement of all claims in the Action, the dismissal with prejudice of the Corrected Class Action Complaint filed on July 2, 2020 (the "Complaint"), and the release of all Released Plaintiffs' Claims by Plaintiffs and the other members of the Settlement Class against Defendants and Defendants' Releasees (the "Settlement"). The Settlement—which represents one of the largest recoveries ever achieved in a securities class action in Virginia and the Fourth Circuit and is approximately seven times the median value of all U.S. securities class action settlements between 2018 and 2020—is the product of Lead Plaintiffs' and Lead Counsel's careful analysis and vigorous litigation of the claims, as well as extensive arm's-length settlement negotiations between the Parties, which included two full-day mediation sessions before U.S. Magistrate Judge Mark R. Colombell.

4.      The benefit to the Settlement Class must be weighed against the significant chance that it might obtain a much smaller recovery or none at all after protracted litigation followed by years of appellate review. If at any stage of the Action, Defendants were to prevail on their various arguments concerning statutory standing, falsity, materiality, scienter, loss causation, or damages, the Settlement Class would have been left with little or no recovery. In sum, the Settlement represents a substantial and exceptional recovery in light of the significant risks involved in continued litigation.

5.      As detailed herein, the Settlement is the product of a comprehensive investigation, detailed analysis, and extensive arm's-length negotiations by experienced counsel, which involved the assistance of an experienced mediator. Lead Counsel, working closely with Lead Plaintiffs, negotiated the Settlement with a thorough understanding of the strengths and weaknesses of the

claims asserted against each of the Defendants. This understanding was based on Lead Counsel's vigorous efforts, which included analyzing: (i) documents filed publicly by Altria with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning Altria, JLI and the Defendants; (iii) research reports issued by financial analysts concerning Altria and JLI; (iv) other publicly available information and data concerning Altria and JLI and the allegedly improper marketing activity; (v) approximately *30 million pages of documents* produced by Defendants and third parties during discovery; (vi) transcripts and exhibits from over 70 depositions conducted in related actions; and (vii) the applicable law governing the claims and potential defenses. Additionally, Lead Counsel identified 166 former Altria and JLI employees and other persons believed to have relevant knowledge, contacted 165, and interviewed 24 of them (three of whom were cited in the Complaint as confidential witnesses).

6.    In addition to their comprehensive investigation, Lead Counsel (i) drafted a detailed complaint, (ii) successfully opposed Defendants' four motions to dismiss, (iii) served and responded to document requests, interrogatories and requests for admission, (iv) took or defended 11 depositions, including the depositions of Plaintiffs, CLPT's investment manager, former Altria and JLI employees, certain Individual Defendants, and two experts, (v) briefed Plaintiffs' motion to amend the complaint, (vi) briefed Plaintiffs' motion for class certification, (vii) served two expert reports on issues of market efficiency and price impact, and (viii) were prepared to serve an additional seven expert reports if the Settlement had not been reached. In advance of mediation, Plaintiffs provided detailed mediation statements and exhibits to the mediators, which addressed issues of both liability and damages. As a result of these efforts, Lead Counsel and Plaintiffs were

3

fully informed about the strengths and weaknesses of the case against each of the Defendants before agreeing to the Settlement.

7.      In addition, the risks in this case were significant. Plaintiffs faced serious risks with respect to proving statutory standing, falsity, materiality, scienter, loss causation, and damages. Additionally, Plaintiffs faced ongoing risks associated with their pending motion to amend and motion for class certification. Accordingly, there was a significant chance that one or more of Defendants' defenses may have ultimately proved insurmountable – and the Settlement Class may have ended up with little or no recovery. The significance of these risks was heightened by the prospect of years of protracted litigation through costly dispositive motion practice, a trial, and lengthy appeals. These risks were very real. As the Court itself warned during a conference with the Parties shortly after denying Defendants' motions to dismiss, Plaintiffs' risk of losing at summary judgment was "significant." The Settlement avoids these and other risks while providing a substantial and immediate monetary benefit to the Settlement Class.

8.      The other terms of the Settlement are likewise the product of careful negotiations between the Parties, and are set forth in the Stipulation. For all of the reasons stated herein, Lead Counsel believe that the Settlement is fair, reasonable and adequate, is in the best interests of the Settlement Class, and should be approved. The Settlement has the full support of the Lead Plaintiffs. *See* Declaration of Donald Sherbondy ("Donald Decl."), Exhibit 1 hereto, Declaration of Sarah Sherbondy ("Sarah Decl."), Exhibit 2 hereto, and Declaration of Don Willey on behalf of CLPT ("CLPT Decl."), Exhibit 3 hereto.

9.      Lead Counsel seek an award of attorneys' fees of 30% of the Settlement Amount, plus their litigation expenses of $1,544,748.17, with interest thereon earned at the same rate and for the same period as the Settlement Fund. The fee request is pursuant to fee agreements with

Lead Plaintiffs and has their full support. As discussed below (*see* ¶¶87-100), the requested fee amounts to a 1.88x multiplier on Plaintiffs' Counsel's collective "lodestar" (*i.e.*, hourly rates set for Plaintiffs' Counsel multiplied by the hours spent prosecuting and settling this Action).

10.     Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement dated December 16, 2021 (ECF No. 303) (the "Preliminary Approval Order"), the Postcard Notice was mailed to all Settlement Class Members who could be identified with reasonable effort, and the Summary Notice of the proposed Settlement was published in *Investor's Business Daily* and transmitted over *PR Newswire*.

11.     The Notice advised all recipients of, among other things: (i) the terms of the Settlement; (ii) the definition of the Settlement Class; (iii) their right to exclude themselves from the Settlement Class; (iv) their right to object to any aspect of the Settlement, including the Plan of Allocation and Lead Counsel's request for attorneys' fees and expenses; and (v) the procedures and deadline for submitting a Proof of Claim in order to be eligible for a payment from the proceeds of the Settlement.

12.     The Court-ordered deadline for filing objections to the Settlement or requesting exclusion from the Settlement Class is March 10, 2022. To date, no objections to any aspect of the Settlement have been filed and only 12 requests for exclusion have been received. If any objections or additional requests for exclusion are received, Lead Plaintiffs will address them in a reply submission to be filed on or before March 24, 2022.

13.     Epiq Class Action & Claims Solutions, Inc. ("Epiq"), which has been retained by Lead Counsel and approved by the Court as Claims Administrator, has advised that as of February 23, 2022, a total of 1,133,904 copies of the Postcard Notice have been mailed to potential Settlement Class Members and nominees. *See* Declaration of Jordan Broker Regarding: (i) Notice

Dissemination; (ii) Publication of Summary Notice; (iii) Call Center Services; (iv) the Settlement Website; (v) Requests for Exclusion and Objections Received to Date; and (vi) Estimate of Administration Costs ("Mailing Decl."), at ¶10, attached hereto as Exhibit 4. Additionally, the Notice, Claim Form, Stipulation, and Preliminary Approval Order have been posted on the website established for the Settlement: www.AltriaGroupIncSecuritiesLitigation.com.

## II.    THE NATURE AND HISTORY OF THE LITIGATION

### A.    The Commencement of the Action and Appointment of Lead Plaintiffs and Lead Counsel

14.    On October 2, 2019, Gabby Klein filed a putative class action complaint styled as *Gabby Klein v. Altria Group, Inc., et al.*, No. 2:19-cv-05579-FB-AKT, alleging violations of the federal securities laws against Altria, Willard and Gifford, in the United States District Court for the Eastern District of New York. No. 2:19-cv-05579-FB-AKT (Oct. 2, 2019), ECF No. 1.

15.    On December 30, 2019, the Court entered an order appointing the Sherbondys and CLPT as Lead Plaintiffs, and Pomerantz LLP and Robbins Geller Rudman & Dowd LLP as Lead Counsel. *Id.* at ECF No. 43.

16.    On February 7, 2020, the Action was transferred to the United States District Court for the Eastern District of Virginia, Richmond Division, styled as *Klein v. Altria Group, Inc., et al.*, No. 3:20-cv-00075-DJN (the "Action"). ECF No. 51.[2]

17.    On April 21, 2020, Plaintiffs filed the Consolidated Class Action Complaint alleging violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants and violations of Section 20(a) of the Exchange Act against Willard, Gifford, Bowen, Monsees, Burns and Crosthwaite (collectively, the "Individual Defendants"). ECF No. 74.

---

[2] Unless otherwise noted, all references to "ECF No. __" shall refer to docket entries in the matter No. 3:20-cv-00075-DJN (Oct. 2, 2019).

18.     On July 2, 2020, Plaintiffs filed the Corrected Consolidated Class Action Complaint (the "Complaint") on behalf of themselves and all persons and entities, other than Defendants named therein and other excluded individuals and entities, who purchased the publicly traded common stock of Altria during the period from December 20, 2018 through February 21, 2020, inclusive (the "Class Period"). ECF No. 108. The Complaint corrected the roles and tenure of certain Defendants as well which Defendants signed certain SEC filings.

### B.     The Complaint and a Summary of the Settlement Class's Allegations

19.     The Complaint asserts claims against the Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. Plaintiffs allege that Defendants made materially false and misleading statements and omissions to investors concerning: (1) JLI's marketing of its JUUL products to minors; and (2) Altria's and JUUL's commitment to prevent underage access to and use of e-cigarettes. The Complaint alleges that the price of Altria's publicly traded securities was artificially inflated as a result of Defendants' allegedly false and misleading statements, and material omissions, and declined when the truth was allegedly revealed. Plaintiffs allege that the truth began to emerge during the Class Period as regulatory and public scrutiny of JLI's marketing practices increased, resulting in government litigation and regulatory action, causing Altria to write-down its $12.8 billion investment in JLI by 64%, and causing Altria's stock price to significantly decline.

20.     Defendants continue to deny any and all allegations of wrongdoing and deny that they have committed any act or omission giving rise to any liability or violation of law.

### C.     The Motions to Dismiss

21.     On July 8, 2020, Defendants filed four motions to dismiss the Complaint, consisting of 113 pages of briefing and 68 exhibits. ECF Nos. 117, 119, 121, 123. Defendants argued, among

7

other things, that the Complaint failed to plead: (i) falsity because Plaintiffs' Complaint alleges corporate mismanagement, rather than fraud, which cannot state a claim for securities fraud, and that the statements about JUUL's marketing to youth were already publicly available in the market before the Class Period and thus non-actionable; (ii) scienter; and (iii) loss causation. The Altria Defendants also argued that Plaintiffs failed to plead "scheme liability," because they did not specify the conduct giving rise to liability. ECF No. 118 at 20-16, 30-32.   The Individual Defendants' motions to dismiss alleged that the Complaint failed to plead Section 20(a) control person liability against the Individual Defendants. ECF No. 125 at 10-15; ECF No. 122 at 9-13. The JUUL Defendants' motion to dismiss alleged, among other things, that Plaintiffs lacked statutory standing to bring a securities action against the JUUL Defendants, because Plaintiffs purchased securities in Altria, not JUUL.

22.    On September 17, 2020, Plaintiffs filed oppositions to Defendants' motions to dismiss (ECF Nos. 126, 127). Plaintiffs argued that the Complaint pled in detail that Defendants' material misstatements and omissions representing that it was never JUUL's intent to market to underage consumers or for underage consumers to use its products misled regulators, the public, and investors about the risks associated with Altria's $12.8 billion investment in JUUL and misrepresented the likely effect that the materialization of these risks would have on JUUL's value. Plaintiffs also argued that the Complaint pled a strong inference of scienter by alleging that the Altria Defendants were aware of the illegal marketing practices undertaken by JUUL prior to Altria's investment, which increased the substantial risk of regulatory action and litigation against JUUL. Plaintiffs further argued that the Complaint sufficiently pled loss causation and control person liability against the Altria Defendants and JUUL Defendants. As to the JUUL Defendants, Plaintiffs argued that statutory standing existed because Altria owned 35% of JUUL and that the

8

JUUL Defendants directed their statements toward Altria investors knowing that they would rely on such statements.

23. On November 2, 2020, Defendants filed their reply papers. ECF Nos. 128-131.

24. On March 12, 2021, the Court entered its Opinion and Order substantially denying Defendants' motions. ECF Nos. 139-140. The Court denied the motions to dismiss filed by Defendants Altria, Willard, Gifford, JLI, Bowen, Burns, and Monsees. The Court also granted in part and denied in part the motion to dismiss filed by Defendant Crosthwaite. Most notably, the Court upheld Plaintiffs' Section 10(b) claims and found that Plaintiffs had statutory standing to bring suit against JUUL for its own statements that Altria investors may have relied upon. ECF No. 140 at 20. The Court explained that Plaintiffs adequately pled that Defendants made material misrepresentations and omissions by alleging that Defendants failed to disclose that JUUL targeted youth for its products, that all Defendants knew of this marketing scheme and the risks that it posed to JUUL's and Altria's value, and that Defendants had an obligation to disclose it to investors. ECF No. 140 at 25. The Court held that Plaintiffs sufficiently pled scienter by specifically identifying false or misleading statements made by Defendants, alleging that Defendants made those statements because Altria desperately wanted to acquire JUUL regardless of the risks, and to bolster Altria's stock price to mislead investors. ECF No. 140 at 33-34. The Court rejected Defendants' arguments concerning loss causation, scheme liability and liability under Section 20(a). ECF No. 140 at 31, 39, 41-42.

25. On April 16 and 19, 2021, Defendants filed their Answers to the Complaint.

**D.     Fact Discovery**

26. Following the Court's Order substantially denying Defendants' motions to dismiss, Lead Counsel immediately began discovery efforts that were nearly completed by the time the Parties resolved the Action.

27.    Plaintiffs served document requests on Defendants on April 16, 2021 and July 1, 2021. On or about May 30, 2021, Defendants made their first production of documents to Plaintiffs.

28.    Plaintiffs also subpoenaed documents from various third parties, including Greenleaf Health, Hypebeast Inc., BDG Media, Inc., UrbanDaddy, Inc., FDA, Siddharth Breja, Math Aids, LLC, Mathway, LLC, Concentrical, LLC, Cult Collective Ltd., Mercury Public Affairs, LLC, Veratad Technologies, LLC, ViacomCBS, Inc., Hearst Magazine Media, Inc., Richard P. Mumby, Math Playground, LLC, Coolmath.com, LLC, Purplemath, Inc., Grit Creative Group, LLC, Prime Publishing, LLC, Worldwide Communications Group, LLC, TowerData, Basic Mathematics, Warner Bros. Entertainment, Hoyoung Huh, Nicholas Pritzker and Riaz Valani, in an effort to further develop their claims against Defendants.

29.    Pursuant to Plaintiffs' various discovery requests, Defendants produced approximately 30 million pages of documents.

30.    To lessen the cost and increase the efficiency of the document review process, all of the documents were placed in an electronic database, known as Relativity, maintained in-house by Robbins Geller, for significantly less than an outside vendor would charge. This database allowed Lead Counsel to more efficiently search for and code documents through the use of various categories, such as author, custodian, recipient, type of document, date, and Bates number.

31.    Plaintiffs also diligently responded to Defendants' numerous requests for documents and interrogatories and provided supplemental responses when necessary.

32.    On September 15, 2021, the Parties jointly filed with the Court a Stipulation and Order regarding depositions including the use of over 70 deposition transcripts from related actions as if taken in this Action. ECF No. 270.

10

33.    To further develop their case, Lead Counsel took or defended 11 depositions of the following individuals, entities, and experts with relevant information:

(a)    Jason Flora (Sr. Principal Scientist, Regulatory Affairs at Altria) on September 15, 2021;

(b)    Kevin Burns (Individual Defendant and former CEO of JUUL) on September 17, 2021;

(c)    Adam Bowen (Individual Defendant, co-founder and former CEO of JUUL) on September 21, 2021;

(d)    Howard A. Willard III (Individual Defendant, former CEO and CFO of Altria) on September 23, 2021;

(e)    Zachary Nye, Ph.D. (Plaintiffs' economic expert) on August 31, 2021;

(f)    Jennifer Johnsrud from D.L. Carlson Investment Group, Inc. (CLPT's investment manager) on August 19, 2021;

(g)    Douglas J. Skinner, Ph.D. (Defendants' economic expert) on October 5, 2021;

(h)    Robert Buell (Sr. Assistant General Counsel at Altria) on September 29, 2021;

(i)    William F. Gifford, Jr. (Individual Defendant, Altria's CEO and former CFO) on October 15, 2021;

(j)    K.C. Crosthwaite (Individual Defendant, Altria's former Chief Growth Officer and CEO of JUUL) on October 22, 2021; and

(k)    James Monsees (Individual Defendant, co-founder and former CEO and Chief Product Officer of JUUL) on October 29, 2021.

34.    To prepare for these depositions, Lead Counsel carefully reviewed documents produced by Defendants and third parties and prior testimony given by witnesses to analyze the

11

complex factual and legal issues that were integral to Lead Plaintiffs' claims and Defendants' potential defenses. The depositions, and the documents discussed therein, provided Lead Counsel with a solid foundation from which to understand the risks and strengths of this case.

35.    In addition to reviewing documents produced by Defendants and third parties, Lead Counsel vigorously advocated for the Settlement Class by litigating and requesting Court intervention on various discovery issues. For example, on September 30, 2021, Lead Counsel moved to compel non-party Riaz Valani to comply with Plaintiffs' deposition subpoena. *See* Case No. 3:21-mc-80239, ECF No. 1. Mr. Valani's counsel filed an opposition to the motion on October 21, 2021. *Id.* at ECF No. 16. In light of the Parties' mediation, which resulted in the Settlement, Plaintiffs withdrew the motion. ECF No. 17.

36.    On September 29, 2021, the Parties jointly moved to amend the Scheduling Order to extend the fact discovery deadline with respect to the depositions of certain Defendants and other witnesses and to allow Plaintiffs to provide substantive responses to Defendants' Interrogatories and Requests for Admission. ECF Nos. 280, 282. The Court granted the Parties' motion on October 12, 2021. ECF No. 283.

37.    On October 13, 2021, the Parties jointly moved to amend the Scheduling Order and modify certain deadlines to allow the Parties to focus their efforts on the impending settlement conference. ECF No. 284. The Court granted the Parties' motion on October 14, 2021. ECF No. 285.

38.    By vigorously pursuing discovery, Lead Counsel developed the evidence that they believed was necessary to establish the elements of each of Plaintiffs' claims and to fully evaluate a negotiated resolution.

**E.      Plaintiffs' Motion to Amend the Complaint**

39.      On August 6, 2021, Plaintiffs filed a motion to amend the Complaint, attaching the proposed First Amended Consolidated Class Action Complaint ("FAC"). ECF No. 219. The proposed FAC: (i) extended the Class Period to October 25, 2018 through April 1, 2020, both dates inclusive ("FAC Class Period"); (ii) added Altria's October 25, 2018 statements as false and misleading statements; (iii) included certain additional alleged corrective disclosures, including the April 1, 2020 announcement of the FTC complaint; (iv) added allegations establishing that Defendant Crosthwaite was a "maker" of the statements in Altria's December 20, 2018 press release announcing Altria's investment in JLI; and (v) added allegations demonstrating that Burns and JLI were liable for the statements in Altria's December 20, 2018 press release, and that the Altria Defendants were liable for the statements in JLI's mirroring December 20, 2018 announcement. ECF No. 219 at 2.

40.      On August 20, 2021, Defendants filed their opposition to Plaintiffs' motion to amend, arguing that Plaintiffs' motion should be denied because it was untimely, and that amendment would prejudice Defendants and would be futile.

41.      Plaintiffs filed their reply brief on August 26, 2021. ECF No. 255.

**F.      Plaintiffs' Motion to Certify the Class**

42.      While fact discovery was ongoing, the Parties concurrently briefed Plaintiffs' motion for class certification.

43.      On August 6, 2021, Plaintiffs filed their Motion for Class Certification and Appointment of Class Representatives and Class Counsel. ECF No. 220.

44.      In support of their motion, Plaintiffs submitted an expert report by Zachary Nye, Ph.D. on market efficiency and price impact. ECF No. 222-1.

13

45.    Dr. Nye's 39-page report (plus exhibits) discussed market efficiency, price impact and a proposed method for calculating class-wide damages. Dr. Nye analyzed both the *Cammer* and *Krogman* factors, which courts have relied upon as dispositive indicators of market efficiency, and concluded that Altria common stock traded in an efficient market over the course of the Complaint Class Period (*i.e.*, December 20, 2018 through February 21, 2020), as well as throughout the Amended Complaint Class Period (*i.e.*, October 25, 2018 through April 1, 2020). He determined that the misrepresentations and omissions alleged by Plaintiffs inflated the price of Altria common stock, and when the risks concealed by Defendants materialized in the form of regulatory action, lawsuits and Altria's multiple impairments of the JLI investment, Altria's common stock price dropped. Dr. Nye concluded that Altria's stock price reflected the information disclosed to the market, and promptly responded to the disclosure of new, material unexpected information, thereby supporting his conclusion that the market for Altria stock was efficient throughout both Class Periods. Additionally, Dr. Nye determined that damages could be calculated on a class-wide basis for all investors who purchased or otherwise acquired Altria stock during the Complaint Class Period and/or the Amended Complaint Class Period using a method that is common to the Class and in a manner consistent with Plaintiffs' theory of liability.

46.    Defendants deposed Dr. Nye on August 31, 2021. Lead Counsel worked with Dr. Nye to prepare him for his deposition. Lead Counsel prepared Dr. Nye for Defendants' anticipated attacks on his qualifications to provide expert testimony under *Daubert* and Federal Rule of Evidence Rule 701. Lead Counsel also prepared Dr. Nye for potential attacks on his opinions concerning market efficiency, his findings that Altria's allegedly misleading statements and omissions regarding JUUL's youth-marketing scheme caused the decline in Altria's stock price, and his methodology for calculating damages per share.

14

47. On September 17, 2021, Defendants filed their opposition to Plaintiffs' motion for class certification, arguing, *inter alia*, that Plaintiffs had no common proof of damages and failed to establish a common method of proving damages. ECF Nos. 271-278.

48. Defendants also submitted a report by Douglas J. Skinner, Ph.D. in response to Dr. Nye's report, which was 88 pages (plus exhibits). ECF No. 272-2.

49. Plaintiffs took Dr. Skinner's deposition on October 5, 2021.

50. Plaintiffs filed their reply brief in support of class certification on October 14, 2021. ECF No. 290. In addition to their reply memorandum, Plaintiffs submitted an expert reply report by Dr. Nye which further explained his analysis and opinions and rebutted Dr. Skinner's assertions. ECF No. 292-1.

51. A hearing for oral argument on Plaintiffs' motion for class certification was set for December 15, 2021, when the Parties reached the Settlement. ECF No. 279.

### G. Expert Witnesses

52. Plaintiffs worked with numerous experts throughout the Action.

53. In addition to the reports of Dr. Nye on the issues of market efficiency and price impact, Plaintiffs were in the process of finalizing an additional seven expert reports that Plaintiffs were ready to serve within days if the mediation on October 27, 2021 was not successful. These expert reports addressed, among other things, JLI's improper marketing, Altria's due diligence of JLI's marketing, loss causation and damages.

### H. The Mediation

54. The Settlement is the product of intense and hard-fought negotiations, which were conducted at arm's-length between experienced counsel with the assistance of experienced mediators, and included two full-day mediation sessions before U.S. Magistrate Judge Mark R. Colombell.

55.    Pursuant to Court Order (ECF No. 173), on June 29, 2021, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before the Hon. Layn Phillips (Ret.) of Phillips ADR, one of the preeminent mediators of complex litigation. In advance of that session, the Parties exchanged and provided to Judge Phillips detailed mediation statements with numerous exhibits as evidentiary support. The mediation briefs addressed issues of both liability and damages. That mediation session ended without an agreement.

56.    Again, pursuant to Court Order (ECF No. 206), on September 24, 2021, the Parties and their counsel participated in a full-day mediation session before United States Magistrate Judge Mark R. Colombell. In advance of that session, the Parties submitted to Judge Colombell *ex parte* detailed mediation statements and evidentiary support, which addressed issues of both liability and damages. That mediation session likewise ended without reaching an agreement.

57.    On October 27, 2021, Lead Counsel and Defendants' Counsel participated in a second full-day mediation session before Judge Colombell. In advance of that session, the Parties submitted to Judge Colombell *ex parte* supplemental mediation statements, addressing additional liability and damages issues. During the mediation session, Judge Colombell issued a Mediator's proposal that the Action settle for $90,000,000 in cash, which was accepted by each Party that same day, and the Parties executed a Memorandum of Understanding (the "MOU") on October 28, 2021. The MOU sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment of $90,000,000, to be paid by Altria, subject to certain terms and conditions, including the execution of a formal, final stipulation of settlement and related papers. The agreement to settle was further conditioned on Court approval of the Settlement.

### I.        Preliminary Approval of the Settlement

58.        On December 9, 2021, Plaintiffs filed their motion for preliminary approval of the Settlement. Plaintiffs requested that the Court approve the proposed forms of notice, which, among other things, described the terms of the Settlement, advised Settlement Class Members of their rights, and set forth the proposed Plan of Allocation of Settlement proceeds, the maximum amount of attorneys' fees and the expenses that Lead Counsel would request and the procedure for submitting Proofs of Claim. ECF Nos. 295-297.

59.        On December 16, 2021, the Court preliminarily approved the terms of the Settlement, preliminarily certified the Settlement Class, and scheduled a settlement hearing for final approval on March 31, 2022, at 12:00 p.m. ECF No. 303.

### J.        The Factors Affecting Settlement Weigh in Favor of Approval of the Settlement

60.        The Settlement avoids the hurdles Lead Plaintiffs would have to clear, not only with respect to proving liability but also the full amount of the Settlement Class's damages, and avoids the significant costs associated with further litigation of this complex securities action, particularly summary judgment and trial. In view of the significant risks and additional time and expense involved in continuing to litigate this Action, we respectfully submit that the Settlement is fair, reasonable and adequate.

61.        In light of Lead Plaintiffs' extensive investigation and discovery efforts, the advice of their experts, and the discussions that occurred during the mediation, Lead Counsel were able to identify the issues that are critical to the outcome of this case. Lead Counsel have considered the risks of continued litigation, the likelihood of defeating summary judgment and, if successful, the risk, expense, and length of time to prosecute the litigation through trial and appeals. Lead Counsel have also considered the substantial monetary benefit provided by the Settlement given

17

these risks. Lead Plaintiffs were participants in this assessment and were consulted, and kept apprised of, the negotiations and agree that the Settlement is a successful result for the Settlement Class.

62. Lead Counsel have been, and currently are, actively engaged in complex federal civil litigation, particularly the litigation of securities class actions, in courts around the country. Our reputations as attorneys who are willing to zealously carry a meritorious case through trial and appeals gave us a strong negotiating position, even under the difficult and challenging circumstances presented here, including the impending summary judgment motion and ongoing expert discovery challenges and the uncertainty and expense of a trial. Lead Counsel and Lead Plaintiffs also faced the risks that Defendants would succeed on their various arguments regarding statutory standing, falsity, materiality, scienter, loss causation, and damages, which could have completely eliminated or significantly diminished any recovery for the Settlement Class.

63. Although we believe that Lead Plaintiffs would have ultimately prevailed on the merits at trial, Lead Counsel understand that a number of risks made the outcome of this litigation uncertain.

64. Plaintiffs would have faced challenges in proving to the ultimate fact finder Defendants' statements were materially false and misleading and that they acted with scienter. Defendants strenuously argued at the motion to dismiss and class certification stages, and they would have continued to maintain at summary judgment and trial, that (among other things) Plaintiffs would not be able to prove that Defendants' statements about JLI's marketing to minors and Altria's and JLI's commitment to preventing youth access and usage were materially false and misleading. For example, Defendants would likely seek to present evidence that the market understood the risks of regulatory action and litigation arising from JLI's alleged improper

18

marketing and the youth usage epidemic that were allegedly concealed by Defendants' statements, and that the statements are therefore not actionable. Defendants also would have likely vigorously argued that the allegedly omitted information about JLI's marketing to minors was fully disclosed when certain government entities began investigating JLI's marketing and certain consumer actions were filed against JLI. Also, Defendants would have argued that the alleged statements regarding Defendants' commitment to preventing underage access and use are not actionable because the statements legitimately reflected their genuinely held beliefs.

65.    Defendants would have also likely argued that even if the alleged misstatements were found to be misleading, Defendants did not act intentionally or recklessly (*i.e.*, with scienter). Defendants would likely seek to present testimonial evidence that the Individual Defendants did not believe that JLI or Altria had engaged in any wrongful conduct.

66.    The JLI Defendants would have also continued to argue, as they did at the motion to dismiss and class certification stage, that Plaintiffs (purchasers of Altria's common stock) do not have "standing" to bring action against the JLI Defendants for statements that JLI made about itself.

67.    Even if Plaintiffs succeeded in overcoming these arguments to establish liability, they would also have continued to confront considerable challenges in establishing loss causation and damages. Defendants would have asserted that Plaintiffs cannot prove loss causation or damages because they cannot identify a correction of an alleged misstatement that caused Altria's stock price to decline. In particular, Defendants would have continued to argue that: (i) the announcements of regulatory action and government litigation were materializations of risks fully known to investors (and disclosed by Defendants) prior to their purchases during the Settlement

19

Class Period; and (ii) that Altria's write-down of its JLI investment did not disclose any new facts that were previously unknown to the market.

68.    Defendants would have continued to argue, as they did in their opposition to Plaintiffs' motion to amend the Complaint, pending at the time the Parties agreed to resolve the Action, that the addition of four corrective disclosures on March 19, June 21, and November 19, 2019, and April 1, 2020 should not be permitted because Plaintiffs' proposed amendment was untimely. The loss of these disclosures would reduce likely recoverable aggregate damages.

69.    Significantly, at the time the Settlement was reached, the Court had not yet ruled on Plaintiffs' motion to amend the Complaint, which sought to expand the original class period and add four corrective events. There is no guarantee that the Court would have granted that motion, which may have ultimately impacted damages and the discovery admissible at trial.

70.    Plaintiffs faced ongoing risks associated with their pending motion to amend and motion for class certification as well as Defendants' forthcoming summary judgment motions, *in limine* motions, trial, and likely appeals, which would extend the litigation for years and might lead to a smaller recovery, or even no recovery at all. The Court's denial of class certification or granting of summary judgment in Defendants' favor would have resulted in zero recovery for the Settlement Class. As the Court warned during a conference with the Parties on April 13, 2021, shortly after denying Defendants' motions to dismiss, Plaintiffs' risk of losing at summary judgment was significant.

71.    Further, although Lead Plaintiffs firmly believe that the documentary and testimonial evidence they would offer at summary judgment and trial fully substantiates their claims, they could not predict with certainty which testimony, inferences, or interpretations the

20

Court or jury would accept. Even surviving summary judgment in full and prevailing at trial would not have guaranteed a recovery larger than the $90 million Settlement.

72.     While Lead Plaintiffs remain confident in their ability to prove their claims and successfully counter all of Defendants' arguments, when weighed against the certain and substantial benefits of settlement, the risks of losing at trial or having the Action dismissed or materially narrowed prior to trial indicate that the Settlement is in the best interests of the Settlement Class. There was certainly risk that Lead Plaintiffs would not prevail and the Settlement Class could recover nothing. Lead Counsel submit that these factors strongly favor the Settlement.

73.     Further, given the anticipated duration and expense of additional litigation, substantial resources would be expended to proceed through trial and likely appeals, all without any guarantee of a better resolution for the Class. These resources would have added considerable expense to be borne by the Class out of any potential recovery at trial. Securities class actions are inherently complex, time consuming, and expensive, which is magnified when such cases proceed through trial. The Settlement avoids these expenditures and provides an immediate recovery for the Settlement Class. Therefore, this factor favors the Settlement.

74.     The experience of Lead Counsel also favors the Settlement. Pomerantz and Robbins Geller, as well as counsel for Defendants, are nationally recognized for their experience and expertise in complex class action and securities litigation. Included with Lead Counsel's individual firm fee declarations are Pomerantz's and Robbins Geller's firm résumés. *See* Fee Decl. of Michael J. Wernke on Behalf of Pomerantz ("Pomerantz Fee Decl.") and Fee Decl. of Douglas R. Britton on Behalf of Robbins Geller ("Robbins Geller Fee Decl."), attached hereto as Exs. 5 & 6. Recommendations from such qualified counsel further support the Settlement.

75.    Finally, the lack of opposition to the Settlement also favors the Settlement. As outlined below, notice has already been widely disseminated to potential Settlement Class Members. The lack of any objections to the Settlement to date and only 12 opt-out requests constituting a *de minimis* number of Altria shares weigh in favor of the Settlement. If objections or additional requests to opt out are made, these will be presented with Lead Plaintiffs' reply papers.

76.    In light of the significant risks of establishing liability and damages, Lead Counsel and Lead Plaintiffs respectfully submit that the Settlement represents a very favorable result for the Settlement Class. It provides Settlement Class Members with a very substantial benefit now, where there is a significant likelihood of less recovery or no recovery at all following trial.

### K.    Mailing and Publication of Notice of Settlement

77.    The Preliminary Approval Order, among other things, appointed Epiq as the Claims Administrator and directed it to mail the Postcard Notice to all potential Settlement Class Members identifiable with reasonable effort, no later than January 5, 2022. ECF No. 303, ¶7(a)

78.    The Preliminary Approval Order also directed Lead Counsel to cause the Summary Notice to be published once in the national edition of *Investor's Business Daily* and transmitted over the internet via *PR Newswire*, no later than January 15, 2022. *Id.* at ¶7(c).

79.    The Mailing Declaration, submitted herewith, states that to date over 1,133,904 Postcard Notices have been mailed to potential Settlement Class Members, banks, brokers and nominees to date, and that the Summary Notice was published on January 10, 2022, in compliance with the provisions of the Preliminary Approval Order. Mailing Decl., ¶¶10-11  In addition, over 1,095 copies of the long-form Notice and Claim Form have been mailed to Settlement Class Members and nominees upon request.  *Id.*, at ¶8.

22

80.     As noted above, no objections to any aspect of the Settlement have been filed and only 12 requests for exclusion have been received. *Id*. at ¶¶16, 18.

## III.    THE PLAN OF ALLOCATION

81.     The Plan of Allocation is set forth in the Notice and provides that the Net Settlement Fund will be distributed to members of the Settlement Class who timely submit valid Claim Forms that show a "Recognized Claim" according to the Court-approved Plan of Allocation ("Authorized Claimants"). Given the costs of distributing payments, the Net Settlement Fund will be allocated among all Authorized Claimants whose distribution amount is $10.00 or greater.

82.     The Plan of Allocation, which was prepared with the assistance of Plaintiffs' damages expert, is designed to achieve an equitable and rational distribution of the Net Settlement Fund to eligible claimants and is consistent with Plaintiffs' damages theories. Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably distribute the Net Settlement Fund among Authorized Claimants.

83.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all Settlement Class Members who wish to participate in the distribution of the Net Settlement Fund must submit a valid Proof of Claim and all required information no later than March 10, 2022. Claims may be submitted to the Claims Administrator through the mail, online using the case website, or for large investors with multiple transactions, through email to Epiq's electronic filing team. Neither the Parties nor the Claims Administrator independently have claimants' transactional information. As provided in the Notice, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Expenses, and applicable taxes and tax expenses, the Net Settlement Fund will be distributed according to the Court-approved Plan of Allocation.

84.     Epiq, as the Court-approved Claims Administrator, will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's total

23

Recognized Claim compared to the aggregate Recognized Claims of all Authorized Claimants, as calculated in accordance with the Plan of Allocation. The Plan of Allocation formulas consider the estimated amount of alleged artificial inflation in the per share prices of Altria common stock that allegedly was proximately caused by Defendants' false and misleading statements and omissions, as estimated by Dr. Nye. The calculations take into account several factors, including when the claimants purchased their common stock and whether they sold the stock during the Settlement Class Period (or during the statutory 90-day lookback period) and, if so, when. Lead Plaintiffs' losses will be calculated in the same manner.

85.    After the Effective Date of the Settlement, in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund will be distributed to Authorized Claimants whose distribution amount is $10.00 or more. After the distribution, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after a reasonable amount of time from the date of the initial distribution, and after payment of any outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, Epiq will, if feasible and necessary, reallocate the balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. Once it is no longer economical to make further distributions, any *de minimis* balance that still remains after re-distribution(s) and after payment of any outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, will be donated to an appropriate non-profit organization unaffiliated with any of the Parties or their counsel, and subject to the approval of the Court.

86.    To date, there have been no objections to the Plan of Allocation. The Plan of Allocation is fair and reasonable and should be approved.

24

## IV.    ATTORNEYS' FEES AND EXPENSES

87.    Lead Counsel seek an award of attorneys' fees of 30% of the Settlement Fund. This percentage is well within the range of, and consistent with, the percentages of the common fund fees awarded to counsel in other comparable securities class actions. Based on the quality of Lead Counsel's work and the benefit obtained for Settlement Class Members in light of the risks discussed above, Lead Counsel respectfully submit that the requested fee is reasonable.

88.    Lead Counsel have diligently worked over the past two years to develop this case in a well-organized fashion to ensure maximum efficiency and a favorable recovery. Lead Counsel devoted both substantial attorney and financial resources to the case. Plaintiffs' Counsel accumulated a lodestar of $14,321,432 based on 28,080.90 hours of work, which is extremely reasonable in light of the length and complexity of this Action. *See* Pomerantz Fee Decl.; Robbins Geller Fee Decl.; Fee Decl. of Steven J. Toll on Behalf of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein Fee Decl."), attached hereto as Exs. 5-7. The requested 30% fee thus represents a slight multiplier of 1.88x on Plaintiffs' Counsel's lodestar.

89.    Courts in this District and elsewhere routinely award attorneys' fees of 30% to 33.33% of a settlement fund for similar and even higher recoveries. *See, e.g.*, *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00361, 2018 WL 2382091 (E.D. Va. Apr. 18, 2018) (awarding 33% of $94 million settlement fund); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.33% of $510 million settlement fund); Final Judgment and Order, *Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*, No. 1:08-cv-03601 (S.D.N.Y. Dec. 18, 2013), Dkt. No. 191 (awarding 33.33% of $85 million settlement fund); Final Order and Judgment, *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank N.A.*, No. 0:10-cv-04372 (D. Minn. Aug. 18, 2014), Dkt. No. 686 (awarding 33.33% of $62.5 million settlement fund); Order Awarding Attorneys' Fees and Expenses, *Grae v.*

25

*Corrections Corp. of Am., et al.*, No. 3:16-cv-02267 (M.D. Tenn. Nov. 8, 2021), Dkt. No. 478 (awarding 33.33% of $56 million settlement fund); *In re Busporine Antitrust Litig.*, No. 1:01-md-01410 (S.D.N.Y. Apr. 11, 2003) (awarding 33.3% of $220 million settlement fund); Order Awarding Attorneys' Fees and Expenses, *Schuh v. HCA Holdings, Inc., et al.*, No. 3:11-cv-01033 (M.D. Tenn. Apr. 14, 2016), Dkt. No. 563 (awarding 30% of $215 million settlement fund); Order Awarding Attorneys' Fees and Expenses and Award to Lead Plaintiff, *City of Pontiac Gen. Emps.' Ret. Sys. v. Wal-Mart Stores, Inc., et al.*, No. 5:12-cv-05162 (W.D. Ark. Apr. 8, 2019), Dkt. No. 458 (awarding 30% of $160 million settlement fund); Order Granting Lead Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, *Peace Officers' Annuity and Benefit Fund of Georgia, et al. v. DaVita Inc., et al.*, No. 1:17-cv-00304 (D. Colo. July 15, 2021), Dkt. No. 122 (awarding 30% of $135 million settlement fund); Final Judgment and Order of Dismissal, *Anwar v. Fairfield Greenwich Ltd. Grp.*, No. 1:09-cv-00118 (S.D.N.Y. Nov. 20, 2015), Dkt. No. 1457 (awarding 30% of $125 million settlement fund); Order Awarding Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiffs' Expenses, *T Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp., et al.*, No. 2:10-cv-02847 (N.D. Ala. Sept. 14, 2015), Dkt. No. 320 (awarding 30% of $90 million settlement fund); Order Approving Lead Plaintiffs' Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Expenses, *Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 1:09-md-02063 (D. Colo. Sept. 5, 2014), Dkt. No. 527 (awarding 30% of $89.5 million settlement fund and noting the "customary fee award of 30% of the fund under the percentage of the fund approach").

90.    Likewise, courts within this Circuit routinely approve multipliers higher than the one sought here. *See In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016) ("The fee awarded in this case, $61,320,000, results in a lodestar multiplier of 1.97. District courts

26

within the Fourth Circuit have regularly approved attorneys' fees awards with 2-3 times lodestar multipliers."); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."); *Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304-JFA, 2020 U.S. Dist. LEXIS 143893, at *39-40 (D.S.C. July 29, 2020) ("The requested fee for 25% of the settlement fund or $19.75 million which produces a lodestar multiplier of 4.24 – well within the range routinely approved in this circuit."); *In re Massey Energy Co. Sec. Litig.*, No. 5:10-cv-00689-ICB (S.D. W. Va. June 4, 2014) (approving a 2.9x lodestar multiplier); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 387 (D. Md. 2006) (approving a 2.57x lodestar multiplier); *In re MicroStrategy, Inc. Sec. Litig.*, 172 F. Supp. 2d 778, 787-88 (E.D. Va. 2001) (approving a 2.6x lodestar multiplier).

91.    During the hearing on Plaintiffs' motion for preliminary approval of the Settlement, the Court expressed its desire to maintain $60 million of the $90 million Settlement Amount for distribution to Settlement Class Members that submit valid claims ("Authorized Claimants"). Given the Court's comments, Lead Counsel are requesting a fee of 30% (as opposed to 31% identified in the Notice), that if awarded, will leave $60 million available for distribution to the Settlement Class. As discussed directly below, Lead Counsel are requesting a total of $1,613,523.17 for payment of litigation expenses ($1,544,748.17) and awards to the Lead Plaintiffs ($68,775). Thus, awarding Plaintiffs' Counsel 30% of the Settlement Amount as fees would preserve $61,399,485.78 for distribution to Authorized Claimants and for Notice and Administration of the Settlement Fund.[3] The Claims Administrator anticipates that the total cost

---

[3] This figure also includes an anticipated balance of $13,008.95 in the litigation expense fund, which will be contributed to the Settlement Fund. *See* Pomerantz Fee Decl., ¶9; Ex. 3.

of Notice and Administration of the Settlement Fund will not exceed $1.4 million (Mailing Decl. at ¶19)[4], preserving approximately $60 million for distribution to the Class.

92.     As discussed above, Lead Counsel faced significant risks pursuing this Action. This was not a case where recovery was assured. Compounding the risk, Lead Counsel's fees are totally contingent and dependent upon a successful result and an award by this Court. From the outset, Lead Counsel understood that they were embarking on complex, expensive, challenging, and lengthy litigation with no guarantee of compensation for the investment of time, money, and effort the case would require. In undertaking that responsibility, Lead Counsel were obligated to assure that sufficient resources were dedicated to prosecuting the Action and that funds were available to compensate staff and pay for the considerable expenses in a case such as this.

93.     Attorneys from Pomerantz and Robbins Geller are among the most experienced securities lawyers in the country. *See* Pomerantz Fee Decl. and Robbins Geller Fee Decl., Exs. 5 & 6. Few lawyers have the experience, professionalism, and knowledge to develop a successful litigation plan, shepherd the case through massive discovery, prepare the case for trial, and negotiate a substantial settlement in a securities case as complex as this.

94.     In the course of its 85-year history, Pomerantz has been appointed to serve as lead counsel in numerous notable securities class actions throughout the United States, and has achieved some of the largest recoveries in history, including *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018) ($3 billion settlement of securities class action, which was the largest securities class action settlement in over a decade); *Pirnik v. Fiat Chrysler Automobiles N.V., et*

---

[4] "Mailing Decl." refers to the Declaration of Jordan Broker Regarding: (i) Notice Dissemination; (ii) Publication of Summary Notice; (iii) Call Center Services; (iv) the Settlement Website; (v) Requests for Exclusion and Objections Received to Date; and (vi) Estimate of Administration Costs ("Mailing Decl."), attached to the Joint Declaration as Exhibit 4.

*al.*, No. 1:15-cv-07199-JMF (S.D.N.Y) ($110 million settlement); *In re Yahoo! Inc. Sec. Litig.*, No. 17-cv-00373 (N.D. Cal. 2018) ($80 million settlement); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350 (S.D.N.Y. 2017) ($135 million settlement); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825 (E.D.N.Y. June 24, 2010) ($225 million settlement).

95.    Robbins Geller has successfully obtained some of the largest recoveries in history, including *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) ($7.2 billion recovery, which is the largest ever in a securities class action); *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill.) ($1.575 billion settlement, the largest ever following a securities fraud class action trial, the largest securities fraud settlement in the Seventh Circuit); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658 (D.N.J.) (approval of a $1.2 billion settlement); *In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-00040 (S.D.N.Y.) ($1.025 billion settlement); and *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-cv-1691 (D. Minn.) ($925 million settlement, the largest stock option backdating recovery).

96.    When Lead Counsel undertook to represent Plaintiffs and the Settlement Class in this matter, it was with the knowledge that it was on a contingency basis and that their firms would spend many hours of hard work up against some of the best defense lawyers in the country with no assurance of ever obtaining any compensation for their efforts. The only way Lead Counsel would be compensated was to achieve a successful result for the Class.

97.    The Defendants are represented by lawyers from Hunton Andrews Kurth LLP; Wachtell, Lipton, Rosen & Katz; Dechert LLP; Wilkinson Stekloff LLP; Kirkland & Ellis LLP; Cleary Gottlieb Steen & Hamilton LLP; McGuire Woods LLP; Boersch & Illovsky LLP; Sullivan & Cromwell LLP; Troutman Pepper Hamilton Sanders LLP; Keker Van Nest & Peters LLP; Orrick, Herrington & Sutcliffe LLP; and Latham & Watkins LLP.  Defendants' Counsel are all

well-known and respected law firms whose lawyers vigorously represented the interests of their clients throughout this case. In the face of this experienced, formidable, and well-financed opposition, Pomerantz and Robbins Geller developed this case to the point where Defendants would settle the Action on a basis favorable to the Settlement Class.

98.     Public policy considerations also support the requested fee award. Lead Counsel shouldered all of the risk of committing substantial resources to prosecuting this Action, working long hours in a heavily contested matter under an extremely accelerated schedule and notwithstanding significant uncertainty as to whether Plaintiffs' claims would ultimately succeed.

99.     Lead Counsel also seek to recover the expenses incurred in connection with prosecuting this Action. The requested expenses are reflected in the books and records maintained by Plaintiffs' Counsel and are an accurate recording of the expenses incurred. These expenses include: (a) the fees and expenses of consultants and experts whose services Lead Counsel required to successfully prosecute and resolve the case; (b) the costs associated with hosting and reviewing the approximately 30 million pages of documents produced by Defendants; (c) the costs associated with conducting fact and expert witness depositions, which included remote deposition court reporter and videographer fees; (d) mediation fees; (e) travel expenses; and (f) online factual and legal research. In total, Plaintiffs' Counsel incurred expenses in the amount of $1,544,748.17. *See* Pomerantz Fee Decl., Robbins Geller Fee Decl., Cohen Milstein Fee Decl., Exs. 5-7. The total amount of the incurred expenses is less than the amount stated in the Notice, *i.e.*, that Lead Counsel would request up to $1,700,000 in litigation expenses.

100.     While the deadline set by the Court for Class Members to object to the requested fees and expenses has not yet passed, to date Lead Counsel have received no objections to either

30

the requested fees or expenses. Lead Counsel will respond to any objections received by the March 10, 2022 deadline in their reply papers, on or before March 24, 2022.

**V.     PLAINTIFFS SEEK AWARDS PURSUANT TO 15 U.S.C. § 78u-4(a)(4) BASED ON THEIR REPRESENTATION OF THE CLASS**

101.    The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

102.    Here, as explained in the Sherbondys' and CLPT declarations, attached hereto as Exhibits 1-3, Lead Plaintiffs Donald Sherbondy, Sarah Sherbondy and CLPT request approval of awards in the amounts of $20,000, $20,000 and $28,775, respectively, for their time and expenses related to their active participation in the Action. *See* Donald Decl., ¶¶2-7, Sarah Decl., ¶¶2-7 and CLPT Decl., ¶¶3-8.

103.    Many courts, including those in this Circuit, have approved reasonable payments to compensate lead plaintiffs for the time and effort devoted by them on behalf of a class. *See, e.g.*, *Mills*, 265 F.R.D. at 265 (reimbursing lead plaintiffs $42,419.50); *Nieman v. Duke Energy Corp.*, No. 3:12-cv-00456 (W.D.N.C. Nov. 2, 2015) (reimbursing lead plaintiff $20,612.50); *Massey Energy*, No. 10-cv-00689 (S.D. W. Va. June 4, 2014) (reimbursing lead plaintiff $33,889.18); *Genworth*, 210 F. Supp. 3d at 846 (awarding $23,128 for time relating to supervising the action); *Comput. Sci.*, 2013 WL 12155436, at *2 (awarding $28,881 for time and $32,024 for expenses).

104.    Lead Counsel respectfully submit that the amount sought here is reasonable based on Lead Plaintiffs' active involvement in the Action from their consideration of appointment as Lead Plaintiffs to the Settlement, which included, among other things, searching for and producing

numerous documents, sitting for depositions, participating in the mediation process and communicating with Lead Counsel regarding the Action. As such, this request should be granted in its entirety.

## VI.    CONCLUSION

105.    For the reasons set forth above and in the accompanying memoranda of law, we respectfully submit that: (i) the Settlement is fair, reasonable and adequate, and should be finally approved; (ii) the Plan of Allocation represents a fair method for the distribution of the Net Settlement Fund among Authorized Claimants and should also be approved; and (iii) the application for an award of attorneys' fees of 30% of the Settlement Amount and expenses of $1,544,748.17, with interest thereon earned at the same rate and for the same period as the Settlement Fund, plus awards of $20,000, $20,000 and $28,775, respectively, to Lead Plaintiffs Donald Sherbondy, Sarah Sherbondy and CLPT, should be granted in its entirety.

We declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York and Melville, New York, respectively, this 24th day of February, 2022.


_/s/ Jeremy A. Lieberman___                    __/s/ David A. Rosenfeld___
Jeremy A. Lieberman                            David A. Rosenfeld
POMERANTZ LLP                                  ROBBINS GELLER RUDMAN & DOWD LLP